# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------

|  |  |  |
|---|---|---|
| **In re** | : | Chapter 11 |
|  | : |  |
| **UNITED ROAD TOWING, INC.** *et al.*, | : | Case No. 17-10249 (LSS) |
|  | : |  |
| **Debtors.**[1] | : | Jointly Administered |
|  | : |  |
|  |  | **Docket Ref. No. 12** |

------------------------------------------------------------

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507
AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS
AND DEBTORS IN POSSESSION TO OBTAIN POSTPETITION FINANCING,
(II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS
AND SUPERPRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO
PREPETITION SECURED LENDERS, (V) MODIFYING THE AUTOMATIC STAY,
(VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***")[2] of United Road Towing, Inc., on behalf of itself and its affiliated

debtors and debtors-in-possession in the above-captioned cases (collectively, the "***Debtors***"), pursuant to

sections 105, 361, 362, 363, 364, and 507 of Title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (the

"***Bankruptcy Code***"), and in accordance with Rules 2002, 4001 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rule 4001-2 of the Local Rules of Bankruptcy

Practice and Procedure (the "***Local Rules***") of the United States Bankruptcy Court for the District of

Delaware (this "***Court***"), in these chapter 11 cases (the "***Chapter 11 Cases***"), for entry of an interim order

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: United Road Towing, Inc. (6962); URT Holdings, Inc. (8341); City Towing Inc. (2118); URS West, Inc. (3518); Bill & Wag's, Inc. (3518); Export Enterprises of Massachusetts, Inc. (5689); Pat's Towing, Inc. (6964); Keystone Towing, Inc. (6356); Ross Baker Towing, Inc. (9742); URT Texas, Inc. (3716); Mart-Caudle Corporation (1912); Signature Towing, Inc. (3054); WHW Transport, Inc. (3055); URS Southeast, Inc. (7289); URS Northeast, Inc. (7290); URS Southwest, Inc. (7284); Fast Towing, Inc. (5898); E&R Towing & Garage, Inc. (8500); Sunrise Towing, Inc. (7160); Ken Lehman Enterprises Inc. (1970); United Road Towing of South Florida, Inc. (9186); Rapid Recovery Incorporated (1659); United Road Towing Services, Inc. (2206); Arri Brothers, Inc. (7962); Rancho Del Oro Companies, Inc. (3924); CSCBD, Inc. (2448); URS Leasing, Inc. (9072); UR VMS LLC (4904); UR Vehicle Management Solutions, Inc. (0402). The Debtors' mailing address is c/o United Road Towing, Inc., 9550 Bormet Drive., Suite 301, Mokena, Illinois 60448.

[2]    Capitalized terms used in this Interim Order but not defined herein shall have the meanings ascribed to such terms in the DIP Credit Agreement (defined below).

(this "*Interim Order*"), granting the following relief on an interim basis until the date that a Final Order (as defined below) has been entered (the "*Interim Period*"):

**(I)    Interim DIP Financing**

(A)    Authorizing the Debtors to obtain up to $35,250,000 in post-petition financing (the "*DIP Facility*") pursuant to (and in accordance with the terms of) that certain *Senior Secured, Superpriority Debtor-in-Possession Credit Agreement* (as may be amended, modified, or supplemented and in effect from time-to-time, the "*DIP Credit Agreement*"), substantially in the form attached hereto as *Exhibit "2"*, by and among the Debtors, as borrowers and/or guarantors, Wells Fargo Bank, National Association, as administrative agent and collateral agent (the "*DIP Agent*"), and each Revolving Lender party thereto (individually a "*DIP Lender*"; and collectively the "*DIP Lenders*"), which may be used for the following purposes in accordance with and as limited by the Approved Budget (as defined below) (subject to permitted variances) and subject to Paragraph 50 hereof (where applicable):

(i)    to pay fees, costs, and expenses as provided in the DIP Financing Agreements (as defined below), including amounts incurred in connection with the preparation, negotiation, execution, and delivery of the DIP Credit Agreement and the other DIP Financing Agreements (as defined below);

(ii)    for general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, and other proper and lawful corporate purposes of the Debtors not otherwise prohibited by the terms hereof and/or the DIP Financing Agreements;

(iii)    treating all undrawn and unexpired Letters of Credit issued under the Prepetition ABL Credit Agreement (as defined below), other than any Specified Letter of Credit (as defined in the Prepetition ABL Credit Agreement), as Letters of Credit under the DIP Credit Agreement for all purposes;

(iv)    for making adequate protection payments and other payments as provided in this Interim Order (and upon its entry, the Final Order);

(v)    to fund the Prepetition Indemnity Account (as defined below) for the benefit of the Prepetition ABL Agent and the Prepetition ABL Lenders (each as defined below);

(vi)    for payment of the outstanding prepetition Revolving Loans constituting Prepetition ABL Debt (each as defined below) in the manner set forth in Paragraph 5 hereof (the "*Interim Roll-Up*");

(vii)    other than as may be applicable to any Specified Letter of Credit, upon entry of a Final Order, for the payment in full of all outstanding prepetition

2

amounts under the Prepetition ABL Credit Agreement in the manner set forth in Paragraph 6 hereof (the "*Final Roll-Up*"); and

(viii)   upon either (x) a DIP Maturity Event, so long as all Prepetition ABL Debt and all DIP Obligations have been paid in full in cash, or (y) after the occurrence of a DIP Order Event of Default (as defined below) as provided in Paragraph 31 below, to fund the Carve Out Account (as defined below).

(B)   Authorizing the Debtors to enter into the DIP Credit Agreement and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Agent and/or the DIP Lenders, including, without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("*UCC*") financing statements, and all other related agreements, documents, notes, certificates, and instruments to be executed, delivered, and/or ratified by the Debtors in connection therewith or related thereto (collectively, as may be amended, modified, or supplemented and in effect from time to time, the "*DIP Financing Agreements*");

(C)   Approval of the Interim Roll-Up;

(D)   Granting the DIP Agent for the benefit of the DIP Lenders the following Liens (as defined in section 101(37) of the Bankruptcy Code) (the "*DIP Liens*") and claims:

(i)   first priority priming, valid, perfected, and enforceable Liens, subject only to the Carve Out (as defined below) and the Permitted Prior Liens (as defined below), as provided in and as contemplated by this Interim Order and the DIP Financing Agreements;

(ii)   a first-priority senior lien on the Debtors' unencumbered assets, but excluding leasehold interests of the Debtors ("*Leases*") and actions arising under chapter 5 of the Bankruptcy Code; provided, however, (A) upon entry of the Interim Order, the DIP Liens shall include, first-priority senior liens on the proceeds of Leases (the "*Lease Proceeds*"), and (B) subject to entry of a Final Order, the DIP Liens shall include, first-priority senior liens on Specified Bankruptcy Recoveries (defined below); and

(iii)   allowed superpriority administrative claim status in respect of all obligations under the DIP Financing Agreements (collectively, the "*DIP Obligations*"), subject to the Carve Out as provided herein.

(II)   **Interim Use of Cash Collateral** – During the Interim Period, authorizing the Debtors' use of "cash collateral" (as such term is defined in section 363 of the Bankruptcy Code ("*Cash Collateral*")) in which the Prepetition ABL Agent and the Prepetition Term Agent (each as defined below) have an interest;

(III)   **Adequate Protection** – Granting certain adequate protection, including, among other things, Adequate Protection Liens and Adequate Protection Superpriority Claims (each as defined below) and certain other adequate protection as described in this Interim Order, to (A) Wells Fargo Bank, National Association, as administrative agent and as collateral agent (the "*Prepetition ABL Agent*") under that certain Credit Agreement, dated August

3

21, 2014 (as amended and in effect, the "***Prepetition ABL Credit Agreement***"), by and among the Debtors that comprised the "Loan Parties" thereunder, the Prepetition ABL Agent, and each Revolving Lender party thereto (the "***Prepetition ABL Lenders***"), and (B) Medley Capital Corporation, as term loan agent (the "***Prepetition Term Agent***" and, together with the Prepetition ABL Agent, the "***Prepetition Agents***") under that certain Credit Agreement dated as of August 21, 2014 (as amended and in effect, the "***Prepetition Term Credit Agreement***"), by and among the Debtors that comprised the "Borrowers" and "Guarantors" thereunder, the Prepetition Term Agent, and the lenders party thereto (the "***Prepetition Term Lenders***" and, together with the Prepetition ABL Lenders, the "***Prepetition Secured Lenders***"), in each case limited to the extent of any Diminution In Value (as defined below) of the Prepetition Agents' respective interests in the Prepetition Collateral (as defined below), having the priority set forth in this Interim Order, as adequate protection for (i) the granting of the DIP Liens to the DIP Agent, (ii) the use of Cash Collateral, (iii) subordination to the Carve Out, and (iv) for the imposition of the automatic stay;

**(IV)**    **Modifying the Automatic Stay** – Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Interim Order;

**(V)**    **Waiving Any Applicable Stay** – Waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Interim Order; and

**(VI)**    **Final Hearing** – Scheduling a final hearing (the "***Final Hearing***") to consider entry of an order (the "***Final Order***") granting the relief requested in the DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing.

and upon the *Declaration of Michael Mahar in Support of First Day Pleadings* (the "***First Day Declaration***") filed contemporaneously with the Motion; and this Court having reviewed the Motion and held a hearing with respect to the Motion (the "***Interim Hearing***"); and upon the Motion, the First Day Declaration, and the record of the Interim Hearing and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

**I.    Procedural Findings of Fact**

**A.    Petition Date.** On February 6, 2017 (the "***Petition Date***"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue

to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

**B.**      **Jurisdiction and Venue.**  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

**C.**      **Statutory Predicates**.  The statutory bases for the relief sought herein are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014 and the applicable Local Rules.

**D.**      **Committee Formation.**  No official committee (a "*Committee*") of unsecured creditors, equity interest holders, or other parties-in-interest has been appointed in the Chapter 11 Cases.

**E.**      **Notice.**  The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014, and the Local Rules.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors to certain parties-in-interest, including: (i) the Office of the United States Trustee ("*U.S. Trustee*"); (ii) those creditors holding the 30 largest unsecured claims against the Debtors' estates, on a consolidated basis; (iii) counsel to the Prepetition ABL Agent and the DIP Agent; (iv) counsel to the Prepetition Term Agent; and (v) all other secured creditors of record. Notice has been given in accordance with Local Rule 9013-1(m).

**II.**      **Debtors' Acknowledgements and Agreements**

**F.**      Without prejudice to the rights of parties-in-interest as set forth in Paragraphs 23-25 below, each of the Debtors admits, stipulates, acknowledges, and agrees that (collectively, Paragraphs F(1) through F(7) hereof shall be referred to herein as the "*Debtors' Stipulations*"):

(1)      Prepetition ABL Financing Documents.  Prior to the commencement of the Chapter 11 Cases, the Loan Parties (as defined in the Prepetition ABL Credit Agreement) were parties to (A) the Prepetition ABL Credit Agreement, (B) that certain Guaranty and Security Agreement dated August 14, 2014 (as amended, restated, modified and supplemented from time to time and in effect), and (C) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Prepetition ABL Agent or Prepetition ABL

Lenders, including, without limitation, that certain Intercreditor Agreement , dated as of August 21, 2014, between and among Wells Fargo Bank, National Association, as "First Lien Agent" and Medley Capital Corporation, as "Second Lien Agent" (the "**Prepetition Intercreditor Agreement**"), control agreements, mortgages, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (as amended, modified or supplemented and in effect, collectively, the "**Prepetition ABL Financing Documents**").

(2)    Prepetition Term Financing Documents.  Prior to the commencement of the Chapter 11 Cases, the Loan Parties (as defined in the Prepetition Term Credit Agreement) were parties to (A) the Prepetition Term Credit Agreement, (B) that certain Guaranty and Security Agreement dated August 21, 2014 (as amended, restated, modified and supplemented from time to time and in effect), and (C) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the Prepetition Term Agent or the Prepetition Term Lenders, including, without limitation, the Prepetition Intercreditor Agreement, control agreements, mortgages, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (as amended, modified or supplemented and in effect, collectively, the "**Prepetition Term Financing Documents**" and, together with the Prepetition ABL Financing Documents, the "**Prepetition Financing Documents**").

(3)    Prepetition ABL Debt Amount.  As of the Petition Date, the Loan Parties (as defined in the Prepetition ABL Credit Agreement) were liable to the Prepetition ABL Lenders under the Prepetition ABL Financing Documents, on account of "Revolving Loans" in the approximate principal amount of $13.84, million, plus letters of credit in the approximate stated amount of not less than $6.08 million, plus interest accrued and accruing at the default rate, costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, leasing, hedging and other banking or financial services secured by the Prepetition ABL Financing Documents (collectively the "**Prepetition ABL Debt**").

(4)    Prepetition Term Loan Debt Amount.  As of the Petition Date, the Loan Parties (as defined in the Prepetition Term Credit Agreement) were liable to the Prepetition Term Lenders in the total aggregate principal amount of $17 million, plus interest accrued and accruing, costs, expenses, and fees (including attorneys' fees and legal expenses).  All obligations of the Loan Parties (as defined in the Prepetition Term Credit Agreement) arising under the Prepetition Term Credit Agreement or any other Prepetition Term Financing Document, including all principal, accrued or hereafter accruing interest, fees, and costs, payable under the Prepetition Term Credit Agreement shall hereinafter be referred to as the "**Prepetition Term Loan Debt**" and, together with the Prepetition ABL Debt, the "**Prepetition Secured Debt**."

(5)    Prepetition Collateral.  To secure the Prepetition Secured Debt, each of the Loan Parties (as defined in the respective Prepetition ABL Credit Agreement and Prepetition Term Credit Agreement) granted continuing security interests and Liens (collectively, the "**Prepetition Liens**") to the Prepetition Agents and the Prepetition Secured Lenders upon substantially all of its property, including the following, all as defined in the Prepetition Financing Documents (collectively, the "**Prepetition Collateral**"), including, without limitation:

All: (a) Accounts, (b) Books, (c) Chattel Paper (d) Commercial Tort Claims, (e) Deposit Accounts, (f) Equipment, (g) Farm Products, (h) Fixtures, (i) General Intangibles, (j) Inventory, (k) Investment Property, (l) Intellectual Property, (m)

Negotiable Collateral, (n) Pledged Interests (including all of such Debtor's Operating Agreements and Pledged Partnership Agreements), (o) Securities Accounts, (p) Supporting Obligations, (q) all of such Debtor's money, Cash Equivalents, or other assets of such Debtor that now or hereafter come into the possession, custody, or control of the Prepetition ABL Agent (or its agent or designee) or any other Prepetition ABL Lender, (r) all of the proceeds (as such term is defined in the Code) and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance or Commercial Tort Claims covering or relating to any or all of the foregoing, and any and all Accounts, Books, Chattel Paper, Deposit Accounts, Equipment, Fixtures, General Intangibles, Inventory, Investment Property, Intellectual Property, Negotiable Collateral, Pledged Interests, Securities Accounts, Supporting Obligations, money, or other tangible or intangible property resulting from the sale, lease, license, exchange, collection, or other disposition of any of the foregoing, the proceeds of any award in condemnation with respect to any of the foregoing, any rebates or refunds, whether for taxes or otherwise, and all proceeds of any such proceeds, or any portion thereof or interest therein, and the proceeds thereof, and all proceeds of any loss of, damage to, or destruction of the above, whether insured or not insured, and, to the extent not otherwise included, any indemnity, warranty, or guaranty payable by reason of loss or damage to, or otherwise with respect to any of the foregoing (the "Proceeds").  Without limiting the generality of the foregoing, the term "Proceeds" includes whatever is receivable or received when Investment Property or proceeds are sold, exchanged, collected, or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes proceeds of any indemnity or guaranty payable to any Debtor or the Prepetition ABL Agent from time to time with respect to any of the Investment Property, and (s) any of the foregoing, whether now owned or now due, or in which any Debtor has an interest, or hereafter acquired, arising, or to become due, or in which any Debtor obtains an interest, and all products, Proceeds, substitutions, and Accessions of or to any of the foregoing.

(6)    *Prepetition Liens*.  The Prepetition Liens of the Prepetition Agents and the Prepetition Secured Lenders have priority over all other Liens except (x) valid, enforceable, non-avoidable and perfected Liens in existence on the Petition Date that, after giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition Liens, and (y) valid, enforceable and non-avoidable Liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and after giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition Liens (collectively, the "***Permitted Prior Liens***").

(a)    As of the Petition Date, (i) the Prepetition Liens are valid, binding, enforceable, and perfected first priority Liens, subject only to any Permitted Prior Liens, and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) (a) the Prepetition Secured Debt constitutes legal, valid, and binding obligations of the Loan Parties (as defined in the respective Prepetition ABL Credit Agreement and Prepetition Term Credit Agreement), enforceable in accordance with the terms of the Prepetition Financing Documents (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), (b) no offsets, defenses, or counterclaims to any of the Prepetition Secured Debt exists, and (c) no portion of the Prepetition Secured Debt is subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable

non-bankruptcy law, (iii) the Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Agents or any Prepetition Secured Lender with respect to the Prepetition Financing Documents or otherwise, whether arising at law or at equity, including, without limitation, any recharacterization, subordination, disallowance, avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive, of the Bankruptcy Code, and (iv) the Prepetition Secured Debt constitutes allowed claims.

(b)    On the date that this Interim Order is entered, each of the Debtors has waived, discharged, and released the Prepetition Agents and the Prepetition Secured Lenders, together with their respective successors, assigns, subsidiaries, parents, affiliates, agents, attorneys, officers, directors, and employees (collectively, the "***Released Parties***"), of any right the Debtors may have (i) to challenge or object to any of the Prepetition Secured Debt, (ii) to challenge or object to the Prepetition Liens or any other security for the Prepetition Secured Debt, and (iii) to bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action arising out of, based upon, or related to the Prepetition Financing Documents, or otherwise.

(c)    None of the Debtors possesses and will not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description against any of the Released Parties, including anything which would in any way affect the validity, enforceability, priority, and non-avoidability of any of the Prepetition Financing Documents or the Prepetition Liens, or any claim of the Prepetition Secured Lenders pursuant to the Prepetition Financing Documents, or otherwise.

(7)    <u>Cash Collateral</u>. The Prepetition Agents have a continuing security interest in and Lien on all or substantially all of the Loan Parties' (as defined in the respective Prepetition ABL Credit Agreement and Prepetition Term Credit Agreement) Cash Collateral, including all amounts on deposit in the Loan Parties' (as defined in the respective Prepetition ABL Credit Agreement and Prepetition Term Credit Agreement) banking, checking, or other deposit accounts and all proceeds of the Prepetition Collateral, to secure the Prepetition Secured Debt.

## III.    <u>Findings Regarding the Post-Petition Financing.</u>

G.    **Need for Post-Petition Financing**. An immediate need exists for the Debtors to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of their estates for the benefit of their stakeholders. The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets, and to maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estates and their stakeholders.

H.    **No Credit Available on More Favorable Terms**. As discussed in the First Day Declaration, the Debtors have been unable to obtain any of the following:

      (1)     unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense,

      (2)     credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code,

      (3)     credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or

      (4)     credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien,

in each case, on more favorable terms and conditions than those provided in the DIP Credit Agreement and this Interim Order. The Debtors are unable to obtain credit from the DIP Lenders without granting to the DIP Agent, for the benefit of the DIP Lenders, the DIP Protections (as defined below).

      **I.**     **Prior Liens.** Nothing herein shall constitute a finding or ruling by this Court that any Permitted Prior Liens or Prepetition Liens (subject to Paragraphs 23-25 below) are valid, senior, perfected, or unavoidable. Moreover, except as provided in Paragraphs 23-25 below, nothing shall prejudice the following:

      (1)     the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Lenders, the Prepetition Agents, Prepetition Secured Lenders, and any Committee to challenge the validity, priority, perfection, and extent of any such Permitted Prior Liens, or

      (2)     the rights of any Committee or any other party-in-interest (other than the Debtors) with requisite standing to challenge the validity, priority, perfection, and extent of the Prepetition ABL Debt, Prepetition Term Debt, and/or the Prepetition Liens as set forth in this Interim Order.

      **J.**     **Adequate Protection for Prepetition Secured Lenders.** As a result of the granting of the DIP Liens, the incurrence of the DIP Obligations, subordination to the Carve Out, the use of Cash Collateral authorized herein, and the imposition of the automatic stay, the Prepetition Agents and Prepetition Secured Lenders are entitled to receive adequate protection pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, in each case limited to the extent of any Diminution In Value of their interests in the Prepetition Collateral (including Cash Collateral) during these Chapter 11 Cases. As adequate protection, the Prepetition Secured Lenders will receive the Adequate Protection (as defined below) described in Paragraph 16 of this Interim Order.

**K.**    **Prepetition Secured Lenders Governed By Prepetition Intercreditor Agreement**. The Prepetition ABL Agent and Prepetition Term Agent are parties to the Prepetition Intercreditor Agreement. The Prepetition Intercreditor Agreement is a "subordination agreement" within the meaning of section 510(a) of the Bankruptcy Code in the Chapter 11 Cases. The Prepetition Agents and Prepetition Secured Lenders have stipulated that their respective interests in the Prepetition Collateral shall continue to be governed by the Prepetition Intercreditor Agreement.

**L.**    **Prepetition Agents' and Prepetition Secured Lenders' Consent**. In exchange for the Adequate Protection, the Prepetition Secured Lenders have agreed to the Debtors' use of Cash Collateral on the terms set forth in this Interim Order and to the subordination of their Prepetition Liens to the DIP Liens, and the Carve Out as set forth herein. The Prepetition Agents and the Prepetition Secured Lenders have consented to the priming of the Prepetition Liens by the DIP Liens to the extent set forth herein.

**M.**    **Adequacy of the Approved Budget.** The Debtors have demonstrated that the budget, the short form of which is attached hereto as *Exhibit "1"* (as the same may be modified, supplemented, or updated from time to time consistent with the terms of the DIP Credit Agreement, this Interim Order, and upon its entry, the Final Order, the "*Approved Budget*")[3] is adequate, considering all the available assets, to pay the administrative expenses due and accruing during the Interim Period.

**N.**    **Conditions Precedent to DIP Lenders' Extension of Financing.** The DIP Lenders have indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and the other DIP Financing Agreements. The DIP Lenders are good faith financiers. The DIP Lenders' claims, superpriority claims, security interests, and Liens and other protections granted pursuant to this Interim Order (and upon its entry, the Final Order) and the DIP Facility shall be entitled to the full protections available under section 364(e) of the Bankruptcy Code.

**O.**    **Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code.** The extension of credit under the DIP Facility, the DIP Credit Agreement, and the other DIP

---

[3]    All backup, schedules, and other detail contained in the Approved Budget is incorporated by reference, including accruals for professional fee estimates.

Financing Agreements, and the fees paid and to be paid thereunder (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and (iii) are supported by reasonably equivalent value and consideration.  The DIP Facility were negotiated in good faith and at arms' length between the Debtors, the DIP Agent, and the DIP Lenders, and the use of the proceeds to be extended under the DIP Facility and the consent to use of Cash Collateral and Adequate Protection under this Interim Order will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Agent, DIP Lenders, Prepetition Agents and Prepetition Secured Lenders are entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

P.      **Relief Essential; Best Interest.**  The relief requested in the Motion (and as provided in this Interim Order) is necessary, essential and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' assets during the Interim Period.  It is in the best interest of the Debtors' estates that the Debtors be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement and the other DIP Financing Agreements.  The Debtors have demonstrated good and sufficient cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

## I.

### DIP FINANCING

A.      **Approval of Entry into the DIP Facility**

1.      The Motion is granted as set forth herein.

2.      The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Credit Agreement and the other DIP Financing Agreements, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and to execute and deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens

described in and provided for by this Interim Order and the DIP Financing Agreements. The Debtors are hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the respective DIP Financing Agreements as such become due, and, subject to the provisions of Paragraph 50 below, reasonable attorneys', financial advisors', consultants, and accountants' fees and disbursements as provided for in the respective DIP Financing Agreements, which amounts shall not otherwise be subject to approval of this Court. Upon the entry of this Interim Order, all letters of credit outstanding under the Prepetition ABL Financing Documents, other than Specified Letters of Credit, shall be deemed to have been issued pursuant to and shall be deemed to be outstanding under the DIP Credit Agreement.

**B.      Authorization to Borrow**

3.      In order to enable them to continue to operate their businesses during the Interim Period, and subject to the terms and conditions of this Interim Order, the respective DIP Financing Agreements, and the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), the Debtors are hereby authorized to borrow under the DIP Financing Agreements an amount up to $12,500,000 in accordance with the terms and conditions of the DIP Credit Agreement.

**C.      Application of DIP Facility' Proceeds**

4.      The advances under the DIP Facility shall be used in each case in a manner consistent with the terms and conditions of the respective DIP Financing Agreements and in accordance with and as may be limited by the Approved Budget (subject to any permitted variances thereunder), solely as follows:

> (a)      to pay fees, costs, and expenses as provided in the respective DIP Financing Agreements, including amounts incurred in connection with the preparation, negotiation, execution, and delivery of the DIP Credit Agreement, the other DIP Financing Agreements, and this Interim Order;

> (b)      for general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, and other proper and lawful corporate purposes of the Debtors not otherwise prohibited by the terms hereof or under the DIP Credit Agreement and/or the other DIP Financing Agreements;

> (c)      for making payments in respect of Adequate Protection and other payments as provided in this Interim Order;

(d)    to fund the Prepetition ABL Indemnity Account (as provided in Paragraph 16 below);

(e)    upon entry of a Final Order, for the payment of the Final Roll-Up; and

(f)    to fund the Carve Out Account (as defined below).

**D.    Roll-Up Authorization**

5.    <u>Interim Roll-Up</u>.  During the Interim Period, all cash, collections, and proceeds of the Prepetition Collateral and DIP Collateral, and/or proceeds realized in connection with the Sale Motion (as defined below), shall be immediately paid to the Prepetition ABL Agent for application in reduction of the Revolving Loans outstanding under the Prepetition ABL Credit Agreement in accordance with the Prepetition ABL Financing Documents, and upon payment in full thereof, to the DIP Agent for application in reduction of the Revolving Loans outstanding under the DIP Credit Agreement.  The Interim Roll-Up and deemed issuance of letters of credit under the DIP Credit Agreement as provided for in Paragraph 2 above and Section 2.11 of the DIP Financing Agreement will be without prejudice to the rights of any third party, including, without limitation, any Committee, to seek an appropriate remedy from the Court upon a successful Challenge (defined below), including, without limitation, "clawing back" such amounts or obligations.

6.    <u>Final Roll-Up</u>.  Solely upon entry of the Final Order, and subject to the rights of parties set forth in Paragraphs 23-25 below, the Debtors shall use the proceeds of the next advance under the DIP Credit Agreement to satisfy all Prepetition ABL Debt (excluding any amounts in respect of Specified Letters of Credit) in full in accordance with the terms of the Prepetition ABL Credit Agreement ("***Final Roll-Up***").  The Final Roll-Up will be without prejudice to the rights of any third party, including, without limitation, any Committee, to seek an appropriate remedy from the Court upon a successful Challenge, including, without limitation, "clawing back" such amounts or obligations.

**E.    Conditions Precedent**

7.    The DIP Lenders shall not have any obligation to make any loan or advance under the DIP Facility during the Interim Period unless the conditions precedent to make such loan under the respective DIP Financing Agreements have been satisfied in full or waived in accordance therewith.

**F.    The DIP Liens**

8.    Pursuant to sections 361, 362, 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, and subject to the limitations set forth in Paragraph 9 below (and such limitations as may appear in the Prepetition Intercreditor Agreement, if any), effective immediately upon the entry of this Interim Order the DIP Agent is hereby granted the DIP Liens (which Liens are subject to the Permitted Prior Liens and the Carve Out) for the ratable benefit of the DIP Lenders, which DIP Liens constitute priming, first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests and Liens senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates, that are senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates, and except as otherwise expressly provided in this Interim Order and the Prepetition Intercreditor Agreement, upon and to all of the following (but excluding the "Excluded Assets," as defined in the Guaranty and Collateral Agreement) (collectively, the "***DIP Collateral***"):

(a)    The Collateral, as defined in the DIP Financing Agreements, including:

All: (a) Accounts, (b) Books, (c) Chattel Paper (d) Commercial Tort Claims, (e) Deposit Accounts, (f) Equipment, (g) Farm Products, (h) Fixtures, (i) General Intangibles, (j) Inventory, (k) Investment Property, (l) Intellectual Property, (m) Negotiable Collateral, (n) Pledged Interests (including all of such Debtor's Operating Agreements and Pledged Partnership Agreements), (o) Securities Accounts, (p) Supporting Obligations, (q) all of such Debtor's money, Cash Equivalents, or other assets of such Debtor that now or hereafter come into the possession, custody, or control of the Prepetition ABL Agent (or its agent or designee) or any other Prepetition ABL Lender, (r) all of the proceeds (as such term is defined in the Code) and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance or Commercial Tort Claims covering or relating to any or all of the foregoing, and any and all Accounts, Books, Chattel Paper, Deposit Accounts, Equipment, Fixtures, General Intangibles, Inventory, Investment Property, Intellectual Property, Negotiable Collateral, Pledged Interests, Securities Accounts, Supporting Obligations, money, or other tangible or intangible property resulting from the sale, lease, license, exchange, collection, or other disposition of any of the foregoing, the

proceeds of any award in condemnation with respect to any of the foregoing, any rebates or refunds, whether for taxes or otherwise, and all proceeds of any such proceeds, or any portion thereof or interest therein, and the proceeds thereof, and all proceeds of any loss of, damage to, or destruction of the above, whether insured or not insured, and, to the extent not otherwise included, any indemnity, warranty, or guaranty payable by reason of loss or damage to, or otherwise with respect to any of the foregoing (the "Proceeds").  Without limiting the generality of the foregoing, the term "Proceeds" includes whatever is receivable or received when Investment Property or proceeds are sold, exchanged, collected, or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes proceeds of any indemnity or guaranty payable to any Debtor or the Prepetition ABL Agent from time to time with respect to any of the Investment Property, and (s) any of the foregoing, whether now owned or now due, or in which any Debtor has an interest, or hereafter acquired, arising, or to become due, or in which any Debtor obtains an interest, and all products, Proceeds, substitutions, and Accessions of or to any of the foregoing.

(b)     Subject to entry of the Final Order, the Bankruptcy Recoveries (as defined below), but only (A) with respect to Bankruptcy Recoveries arising under section 549 of the Bankruptcy Code, the full amount of any such recovery, and (B) with respect to Bankruptcy Recoveries arising under all other sections of chapter 5 of the Bankruptcy Code, the amounts necessary to reimburse the DIP Lenders, as the case may be, for the amount of the Carve Out, if any, used to finance the pursuit of such recovery (the foregoing Bankruptcy Recoveries in (A) and (B) being referred to collectively as the "*Specified Bankruptcy Recoveries*"); provided, however, for the avoidance of doubt, the DIP Superpriority Claims (as defined below) and the Adequate Protection Superpriority Claims (as defined below) of the Prepetition Agents and the Prepetition Secured Lenders as provided in Paragraph 16 below shall be payable out of all Bankruptcy Recoveries, among other things.

As used herein, "*Bankruptcy Recoveries*" shall mean any recoveries of the Debtors, by settlement or otherwise, in respect of claims and causes of action to which the Debtors may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtors or the estates of the Debtors under chapter 5 of the Bankruptcy Code.

(c)     The Lease Proceeds, but not the Leases themselves, whether or not so perfected prior to the Petition Date.

(d)     Any cash held in any escrow or other account of the Debtors in respect of accrued and/or accruing employee benefit obligations as provided for in the Approved Budget; provided, however, that no party may exercise remedies with respect to such cash or accounts under this Interim Order or the DIP Financing Agreements absent further order of the Court.

## G.     DIP Lien Priority

9.     The DIP Liens to be created and granted to the DIP Agent, as provided herein, are:

(a)     created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code,

(b)    other than as set forth in (c) below, first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or Lien or claim to the DIP Collateral, and

(c)    subject to the Prepetition Intercreditor Agreement, subject only to (i) the Carve Out, and (ii) the Permitted Prior Liens.

The DIP Liens shall secure all DIP Obligations, and the proceeds of the DIP Collateral shall be applied in the same order and priority set forth in the respective DIP Financing Agreements, subject to the Prepetition Intercreditor Agreement, the terms of this Interim Order, and upon its entry, the terms of the Final Order. The DIP Liens shall not be made subject to or *pari passu* with any Lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the foregoing (each a "*Successor Case*"), and/or upon the dismissal of the Chapter 11 Cases. The DIP Liens shall not be subject to sections 510(c), 549, 550, or 551 of the Bankruptcy Code.

10.    Except as otherwise expressly set forth herein, (x) the DIP Agent and the DIP Lenders, the Prepetition Agents and the Prepetition Secured Lenders shall remain bound by the terms and conditions set forth in the Prepetition Intercreditor Agreement, including, without limitation, with respect to the Prepetition Collateral and the DIP Collateral, (y) nothing contained in this Interim Order shall be deemed to abrogate or limit  the respective, rights, claims and obligations of each of the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Secured Lenders under the Prepetition Intercreditor Agreement, and (z) the Prepetition Intercreditor Agreement shall apply and govern the respective rights, obligations, and priorities of each of the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Secured Parties in these Chapter 11 Cases.

## H.    Enforceable Obligations

11.    The respective DIP Financing Agreements shall constitute and evidence the valid and binding obligations of the Debtors, and shall be enforceable against the Debtors, their estates, and any successors thereto, and their creditors in accordance with their terms.

**I.**     **Protection of the DIP Lenders and Other Rights**

12.     From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the respective DIP Financing Agreements and this Interim Order, in compliance with and as limited by the Approved Budget (subject to any permitted variances thereunder).

**J.**     **Superpriority Administrative Claim Status**

13.     Subject to the Carve Out, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "***DIP Superpriority Claim***" and, together with the DIP Liens, collectively, the "***DIP Protections***"), in each case with priority in the Chapter 11 Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, sections 506(c) and 552(b) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment; provided, however, that (i) the DIP Protections shall not attach to any Bankruptcy Recoveries other than the Specified Bankruptcy Recoveries and (ii) shall be subject to the Prepetition Intercreditor Agreement.

14.     Other than the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Protections or the obligations under the respective DIP Financing Agreements or with any other claims of the DIP Lenders arising hereunder or thereunder.

## II.

### <u>AUTHORIZATION FOR USE OF CASH COLLATERAL; ADEQUATE PROTECTION</u>

15.     Pursuant to the terms and conditions of this Interim Order, the respective DIP Financing

Agreements, and in accordance with and as may be limited by the Approved Budget (subject to permitted

variances), the Debtors are authorized to use Cash Collateral and to use the advances under the DIP Facility

during the Interim Period and terminating upon notice being provided by the DIP Agent to the Debtors that

a DIP Order Event of Default (as defined below) has occurred and is continuing in the manner set forth in

Paragraphs 36 and 38 below.

16.     As adequate protection for any Diminution In Value of the interests of the Prepetition

Secured Lenders in the Prepetition Collateral (including Cash Collateral) on account of the granting of the

DIP Liens, and the incurrence of the DIP Obligations, the subordination to the Carve Out, and the Debtors'

use of Cash Collateral, and any other Diminution In Value arising out of the imposition of the automatic

stay or the Debtors' use, sale, depreciation, or disposition of the Prepetition Collateral and Cash Collateral

during the pendency of these Chapter 11 Cases, including the disposition of assets as contemplated by the

Sale Motion (collectively, "***Diminution In Value***"), the Prepetition Secured Lenders shall receive adequate

protection as follows (collectively, "***Adequate Protection***"):

> (a)     <u>**Adequate Protection Liens**</u>. Pursuant to sections 361 and 363(e) of the
> Bankruptcy Code, and solely to the extent of the Diminution In Value of the respective interests of
> the Prepetition Agents and the Prepetition Secured Lenders in the Prepetition Collateral (including
> Cash Collateral):
>
>> (i) the Prepetition ABL Agent (for the benefit of the Prepetition ABL Lenders)
>> shall have, subject to the terms and conditions set forth below, valid, perfected, and
>> enforceable additional and replacement security interests and Liens in the Prepetition
>> Collateral and the DIP Collateral (the "***ABL Adequate Protection Liens***") which shall be
>> (1) junior only to the Carve Out, the DIP Liens securing the DIP Obligations, and
>> Permitted Prior Liens, and (2) in all instances, subject to the Prepetition Intercreditor
>> Agreement; and
>>
>> (ii) the Prepetition Term Agent (for the benefit of the Prepetition Term Lenders)
>> shall have, subject to the terms and conditions set forth below, valid, perfected, and
>> enforceable additional and replacement security interests and Liens in the Prepetition
>> Collateral and the DIP Collateral (the "***Term Adequate Protection Liens***"; and together
>> with the ABL Adequate Protection Liens, the "***Adequate Protection Liens***") which shall be
>> (1) junior only to the Carve Out, the DIP Liens securing the DIP Obligations, the ABL

Adequate Protection Liens, the Prepetition ABL Liens, and Permitted Prior Liens, and (2) in all instances, subject to the Prepetition Intercreditor Agreement.

(b)    **Adequate Protection Superpriority Claim**. Solely to the extent of any Diminution In Value of the interests of the Prepetition Agents and the Prepetition Secured Lenders in the Prepetition Collateral,

(i) the Prepetition ABL Agent (for the benefit of the Prepetition ABL Lenders) shall have an allowed superpriority administrative expense claim (the "***ABL Adequate Protection Superpriority Claim***"), which shall have priority (except with respect to (1) the Carve Out and (2) the DIP Superpriority Claim) in the Chapter 11 Cases under sections 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and upon entry of the Final Order, sections 506(c) and 552 of the Bankruptcy Code; and

(ii) the Prepetition Term Agent (for the benefit of the Prepetition Term Lenders) shall have an allowed superpriority administrative expense claim (the "***Term Adequate Protection Superpriority Claim***"; and together with the ABL Adequate Protection Superpriority Claim, the "***Adequate Protection Superpriority Claims***"), in each case which shall have priority (except with respect to (1) the Carve Out, (2) the DIP Superpriority Claim, and (3) the ABL Adequate Protection Superpriority Claim) in the Chapter 11 Cases under sections 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and upon entry of the Final Order, sections 506(c) and 552 of the Bankruptcy Code.

Other than the DIP Liens, the DIP Superpriority Claims, and the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Case, will be senior to, prior to, or on parity with the Adequate Protection Superpriority Claims.

(c)    **Adequate Protection Payments**.

(i)    Until the repayment in full of the obligations under the Prepetition ABL Credit Agreement (including pursuant to the Final Roll-Up), on the last business day of each month, the Prepetition ABL Agent shall receive, for the ratable benefit of the Prepetition ABL Lenders, payment of all accrued and unpaid interest at the default rate set forth in the Prepetition ABL Credit Agreement; and

(ii)    Subject to the provisions of Paragraph 50 hereof, the Prepetition ABL Agent and the Prepetition ABL Lenders shall be reimbursed, on a current basis, for all reasonable and documented out-of-pocket costs and expenses of the financial advisors and outside attorneys engaged by such parties, solely to the extent permitted under the

Prepetition ABL Credit Agreement.

(d)    **Adequate Protection With Respect to Sales.**

       (i)    The comprehensive sale process to be implemented under section 363 of the Bankruptcy Code as contemplated by the Sale Motion (as defined in the DIP Credit Agreement), including the timeline and milestones contained therein, shall not be materially modified without the prior written consent of the Prepetition ABL Agent and the DIP Agent, failing which there shall occur an Event of Default under the DIP Credit Agreement and this Interim Order.

       (ii)    Upon the disposition of Prepetition Collateral as contemplated in the Sale Motion (collectively, the "*Sale*"), any such Prepetition Collateral shall be sold free and clear of the DIP Liens, Prepetition Liens, and the Adequate Protection Liens; provided, however, that such DIP Liens, Prepetition Liens, and Adequate Protection Liens, respectively, shall attach to the proceeds of any such Sale to the same extent, validity and priority as such Liens attached to the DIP Collateral and Prepetition Collateral, respectively, which proceeds of the Prepetition Collateral shall be promptly paid at closing of the Sale (including if such Sale constitutes a DIP Maturity Event):

            first, to fund the Carve Out Account (subject to the Carve Out Cap) in accordance with Paragraph 31 hereof;

            second, to the DIP Agent for application to the Prepetition ABL Debt or the DIP Obligations in accordance with the terms of the DIP Credit Agreement, and after payment in full of the DIP Obligations in the event the Final Roll-Up has not occurred to the Prepetition ABL Agent to be applied to the Prepetition ABL Debt in accordance with the Prepetition ABL Credit Agreement;

            third, subject to entry of the Final Order, to the Prepetition Term Agent to reimburse all reasonable and documented out-of-pocket costs and expenses of outside attorneys engaged by  the Prepetition Term Agent and the Prepetition Term Lenders, solely to the extent permitted under the Prepetition Term Credit Agreement and so long as the Prepetition Term Agent and the Prepetition Term Lenders have submitted invoices in accordance with and otherwise complied with the review procedures set forth in Paragraph 50 hereof; and

            fourth, to the Debtors (provided, that either (x) subject to the Final Order or (y) absent an agreement among the Prepetition Term Agent, the Debtors and any Committee in furtherance of Paragraphs 32-33 hereof, any remaining proceeds of the Prepetition Collateral and/or DIP Collateral shall be deposited in a segregated account pending further order of the Court, and shall remain subject to the Prepetition Liens and Adequate Protection Liens of the Prepetition Term Agent and Prepetition Term Lenders to the same extent, validity and priority as such Liens attached to the Prepetition Collateral).

       (iii)    The Debtors shall keep the DIP Agent and Prepetition Agents fully informed of the Debtors' efforts to consummate the Sale and any other sales of equity interests and/or assets of the Debtors after the Petition Date, and without limiting the generality of the foregoing, the Debtors shall (A) promptly provide to the DIP Agent copies of all offers for the purchase of any asset(s) and/or equity interests of any of the Debtors,

(B) provide, no less frequently than weekly, status updates on the Debtors' efforts to consummate the Sale and/or any other sales, and (C) promptly advise the DIP Agent and Prepetition Agents of any expressions of interest in any or all of the Debtors' assets and/or equity interests; provided, that the Debtors shall not be obligated to provide the DIP Agent or either Prepetition Agent with any of the foregoing information if such agent is participating as a bidder for the Debtors' assets.

(iv)    Subject to entry of the Final Order, in connection with any sale process authorized under the Sale Motion, the Prepetition Agents and Prepetition Secured Lenders may seek to credit bid some or all of their claims for their respective collateral (each a "*Credit Bid*") pursuant to section 363(k) of the Bankruptcy Code; provided, that any such Credit Bid shall be subject to the Prepetition Intercreditor Agreement. A Credit Bid may be applied only to reduce the cash consideration with respect to those assets in which the party submitting such Credit Bid holds a security interest. Each of the Prepetition Agents shall be considered a "Qualified Bidder" with respect to its right to acquire all or any of the assets by Credit Bid.

(e)    **Access to Records; Reporting**.  The Prepetition Agents and Prepetition Secured Lenders shall retain the rights to access they have under the Prepetition Financing Documents, upon reasonable notice, at reasonable times during normal business hours.  In addition, the Debtors shall provide to the Prepetition Agents and Prepetition Secured Lenders all of the financial, collateral, and related reporting required under the DIP Financing Agreements as and when provided to the DIP Agent under the DIP Credit Agreement.

(f)    **Prepetition Indemnity Account.**  Subject to entry of the Final Order, upon the later to occur of: (i) entry of a Final Order, or (ii) closing of a Sale, and provided that the Challenge Period Termination Date (as defined below) has not yet occurred, the Debtors shall establish a segregated account in the control of the Prepetition ABL Agent (the "*Prepetition ABL Indemnity Account*"), into which the sum of $250,000.00 of Cash Collateral shall be deposited as security for any reimbursement, indemnification, or similar continuing obligations of the Debtors in favor of the Prepetition ABL Agent and Prepetition ABL Lenders under the Prepetition ABL Financing Documents, including, without limitation, the provisions of Section 10.3 of the Prepetition ABL Credit Agreement (the "*Prepetition ABL Indemnity Obligations*").

(A)    The funds in the Prepetition ABL Indemnity Account shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred by the Prepetition ABL Agent and the Prepetition ABL Lenders, to (1) respond to formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in Paragraph 24 hereof, or (2) any Challenge Proceeding against the Prepetition ABL Agent or Prepetition ABL Lenders related to the Prepetition ABL Financing Documents, the Prepetition ABL Liens, or the Prepetition ABL Debt, as applicable, whether in the Chapter 11 Cases or independently in another forum, court, or venue.

(B)    The Prepetition ABL Indemnity Obligations shall be secured by a first priority lien on the respective Prepetition ABL Indemnity Account and the funds therein and by a Lien on the Prepetition ABL Collateral (subject in all respects to the Prepetition Intercreditor Agreement).

(C)    The Prepetition ABL Agent and Prepetition ABL Lenders may

apply amounts in the Prepetition ABL Indemnity Account against the Prepetition ABL Indemnity Obligations as and when they arise, without further notice to or consent from the Debtors, any Committee, or any other parties in interest and without further order of this Court, upon compliance with the provisions of Paragraph 50 below.

(D)    In addition to the establishment and maintenance of the Prepetition Indemnity Account, until the Challenge Period Termination Date (as defined below) the Prepetition ABL Agent (for itself and on behalf of the Prepetition ABL Lenders) shall retain and maintain the Prepetition ABL Liens as security for any the amount of any Prepetition ABL Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition ABL Indemnity Account; provided, that the Prepetition ABL Lien retention herein shall in all respects remain subject to the terms of the Prepetition Intercreditor Agreement; provided further that, (i) any such indemnification claim(s) shall (i) be subject to the terms of the Prepetition ABL Financing Documents, (ii) the rights of parties in interest with requisite standing to object to any such indemnification claim(s) are hereby reserved in accordance with Paragraphs 23-25 hereof, and (iii) the Court shall reserve jurisdiction to hear and determine any such disputed indemnification claim(s).

(E)    Upon the occurrence of the Challenge Period Termination Date, and provided that no Challenge Proceeding has commenced or any such Challenge Proceeding has been resolved by a final order of the Court in favor of the Prepetition ABL Agent, the Prepetition ABL Agent shall promptly return to the Debtors the remaining amount, if any, of the Prepetition ABL Lender Indemnity Account (if funded).

(g)    **Approved Budget**.  The Debtors shall consult with and provide prior notice to the Prepetition Term Agent prior to agreeing to any of the following with respect to the Approved Budget and DIP Financing Agreements, as applicable: (a) material changes to the Approved Budget; and (b) extensions of the case and/or sale milestones set forth in the DIP Credit Agreement that would extend the sale closing deadline beyond April 28, 2017, (collectively, the "*Subject Amendments*"); provided, however, none of the Debtors, the DIP Agent and the DIP Lenders shall incur any liability to the Prepetition Term Agent, the Prepetition Term Lenders or any other Person in consequence of a failure to make any consultation or provide such prior notice with respect to the Subject Amendments pursuant to the provisions hereof.

(h)    Nothing herein shall impair or modify the Prepetition Agents' or the Prepetition Secured Lenders' rights under section 507(b) of the Bankruptcy Code in the event that the Adequate Protection provided to the Prepetition Secured Lenders hereunder is insufficient to compensate for any Diminution In Value of the interest of the Prepetition Agents and Prepetition Secured Lenders in the Prepetition Collateral during the Chapter 11 Cases or any Successor Case; provided, however, that (a) nothing herein shall impair the Debtors' or any other party in interest's right to seek to contest any request for additional or different adequate protection, including, without limitation any objection permissible under the Prepetition Intercreditor Agreement, and (b) any section 507(b) claim granted in the Chapter 11 Cases to the Prepetition Agents and/or Prepetition Secured Lenders shall be junior in right of payment to all DIP Obligations and subject to the Carve Out.

## III.

### POST-PETITION LIEN PERFECTION

17.     This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of Lien or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens to the priorities granted herein (subject, where applicable, to the Prepetition Intercreditor Agreement).

18.     Notwithstanding the foregoing, the DIP Agent and/or the Prepetition Agents may, in their discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens and/or the Adequate Protection Liens granted pursuant hereto, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens and other similar instruments and documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.

19.     The Debtors shall execute and deliver to the DIP Agent and the Prepetition Agents all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens and other similar instruments and documents as the DIP Agent and the Prepetition Agents may reasonably request to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens and/or the Adequate Protection Liens granted pursuant hereto.

20.     The DIP Agent and the Prepetition Agents, in their discretion, may file a photocopy of the entered, docketed version of this Interim Order as a financing statement with any recording office designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in

which any of the Debtors has real or personal property, and in such event, the subject filing or recording office shall be authorized to file or record such copy of this Interim Order.

21.    The DIP Agent shall, in addition to the rights granted to it under the DIP Financing Agreements, be deemed to be have co-equal rights with the Prepetition ABL Agents and succeed to the rights of the Prepetition ABL Agent with respect to all third party notifications in connection with the Prepetition ABL Financing Documents, all prepetition collateral access agreements, and all other agreements with third parties (including any agreement with a customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Prepetition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtors and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card agreements.

22.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to:

(a)    permit the Debtors to grant the DIP Liens and the Adequate Protection Liens, and to incur all liabilities and obligations to the DIP Lenders under the respective DIP Financing Agreements, the DIP Facility, and this Interim Order, and

(b)    authorize the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Secured Lenders to retain and apply payments hereunder as provided by the respective DIP Financing Agreements and this Interim Order.

## IV.

### RESERVATION OF CERTAIN THIRD-PARTY RIGHTS AND BAR OF CHALLENGES AND CLAIMS

23.    Nothing in this Interim Order or the respective DIP Financing Agreements shall prejudice whatever rights any Committee or any other party-in-interest (other than the Debtors) with requisite standing that has been sought and granted by this Court may have to bring an adversary proceeding, cause of action, objection, claim, defense, or other challenge against the Prepetition Agents, the Prepetition Secured Lenders, the Prepetition Liens or the Prepetition Secured Debt (collectively, a "*Challenge Proceeding*"), including, but not limited to, any of the following:

      (a)     an objection to or challenge of the Debtors' Stipulations set forth in Paragraphs F(1) through F(7), including (i) the validity, extent, perfection, or priority of the security interests and Liens of the Prepetition Agents and Prepetition Secured Lenders in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Prepetition Secured Debt, or

      (b)     a suit against one or more of the Prepetition Agent and/or one or more of the Prepetition Secured Lenders, or any of them, in connection with or related to the Prepetition Secured Debt or the Prepetition Liens, or the actions or inactions of the Prepetition Agents or Prepetition Secured Lenders arising out of or related to the Prepetition Secured Debt or Prepetition Liens;

provided, however, that any Committee or any other party-in-interest with requisite standing that has been sought and granted by this Court must commence a Challenge Proceeding asserting such objection or challenge, including, without limitation, any claim against one or more of the Prepetition Agents and/or one or more of the Prepetition Secured Lenders in the nature of a setoff, counterclaim, or defense to the Prepetition Secured Debt or Prepetition Liens (including but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against the Prepetition Agents or Prepetition Secured Lenders), by the later of (x) for any Committee, sixty (60) days following the appointment of the first official Committee or (y) for any party-in-interest other than an official Committee, seventy-five (75) days following entry of this Interim Order (collectively, (x) and (y) shall be referred to as the "*Challenge Period*", and the date that is the next calendar day after the termination of the Challenge Period, in the event that no Challenge Proceeding has been timely commenced during the Challenge Period, shall be referred to as the "*Challenge Period Termination Date*"; provided, that the Challenge Period shall be tolled for a period not to exceed thirty (30) days upon the filing of a motion by an interested party seeking standing to commence a Challenge in accordance with the terms of this Interim Order). In the event a third party, including any Committee, files a motion seeking standing to commence a Challenge in accordance with the terms of this Interim Order, any such motion shall, at a minimum, include a copy of any proposed objection or adversary complaint containing a detailed description of the claims and causes of action such party proposes to pursue. The Challenge Period Termination Date may occur as to some, but not all, of the Prepetition Agents or Prepetition Secured Lenders, if a Challenge Proceeding is brought against one or more but not all of the Prepetition Agents and Prepetition Secured Lenders. For the avoidance of doubt, in

the event any of the Chapter 11 Cases is converted to a case under Chapter 7 or if a Chapter 11 trustee is appointed prior to expiration of the Challenge Period, then the Challenge Period shall not expire until sixty (60) days after the trustee's appointment in the affected chapter 11 case only.  In the event that the Committee or any other party in interest with requisite standing has commenced a Challenge Proceeding prior to the conversion to Chapter 7 or appointment of a Chapter 11 trustee, the applicable trustee shall be entitled (but not required) to assume the prosecution of any pending Challenge Proceeding.  In either event, until the later of the expiration of the Challenge Period without commencement of a Challenge Proceeding or the entry of a final, non-appealable order or judgment on account of any Challenge Proceeding commenced within the Challenge Period, no such trustee shall be bound by the Debtors' Stipulations in this Order.

24.    Upon the Challenge Period Termination Date with respect to one or more or all of the Prepetition Agents and Prepetition Secured Lenders, as the case may be, any and all such challenges and objections by any party (including, without limitation, any Committee, any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party-in-interest) *shall be deemed to be forever waived and barred* with respect to the applicable Prepetition Agent(s) and Prepetition Secured Lender(s), and the Prepetition Secured Debt as to one or more or all of the Prepetition Secured Lenders, as the case may be, shall be deemed to be an allowed fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Cases and the Debtors' Stipulations as to one or more or all of the Prepetition Secured Lenders, as the case may be, shall be binding on all creditors, interest holders, and parties-in-interest.

25.    [RESERVED].

## V.

### CARVE OUT AND PAYMENT OF PROFESSIONALS.

26.    Subject to the terms and conditions contained in this Paragraph 26, the DIP Liens, DIP Superiority Claims, the Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superiority Claims are all subordinate to the following (collectively, the "*Carve Out*"):

(a)    (i) statutory fees and interest payable to the Office of the U.S. Trustee (pursuant to 28 U.S.C. § 1930(a)(6) and 31 U.S.C. § 3717, respectively), as determined by agreement of the U.S. Trustee or by final order of this Court, and (ii) 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of this Court;

(b)    all accrued and unpaid fees, disbursements, costs and expenses incurred by professionals retained by the Debtors or a Committee, if any (collectively, the "*Case Professionals*"), through the date of service by the DIP Agent of a Carve Out Trigger Notice (as defined below), up to and as limited by the aggregate Approved Budget amounts for each Case Professional or category of Case Professional through the date of service of said Carve Out Trigger Notice (including partial amounts for any Carve Out Trigger Notice given other than at the end of a week, and after giving effect to all carryforwards and carrybacks from prior or subsequent favorable budget variances),[4] less the amount of prepetition retainers received by such Case Professionals and not previously applied to fees and expenses; and

(c)    all accrued and unpaid fees, disbursements, costs and expenses incurred by the Case Professionals from and after the date of service of a Carve Out Trigger Notice in an aggregate amount not to exceed $75,000 (the "*Carve Out Cap*"), less the amount of prepetition retainers received by such Case Professionals and not applied to the fees, disbursements, costs and expenses set forth in clause (b) above. The Carve Out Cap shall be reduced on a dollar-for-dollar basis by any payments of fees or expenses of the Case Professionals made after delivery of the Carve Out Trigger Notice in respect of fees and expenses incurred after delivery of the Carve Out Trigger Notice.

For the avoidance of doubt, fees, disbursements, costs and expenses incurred by Case Professionals cannot be paid to Case Professionals unless and until allowed by the Court. For the further avoidance of doubt, the Approved Budget includes fees payable to the Case Professionals on a "cash basis," but for purposes of the Carve Out, the amounts identified in a the Approved Budget for each Case Professional shall be equally allocated across the applicable Approved Budget period and treated on an "accrual basis," except that, where the terms of a Case Professional's engagement agreement with the Debtors (or applicable order approving such engagement) provide for a fixed payment to be made for a designated period of time or for any success or transaction fee, the amounts included in the Approved Budget shall be allocated on an accrual basis consistent with such payment terms.

For purposes of the foregoing, "*Carve Out Trigger Notice*" shall mean a written notice delivered by the DIP Agent to the Debtors and their counsel, counsel to the Prepetition Term Lenders, the U.S. Trustee, and lead counsel to any Committee, which notice may be delivered at any time by the DIP Agent following the occurrence and continuance of any DIP Order Event of Default and shall specify that it is a "Carve Out Trigger Notice", which notice may be delivered at any time following the occurrence and continuance of a Cash Collateral Termination Event.

27.    For the avoidance of doubt, the Carve Out shall be senior to the DIP Liens, the DIP

Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims,

---

[4]    Accordingly, to the extent that a particular Case Professional is over budget during any measurement period, it shall be entitled to offset such budget overage with any amounts such Case Professional is under budget in prior or subsequent periods prior to the delivery of a Carve Out Trigger Notice.

and any and all other forms of adequate protection, Liens or claims securing the DIP Obligations and/or the Prepetition Secured Debt granted or recognized as valid.

28. Further, the Carve Out shall exclude, and neither advances under the DIP Facility nor proceeds of the Prepetition Collateral and the DIP Collateral shall be used to pay, any fees and expenses incurred in connection with the assertion or joinder in any Challenge Proceeding or any other claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief:

(A) invalidating, setting aside, avoiding, or subordinating, in whole or in part, (i) the DIP Obligations, (ii) the DIP Liens in the DIP Collateral, (iii) the Prepetition Secured Debt, (iv) the Prepetition Liens in the Prepetition Collateral, and/or (v) the Adequate Protection Liens; or

(B) preventing, hindering, or delaying, whether directly or indirectly, the DIP Agent's, the DIP Lenders', the Prepetition Agents', or the Prepetition Secured Lenders' assertion or enforcement of their Liens and security interests, or their efforts to realize upon any DIP Collateral, Prepetition Collateral, the Adequate Protection Liens, or the Prepetition ABL Indemnity Account;

provided, however, that such exclusion does not encompass any investigative work conducted by Case Professionals retained by a Committee with regard to the Prepetition Liens and Prepetition Debt only, but only up to $50,000.00 of the Carve Out may be used for such investigative work.

29. Nothing herein, including the inclusion of line items in the Approved Budget for Case Professionals, shall be construed as consent to the allowance of any particular professional fees or expenses of the Debtors, of any Committee, or of any other person or shall affect the right of the DIP Agent, the DIP Lenders, the Prepetition Agents, or the Prepetition Secured Lenders to object to the allowance and payment of such fees and expenses.

## VI.

### MATURITY; DIP ORDER EVENTS OF DEFAULT; REMEDIES

A. **Maturity**

30. All DIP Obligations shall be due and payable on the date that is the earliest to occur of any of the following (each, a "***DIP Maturity Event***"):

(a) April 28, 2017;

(b)     the closing of a Sale of all or substantially all of the working capital assets of the Debtors pursuant to the provisions of section 363 of the Bankruptcy Code; or

(c)     the effective date of any chapter 11 plan of reorganization/liquidation for the Debtors (a "***Plan***").

31.     Following a DIP Maturity Event, and unless the DIP Facility has been extended, the Debtors shall be required to transfer to a segregated account subject to the control of an escrow agent reasonably acceptable to the Debtors (the "***Carve Out Account***"), an amount of Cash Collateral equal (i) to the Carve Out Cap, plus (ii) the then accrued and unpaid fees and expenses of the Case Professionals through the date on which a DIP Maturity Event first occurs, to the extent in compliance with the Approved Budget (after giving effect to all carryforwards and carrybacks from prior favorable budget variances for each Case Professional), which Carve Out Account shall be available only to satisfy obligations benefitting from the Carve Out.  All funds on deposit in the Carve Out Account, however funded and from whatever source derived, shall at all times continue to constitute Cash Collateral, subject to the prior payment of all amounts covered by the Carve Out.  Once the Carve Out Account has been funded, either by the Debtors as provided in this Paragraph 31 or by the DIP Agent as provided in Paragraph 40 below, none of the Prepetition Agents, the Prepetition Secured Lenders, the DIP Agent, nor the DIP Lenders shall have any further liability for nor responsibility with respect to the Carve Out, including any application or disbursement of funds in the Carve Out Account.

32.     In the event that (A) all Prepetition ABL Debt and DIP Obligations have been paid in full in cash and (B) the DIP Commitments have irrevocably terminated, the Debtors, in consultation with any Committee and the Prepetition Term Agent shall consult with each other as to the terms and conditions of continued consensual use of Cash Collateral in light of the then present circumstances of these Chapter 11 Cases.  If the Debtors, any Committee and the Prepetition Term Agent are not able to agree on such terms and conditions, the Prepetition Term Agent shall be entitled to declare that the Debtors' rights to use Cash Collateral on the terms provided in this Interim Order are terminated (a "***Cash Collateral Termination Event***")  with such termination to take effect immediately upon delivery of notice (a "***Cash Collateral***

*Termination Notice*") by the Prepetition Term Agent to the Debtors and their counsel, the U.S. Trustee, and lead counsel to any Committee.

33.    Following the delivery of a Cash Collateral Termination Notice, the Debtors shall be entitled to an emergency hearing before this Court, including for the purposes of determining whether the use of Cash Collateral by the Debtors should be granted and on what terms and conditions, even if on a non-consensual basis, with any such hearing to be held on not less than three (3) days' notice to lead counsel to any Committee, the Prepetition Agents, and the Prepetition Term Agent.  In the event that the Debtors either accept the termination of use of Cash Collateral (by written correspondence to the Prepetition Term Agent) or the Court determines that the Debtors are not permitted to use Cash Collateral, the delivery of the Cash Collateral Termination Notice shall automatically constitute delivery of a Carve Out Trigger Notice as set forth in Paragraph 26 hereof. Following delivery of a Cash Collateral Termination Notice, unless and until the Court enters an order authorizing the use of Cash Collateral, the Debtors may not use Cash Collateral without the prior written consent of the Prepetition Term Agent; provided, however, that the Debtors' may use Cash Collateral solely to fund payroll (other than severance) incurred through the date that is seven-days after the date of delivery of a Cash Collateral Termination Notice.

34.    Unless and until the Prepetition ABL Debt and the DIP Obligations have been irrevocably repaid in full in cash (or other arrangements for payment of (i) the Prepetition ABL Debt satisfactory to the Prepetition ABL Agent and (ii) the DIP Obligations satisfactory to the DIP Agent, in each case in their sole and exclusive discretion have been made) and all DIP Commitments have been irrevocably terminated, the protections afforded to the Prepetition ABL Agent, the Prepetition ABL Lenders, the DIP Agent, and the DIP Lenders pursuant to this Interim Order and under the DIP Financing Agreements, and any actions taken pursuant thereto, shall survive the entry of any order confirming any Plan or converting the Chapter 11 Cases into a Successor Case, and the DIP Liens, the DIP Superpriority Claim, the ABL Adequate Protection Liens, and the ABL Adequate Protection Superpriority Claims shall continue in the Chapter 11 Cases and in any Successor Case, and such DIP Liens, DIP Superpriority Claim, ABL Adequate Protection Liens, and

ABL Adequate Protection Superpriority Claims shall maintain their respective priorities as provided by this Interim Order.

35.     Unless and until the Prepetition Term Loan Debt has been irrevocably repaid in full in cash, the protections afforded to the Prepetition Term Agent and the Prepetition Term Lenders pursuant to this Interim Order and any actions taken pursuant thereto shall survive the entry of any order confirming any Plan or converting the Chapter 11 Cases into a Successor Case, and the Term Adequate Protection Liens and the Term Adequate Protection Superpriority Claim shall continue in the Chapter 11 Cases and in any Successor Case, and such Term Adequate Protection Liens and Term Adequate Protection Superpriority Claims shall maintain their respective priorities as provided by this Interim Order.

**B.      DIP Order Events of Default**

36.     All DIP Obligations shall be immediately due and payable and all authority to use the proceeds of the DIP Facility and to use Cash Collateral shall cease on the date that is the earliest to occur of any of the following (each, a "***DIP Order Event of Default***"):

        (a)     delivery of written notice of the occurrence of an Event of Default (as defined in the DIP Credit Agreement) in accordance with the DIP Credit Agreement; or

        (b)     the failure of the Debtors to obtain entry of the Final Order on or before the date that is 30 calendar days after the Petition Date;

**C.      Rights and Remedies Upon DIP Order Event of Default**

37.     Any automatic stay otherwise applicable to the DIP Agent and the DIP Lenders is hereby modified so that after the occurrence of any DIP Order Event of Default, upon five (5) days prior written notice (a "***Remedies Notice***") of such occurrence (the "***Remedies Notice Period***"), in each case given to each of (i) the Debtors, (ii) counsel to the Debtors, (iii) counsel to each of the Prepetition Agents, (iv) lead counsel for any Committee, and (v) the U.S. Trustee, the DIP Agent and the DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the DIP Financing Agreements.

38.     Upon the service of a Remedies Notice after the occurrence of a DIP Order Event of Default:

(a)     the Debtors shall continue to deliver and cause the delivery of the proceeds of the Prepetition Collateral to the Prepetition ABL Agent and the DIP Collateral to the DIP Agent as provided in this Interim Order and in the DIP Financing Agreements;

(b)     the Prepetition ABL Agent and the DIP Agent shall continue to apply such proceeds in accordance with the provisions of this Interim Order and the DIP Financing Agreements and the Prepetition ABL Financing Agreements, as applicable;

(c)     the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral, other than towards the satisfaction of the Prepetition ABL Debt, the DIP Obligations, and the Carve Out; provided, that the Debtors shall be permitted to use Cash Collateral to pay their employees ordinary wages accrued up to and including the date of service of the Remedies Notice; and

(d)     any obligation otherwise imposed on the DIP Lenders to provide any loan or advance to the Debtors pursuant to the DIP Facility shall be suspended, and any loan or advance made thereafter shall be made by the DIP Lenders in their sole and exclusive discretion.

39.     Following the giving of a Remedies Notice by the DIP Agent, the Debtors and any Committee appointed in the Chapter 11 Cases shall be entitled to an emergency hearing before this Court, with any such hearing to be held on not less than three (3) days' notice to lead counsel for any Committee, the Prepetition ABL Agent, the DIP Agent, the DIP Lenders, the Prepetition Term Agent and the Prepetition Term Lenders. If (x) the Debtors or any such Committee do not contest the occurrence of a DIP Order Event of Default and/or the right of the DIP Agent and the DIP Lenders to exercise their remedies, or (y) the Debtors or any such Committee do timely contest the occurrence of a DIP Order Event of Default and/or the right of the DIP Agent and the DIP Lenders to exercise their remedies, and unless this Court, after notice and hearing prior to the expiry of the Remedies Notice Period stays the enforcement thereof, the automatic stay, solely as to the DIP Agent and the DIP Lenders, shall automatically terminate at the end of the Remedies Notice Period.

40.     Subject to the provisions of Paragraphs 37-39 above, upon the occurrence of a DIP Order Event of Default, the DIP Agent and the DIP Lenders are authorized to exercise their remedies and proceed under or pursuant to the DIP Financing Agreements; except that, (A) with respect to any of the Debtors' leasehold locations, the DIP Agent's and the DIP Lenders' rights shall be limited to such rights (i) as may be ordered by this Court upon motion and notice to the applicable landlord with an opportunity to respond

that is reasonable under the circumstances; (ii) to which the applicable landlord agrees in writing with the DIP Agent; or (iii) which the DIP Agent and the DIP Lenders have under applicable non-bankruptcy law, and (B) prior to exercising any such remedies, the DIP Agent shall fund the Carve Out Account as set forth in Paragraph 31 hereof (provided that such Carve Out Account shall be subject to the control of the DIP Agent).

41.    Nothing included herein shall prejudice, impair or otherwise affect the Prepetition Agents' or the DIP Agent's rights to seek any other or supplemental relief from the Court in respect of the Debtors, nor the DIP Lenders' rights, as provided herein and in the DIP Credit Agreement, to suspend or terminate the making of loans and granting financial accommodations under the DIP Credit Agreement, to the extent provided for in the Interim Order or the DIP Financing Agreements.

**D.    No Waiver of Remedies**

42.    The delay in or the failure of the Prepetition Agents or the DIP Agent to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the Prepetition Agents', the Prepetition Secured Lenders', or the DIP Agent's rights and remedies. Notwithstanding anything herein, and subject to the Prepetition Intercreditor Agreement, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly or otherwise impair the rights and remedies of the Prepetition Agents, the Prepetition Secured Lenders, the DIP Agent or the DIP Lenders under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Prepetition Agents and the DIP Agent to: (i) request conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan; or (iii) subject to section 362 of the Bankruptcy Code exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) the Prepetition Agents and the DIP Agent may have.

## VII.

### CERTAIN LIMITING PROVISIONS

**A.    Section 506(c) Claims and Waiver**

43.    Nothing contained in this Interim Order shall be deemed a consent by the Prepetition Agents, the Prepetition Secured Lenders, the DIP Agent or the DIP Lenders to any charge, Lien, assessment, or claim against the DIP Collateral, the DIP Liens, the Prepetition Collateral, or the Adequate Protection Liens under section 506(c) of the Bankruptcy Code or otherwise; provided, however, that during the Interim Period there shall be no waiver of section 506(c) of the Bankruptcy Code.

44.    As a further condition of the DIP Facility and any obligation of the DIP Lenders to make credit extensions, and in consideration of the Prepetition Agents' and Prepetition Secured Lenders' consent to the priming of the Prepetition Liens by the DIP Liens, subordination to the Carve Out, and the use of their Cash Collateral, upon entry of the Final Order the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Chapter 11 Cases or any Successor Case) shall be deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy Code with respect to the Prepetition Agents, the Prepetition Secured Lenders, the DIP Agent, the DIP Lenders, the Prepetition Collateral, and the DIP Collateral.

**B.    Proceeds of Subsequent Financing**

45.    If at any time prior to the irrevocable repayment in full in cash of all Prepetition ABL Debt and DIP Obligations and the termination of the DIP Lenders' obligations to make loans and advances under the DIP Facility, the Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(c)(1) or 364(d) of the Bankruptcy Code in violation of the DIP Financing Agreements, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over first, to the Prepetition ABL Agent to be applied in reduction of the Prepetition ABL Debt, and second, to the DIP Agent to be applied in reduction of the DIP Obligations.

**C.    No Priming of DIP Facility**

46.    As consideration for the Prepetition ABL Lenders and the DIP Lenders entering into the DIP Financing Agreements, and consenting to the subordination to the Carve Out and the use of Cash Collateral, each of the Debtors hereby agrees that until such time as all Prepetition ABL Debt and all DIP Obligations have been irrevocably paid in full in cash (or other arrangements for payment of the Prepetition ABL Debt and the DIP Obligations satisfactory to the Prepetition ABL Lenders and the DIP Lenders, as applicable, in their sole and exclusive discretion have been made) and the DIP Financing Agreements have been terminated in accordance with the terms thereof, the Debtors shall not (unless otherwise agreed to by the DIP Agent, DIP Lenders, Prepetition ABL Agent and Prepetition ABL Lenders, in their sole respective discretion) in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Lenders or the Prepetition ABL Liens or ABL Adequate Protection Liens granted to the Prepetition ABL Agent or Prepetition ABL Lenders under this Interim Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise; provided, that this Paragraph 46 shall not be deemed to amend the Prepetition Intercreditor Agreement.

47.    [RESERVED].

## VIII.

### OTHER RIGHTS AND OBLIGATIONS

**A.    Good Faith Under Section 364(e) of the Bankruptcy Code;
No Modification or Stay of this Interim Order**

48.    Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility and the use of Cash Collateral and Adequate Protection contemplated by this Interim Order, the Prepetition Agents, Prepetition Secured Lenders the DIP Agent, and the DIP Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code.

49.    [OMITTED].

**B.**     **Prepetition Agents', Prepetition Secured Lenders',
DIP Agent's, and DIP Lenders' Expenses**

50.     To the extent required to be paid under the DIP Financing Agreement or Prepetition ABL

Credit Agreement, all reasonable out-of-pocket costs and expenses of the Prepetition ABL Agent, the

Prepetition ABL Secured Lenders, the DIP Agent, and the DIP Lenders, including, without limitation,

reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements,

financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement

obligations with respect to fees and expenses, and other out of pocket expenses, whether or not contained in

the Approved Budget and without limitation with respect to the dollar estimates contained in the Approved

Budget, shall promptly be paid by the Debtors.  Payment of such fees shall not be subject to allowance by

this Court; provided, however, the Debtors, the U.S. Trustee or counsel for any Committee may seek a

determination by this Court whether such fees and expenses are reasonable in the manner set forth below.

Under no circumstances shall professionals for the DIP Agent, the DIP Lenders, the Prepetition ABL

Agent, or the Prepetition ABL Secured Lenders be required to comply with the U.S. Trustee fee guidelines;

provided, however, the Debtors shall provide to the U.S. Trustee and any Committee a copy of any invoices

received from the DIP Agent, the DIP Lenders, the Prepetition Agents, or the Prepetition Secured Lenders

for professional fees and expenses during the pendency of the Chapter 11 Cases. Each such invoice shall be

sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses (without

limiting the right of the various professionals to redact privileged, confidential, or sensitive information).  If

the Debtors, U.S. Trustee or counsel for any Committee object to the reasonableness of the invoices

submitted by the DIP Agent, the DIP Lenders, the Prepetition ABL Agent, or the Prepetition ABL Secured

Lenders, and the parties cannot resolve such objection within 10 days of receipt of such invoices, the

Debtors, U.S. Trustee or the Committee, as the case may be, shall file with the Court and serve on the

applicable DIP Agent, DIP Lender, Prepetition ABL Agent, or Prepetition ABL Secured Lender an

objection (a "*Fee Objection*") limited to the issue of reasonableness of such fees and expenses.  The

Debtors shall promptly pay, and/or the DIP Agent are hereby authorized to make an advance under the DIP

Facility to timely pay, the submitted invoices after the expiration of the ten (10) day notice period if no Fee

Objection is received in such ten (10) day period. If a Fee Objection is timely received, only the undisputed

amount of the invoice shall be paid and the Court shall have jurisdiction to determine the disputed portion of

such invoice if the parties are unable to resolve the dispute.

**C.    Binding Effect**

51.    The provisions of this Interim Order shall be binding upon and inure to the benefit of the

DIP Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Secured Lenders, the Debtors, and their

respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal

representative of the Debtors or with respect to the property of the estates of the Debtors), and any

Committee (subject to the provisions of Paragraphs 23-25 above), whether in the Chapter 11 Cases, in any

Successor Case, or upon dismissal of any such chapter 11 or chapter 7 case.

**D.    No Third Party Rights**

52.    Except as explicitly provided for herein, this Interim Order does not create any rights for

the benefit of any third party, creditor, equity holder, or any direct, indirect or incidental beneficiary, other

than the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Secured

Lenders.

**E.    No Marshaling**

53.    Upon entry of the Final Order, the DIP Agent, the DIP Lenders, the Prepetition Agents, and

the Prepetition Secured Lenders shall not be subject to the equitable doctrine of "marshaling" or any other

similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral, as applicable.

**F.    Section 552(b) of the Bankruptcy Code**

54.    Upon entry of the Final Order, the DIP Agent, the DIP Lenders, the Prepetition Agents, and

the Prepetition Secured Lenders shall each be entitled to all of the rights and benefits of section 552(b) of

the Bankruptcy Code, and the Debtors shall not assert that the "equities of the case" exception under section

552(b) of the Bankruptcy Code shall apply to the DIP Agent, the DIP Lenders, the Prepetition Agents, or

the Prepetition Secured Lenders with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral or the DIP Collateral.

**G.    Amendments**

55.    The Debtors and the DIP Agent may amend, modify, supplement, or waive any provision of the DIP Financing Agreements without further approval of this Court, but only after notice to the Prepetition Agents, the Prepetition Secured Lenders, and any Committee; provided, however, that notice of any "material" amendment, modification, supplement, or waiver shall be filed with this Court and the Prepetition Agents, the Prepetition Secured Lenders, and any Committee shall have five (5) business days from the date of such filing within which to object in writing to such proposed amendment, modification, supplement, or waiver; provided, further, that if a Prepetition Agent, Prepetition Secured Lender, or Committee timely objects to any material amendment, modification, supplement, or waiver, then such amendment, modification, supplement, or waiver shall only be permitted pursuant to an order of this Court after notice and a hearing. For purposes of this Paragraph 55, a "material" amendment shall include, but not be limited to, any amendment, modification, supplement, or waiver that (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the DIP Commitments, (iii) changes the maturity date of the DIP Facility, (iv) amends any Event of Default under the DIP Credit Agreement, (v) revises any case or sale milestone set forth in the DIP Credit Agreement, or (vi) otherwise modifies the DIP Financing Agreements in a manner materially less favorable to the Debtors, the Prepetition Agents, or the Prepetition Secured Lenders. All amendments, modifications, supplements, or waivers of any of the provisions hereof shall not be effective unless set forth in writing, signed by on behalf of the Debtors, the DIP Agent, the Prepetition Agents, and/or the Prepetition Secured Lenders, and, if required, approved by this Court.

**H.    Survival of Interim Order**

56.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:

(a)    confirming any Plan in the Chapter 11 Cases,

(b)     converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code,

(c)     dismissing the Chapter 11 Cases,

(d)     withdrawing of the reference of the Chapter 11 Cases from this Court, or

(e)     providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Cases in this Court.

57.     [OMITTED].

## I.     Inconsistency

58.     In the event of any inconsistency between the terms and conditions of the DIP Financing Agreements and this Interim Order, the provisions of this Interim Order shall govern and control.

## J.     Enforceability

59.     This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

## K.     Objections Overruled

60.     All objections to the Motion to the extent not withdrawn or resolved, are hereby overruled.

## L.     Waiver of Any Applicable Stay

61.     The stay under Bankruptcy Rule 6004(h) is hereby waived and shall not apply to this Interim Order.

## M.     Proofs of Claim

62.     The Prepetition ABL Agent, the Prepetition Term Agent, the Prepetition Secured Lenders, the DIP Agent, and the DIP Lenders will not be required to file proofs of claim in the Chapter 11 Cases or in any Successor Case.

## N.     Headings

63.     The headings in this Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Order.

**O.      Retention of Jurisdiction.**

64.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

## IX.

### FINAL HEARING

65.      The Final Hearing on the Motion shall be held before this Court on March 6,  2016, at 11:00 a.m. (ET) before the Honorable Laurie Selber Silverstein United States Bankruptcy Judge, at the United States Bankruptcy Court, District of Delaware, located at 824 Market Street North, Wilmington, Delaware 19801.  The Debtors shall, within three (3) business days of the entry of this Interim Order, serve (A) the U.S. Trustee; (B) counsel to the DIP Agent, the DIP Lenders, and the Prepetition ABL Agent; (C) holders of the 30 largest unsecured claims on a consolidated basis against the Debtors; (D) counsel for the Prepetition Term Agent and Prepetition Term Lenders; (E) the Internal Revenue Service; (F) all appropriate state taxing authorities; (G) all landlords, owners, and/or operators of premises at which any of the Debtors' material assets are located; and (H) any other party that files a request for notices with the Court as of the date of such service, a copy of the Interim Order and a notice of the Final Hearing to consider entry of the Final Order.

66.      If no objections to the relief sought in the Motion are filed and served in accordance with this Interim Order, no Final Hearing shall be held, and a separate Final Order may be presented jointly by the Debtors and by the DIP Agent and entered by this Court upon certification of counsel by the Debtors.

67.      Any party in interest objecting to the relief sought in the Motion shall submit any such objection in writing and file same with this Court and serve such objection so as to be received no later than **February 27, 2017 at 4:00 p.m. (ET)** on the following parties:

| *Proposed Counsel for the Debtors* | *Office of the United States Trustee* |
|---|---|
| Daniel J. McGuire, Esq.<br>Winston & Strawn LLP<br>35 West Wacker Drive<br>Chicago, IL 60601-9703<br>Phone: (312) 558-6154<br>Fax: (312) 558-5700<br>Email: dmcguire@winston.com<br>   -and-<br>M. Blake Cleary, Esq.<br>Young Conaway Stargatt & Taylor, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>Phone: (302) 571-6714<br>Fax: (302) 576-3287<br>Email: mbcleary@ycst.com | Office Of The United States Trustee<br>844 King Street<br>Suite 2207<br>Lockbox 35<br>Wilmington, DE 19801<br>Attn: David L. Buchbinder<br>Email: David.L.Buchbinder@usdoj.gov |
| *Counsel for the DIP Agent* | *Counsel for the Prepetition Term Agent* |
| Riemer & Braunstein LLP<br>Times Square Tower<br>Seven Times Square, Suite 2506<br>New York, New York 10036<br>Attn: Steven E. Fox, Esq.<br>Email: sfox@riemerlaw.com<br>   -and-<br>Ashby & Geddes, P.A.<br>500 Delaware Avenue<br>P.O. Box 1150<br>Wilmington, DE 19899<br>Attn: Gregory Taylor, Esq.<br>Email: GTaylor@ashby-geddes.com | Dennis A. Meloro (DE Bar No. 4435)<br>The Nemours Building<br>1007 North Orange Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 661-7000<br>Facsimile: (302) 661-7360<br>Email:  melorod@gtlaw.com<br>-and-<br>Maria J. DiConza<br>Greenberg Traurig, LLP<br>200 Park Avenue<br>New York, New York 10166<br>Telephone:  (212) 801-9200<br>Facsimile:  (212) 801-6400<br>Email:  diconzam@gtlaw.com |

Dated: _____, 2017

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE