# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---------------------------------------------------------------

In re

**UNITED ROAD TOWING, INC.** *et al.*,

Debtors.[1]

---------------------------------------------------------------

:
:
:
:
:
:
:
:
:
:
:

Chapter 11

Case No. 17-10249 (LSS)

Jointly Administered
**Ref. No. 57**

## NOTICE OF FILING OF REVISED BIDDING PROCEDURES ORDER

**PLEASE TAKE NOTICE** that, on February 10, 2017, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Motion for Entry of (A) Order (I) Scheduling a Hearing to Consider Final Approval of the Sale or Sales of Substantially All of the Debtors' Assets, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, and (III) Granting Related Relief* [Docket No. 57] (the "Bidding Procedures Motion"). Attached to the Bidding Procedures Motion were a proposed form of order (the "Bidding Procedures Order"), proposed bidding procedures (the "Bidding Procedures"), and various forms of notice related thereto (the "Notices").

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: United Road Towing, Inc. (6962); URT Holdings, Inc. (8341); City Towing Inc. (2118); URS West, Inc. (3518); Bill & Wags, Inc. (3518); Export Enterprises of Massachusetts, Inc. (5689); Pat's Towing, Inc. (6964); Keystone Towing, Inc. (6356); Ross Baker Towing, Inc. (9742); URT Texas, Inc. (3716); Mart-Caudle Corporation (1912); Signature Towing, Inc. (3054); WHW Transport, Inc. (3055); URS Southeast, Inc. (7289); URS Northeast, Inc. (7290); URS Southwest, Inc. (7284); Fast Towing, Inc. (5898); E & R Towing and Garage, Inc. (8500); Sunrise Towing, Inc. (7160); Ken Lehman Enterprises Inc. (1970); United Road Towing South Florida, Inc. (9186); Rapid Recovery Incorporated (1659); United Road Towing Services, Inc. (2206); Arri Brothers, Inc. (7962); Rancho Del Oro Companies, Inc. (3924); CSCBD, Inc. (2448); URS Leasing, Inc. (9072); UR VMS, LLC (4904); UR Vehicle Management Solutions, Inc. (0402). The Debtors' mailing address is c/o United Road Towing, Inc., 9550 Bormet Drive, Suite 301, Mokena, Illinois 60448.

**PLEASE TAKE FURTHER NOTICE** that, subsequent to filing the Bidding Procedures Motion, the Debtors received comments and responses to the Bidding Procedures Order, Bidding Procedures, and Notices from various parties in interest.  As a result, the Debtors have revised the Bidding Procedures Order, Bidding Procedures, and the Notices (collectively, the "Revised Order and Exhibits").

**PLEASE TAKE FURTHER NOTICE** that a copy of the Revised Order and Exhibits is attached hereto as Exhibit A.  A blackline of the Revised Order and Exhibits against the original Bidding Procedures Order, Bidding Procedures and Notices is attached hereto as Exhibit B.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to present the Revised Order for the Court's consideration at the hearing currently scheduled for March 6, 2017 at 11:00 a.m. (ET) (the "Hearing").  Until approved, the Debtors reserve the right to further revise the Revised Bidding Procedures Order, Revised Bidding Procedures, and Revised Bidding Procedures Notices in all respects.

*[remainder of page intentionally left blank]*

01:21638786.1

Dated:    March 3, 2017
          Wilmington, Delaware

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

/s/ *Ryan M. Bartley*
M. Blake Cleary (No. 3614)
Ryan M. Bartley (No. 4985)
Andrew L. Magaziner (No. 5426)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

WINSTON & STRAWN LLP
Daniel J. McGuire
Grace D. D'Arcy
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Carrie V. Hardman
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Proposed Counsel for Debtors and
Debtors in Possession*

## Exhibit A

**Revised Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------

|  |  |  |
|---|---|---|
| **In re** | : | Chapter 11 |
|  | : |  |
| **UNITED ROAD TOWING, INC.** *et al.*, | : | Case No. 17-10249 (LSS) |
|  | : |  |
| **Debtors.**[1] | : | Jointly Administered |
|  | : |  |
|  | : | **Re: Docket No. 57** |

---------------------------------------------------------------

## ORDER (I) SCHEDULING A HEARING TO CONSIDER APPROVAL OF THE SALE OR SALES OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, AND (III) GRANTING RELATED RELIEF

Upon consideration of the motion (the "**Motion**"),[2] dated February 10, 2017, of

the Debtors in the above-captioned chapter 11 cases for the entry of:

(A)     an order, substantially in the form attached hereto as **Exhibit A** (the "**Bidding Procedures Order**"), (i) scheduling a hearing (the "**Sale Hearing**") on approval of one or more sales of or other acquisition transactions for (each a "**Sale**") of substantially all of the Debtors' personal property and other related interests (the "**Assets**"), either individually or in lots, free and clear of all liens, claims, encumbrances, and other interests (collectively, the "**Encumbrances**"), other than those Encumbrances permitted by the applicable asset purchase agreement or other agreement for the applicable Sale (each a "**Transaction Agreement**"), and a Sale may include the acquisition of the equity of one or more Debtors though a section 363 Sale or a sale of Assets or the acquisition of the equity in one or more

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: United Road Towing, Inc. (6962); URT Holdings, Inc. (8341); City Towing Inc. (2118); URS West, Inc. (3518); Bill & Wags, Inc. (3518); Export Enterprises of Massachusetts, Inc. (5689); Pat's Towing, Inc. (6964); Keystone Towing, Inc. (6356); Ross Baker Towing, Inc. (9742); URT Texas, Inc. (3716); Mart-Caudle Corporation (1912); Signature Towing, Inc. (3054); WHW Transport, Inc. (3055); URS Southeast, Inc. (7289); URS Northeast, Inc. (7290); URS Southwest, Inc. (7284); Fast Towing, Inc. (5898); E & R Towing and Garage, Inc. (8500); Sunrise Towing, Inc. (7160); Ken Lehman Enterprises Inc. (1970); United Road Towing South Florida, Inc. (9186); Rapid Recovery Incorporated (1659); United Road Towing Services, Inc. (2206); Arri Brothers, Inc. (7962); Rancho Del Oro Companies, Inc. (3924); CSCBD, Inc. (2448); URS Leasing, Inc. (9072); UR VMS, LLC (4904); UR Vehicle Management Solutions, Inc. (0402). The Debtors' mailing address is c/o United Road Towing, Inc., 9550 Bormet Drive, Suite 301, Mokena, Illinois 60448.

[2]     Capitalized terms used but not defined herein shall have the meanings given them in the Motion or the Bidding Procedures (as defined below), as applicable.

Debtors implemented through a chapter 11 plan (a "**Plan**"), and authorizing the assumption and assignment of certain executory contracts and unexpired leases (each, an "**Assumed Contract**," and collectively, the "**Assumed Contracts**") in connection therewith, (ii) authorizing and approving certain proposed bidding procedures for the Sales in the form attached to the Bidding Procedures Order as **Exhibit 1** (collectively, the "**Bidding Procedures**"), certain proposed assumption and assignment procedures (collectively, the "**Assumption and Assignment Procedures**"), and the form and manner of notice thereof; and (iii) granting related relief; and

(B)    an order (or orders) (each a "**Sale Order**"),[3] (i) authorizing and approving the Debtors' entry into the Transaction Agreement(s) with Successful Bidder(s), Back-Up Bidder(s), or Stalking Horse Purchaser(s), as applicable and to the extent necessary; (ii) authorizing and approving the Sale of Assets, free and clear of all Encumbrances other than those permitted by the applicable Transaction Agreement; (iii) authorizing and approving the assumption and assignment of the Assumed Contacts in connection therewith; and (iv) granting related relief;

and due and proper notice of the Motion having been given as provided in the Motion; and it appearing that no other or further notice need be provided; and the Bidding Procedures Hearing (as defined below) having been held; and all of the proceedings had before the Court; and the Court having reviewed the Motion; and the Court having found and determined that the relief sought in the Motion and set forth herein is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT**:[4]

A.    This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order.

---

[3]    The Debtors shall file the applicable form(s) of Sale Order as soon as practicable after such document is negotiated with the applicable purchaser(s).

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.     The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**").

D.     In the Motion and at the hearing on the Motion (the "**Bidding Procedures Hearing**"), the Debtors demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E.     The Sale Notice (as defined below) is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bidding Procedures, the Auction, the Sale, and the Sale Hearing, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

F.     The Bidding Procedures are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the Sale.

G.     The Assumption and Assignment Procedures provided for herein and in the Assumption Notice (as defined below) are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption

3

and Assignment Procedures and the Assumption Notice have been tailored to provide an adequate opportunity for all Counterparties (as defined below) to assert any Contract Objections.

       H.      Entry of this Order is in the best interests of the Debtors, their estates and creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

       1.      Those portions of the Motion seeking approval of (a) the Assumption and Assignment Procedures, (b) the Bidding Procedures, (c) the date, time and place of the Auction and Sale Hearing, and (d) the noticing and objection procedures related to each of the foregoing, including, without limitation, the Sale Notice, substantially in the form attached hereto as **Exhibit 2** (the "**Sale Notice**"), and the Assumption Notice, substantially in the form attached hereto as **Exhibit 3** (the "**Assumption Notice**"), are hereby GRANTED.

       2.      Any objections to the relief granted by this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**Approval of Bidding Procedures; Auction**

       3.      The Bidding Procedures are hereby approved.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors are hereby authorized to conduct the Auction of the Assets pursuant to the terms of the Bidding Procedures and this Order.  The Bidding Procedures shall govern the actions of the Potential Bidders and the Qualifying Bidders (each as defined in the Bidding Procedures), as well as the conduct of the Auction.

4.      Notwithstanding any limitations provided for in any due diligence information, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtors and their estates shall be authorized to provide due diligence information to Potential Bidders or Qualifying Bidders, *provided* that such Potential Bidders or Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors.  The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Potential Bidders or Qualifying Bidders in connection with the Bidding Procedures and the Sale, *provided* that the information was provided in accordance with this Order and except as otherwise provided for in a Transaction Agreement that is authorized and approved by the Court.

5.      For the avoidance of doubt, and notwithstanding anything to the contrary in the Motion, this Order or the Bidding Procedures, the requirement that a party execute a confidentiality agreement to obtain access to the Data Room and other due diligence information shall not restrict, prohibit or alter the right that any party has under any applicable agreement, including loan agreements, to receive, or the Debtors' obligation to provide, any information, which rights and obligations are intended to remain unchanged by this Order and the Bidding Procedures.

6.      A Qualifying Bidder that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtors so as to be received on or before **April 6, 2017 at 5:00 p.m. (ET)** (the "**Bid Deadline**"); *provided* that the Debtors may extend the Bid Deadline without further order of the Court, after consulting with the applicable Consultation Parties.  Any party that does not submit a bid by the Bid Deadline will not be allowed to: (a) submit any offer after the Bid Deadline or (b) participate as a bidder in the

Auction. The term "**Consultation Parties**" as used in these Bidding Procedures shall mean, with respect to any Asset: (i) counsel and financial advisor to any official committee appointed in these cases representing parties with an interest in the Assets; (ii) counsel to Wells Fargo Bank, N.A., as DIP Agent and agent under the prepetition first-lien credit facility; and (iii) counsel to Medley Capital Corporation, as agent under the prepetition second-lien credit facility if (a) Medley advises the Debtors in writing that it shall not be a bidder for the Assets, whether by credit bid or otherwise or (b) the Debtors, in consultation with the Committee, determine that the delivery of certain selected information to Medley will facilitate the Sale Process.

7. All Qualifying Bidders submitting a Qualifying Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale or transfer of the assets identified under the Transaction Agreement.

8. In the event that the Debtors timely receive two or more Qualifying Bids for the same Assets, the Debtors shall include such Assets in the Auction. If there is only one Qualifying Bid submitted for a particular Asset or set of Assets on or before the Bid Deadline, the Debtors may not include such Asset or Assets in the Auction and, instead, may request at the Sale Hearing that this Court approve the Qualifying Bid (if any) applicable to such Assets and the transactions contemplated thereunder. If there are no Assets for which at least two Qualifying Bids have been timely submitted the Auction will be cancelled.

9. The Auction shall be held at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware, 19801, beginning at **10:00 a.m. (prevailing Eastern Time) on April 10, 2017**. Each Auction Bidder (as defined in the Bidding Procedures) shall confirm in writing that: (a) it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction and (b) its Qualifying Bid is a good faith

*bona fide* offer that it intends to consummate if selected as a Successful Bidder.  All proceedings at the Auction shall be transcribed.

10.     All Assets shall be offered for a sale of all such Assets or portions of same at the Auction. The Debtors shall have the ability to determine, in consultation with the Consultation Parties, the order in which the Assets will be subjected to bidding during the Auction and what Asset or Assets will be auctioned either individually or in each grouping.  The Debtors shall announce which Asset or Assets will be in the first grouping and which bid is the Baseline Bid (as defined in the Auction and Bidding Procedures), which may include the aggregation of a combination of Qualifying Bids of separate Qualifying Bidders.  The applicable Debtors, in consultation with the Consultation Parties, shall assess each bid to determine whether it is the highest and best bid for an Asset or Assets, considering, among other things:  (a) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (b) variations between competing bids and any incremental execution risk that the Debtors reasonably determine, in consultation with the Consultation Parties, exist as a result of those variations; (c) the time needed to close a Sale or other transaction compared with other Qualifying Bids and the cost to the Debtors and their estates of any incremental delay; (d) the total consideration to be received by the Debtors and their estates; (e) the ability to obtain a higher or better offer for an Asset when sold individually or in combination with other Assets; (f) existing funding available or proposed to be provided by the Qualifying Bidder during the period necessary to close the Sale or other transaction; (g) the net benefit to the Debtors' estates, taking into account any Stalking Horse Purchaser's rights to any break-up fee, expense reimbursement, or similar bid protection; (h) the

proposed treatment of existing secured interests in the subject Assets, including any senior indebtedness in the case of a credit bid; (i) the impact on employees, Counterparties (including claims that may be asserted related to rejection and objections to adequate assurance), and other creditors; and (j) any other factors the Debtors may reasonably deem relevant.

11.     The Debtors shall have the right as they may reasonably determine to be in the best interests of their estates to carry out the Bidding Procedures, including, without limitation, to: (a) determine which bidders are Qualifying Bidders;[5] (b) determine which bids are Qualifying Bids; (c) determine which Qualifying Bid is a Baseline Bid (as defined in the Bidding Procedures); and in consultation with the Consultation Parties,  (d) permit Qualifying Bidders to bid on less than all of the Assets that were included in their Qualifying Bid, if applicable; (e) subject to the terms of the Bidding Procedures, determine which bids are the Successful Bid and Back-Up Bid, each as it relates to the Auction; (f) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (g) adjourn or cancel an Auction and/or the Sale Hearing in open court without further notice or as provided in this Order and in the Bidding Procedures; (h) modify the Bidding Procedures consistent with their fiduciary duties and bankruptcy law; and (i) withdraw the Motion with respect to entry of the Sale Order for any Assets at any time with or without prejudice.

**Assumption and Assignment Procedures; Contract Objections**

12.     The following "**Assumption and Assignment Procedures**" are hereby approved:

---

[5]     For the avoidance of doubt, any party entitled to submit a credit bid that submits such a bid shall be deemed a Qualifying Bidder.

(a)     On or before **March 22, 2017** (the "**Assumption Notice Deadline**"), the Debtors shall file with the Court and serve on each counterparty (each, a "**Counterparty**," and collectively, the "**Counterparties**") to an Assumed Contract an assumption notice (an "**Assumption Notice**").  In the event that the Debtors identify any Assumed Contract that a potential purchaser may potentially seek to acquire by assumption or assumption and assignment or modify the Cure Amount (as defined herein) after the Assumption Notice Deadline, the Debtors shall promptly file a supplemental Assumption Notice (a "**Supplemental Assumption Notice**").

(b)     The Assumption Notice (or Supplemental Assumption Notice, if applicable) shall include, without limitation, the cure amount (each, a "**Cure Amount**"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assumed Contracts.  If a Counterparty objects to (i) the Debtors ability to assume and/or assign the Assumed Contract or (ii) the Cure Amount for its Assumed Contract through the Contract Objection Deadline (as defined below), the Counterparty must file with the Court and serve on the Notice Parties a written objection (a "**Contract Objection**").

(c)     Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (iii) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on April 5, 2017** (the "**Contract Objection Deadline**"), *provided* that if the Debtors file any Supplemental Assumption Notice, such notice shall provide that the Contract Objection Deadline shall be at least 14 days after service of such notice; (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Assumed Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.  Any objections to adequate assurance of future performance by a Successful Bidder shall be filed in accordance with paragraph 22(e) below.

(d)     No later than one (1) business day after the conclusion or cancellation of the Auction, the Debtors shall file with the Court one or more notices identifying the Successful Bidder or Successful Bidders for the Assets (a "**Notice of Successful Bidder**"), which shall set forth, among other things, (i) the Successful Bidder and Back-Up Bidder (as defined in the Bidding Procedures), if any, (ii) the Assumed Contracts included in the Successful Bid or Back-Up Bid (as defined in the Bidding Procedures); (iii) the proposed assignee(s) of such Assumed Contracts; and (iv) instructions for contacting the Successful Bidder to obtain Adequate Assurance Information, which shall be provided to each affected Counterparty on a confidential basis; <u>provided</u> that if the Auction is cancelled and the Debtors choose to proceed with a transaction with one or more Stalking Horse Purchasers,

the Notice of Successful Bidder shall set forth such information for the Stalking Horse Purchaser(s) that would be provided for the Successful Bidder.

(e)     No later than one (1) business days after the conclusion or cancellation of the Auction, the Debtors will cause to be served by overnight mail upon each affected Counterparty and Consultation Party, as well as the Notice Parties and parties requesting notice in these cases under Bankruptcy Rule 2002, the applicable Notice of Successful Bidder.  Counterparties may submit objections solely on the basis of adequate assurance of future performance by a Successful Bidder **on or before April 11, 2017 at 4:00 p.m. (ET)**.

(f)     If no Contract Objection is timely received with respect to an Assumed Contract: (i) the Counterparty to such Assumed Contract shall be deemed to have consented to the assumption by the Debtors and (if applicable) assignment of such Assumed Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance); (ii) upon receipt by the Counterparty of any Cure Amount, any and all defaults under such Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount included in the Assumption Notice or Supplemental Assumption Notice, if applicable, for such Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Assumed Contract against the Debtors and (if applicable) the Debtors' assignee, or the property of any of them, that existed prior to the entry of the Sale Order.

(g)     To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the Cure Amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be mutually agreed to by the Debtors and the objecting Counterparty or scheduled by the Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, such Assumed Contract may be assumed by the Debtors and assigned, *provided* that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the proposed assignee pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

13.     As part of its bid, each Qualifying Bidder (including any Stalking Horse Purchaser) must make available, for review by the Consultation Parties and Counterparties to

Assumed Contracts of which such Qualifying Bidder may seek to take assignment, information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code (the "**Adequate Assurance Information**"), including (a) the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to such Qualifying Bidder; (b) a contact person for the proposed assignee that the applicable Counterparty may directly contact in connection with the adequate assurance of future performance; and (c) the actual assignee's identity. To the extent available, the Adequate Assurance Information may also include: (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee; and (y) financial statements, tax returns and annual reports. Adequate Assurance Information shall be provided on a confidential basis and must be kept confidential and shall only be used and disclosed as agreed to by the Qualifying Bidder that provided such Adequate Assurance Information or ordered by the Court. This Order authorizes the filing of any Adequate Assurance Information under seal, and on the docket with such non-public information redacted, without further order of the Court; *provided* that unredacted versions of such pleadings shall be served upon the Debtors, with a copy to the Court's chambers. Any Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Order.

14.     The Assumption and Assignment Procedures are appropriate and fair to all Counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.

15.     The inclusion of a contract, lease or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors and their

estates or any other party in interest that such contract, lease or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved.

**Sale Hearing and Objections to the Sale**

16.     The Sale Hearing shall be held in this Court on **April 12, 2017 at 1:30 p.m. (ET)**, unless otherwise determined by this Court.  The Debtors may adjourn or reschedule the Sale Hearing without notice or **with** limited and shortened notice to parties, including by: (a) an announcement of such adjournment at the Sale Hearing or at the Auction or (b) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

17.     Any objections to the Sale or the relief requested in connection with the Sale (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on April 11 , 2017** (the "**Sale Objection Deadline**"); and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon the Notice Parties; *provided* that solely with respect to an objection to the conduct of the Auction, the designation of any Successful Bidder or Bid or Back-Up Bidder or Bid, the terms (including price) of such bids, and the Debtors' inability to satisfy the conditions of section 363(f) of the Bankruptcy Code with respect to a Successful Bid or Back-Up Bid (an "**Auction Objection**"), the deadline to file an Auction Objection shall be **4:00 p.m. (ET) on April 11, 2017** (the "**Auction Objection Deadline**").  If a Sale Objection or Auction Objection is not filed and served on or before the Sale Objection Deadline or Auction

Objection Deadline, as applicable, in accordance with the foregoing requirements, the objecting party shall be barred from objecting to the Sale and shall not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

18.    Failure to file a Sale Objection on or before the Sale Objection Deadline and failure to file an Auction Objection on or before the Auction Objection Deadline (a) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and/or to the consummation and performance of the Sale contemplated by a Stalking Horse Agreement or any Transaction Agreement with a Successful Bidder or Back-Up Bidder, and (b) for purposes of section 363(f) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

19.    The Debtors shall have until commencement of the Sale Hearing to file and serve a reply to any objection filed in connection with the Sale, including any Sale Objection, Auction Objection, or Contract Objection.

**Form and Manner of Notice of Sale Hearing**

20.    The Sale Notice, the Assumption Notice, the Notice of Successful Bidder, the Bidding Procedures, the Auction, the Sale Hearing, and the Assumption and Assignment Procedures and the objection periods associated with each of the foregoing are reasonably calculated to provide sufficient and effective notice to any affected party and to afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, Auction, the Sale, the Sale Hearing, and the assumption and assignment of the Assumed Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notices and objection periods are hereby approved.

13

21. Within five (5) days of entry of the Bidding Procedures Order, the Debtors will serve the Sale Notice by first class mail on: (1) the U.S. Trustee; (2) counsel to any official committee appointed in these cases; (3) counsel to Wells Fargo Bank, N.A., in its capacity as agent; (4) counsel to Medley Capital Corporation, in its capacity as agent; (5) all parties known by the Debtors to assert a lien on any of the Assets; (6) all persons known or reasonably believed to have asserted an interest in any of the Assets; (7) all non-Debtor parties to any of the Assumed Contracts; (8) all persons known or reasonably believed to have expressed an interest in acquiring all or any portion of the Assets or making an equity or other investment in the Debtors within the twelve (12) months prior to the Petition Date; (9) the Office of the United States Attorney for the District of Delaware; (10) the Office of the Attorney General in each state in which the Debtors operate; (11) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (12) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (13) all regulatory authorities having jurisdiction over any of the Assets; (14) the Securities and Exchange Commission; (16) the United States Attorney General/Antitrust Division of Department of Justice; (17) the United States Environmental Protection Agency and similar state agencies for each state in which the Assets are located; and (16) all other parties that had filed a notice of appearance and demand for service of papers in these chapter 11 cases as of the date of service (collectively, the "**Sale Notice Parties**").  In addition, the Debtors will serve the Sale Notice on all of the Debtors' known creditors, investors, and equity holders (for whom identifying information and addresses are available to the Debtors).

22.     The Debtors shall also post the Sale Notice and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent, at http://www.omnimgt.com/unitedroadtowing.

23.     Not later than five (5) days after entry of this Order, the Debtors shall cause the Sale Notice to be published once in the *Chicago Tribune*, once in the national edition of either the *New York Times* or *Wall Street Journal*, and once in the local edition of newspapers in Los Angeles, California, San Diego, California, Minneapolis, Minnesota, and Dallas, Texas. Such publication conforms to the requirements of Bankruptcy Rules 2002(l) and 9008, and is reasonably calculated to provide notice to any affected party, including any Potential Bidders, and to afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

**<u>Miscellaneous</u>**

24.     On or before March 31, 2017 (the "**Designation Deadline**"), the Debtors may, in consultation with the Consultation Parties, to select one or more parties to serve as a Stalking Horse Purchaser to acquire one or more of the Debtors' Assets pursuant to a Stalking Horse Agreement; <u>provided</u>, <u>however</u>, that as to any Stalking Horse Agreement, absent further Court approval, any break-up fees shall be limited to an amount no greater than 3% of the Qualifying Bid and any expense reimbursements in an amount not to exceed $150,000.   Upon such selection, the Debtors shall provide, to all parties that have requested notice of the proceedings in these chapter 11 cases, two (2) days' notice of and an opportunity to object to the designation of such Stalking Horse Purchaser and disclosure of bid protections set forth in the Stalking Horse Agreement (such notice which shall be extended by an additional one (1) day for each day that such selection was made prior to the Designation Deadline up to five (5) days), and absent

objection, the Debtors selection of such Stalking Horse Purchaser shall be deemed designated without further need for Court approval; provided that notwithstanding the foregoing, the Debtors shall provide not less than five (5) days' notice and opportunity to object if they enter into a Stalking Horse Agreement with an insider, or an affiliate of an insider, of the Debtors.  To the extent necessary, the Debtors' right to seek this Court's approval of one or more Stalking Horse Purchasers, with notice and a hearing, is hereby preserved.

25.      The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

26.      In the event that there is a conflict between this Order or the Bidding Procedures, on the one hand, and the Motion, a Transaction Agreement, or a Stalking Horse Agreement, on the other hand, this Order and the Bidding Procedures shall control and govern, and this Order shall control in the event of any conflict with the Bidding Procedures.

27.      Prior to mailing and publishing the Sale Notice and the Assumption Notice, as applicable, the Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deems necessary or appropriate.

28.      All persons or entities that participate in the bidding process shall be deemed to have knowingly and voluntarily: (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction and/or any Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

29.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules is expressly waived. The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

30.     The requirements set forth in Local Bankruptcy Rules 6004-1, 9006-1 and 9013-1 are hereby satisfied or waived.

31.     This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

Dated:   March _____, 2017
         Wilmington, Delaware
                                        _____
                                        Laurie Selber Silverstein
                                        United States Bankruptcy Judge

## **Exhibit 1**

Bidding Procedures

## BIDDING PROCEDURES

On February 6, 2017, United Road Towing, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On [_____], 2017, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order [Docket No. _____] (the "**Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (collectively, the "**Bidding Procedures**") to be employed by the Debtors in connection with the proposed sales of or other acquisition transactions (each a "**Sale**") of the Debtors' personal property and other related interests (the "**Assets**"), either of all such Assets or portions of same, free and clear of all liens, claims, encumbrances, and other interests (collectively, the "**Encumbrances**"), other than those Encumbrances permitted by a Transaction Agreement (as defined below), on an AS-IS, WHERE-IS with ALL FAULTS basis.  For the avoidance of doubt, a Sale proposed under these Bidding Procedures may include the acquisition of the equity of one or more Debtors though a section 363 sale or a sale of Assets or the acquisition of the equity in one or more Debtors implemented through a chapter 11 plan (a "**Plan**").

If and to the extent that prior to the Bid Deadline (as defined below), the Debtors receive one or more acceptable offers that seek stalking-horse status, the Debtors reserve the right, in consultation with the Consultation Parties, to select one or more parties to serve as a stalking horse purchaser (each a "**Stalking Horse Purchaser**") to acquire one or more of the Debtors' Assets pursuant to a Transaction Agreement between the applicable Debtor(s) and the Stalking Horse Purchaser (each a "**Stalking Horse Agreement**"), which, upon notice and an opportunity to object to such selection as provided herein, absent objection, shall be deemed designated without further need for Court approval.  Notwithstanding the selection of any Stalking Horse Purchaser, the Debtors will continue to solicit bids and accept bids through the Bid Deadline.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT:**

SSG Advisors, LLC (the "**Investment Banker**"):
Mark E. Chesen (Phone: (610)-940-5801); Email: mchesen@ssgca.com)
Michael M. Gorman (Phone: (610)-940-3615); Email: mgorman@ssgca.com)

01:21542082.3

**Summary of Important Dates**

| | |
|---|---|
| Deadline to select Stalking Horse Purchaser(s) | March 31, 2017 |
| Deadline to serve Assumption Notice | March 22, 2017 |
| Deadline to object to Assumption Notice | April 5, 2017 at 4:00 p.m. (ET) |
| Deadline to object to Sale (other than with respect to the conduct of the Auction and designation of a Successful Bidder) | April 5, 2017 at 4:00 p.m. (ET) |
| Bid Deadline | April 6, 2017 at 5:00 p.m. (ET) |
| Auction commence | April 10, 2017 at 10:00 a.m. (ET) |
| Deadline to object to conduct of Auction and designation of Successful Bidders, and adequate assurance | April 11, 2017 at 4:00 p.m. (ET) |
| Sale Hearing | April 12, 2017 at 1:30 p.m. (ET) |
| Outside Closing Date | April 28, 2017 [15 days after entry of the applicable Sale Order][1] |

1. **Assets to be Sold**

The Debtors shall offer for sale all of the Assets.  Potential Bidders may bid on all or any number or combination of the Assets.  Potential Bidders also may submit a proposal to serve as the sponsor or co-proponent (with the Debtors) of a Plan for purposes of recapitalizing one or more Debtors.

2. **Participation Requirements**

Any person or entity that wishes to conduct due diligence and gain access to the Debtors' confidential electronic data room concerning the Assets (the "**Data Room**" and such person or entity, a "**Potential Bidder**") must submit to the Debtors and their advisors an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidders, to the extent of confidential information relating to the Assets acquired by such party.

Any Potential Bidder that wishes to participate in the bidding process for the Assets must first become a "**Qualifying Bidder**."  Parties may be qualified as a Qualifying Bidder up to the Bid Deadline (**_i.e._, April 6, 2017 at 5:00 p.m. (ET)**), but **parties interested in submitting a bid for any of the Assets are encouraged to qualify as soon as possible because the Bidding Procedures do not permit any due diligence or financing conditions in Qualifying Bids**.  To become a Qualifying Bidder, Potential Bidders must submit sufficient information, as determined by the Debtors, after consultation with the Consultation Parties, to allow the Debtors, to determine that the interested party (i) has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction or pursue

---

[1]   To the extent that a Successful Bidder proposes a transaction that will be implemented through a chapter 11 plan, this deadline will be extended until the date that is 120 days from approval of such Successful Bid to provide for confirmation of such a plan.

confirmation of a chapter 11 plan (as applicable), including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their discretion) and (ii) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder pursuant to section 365 of the Bankruptcy Code in connection with the Sale. Upon receipt of sufficient information, the Debtors, in consultation with the Consultation Parties, shall determine whether a Potential Bidder is deemed a Qualifying Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction.

On or before March 31, 2017 (the "**Designation Deadline**"), the Debtors may, in consultation with the Consultation Parties, to select one or more parties to serve as a Stalking Horse Purchaser to acquire one or more of the Debtors' Assets pursuant to a Stalking Horse Agreement; provided, however, that as to any Stalking Horse Agreement, absent further Court approval, any break-up fees shall be limited to an amount no greater than 3% of the Qualifying Bid and any expense reimbursements in an amount not to exceed $150,000.  Upon such selection, the Debtors shall provide, to all parties that have requested notice of the proceedings in these chapter 11 cases, two (2) days' notice of and an opportunity to object to the designation of such Stalking Horse Purchaser and disclosure of bid protections set forth in the Stalking Horse Agreement (such notice which shall be extended by an additional one (1) day for each day that such selection was made prior to the Designation Deadline up to five (5) days), and absent objection, the Debtors selection of such Stalking Horse Purchaser shall be deemed designated without further need for Court approval; provided that notwithstanding the foregoing, the Debtors shall provide not less than five (5) days' notice and opportunity to object if they enter into a Stalking Horse Agreement with an insider, or an affiliate of an insider, of the Debtors.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures: (i) if and when there is one or more Stalking Horse Purchaser, any such designated Stalking Horse Purchasers shall be considered a Qualifying Bidder and any Stalking Horse Agreement shall be a Qualifying Bid (as defined below), and (ii) the DIP Agent, DIP Lenders, Prepetition Term Agent and Prepetition Term Lenders (as defined in the DIP Order, defined below) shall be deemed a Qualifying Bidder.

To the extent that a bid is proposed by a group or committee to which Bankruptcy Rule 2019 applies, such parties must promptly file the statement required by such rule as a condition to becoming a Qualifying Bidder.

### 3.    **Bankruptcy Court Jurisdiction**

In conjunction with any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction (as defined below), the acts or omissions of the Debtors, the Investment Banker, and their respective representatives and/or the construction and enforcement of the contemplated transaction documents of such parties, any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial and consented and submitted to the exclusive jurisdiction of the Court, (b) bring any such action or proceeding in the Court,

and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

**4.    Form of Agreement**

Each Qualifying Bidder, must include with its bid:

(a)    an executed asset purchase agreement or other agreement for the applicable Sale (each a "**Transaction Agreement**"),[2] clean and marked against the form provided by the Debtors, which must include the following:

  i.    identification of the specific Assets to be acquired either in the Transaction Agreement itself or as a schedule to the Transaction Agreement;

  ii.    full disclosure of the identity of the bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) of any Debtor, along with the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

  iii.    in the case of a Sale, the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and what amount constitutes a credit bid, as well as any liabilities proposed to be paid or assumed by such Qualifying Bidder;

  iv.    identify whether the Qualifying Bidder or the Debtors shall be responsible for (a) any transfer or similar taxes that arise from the sale and (b) any cure costs required to be paid to assume and assign executory contracts and unexpired leases that are included in the bid;

  v.    a commitment to close the transactions contemplated by the Transaction Agreement within 15 days of entry of the order approving the sale; provided that if the proposed transactions will be implemented through a Plan, the Debtors shall have 90 days from the date of court approval of the proposal to obtain confirmation of such Plan, subject to the bidder providing or arranging for necessary funding of operational and restructuring expenses during such period, including as may be required under the Debtors' post-petition debtor-in-possession financing facility and related orders approving the same; and

---

[2]    NOTE:  The Debtors will file a form of the proposed Transaction Agreement prior to the hearing on approval of the Bidding Procedures.

vi.  contain a written acknowledgement and representation that the bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale, and (iv) has not entered into any agreement with any other potential bidder concerning the Auction or the Sale or discloses any agreement with any other potential bidder concerning the Auction or Sale;

(b)  if the Qualifying Bidder, proposes to implement an acquisition transaction through a Plan, the bid should include a detailed term sheet that includes (i) the applicable Debtors that will be included in the Plan, (ii) a description of the treatment of each class of creditors proposed under the Plan, (iii) the transactions that will be implemented and occur under the Plan, (iv) the consideration to be received by existing creditors, existing equity holders, and any other party receiving distributions under the Plan and the source thereof, (v) any conditions to the occurrence of the effective date of the proposed Plan, (vi) any other matters that are material to the Plan and the implementation thereof, and (vii) any plans for funding the Debtors for the period from and after the closing of the Auction to the confirmation of a Plan, including, to the extent not otherwise satisfied or provided for, payment of any amounts on account of operational costs and restructuring expenses that will mature or otherwise come due in that period; *provided* that such funding shall constitute consideration to be provided for the transaction but shall also be in addition to any cash consideration offered for the Assets; and (viii) the proposed treatment and disposition of any estate causes of action.

## 5.    <u>Due Diligence</u>

Subject to the execution of a confidentiality agreement by a Potential Bidder or Qualifying Bidder, the Debtors will provide any Potential Bidder or Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to the Investment Banker at the contact information provided above.

All due diligence materials provided to Potential Bidders and Qualifying Bidders shall be subject to the limitations on use and disclosure included in any confidentiality agreement entered into pursuant to the Bidding Procedures.

Notwithstanding any limitations provided for in any due diligence materials in the Debtors' possession, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtors and their estates shall be authorized to provide due diligence information to Potential Bidders that have executed a confidentiality agreement.

01:21542082.3

6.      **Bid Requirements**

To be deemed a "**Qualifying Bid**," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and must satisfy each of the following requirements (each, a "**Bid Requirement**"):

(a)      be in writing;

(b)      fully disclose the identity of the Qualifying Bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) of any Debtor, or has a relationship with insider(s) of the Debtor, and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

(c)      be accompanied by a clean, **executed** copy of a Transaction Agreement that satisfies the requirements of Section 4 of these Bidding Procedures, along with a marked copy of the Transaction Agreement that reflects any variations from the Debtors' form of Transaction Agreement, if any;

(d)      in the case of a Sale, set forth the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and what amount constitutes a credit bid, and identify the liabilities proposed to be paid or assumed by such Qualifying Bidder;

(e)      specify the Assets that are included in the bid and, to the extent a Stalking Horse Purchaser is designated, state that such Qualifying Bidder offers to purchase those Assets included in the applicable Stalking Horse Agreement upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the applicable Stalking Horse Agreement;

(f)      if a Plan is proposed, be accompanied by a commitment to provide funding for operational and restructuring costs through the effective date of such Plan;

(g)      state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until the conclusion of the Sale Hearing unless such party is the Successful Bidder or Back-Up Bidder in which case such offer is offer is formal, binding and unconditional and is irrevocable until the earlier of two (2) business days after the closing of the Sale of the subject Assets or forty-five (45) days after entry of the Sale Order; *provided*, *however*, that if a Qualifying Bidder proposes to implement its transaction through a Plan, such bid shall only remain irrevocable until the conclusion of the Sale Hearing unless that Qualifying Bidder is selected (i) as the Successful Bidder, in which case it shall remain irrevocable until the effective date of such Plan, and (ii) as a Back-Up Bidder in the event that the Successful Bid was for a Sale of Assets, the closing of a Sale of the subject Assets.

(h)      state that such Qualifying Bidder is financially capable of consummating the

transactions contemplated by the Transaction Agreement or proposed Plan and contain such financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by its proposed Transaction Agreement, including, without limitation, (i) written evidence satisfactory to the Debtors, in consultation with the Consultation Parties, that the Qualifying Bidder has a commitment for financing or other evidence of the ability to close the transactions contemplated by the Transaction Agreement or to consummate a proposed Plan transaction, including the required funding for consummation of such a transaction, with appropriate contact information for such financing sources to verify funds, and (ii) such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to make available, within one (1) business day after such receipt, such information to any counterparties to any contracts or leases being assumed and assigned in connection with the Sale that have requested, in writing, such information;

(i)     identify with particularity each and every executory contract, unexpired lease and unexpired sublease the assumption and assignment of which is a condition to close the transactions contemplated by the proposed Transaction Agreement;

(j)     a commitment to close the transactions contemplated by the Transaction Agreement within 15 days of entry of the order approving the sale; provided that if the proposed transactions will be implemented through a Plan, the Debtors shall have 90 days from the date of court approval of the proposal to obtain confirmation of such Plan, provided further that the Debtors have or will have sufficient liquidity (through appropriate funding provided or arranged by the Qualifying Bidder) to continue operations through that point in time;

(k)     not request or entitle such Qualifying Bidder (other than a Stalking Horse Purchaser) to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment;

(l)     in the event that there is a Stalking Horse Purchaser, and the Qualifying Bidder wishes to bid on the same Assets that are included in the Stalking Horse Agreement, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the purchase price under the Stalking Horse Agreement, plus (B) any break-up fee, expense reimbursement, or other bid protection provided under the Stalking Horse Agreement, plus (C) the greater of $100,000 or 1% of the purchase price under the Stalking Horse Agreement;

(m)     not contain any contingencies of any kind, including, without limitation, contingencies related to financing,  due diligence or third party, regulatory or

internal approval;

(n)      provide for the Qualifying Bidder to serve as a backup bidder (the "**Back-Up Bidder**") if the Qualifying Bidder's bid is the next highest and best bid (the "**Back-Up Bid**") after the Successful Bid (as defined below), in accordance with the terms of the Transaction Agreement and these Bidding Procedures;

(o)      include written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Transaction Agreement;

(p)      subject to Section 7 of the Bidding Procedures, provide a good faith cash deposit (the "**Deposit**") in an amount equal to the greater of $200,000 or ten percent (10%) of the total consideration provided under the proposed Transaction Agreement; provided, that the Debtors may alter the Deposit requirement for any party selected as a Stalking Horse Purchaser with leave of the Court; and

(q)      provide for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the Transaction Agreement equal to the amount of the Deposit; and

Subject to the next sentence, a bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid.  The Debtors both reserve the right and are authorized to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

### 7.      Credit Bidding

Any party that wishes to submit a credit bid either as a component or as the entirety of the consideration for its bid shall identify the amount of the claim and the nature, extent, and priority of the lien upon which its credit bid is premised.  Except where the Debtors have stipulated to the amount of a Secured Claim in a "cash collateral" order entered by the Court, any party submitting a credit bid agrees to provide the Debtors with documentation to evidence the amount, nature, extent, validity and perfection of such claim and lien to the extent it has not already done so.

Any party submitting a credit bid must include in their bid either (i) provisions for the satisfaction of any secured claims that are senior to the secured claim that forms the basis of the credit bid (a "**Senior Secured Claim**") or (ii) evidence that the holder of any Senior Secured Claim has affirmatively consented to any other treatment of its Senior Secured Claim.

Parties entitled to credit bid shall not be required to comply with Paragraphs 6(p), 6(q) or 11(m) of the Bidding Procedures regarding providing a Deposit in connection with their bids solely with respect to the amount of the Secured Claim included as consideration for their bid.

> ### 8.    Bid Deadline

A Qualifying Bidder that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtors so as to be received on or before **April 6, 2017 at 5:00 p.m. (ET)** (the "**Bid Deadline**"); *provided* that the Debtors may extend the Bid Deadline without further order of the Court, after consulting with the applicable Consultation Parties. All parties wishing to submit a Qualifying Bid shall submit the bid materials required by Section 6 (including the **executed** Transaction Agreement and a certified check or wire transfer for the Deposit amount) to (X) the Investment Banker at the contact information provided above with a copy to counsel to the Debtors, (i) Winston & Strawn LLP, 35 W. Wacker Drive, Chicago, IL 60601-9703, Attn: Daniel J. McGuire (Email: dmcguire@winston.com) and Carrie V. Hardman (Email: chardman@winston.com), and (ii)  Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, Delaware 19801, Attn: M. Blake Cleary (Email:  mbcleary@ycst.com) and Ryan Bartley (Email: rbartley@ycst.com), and (Y) counsel for the Committee, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067-4003, Attn: Jeffrey N. Pomerantz (Email: jpomerantz@pszjlaw.com) and 780 Third Avenue, 34th Floor, New York, NY 10017, Attn: Richard E. Mikels (Email: rmikels@pszjlaw.com), and 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Peter J. Keane (Email: pkeane@pszjlaw.com).

**Any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction. Consistent with the terms of any confidentiality agreements executed by them, all Potential Bidders and Qualifying Bidders shall maintain as confidential, up until the Auction, the fact that they have submitted a bid and the terms and conditions of such bid.**

> ### 9.    Evaluation of Qualifying Bids

Subject to the situation in which a Consultation Party is also a bidder for some or all of the Assets, the Debtors will deliver, within one (1) business day after receipt thereof, copies of all bids from Qualifying Bidders to the Consultation Parties other than the Committee. The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid, and shall notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid by no later than two (2) days after receipt of all such information needed to make a determination as to whether such bid is a Qualifying Bid. In the event that a bid is determined not to be a Qualifying Bid, the Qualifying Bidder shall be notified by the Debtors and shall have one (1) day from the date of such notification to modify its bid so as to become a Qualifying Bid; provided that any Qualifying Bid may be improved at the Auction as set forth herein.

Prior to the commencement of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest and best bid for purposes of constituting the opening bid of the Auction (the "**Baseline Bid**" and the

Qualifying Bidder submitting the Baseline Bid, the "**Baseline Bidder**"), and shall promptly notify all Qualifying Bidders with Qualifying Bids of the Baseline Bid. The Baseline Bid may be comprised of any combination of Assets, and the Debtors may determine, in consultation with the Consultation Parties, that different Baseline Bids exist for different lots of the Assets. The Debtors shall have the discretion to determine, in consultation with the Consultation Parties, how to proceed when auctioning the Assets in lots that do not include all of Debtors' Assets so as to maximize the value of the Assets.

### 10.    One Qualifying Bid

If only one Qualifying Bid is submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall have the right to request at the Sale Hearing (as defined in the Bidding Procedures Order) that the Court approve the Transaction Agreement from the Qualifying Bidder and the transactions contemplated thereunder or authorize the Debtors to proceed with the Plan proposed (if applicable).

### 11.    Auction

In the event that the Debtors timely receive more than one Qualifying Bid, the Debtors shall conduct an auction (the "**Auction**"). Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest and best bid for the Assets, which will be determined by considering, among other things, the following non-binding and non-exclusive factors: (a) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (b) variations between competing bids and any incremental execution risk that the Debtors reasonably determine, in consultation with the Consultation Parties, exist as a result of those variations; (c) the time needed to close a Sale or other transaction compared with other Qualifying Bids and the cost to the Debtors and their estates of any incremental delay; (d) the total consideration to be received by the Debtors and their estates; (e) the ability to obtain a higher or better offer for an Asset when sold individually or in combination with one or more other Assets; (f) existing funding available or proposed to be provided by the Qualifying Bidder during the period necessary to close the Sale or other transaction; (g) the net benefit to the Debtors' estates, taking into account any Stalking Horse Purchaser's rights to any break-up fee, expense reimbursement, or similar bid protection; (h) the proposed treatment of existing secured interests in the subject Assets, including any senior indebtedness in the case of a credit bid; (i) the impact on employees, Counterparties (including claims that may be asserted related to rejection and objections to adequate assurance), and other creditors; and (j) any other factors the Debtors may reasonably deem relevant.

Notwithstanding anything to the contrary contained herein, the Debtors reserve the right to determine that no Qualifying Bid was received and/or to not select a Successful Bidder if the Debtors determine, in consultation with the Consultation Parties, it is not in the best interests of the Debtors' estates and their creditors to do so.

The Auction shall be governed by the following procedures:

(a)      the Auction shall be held on **April 10, 2017 at 10:00 a.m. (ET)** (the "**Auction Date**") at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, Delaware 19801;

(b)      only Qualifying Bidders with Qualifying Bids (together, the "**Auction Bidders**") shall be entitled to make any subsequent bids at the Auction;

(c)      the Auction Bidders shall appear in person at the Auction, or through a duly authorized representative.  In the event that a Qualifying Bidder becomes a Successful Bidder or Back-up Bidder, then whomever is attending the Auction on behalf of a Qualifying Bidder must have the authority, immediately after the conclusion of the Auction, to complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which a Successful Bid or Back-up Bid was made;

(d)      only the Debtors, the Auction Bidders, the Consultation Parties, and all creditors of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction.  **The Debtors request that parties who intend to attend the Auction provide counsel for the Debtors at least one (1) business day's written notice of their intent to attend the Auction so that the Debtors can make appropriate arrangements**;

(e)      the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

(f)      the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction, or the Sale;

(g)      bidding on any lot of Assets shall commence at the amount of the Baseline Bid, and the Auction Bidders may submit successive bids in increments of at least $100,000, provided that:  (i) each such successive bid must be a Qualifying Bid; (ii) if the then-highest and best bid was made by any Stalking Horse Purchaser, such bid shall be deemed to include the sum of the amount of any break-up fee, expense reimbursement, or other bid protections available to such Stalking Horse Purchaser; (iii) any bid made by any Stalking Horse Purchaser, including in each and every round of bidding, shall be deemed to include the sum of the amount of any break-up fee, expense reimbursement, or other bid protection available to such Stalking Horse Purchaser in addition to the cash and other consideration provided for in its bid; and (iv) the Debtors shall retain the right, in consultation with the Consultation Parties, to modify the bid increment requirements at the Auction;

(h)      the Auction may include individual negotiations by the Debtor, in consultation with the Consultation Parties, with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

(i)      all material terms of the bid that is deemed to be the highest and best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors

shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest and best bid;

(j)    the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent bids) for conducting the Auction, *provided* that such rules are (i) not inconsistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, or any applicable order of the Court entered in connection with these chapter 11 cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders;

(k)    the Auction Bidders shall have the right to make additional modifications to their Transaction Agreement in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of any Qualifying Bid that was announced as the then-current highest and best bid for the Assets that are the subject of the bids, and (ii) each Qualifying Bid (unless superseded by a subsequent Qualifying Bid at the Auction) shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until the conclusion of the Sale Hearing, unless such bid is selected as a Successful Bid or Back-Up Bid, which shall remain binding as provided for herein;

(l)    the Debtors shall have the right to request any additional financial information that will allow the Debtors to make a reasonable determination, in consultation with the Consultation Parties, as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by the Transaction Agreement, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

(m)    upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, and subject to Court approval, the offer or offers for the Assets that is or are the highest and best from among the Qualifying Bids submitted at the Auction (each a "**Successful Bid**").  The bidder submitting a Successful Bid shall be the "**Successful Bidder**" for such Assets and shall have such rights and responsibilities of the purchaser as set forth in the Transaction Agreement or the equivalent for a Plan bid.  The Debtors shall designate a Back-Up Bid (or Bids) for circumstance in which a Successful Bidder does not close a Sale or the Court does not approve the Successful Bid.  Subject to Section 7 of the Bidding Procedures, within one business day after the conclusion of the Auction, the Successful Bidder(s) shall deliver an additional Deposit payment so that each

such bidder's total Deposit amount equals 10% (provided that such amount shall be 25% for any party that is selected as a Successful Bidder that has submitted a Plan bid) of the cash amount of the Successful Bid; and

(n)    immediately after the conclusion of the Auction and without undue delay, each Successful Bidder and Back-Up Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid or Back-Up Bid was made.

**EACH SUCCESSFUL BID AND ANY BACK-UP BID SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE APPLICABLE SUCCESSFUL BIDDER AND BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL THE TIME PERIOD SPECIFIED IN SECTION 6(D) OF THE BIDDING PROCEDURES. EACH QUALIFYING BID THAT IS NOT A SUCCESSFUL BID OR BACK-UP BID SHALL BE IRREVOCABLE UNTIL THE CONCLUSION OF THE SALE HEARING, AT WHICH POINT THEY SHALL BE DEEMED WITHDRAWN AND TERMINATED.**

### 12.    Sale Hearing

If an Auction is held, the Successful Bid and any Back-Up Bid will be subject to approval by the Court. The Sale Hearing to approve the Successful Bid(s) and any Back-Up Bid(s) shall take place on **April 12, 2017 at 1:30 p.m. (ET)**. The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' chapter 11 cases.

### 13.    Backup Bidder

Notwithstanding any of the foregoing, in the event that a Successful Bid proposes a Sale (rather than a Plan) and the Successful Bidder fails to close the applicable Sale within fifteen (15) days after the Court enters and order approving of the Successful Bid by (or such date as may be extended by the Debtors in consultation with the Consultation Parties), the Back-Up Bid for that Sale will be deemed to be the Successful Bid, the Back-Up Bidder will be deemed to be the Successful Bidder, and the Debtors will be authorized, but not directed, to immediately close that Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

### 14.    Return of Deposits

All Deposits shall be returned to each bidder not selected by the Debtors as a Successful Bidder or Back-Up Bidder for any Sale no later than three (3) business days following the conclusion of the Sale Hearing. The deposit of a Back-Up Bidder shall be returned within three (3) business days of the closing of the applicable Sale to the Successful Bidder; the deposit of the Successful Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale. If the Successful Bidder (or, if the

Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as liquidated damages resulting to the Debtors and their estates for such breach or failure to perform.

### 15.    Consultation Parties

The term "**Consultation Parties**" as used in these Bidding Procedures shall mean, with respect to any Asset: (i) counsel and financial advisor to any official committee appointed in these cases representing parties with an interest in the Assets; (ii) counsel to Wells Fargo Bank, N.A., as DIP Agent and agent under the prepetition first-lien credit facility; and (iii) counsel to Medley Capital Corporation, as agent under the prepetition second-lien credit facility if (a) Medley advises the Debtors in writing that it shall not be a bidder for the Assets, whether by credit bid or otherwise or (b) the Debtors, in consultation with the Committee, determine that the delivery of certain selected information to Medley will facilitate the Sale Process.

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment; provided that nothing herein shall constitute a waiver of the Committee's rights to seek a Court order in connection with relief related to these Bidding Procedures.

In the event that any Consultation Party, any member of an official committee or an affiliate of any of the foregoing participates as a potential purchase in the sales process, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived, discharged and released without further action, until such party advises the Debtors that they are irrevocably withdrawing as a potential purchaser in the sale process at which time such party's consultation rights will be reinstated; provided that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

If a member of an official committee submits a Qualifying Bid, such committee will continue to have consultation rights as set forth in these Bidding Procedures; provided that the committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets in question and shall not provide any information regarding the sale of the Assets to such member.

### 16.    Reservation of Rights

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, to allow for bidding on only a portion of the Assets and not all of them, modify bidding increments, to waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), to impose additional terms and conditions with respect to any or all Potential Bidders, to adjourn or cancel the Auction at or prior to the Auction, and to adjourn or cancel the Sale Hearing.

Additionally, the Debtors, in consultation with the Consultation Parties, have the right to terminate the sale and auction process with respect to any or all of the Assets at any time.

**17.     Buyer's Brokers/Indemnity**

Each Potential Bidder or Qualifying Bidder warrants and represents that it is a principal acting on its own behalf, and not as a broker, finder, or agent acting on another's behalf.  Each Potential Bidder or Qualifying Bidder understands that the Debtors and Investment Banker and their respective representatives have not agreed to pay any brokerage commissions, finder's fee or other compensation in connection with a Potential Bidder's or Qualifying Bidder's possible purchase.  In addition, each Potential Bidder or Qualifying Bidder hereby agrees to indemnify, defend and hold the Debtors, Investment Banker, and their respective representatives harmless from and against any and all claims, damages, losses and liabilities, costs and expenses (including reasonable attorneys' fees and disbursements) arising out of any such claims made by third-party brokers on account of or related to such Potential Bidder or Qualifying Bidder.

**18.     Disclaimer**

By submitting a bid, each Potential Bidder and Qualifying Bidder agrees to and acknowledges the following terms and conditions with respect to any information received from the Debtors related to the Assets ("**Information**"):

(a)     The Assets are being offered AS-IS, WHERE-IS, with ALL FAULTS.

(b)     The Information has been prepared:

  i.     for informational purposes only;

  ii.    from materials supplied by the Debtors, local municipalities, and other sources commonly accepted as reliable sources for such type of Information; and

  iii.   to assist Potential Bidders and Qualifying Bidders in making their own evaluation of the offering and does not purport to be all-inclusive or to contain all of the information that interested parties may desire.   The Debtors, Investment Banker and the respective officers, directors, employees, affiliates, agents, advisors and representatives (such parties, collectively, "**Representatives**") of the Debtors and Investment Banker have not assumed responsibility for independent verification of any of the information contained herein and have not in fact in any way audited such Information.   In all cases, Potential Bidders and Qualifying Bidders should conduct their own investigation and analysis of the offering, conduct site inspections, and scrutinize the Information.  Potential Bidders and Qualifying Bidders should engage legal counsel, accountants, engineers, and/or such other professional advisors as Potential Bidders and Qualifying Bidders deem appropriate for evaluating the Assets.

(c)    None of Potential Bidders, Qualifying Bidders and their respective Representatives are entitled to rely on the accuracy or completeness of the Information except as provided for in a Transaction Agreement that is authorized and approved by the Court.

(d)    Although the Debtors and Investment Banker have endeavored for the Information to contain data which they believe to be relevant for the purpose of any Potential Bidder's or Qualifying Bidder's investigation, except as expressly set forth in a Transaction Agreement accepted by the Debtors and approved by the Court, none of the Debtors, Investment Banker, Committee, or any of their respective Representatives:

    i.    have made or make and expressly disclaim making any written or oral statements, representations, warranties, promises or guarantees, whether express or implied or by operation of law or otherwise, with respect to the Assets or with respect to the accuracy, reliability or completeness of the Information;

    ii.    to the fullest extent permitted by law, shall have any liability whatsoever to Potential Bidders, Qualifying Bidders or their Representatives on any basis (including, without limitation, in contract, tort, under federal, foreign or state securities laws or otherwise) as a result of, relating or pertaining to, or resulting or arising from (i) any Potential Bidder's, any Qualifying Bidder's, or any of their Representative's reliance on the Information, (ii) Potential Bidder's, Qualifying Bidder's, or their Representatives' use or non-use of the Information, or (iii) any alleged acts or omissions of Debtors, Investment Banker or any of their respective Representatives, or any errors or omissions in the Information;

    iii.    shall have any liability or responsibility for any decisions made by a Potential Bidder, Qualifying Bidder or any of their Representatives in reliance on any Information;

    iv.    will be under any obligation or duty (express or implied) to make available any Information to any Potential Bidders, any Qualifying Bidders, or any of their Representatives; and

    v.    will be under any duty or obligation (express or implied) to update, supplement, revise or correct any Information disclosed under these Bidding Procedures, regardless of the circumstances.

(e)    Except as provided in these Bidding Procedures, no contract or agreement providing for any transaction shall be deemed to exist between a Potential Bidder or Qualifying Bidder and any Debtor unless and until a Qualifying Bidder and the applicable Debtor or Debtors execute and deliver a Transaction Agreement that is authorized and approved by the Court, and Potential Bidders and Qualifying Bidders hereby waive, in advance, any claims (including, without limitation,

breach of contract) in connection with any transaction unless and until a Potential Bidder or Qualifying Bidder and the Debtors shall have executed and delivered a Transaction Agreement, which has been authorized and  approved by the Court. The Debtors reserve the right, in their discretion, to reject any and all proposals made by any Potential Bidder or Qualifying Bidder with regard to a transaction, and to terminate discussions and negotiations with a Potential Bidder or Qualifying Bidder at any time.  Subject to the terms of these Bidding Procedures, the Debtors shall be free to establish and change any process or procedure with respect to a transaction as the Debtors in their discretion shall determine (including, without limitation, negotiating with any other interested party and entering into a final definitive agreement relating to a transaction with any other party without prior notice to any Potential Bidder, Qualifying Bidder or any other person).

(f)     Each Debtor, the Investment Banker and the Debtors' other advisors, individually and collectively, have not made any representations or warranties except as expressly set forth in any Transaction Agreement executed by the applicable Debtor, which has been authorized and  approved by the Court.  Potential Bidders and Qualifying Bidders may rely only on the representations and warranties expressly set forth in a Transaction Agreement executed by the applicable Debtor, which has been authorized and  approved by the Court.

## **Exhibit 2**

Sale Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------
                                    :
In re                               :   Chapter 11
                                    :
UNITED ROAD TOWING, INC. et al.,    :   Case No. 17-10249 (LSS)
                                    :
            Debtors.¹               :   Jointly Administered
                                    :
-------------------------------------------------------
```

## NOTICE OF SALE OF ASSETS

United Road Towing, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), are seeking to sell their personal property and other related interests (the "**Assets**"). The Debtors will consider proposals to acquire some or all of the Assets through a sale under section 363 of the Bankruptcy Code, the acquisition of the equity of one or more Debtors though a sale under section 363 of the Bankruptcy Code, or a sale of Assets or the acquisition of the equity in one or more Debtors implemented through a chapter 11 plan. **The Debtors have reserved the right, in consultation with the Consultation Parties², to select one or more parties to serve as a stalking horse purchaser (each a "Stalking Horse Purchaser") to acquire some or all of the Assets pursuant to a Transaction Agreement between the applicable Debtor(s) and the Stalking Horse Purchaser**.

By order, dated _____ [Docket No. ___] (the "**Bidding Procedures Order**"), the Bankruptcy Court approved certain "**Bidding Procedures**" that govern the sale(s) of, or other transaction(s) to acquire, the Assets by the highest and best bidders. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: United Road Towing, Inc. (6962); URT Holdings, Inc. (8341); City Towing Inc. (2118); URS West, Inc. (3518); Bill & Wags, Inc. (3518); Export Enterprises of Massachusetts, Inc. (5689); Pat's Towing, Inc. (6964); Keystone Towing, Inc. (6356); Ross Baker Towing, Inc. (9742); URT Texas, Inc. (3716); Mart-Caudle Corporation (1912); Signature Towing, Inc. (3054); WHW Transport, Inc. (3055); URS Southeast, Inc. (7289); URS Northeast, Inc. (7290); URS Southwest, Inc. (7284); Fast Towing, Inc. (5898); E & R Towing and Garage, Inc. (8500); Sunrise Towing, Inc. (7160); Ken Lehman Enterprises Inc. (1970); United Road Towing South Florida, Inc. (9186); Rapid Recovery Incorporated (1659); United Road Towing Services, Inc. (2206); Arri Brothers, Inc. (7962); Rancho Del Oro Companies, Inc. (3924); CSCBD, Inc. (2448); URS Leasing, Inc. (9072); UR VMS, LLC (4904); UR Vehicle Management Solutions, Inc. (0402). The Debtors' mailing address is c/o United Road Towing, Inc., 9550 Bormet Drive, Suite 301, Mokena, Illinois 60448.

[2]    The term "**Consultation Parties**" as used in these Bidding Procedures shall mean, with respect to any Asset: (i) counsel and financial advisor to any official committee appointed in these cases representing parties with an interest in the Assets; (ii) counsel to Wells Fargo Bank, N.A., as DIP Agent and agent under the prepetition first-lien credit facility; and (iii) counsel to Medley Capital Corporation, as agent under the prepetition second-lien credit facility if (a) Medley advises the Debtors in writing that it shall not be a bidder for the Assets, whether by credit bid or otherwise or (b) the Debtors, in consultation with the Committee, determine that the delivery of certain selected information to Medley will facilitate the Sale Process.

The Debtors have requested the Bankruptcy Court to enter an order or orders (the "**Sale Orders**"), which provide, among other things, for the sale of the Assets free and clear of all liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption of certain liabilities.  A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the Sale Orders.

Copies of the Bidding Procedures Order, the Bidding Procedures, and other pleadings are available at the website for the Debtors' claims and noticing agent, Rust Consulting/Omni Bankruptcy at http://www.omnimgt.com/unitedroadtowing.

**Any interested bidder should contact the Debtors' investment banker, SSG Advisors, LLC, c/o Mark E. Chesen (Email: mchesen@ssgca.com) and Michael Gorman (Email: mgorman@ssgca.com).**

**PLEASE TAKE NOTE OF THE FOLLOWING INFORMATION AND IMPORTANT DEADLINES:**

- The deadline to file an objection with the Bankruptcy Court to the proposed sale of the Assets (the "**Sale Objection Deadline**") is **April 5, 2017 at 4:00 p.m. (ET)**; *provided* solely with respect to an objection to the conduct of the Auction, the designation of any Successful Bidder or Bid or Back-Up Bidder or Bid, the terms (including price) of such bids, and the Debtors' inability to satisfy the conditions of section 363(f) of the Bankruptcy Code with respect to a Successful Bid or Back-Up Bid (an "**Auction Objection**"), the deadline to file an Auction Objection **shall be 4:00 p.m. (ET) on April 11, 2017**.

- Objections must be filed and served in accordance with the Bidding Procedures Order.  In connection with the proposed sale process, interested bidders may be subject to an expedited discovery process.

- The deadline to be qualified as a Qualifying Bidder and to submit a Qualifying Bid is **April 6, 2017 at 5:00 p.m. (ET)**.  Subject to Section 7 of the Bidding Procedures with respect to credit bids, all Qualifying Bids must be accompanied with a deposit in an amount equal to the greater of $250,000 ten percent (10%) of the total consideration provided under the proposed Transaction Agreement; *provided*, that the Debtors may alter the Deposit requirement for any party selected as a Stalking Horse Purchaser with leave of the Court.

- An auction for the Assets will commence on **April 10, 2017 at 10:00 a.m. (ET)** at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, DE 19801.

- The Bankruptcy Court will conduct a hearing (the "**Sale Hearing**") to consider the proposed Sales on: **April 12, 2017 at 1:30 p.m. (ET)**.

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE APPLICABLE OBJECTION DEADLINE SHALL BE DEEMED TO CONSENT TO, AND A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO, THE MOTION, SALE ORDERS, THE PROPOSED TRANSACTIONS, OR THE DEBTORS' CONSUMMATION AND PERFORMANCE OF THE TRANSACTION AGREEMENT(S) (INCLUDING, WITHOUT LIMITATION, THE DEBTORS' TRANSFER OF ANY OF THE**

**ASSETS AND ASSUMPTION AND ASSIGNMENT OF ANY ASSUMED CONTRACTS, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS).**

Dated:  March _____, 2017                        YOUNG CONAWAY STARGATT
           Wilmington, Delaware                        & TAYLOR, LLP


                               /s/ _____
                               M. Blake Cleary (No. 3614)
                               Ryan M. Bartley (No. 4985)
                               Andrew Magaziner (No. 5426)
                               Rodney Square
                               1000 North King Street
                               Wilmington, Delaware 19801
                               Telephone: (302) 571-6600
                               Facsimile: (302) 571-1253

                               -and-

                               WINSTON & STRAWN LLP
                               Daniel J. McGuire
                               (admitted *pro hac vice*)
                               Grace D. D'Arcy
                               (admitted *pro hac vice*)
                               35 West Wacker Drive
                               Chicago, Illinois 60601
                               Telephone: (312) 558-5600
                               Facsimile: (312) 558-5700

                               Carrie V. Hardman
                               (admitted *pro hac vice*)
                               200 Park Avenue
                               New York, NY 10166
                               Telephone: (212) 294-6700
                               Facsimile: (212) 294-4700

                               *Proposed Counsel for Debtors and Debtors in Possession*

**<u>Exhibit 3</u>**

Assumption Notice

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------
|  | : |  |
|---|---|---|
| **In re** | : | Chapter 11 |
|  | : |  |
| **UNITED ROAD TOWING, INC.** *et al.*, | : | Case No. 17-10249 (LSS) |
|  | : |  |
| **Debtors.**[1] | : | Jointly Administered |
|  | : |  |
-------------------------------------------------------------

## NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

United Road Towing, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), are seeking to sell their personal property and other related interests (the "**Assets**"). The Debtors will consider proposals to acquire some or all of the Assets through a sale under section 363 of the Bankruptcy Code, the acquisition of the equity of one or more Debtors though a sale under section 363 of the Bankruptcy Code, or a sale of Assets or the acquisition of the equity in one or more Debtors implemented through a chapter 11 plan. **The Debtors have reserved the right, in consultation with the Consultation Parties[2], to select one or more parties to serve as a stalking horse purchaser (each a "Stalking Horse Purchaser") to acquire some or all of the Assets pursuant to a Transaction Agreement between the applicable Debtor(s) and the Stalking Horse Purchaser**.

The Debtors have requested the Bankruptcy Court to enter an order or orders (the "**Sale Orders**"), which provide, among other things, for the sale of the Assets free and clear of all liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption by the applicable purchaser of certain liabilities. In connection with this marketing and sale process, the Debtors are seeking to assume

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: United Road Towing, Inc. (6962); URT Holdings, Inc. (8341); City Towing Inc. (2118); URS West, Inc. (3518); Bill & Wags, Inc. (3518); Export Enterprises of Massachusetts, Inc. (5689); Pat's Towing, Inc. (6964); Keystone Towing, Inc. (6356); Ross Baker Towing, Inc. (9742); URT Texas, Inc. (3716); Mart-Caudle Corporation (1912); Signature Towing, Inc. (3054); WHW Transport, Inc. (3055); URS Southeast, Inc. (7289); URS Northeast, Inc. (7290); URS Southwest, Inc. (7284); Fast Towing, Inc. (5898); E & R Towing and Garage, Inc. (8500); Sunrise Towing, Inc. (7160); Ken Lehman Enterprises Inc. (1970); United Road Towing South Florida, Inc. (9186); Rapid Recovery Incorporated (1659); United Road Towing Services, Inc. (2206); Arri Brothers, Inc. (7962); Rancho Del Oro Companies, Inc. (3924); CSCBD, Inc. (2448); URS Leasing, Inc. (9072); UR VMS, LLC (4904); UR Vehicle Management Solutions, Inc. (0402). The Debtors' mailing address is c/o United Road Towing, Inc., 9550 Bormet Drive, Suite 301, Mokena, Illinois 60448.

[2]    The term "**Consultation Parties**" as used in these Bidding Procedures shall mean, with respect to any Asset: (i) counsel and financial advisor to any official committee appointed in these cases representing parties with an interest in the Assets; (ii) counsel to Wells Fargo Bank, N.A., as DIP Agent and agent under the prepetition first-lien credit facility; and (iii) counsel to Medley Capital Corporation, as agent under the prepetition second-lien credit facility if (a) Medley advises the Debtors in writing that it shall not be a bidder for the Assets, whether by credit bid or otherwise or (b) the Debtors, in consultation with the Committee, determine that the delivery of certain selected information to Medley will facilitate the Sale Process.

or assume and assign certain of their executory contracts and unexpired leases related to the Assets (collectively, the "**Assumed Contracts**").

By order, dated ___, 2017 [Docket No. __] (the "**Bidding Procedures Order**"), the Bankruptcy Court approved certain "**Bidding Procedures**" that govern the sale of all of the Assets to the highest and best bidders. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order. Copies of the Bidding Procedures Order, the Bidding Procedures, and other pleadings are available for download from Debtors' claims and noticing agent, at http://www.omnimgt.com/unitedroadtowing (the "**Case Website**").

**You are receiving this Notice because you may be a party to an Assumed Contract. A list of the Assumed Contracts is attached hereto as <u>Exhibit A</u>.** The Debtors have determined the current amounts owing (the "**Cure Amounts**") under each Assumed Contract and have listed the applicable Cure Amounts on <u>Exhibit A</u>. The Cure Amounts are the only amounts proposed to be paid upon any assumption or assumption and assignment of the Assumed Contracts, in full satisfaction of all amounts outstanding under the Assumed Contracts.

**To the extent that a non-Debtor party to an Assumed Contract objects to (i) the assumption and assignment of such party's Assumed Contract or (ii) the applicable Cure Amounts, the non-Debtor counterparty must file and serve an objection in accordance with the Bidding Procedures Order, so as to be received by the undersigned counsel for the Debtors and the other parties specified therein by <u>April 5, 2017 at 4:00 p.m. (ET)</u>. See below regarding objections based on adequate assurance and Cure Amounts arising or accruing after March 31, 2017.**

An auction (the "**Auction**") for the Assets, including the Assumed Contracts, will be conducted on **<u>April 10, 2017 at 10:00 a.m. (ET)</u>**. After the Auction occurs (or after the cancellation of the Auction, if applicable), the Debtors will file and serve a notice that identifies the proposed acquirers of the Assets, and the proposed assignees of any Assumed Contracts. **The deadline to object to adequate assurance of future performance with respect to such proposed assignees, shall be April 11, 2017 at 4:00 p.m. (ET).**

**If no objection is timely received with respect to Cure Amounts or the assumption of an Assumed Contract, (i) a non-Debtor party to a Contract shall be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts with respect to such Contract, (ii) the Cure Amounts set forth on <u>Exhibit A</u> attached hereto shall be controlling, notwithstanding anything to the contrary in any Assumed Contract, or any other document, and the non-Debtor party to an Assumed Contract shall be deemed to have consented to the Cure Amounts, (iii) the non-Debtor party to a Contract shall be forever barred and estopped from asserting any other claims related to such Contract against the Debtors or the applicable transferee, or the property of any of them; and (iv) the Counterparty shall be deemed to consent to, and the Debtors shall be permitted to proceed with, the assumption and assignment of the applicable Assigned Contract.**

The Debtors will seek to assume and assign the Assumed Contracts that have been selected by a Successful Bidder or the Stalking Horse Purchaser, if applicable, at a hearing before the Honorable Laurie Selber Silverstein, in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Sixth (6th) Floor, Courtroom #1, Wilmington, Delaware 19801 (a "**Sale Hearing**") on **<u>April 12, 2017 at 1:30 p.m. (ET)</u>**, or such other date as determined by the Debtors in accordance with the terms of the Bidding Procedures Order. A hearing regarding the Cure Amounts, if any, may be adjourned by agreement of the Debtors and applicable objection party or by order of the Court.

Dated: March ____, 2017                           YOUNG CONAWAY STARGATT
       Wilmington, Delaware                        & TAYLOR, LLP
                                         M. Blake Cleary (No. 3614)

01:21542083.3

Ryan M. Bartley (No. 4985)
Andrew Magaziner (No. 5426)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

WINSTON & STRAWN LLP
Daniel J. McGuire
(admitted *pro hac vice*)
Grace D. D'Arcy
(admitted *pro hac vice*)
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Carrie V. Hardman
(admitted *pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Proposed Counsel for Debtors and
Debtors in Possession*

## Exhibit B

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------

|  |  |
|---|---|
|  | : Chapter 11 |
| **In re** | : Case No. 17-10249 (LSS) |
|  | : |
|  | : |
|  | : Jointly Administered |
| **UNITED ROAD TOWING, INC.** *et al.*, | : |
|  | : |
| **Debtors.**[1] | Re: Docket No. ——57 |

-------------------------------------------------------------

**ORDER (I) SCHEDULING A HEARING TO CONSIDER APPROVAL OF THE SALE OR SALES OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**"),[2] dated February 10, 2017, of

the Debtors in the above-captioned chapter 11 cases for the entry of:

(A)    an order, substantially in the form attached hereto as **Exhibit A** (the "**Bidding Procedures Order**"), (i) scheduling a hearing (the "**Sale Hearing**") on approval

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: United Road Towing, Inc. (6962); URT Holdings, Inc. (8341); City Towing Inc. (2118); URS West, Inc. (3518); Bill & ~~Wag's~~Wags, Inc. (3518); Export Enterprises of Massachusetts, Inc. (5689); Pat's Towing, Inc. (6964); Keystone Towing, Inc. (6356); Ross Baker Towing, Inc. (9742); URT Texas, Inc. (3716); Mart-Caudle Corporation (1912); Signature Towing, Inc. (3054); WHW Transport, Inc. (3055); URS Southeast, Inc. (7289); URS Northeast, Inc. (7290); URS Southwest, Inc. (7284); Fast Towing, Inc. (5898); E & R Towing ~~&~~and Garage, Inc. (8500); Sunrise Towing, Inc. (7160); Ken Lehman Enterprises Inc. (1970); United Road Towing ~~of~~ South Florida, Inc. (9186); Rapid Recovery Incorporated (1659); United Road Towing Services, Inc. (2206); Arri Brothers, Inc. (7962); Rancho Del Oro Companies, Inc. (3924); CSCBD, Inc. (2448); URS Leasing, Inc. (9072); UR VMS, LLC (4904); UR Vehicle Management Solutions, Inc. (0402).  The Debtors' mailing address is c/o United Road Towing, Inc., 9550 Bormet Drive~~,~~, Suite 301, Mokena, Illinois 60448.

[2]    Capitalized terms used but not defined herein shall have the meanings given them in the Motion or the Bidding Procedures (as defined below), as applicable.

of one or more sales of or other acquisition transactions for (each a "**Sale**") of substantially all of the Debtors' personal property and other related interests (the "**Assets**"), either individually or in lots, free and clear of all liens, claims, encumbrances, and other interests (collectively, the "**Encumbrances**"), other than those Encumbrances permitted by the applicable asset purchase agreement or other agreement for the applicable Sale (each a "**Transaction Agreement**"), and a Sale may include the acquisition of the equity of one or more Debtors though a section 363 Sale or a sale of Assets or the acquisition of the equity in one or more Debtors implemented through a chapter 11 plan (a "**Plan**"), and authorizing the assumption and assignment of certain executory contracts and unexpired leases (each, an "**Assumed Contract**," and collectively, the "**Assumed Contracts**") in connection therewith, (ii) authorizing and approving certain proposed bidding procedures for the Sales in the form attached to the Bidding Procedures Order as **Exhibit 1** (collectively, the "**Bidding Procedures**"), certain proposed assumption and assignment procedures (collectively, the "**Assumption and Assignment Procedures**"), and the form and manner of notice thereof; and (iii) granting related relief; and

(B)       an order (or orders) (each a "**Sale Order**"),[3] (i) authorizing and approving the Debtors' entry into the Transaction Agreement(s) with Successful Bidder(s), Back-Up Bidder(s), or Stalking Horse Purchaser(s), as applicable and to the extent necessary; (ii) authorizing and approving the Sale of Assets, free and clear of all Encumbrances other than those permitted by the applicable Transaction Agreement; (iii) authorizing and approving the assumption and assignment of the Assumed Contacts in connection therewith; and (iv) granting related relief;

and due and proper notice of the Motion having been given as provided in the Motion; and it appearing that no other or further notice need be provided; and the Bidding Procedures Hearing (as defined below) having been held; and all of the proceedings had before the Court; and the Court having reviewed the Motion; and the Court having found and determined that the relief sought in the Motion and set forth herein is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

---

[3]    The Debtors shall file the applicable form(s) of Sale Order as soon as practicable after such document is negotiated with the applicable purchaser(s).

**FOUND AND DETERMINED THAT**:[4]

A.       This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order.

B.       Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.       The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**").

D.       In the Motion and at the hearing on the Motion (the "**Bidding Procedures Hearing**"), the Debtors demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E.       The Sale Notice (as defined below) is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bidding Procedures, the Auction, the Sale, and the Sale Hearing, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

---

[4]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

F.      The Bidding Procedures are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the Sale.

G.      The Assumption and Assignment Procedures provided for herein and in the Assumption Notice (as defined below) are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures and the Assumption Notice have been tailored to provide an adequate opportunity for all Counterparties (as defined below) to assert any Contract Objections.

H.      Entry of this Order is in the best interests of the Debtors, their estates and creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Those portions of the Motion seeking approval of (a) the Assumption and Assignment Procedures, (b) the Bidding Procedures, (c) the date, time and place of the Auction and Sale Hearing, and (d) the noticing and objection procedures related to each of the foregoing, including, without limitation, the Sale Notice, substantially in the form attached hereto as **Exhibit 2** (the "**Sale Notice**"), and the Assumption Notice, substantially in the form attached hereto as **Exhibit 3** (the "**Assumption Notice**"), are hereby GRANTED.

2.      Any objections to the relief granted by this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**Approval of Bidding Procedures; Auction**

3.      The Bidding Procedures are hereby approved.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this

Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors are hereby authorized to conduct the Auction of the Assets pursuant to the terms of the Bidding Procedures and this Order.  The Bidding Procedures shall govern the actions of the Potential Bidders and the Qualifying Bidders (each as defined in the Bidding Procedures), as well as the conduct of the Auction.

4.      Notwithstanding any limitations provided for in any due diligence information, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtors and their estates shall be authorized to provide due diligence information to Potential Bidders or Qualifying Bidders, *provided* that such Potential Bidders or Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors.  The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Potential Bidders or Qualifying Bidders in connection with the Bidding Procedures and the Sale, *provided* that the information was provided in accordance with this Order and except as otherwise provided for in a Transaction Agreement that is authorized and approved by the Court.

5.      For the avoidance of doubt, and notwithstanding anything to the contrary in the Motion, this Order or the Bidding Procedures, the requirement that a party execute a confidentiality agreement to obtain access to the Data Room and other due diligence information shall not restrict, prohibit or alter the right that any party has under any applicable agreement, including loan agreements, to receive, or the Debtors' obligation to provide, any information, which rights and obligations are intended to remain unchanged by this Order and the Bidding Procedures.

6.     A Qualifying Bidder that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtors so as to be received on or before ~~March 22,~~**April 6, 2017 at 5:00 p.m. (ET)** (the "**Bid Deadline**"); *provided* that the Debtors may extend the Bid Deadline without further order of the Court, after consulting with the applicable Consultation Parties.  Any party that does not submit a bid by the Bid Deadline will not be allowed to: (a) submit any offer after the Bid Deadline or (b) participate as a bidder in the Auction.  The term "**Consultation Parties**" as used in ~~the~~these Bidding Procedures ~~and this Order~~ shall mean, with respect to any Asset:  (i) counsel and financial advisor to any official committee appointed in these cases representing parties with an interest in the Assets; (ii) counsel to Wells Fargo Bank, N.A., as DIP Agent and agent under the prepetition first-lien credit facility; and (iii) counsel to Medley Capital Corporation, as agent under the prepetition second-lien credit facility if (a) Medley advises the Debtors in writing that it shall not be a bidder for the Assets, whether by credit bid or otherwise or (b) the Debtors, in consultation with the Committee, determine that the delivery of certain selected information to Medley will facilitate the Sale Process.

7.     All Qualifying Bidders submitting a Qualifying Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale or transfer of the assets identified under the Transaction Agreement.

8.     In the event that the Debtors timely receive two or more Qualifying Bids for the same Assets, the Debtors shall include such Assets in the Auction.  If there is only one Qualifying Bid submitted for a particular Asset or set of Assets on or before the Bid Deadline, the Debtors may not include such Asset or Assets in the Auction and, instead, may request at the Sale Hearing that this Court approve the Qualifying Bid (if any) applicable to such Assets and the

transactions contemplated thereunder.  If there are no Assets for which at least two Qualifying Bids have been timely submitted the Auction will be cancelled.

9.    The Auction shall be held at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware, 19801, beginning at **10:00 a.m. (prevailing Eastern Time) on ~~March 27,~~April 10, 2017**.  Each Auction Bidder (as defined in the Bidding Procedures) shall confirm in writing that: (a) it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction and (b) its Qualifying Bid is a good faith *bona fide* offer that it intends to consummate if selected as a Successful Bidder.  All proceedings at the Auction shall be transcribed.

10.    All Assets shall be offered ~~individually and in groupings~~for a sale of all such Assets or portions of same at the Auction. The Debtors shall have the ability to determine, in consultation with the Consultation Parties, the order in which the Assets will be subjected to bidding during the Auction and what Asset or Assets will be auctioned either individually or in each grouping.  The Debtors shall announce which Asset or Assets will be in the first grouping and which bid is the Baseline Bid (as defined in the Auction and Bidding Procedures), which may include the aggregation of a combination of Qualifying Bids of separate Qualifying Bidders. The applicable Debtors, in consultation with the Consultation Parties, shall assess each bid to determine whether it is the highest and best bid for an Asset or Assets, considering, among other things:  (a) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (b) variations between competing bids and any incremental execution risk that the Debtors reasonably determine, in consultation with the Consultation Parties, exist as a result of those variations; (c) the time

needed to close a Sale or other transaction compared with other Qualifying Bids and the cost to the Debtors and their estates of any incremental delay; (d) the total consideration to be received by the Debtors and their estates; (e) the ability to obtain a higher or better offer for an Asset when sold individually or in combination with other Assets; (f) existing funding available or proposed to be provided by the Qualifying Bidder during the period necessary to close the Sale or other transaction; (g) the net benefit to the Debtors' estates, taking into account any Stalking Horse Purchaser's rights to any break-up fee, expense reimbursement, or similar bid protection; (h) the proposed treatment of existing secured interests in the subject Assets, including any senior indebtedness in the case of a credit bid; (i) the impact on employees, Counterparties (including claims that may be asserted related to rejection and objections to adequate assurance), and other creditors; and (j) any other factors the Debtors may reasonably deem relevant.

        11.    The Debtors shall have the right as they may reasonably determine to be in the best interests of their estates to carry out the Bidding Procedures, including, without limitation, to: (a) determine which bidders are Qualifying Bidders;[5] (b) determine which bids are Qualifying Bids; (c) determine which Qualifying Bid is a Baseline Bid (as defined in the Bidding Procedures); and in consultation with the Consultation Parties,  (d) permit Qualifying Bidders to bid on less than all of the Assets that were included in their Qualifying Bid, if applicable; (e) subject to the terms of the Bidding Procedures, determine which bids are the Successful Bid and Back-Up Bid, each as it relates to the Auction; (f) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (g) adjourn or cancel an Auction and/or the Sale Hearing in open court without

---

[5]   For the avoidance of doubt, any party entitled to submit a credit bid that submits such a bid shall be deemed a Qualifying Bidder.

further notice or as provided in this Order and in the Bidding Procedures; (h) modify the Bidding

Procedures consistent with their fiduciary duties and bankruptcy law; and (i) withdraw the

Motion with respect to entry of the Sale Order for any Assets at any time with or without

prejudice.

**Assumption and Assignment Procedures; Contract Objections**

            12.     The following "**Assumption and Assignment Procedures**" are hereby

approved:

       (a)     On or before **March ~~23,~~22, 2017** (the "**Assumption Notice Deadline**"), the Debtors shall file with the Court and serve on each counterparty (each, a "**Counterparty**," and collectively, the "**Counterparties**") to an Assumed Contract an assumption notice (an "**Assumption Notice**"). In the event that the Debtors identify any Assumed Contract that a potential purchaser may potentially seek to acquire by assumption or assumption and assignment or modify the Cure Amount (as defined herein) after the Assumption Notice Deadline, the Debtors shall promptly file a supplemental Assumption Notice (a "**Supplemental Assumption Notice**").

       (b)     The Assumption Notice (or Supplemental Assumption Notice, if applicable) shall include, without limitation, the cure amount (each, a "**Cure Amount**"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assumed Contracts. If a Counterparty objects to (i) the Debtors ability to assume and/or assign the Assumed Contract or (ii) the Cure Amount for its Assumed Contract through the Contract Objection Deadline (as defined below), the Counterparty must file with the Court and serve on the Notice Parties a written objection (a "**Contract Objection**").

       (c)     Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (iii) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on ~~March 22,~~April 5, 2017** (the "**Contract Objection Deadline**"), *provided* that if the Debtors file any Supplemental Assumption Notice, such notice shall provide that the Contract Objection Deadline shall be at least 14 days after service of such notice; (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Assumed Contract, along with the specific nature and

dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto. Any objections to adequate assurance of future performance by a Successful Bidder shall be filed in accordance with paragraph 22(e) below.

(d)     No later than one (1) business day after the conclusion or cancellation of the Auction, the Debtors shall file with the Court one or more notices identifying the Successful Bidder or Successful Bidders for the Assets (a "**Notice of Successful Bidder**"), which shall set forth, among other things, (i) the Successful Bidder and Back-Up Bidder (as defined in the Bidding Procedures), if any, (ii) the Assumed Contracts included in the Successful Bid or Back-Up Bid (as defined in the Bidding Procedures); (iii) the proposed assignee(s) of such Assumed Contracts; and (iv) instructions for contacting the Successful Bidder to obtain Adequate Assurance Information, which shall be provided to each affected Counterparty on a confidential basis; provided that if the Auction is cancelled and the Debtors choose to proceed with a transaction with one or more Stalking Horse Purchasers, the Notice of Successful Bidder shall set forth such information for the Stalking Horse Purchaser(s) that would be provided for the Successful Bidder.

(e)     No later than one (1) business days after the conclusion or cancellation of the Auction, the Debtors will cause to be served by overnight mail upon each affected Counterparty and Consultation Party, as well as the Notice Parties and parties requesting notice in these cases under Bankruptcy Rule 2002, the applicable Notice of Successful Bidder. Counterparties may submit objections solely on the basis of adequate assurance of future performance by a Successful Bidder **on or before ~~March 29,~~April 11, 2017 at 4:00 p.m. (ET)**.

(f)     If no Contract Objection is timely received with respect to an Assumed Contract: (i) the Counterparty to such Assumed Contract shall be deemed to have consented to the assumption by the Debtors and (if applicable) assignment of such Assumed Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance); (ii) upon receipt by the Counterparty of any Cure Amount, any and all defaults under such Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount included in the Assumption Notice or Supplemental Assumption Notice, if applicable, for such Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Assumed Contract against the Debtors and (if applicable) the Debtors' assignee, or the property of any of them, that existed prior to the entry of the Sale Order.

(g)     To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without

limitation, any dispute with respect to the Cure Amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be mutually agreed to by the Debtors and the objecting Counterparty or scheduled by the Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, such Assumed Contract may be assumed by the Debtors and assigned, *provided* that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the proposed assignee pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

13.    As part of its bid, each Qualifying Bidder (including any Stalking Horse Purchaser) must make available, for review by the Consultation Parties and Counterparties to Assumed Contracts of which such Qualifying Bidder may seek to take assignment, information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code (the "**Adequate Assurance Information**"), including (a) the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to such Qualifying Bidder; (b) a contact person for the proposed assignee that the applicable Counterparty may directly contact in connection with the adequate assurance of future performance; and (c) the actual assignee's identity.  To the extent available, the Adequate Assurance Information may also include: (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee; and (y) financial statements, tax returns and annual reports. Adequate Assurance Information shall be provided on a confidential basis and must be kept confidential and shall only be used and disclosed as agreed to by the Qualifying Bidder that provided such Adequate Assurance Information  or ordered by the Court.  This Order authorizes the filing of any Adequate Assurance Information under seal, and on the docket with such non-public information redacted, without further order of the Court; *provided* that unredacted

versions of such pleadings shall be served upon the Debtors, with a copy to the Court's chambers.  Any Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Order.

14.    The Assumption and Assignment Procedures are appropriate and fair to all Counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.

15.    The inclusion of a contract, lease or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors and their estates or any other party in interest that such contract, lease or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved.

**Sale Hearing and Objections to the Sale**

16.    The Sale Hearing shall be held in this Court on ~~March 30,~~**April 12,** **2017 at** ~~10:00 a~~**1:30 p**.m. (ET), unless otherwise determined by this Court.  The Debtors may adjourn or reschedule the Sale Hearing without notice or **with** limited and shortened notice to parties, including by: (a) an announcement of such adjournment at the Sale Hearing or at the Auction or (b) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

17.    Any objections to the Sale or the relief requested in connection with the Sale (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware

19801, together with proof of service, **on or before 4:00 p.m. (ET) on** ~~March 23,~~**April 11 , 2017** (the "**Sale Objection Deadline**"); and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon the Notice Parties; *provided* that solely with respect to an objection to the conduct of the Auction, the designation of any Successful Bidder or Bid or Back-Up Bidder or Bid, the terms (including price) of such bids, and the Debtors' inability to satisfy the conditions of section 363(f) of the Bankruptcy Code with respect to a Successful Bid or Back-Up Bid (an "**Auction Objection**"), the deadline to file an Auction Objection shall be **4:00 p.m. (ET) on** ~~the date that is the later of three (3) days after the Auction concludes and March 29,~~**April 11, 2017** (the "**Auction Objection Deadline**"). If a Sale Objection or Auction Objection is not filed and served on or before the Sale Objection Deadline or Auction Objection Deadline, as applicable, in accordance with the foregoing requirements, the objecting party shall be barred from objecting to the Sale and shall not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

18.    Failure to file a Sale Objection on or before the Sale Objection Deadline and failure to file an Auction Objection on or before the Auction Objection Deadline (a) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and/or to the consummation and performance of the Sale contemplated by a Stalking Horse Agreement or any Transaction Agreement with a Successful Bidder or Back-Up Bidder, and (b) for purposes of section 363(f) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

19.     The Debtors shall have until commencement of the Sale Hearing to file and serve a reply to any objection filed in connection with the Sale, including any Sale Objection, Auction Objection, or Contract Objection.

**Form and Manner of Notice of Sale Hearing**

20.     The Sale Notice, the Assumption Notice, the Notice of Successful Bidder, the Bidding Procedures, the Auction, the Sale Hearing, and the Assumption and Assignment Procedures and the objection periods associated with each of the foregoing are reasonably calculated to provide sufficient and effective notice to any affected party and to afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, Auction, the Sale, the Sale Hearing, and the assumption and assignment of the Assumed Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notices and objection periods are hereby approved.

21.     Within five (5) days of entry of the Bidding Procedures Order, the Debtors will serve the Sale Notice by first class mail on: (1) the U.S. Trustee; (2) counsel to any official committee appointed in these cases; (3) counsel to Wells Fargo Bank, N.A., in its capacity as agent; (4) counsel to Medley Capital Corporation, in its capacity as agent; (5) all parties known by the Debtors to assert a lien on any of the Assets; (6) all persons known or reasonably believed to have asserted an interest in any of the Assets; (7) all non-Debtor parties to any of the Assumed Contracts; (8) all persons known or reasonably believed to have expressed an interest in acquiring all or any portion of the Assets or making an equity or other investment in the Debtors within the twelve (12) months prior to the Petition Date; (9) the Office of the United States Attorney for the District of Delaware; (10) the Office of the Attorney General in each state in which the Debtors operate; (11) the Office of the Secretary of State in each state in which the

Debtors operate or are organized; (12) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (13) all regulatory authorities having jurisdiction over any of the Assets; (14) the Securities and Exchange Commission; (16) the United States Attorney General/Antitrust Division of Department of Justice; (17) the United States Environmental Protection Agency and similar state agencies for each state in which the Assets are located; and (16) all other parties that had filed a notice of appearance and demand for service of papers in these chapter 11 cases as of the date of service (collectively, the "**Sale Notice Parties**").  In addition, the Debtors will serve the Sale Notice on all of the Debtors' known creditors, investors, and equity holders (for whom identifying information and addresses are available to the Debtors).

22.    The Debtors shall also post the Sale Notice and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent, at http://www.omnimgt.com/unitedroadtowing.

23.    Not later than five (5) days after entry of this Order, the Debtors shall cause the Sale Notice to be published once in the *Chicago Tribune*, once in the national edition of either the *New York Times* or *Wall Street Journal*, and once in the local edition of newspapers in Los Angeles, California, San Diego, California, Minneapolis, Minnesota, and Dallas, Texas. Such publication conforms to the requirements of Bankruptcy Rules 2002(l) and 9008, and is reasonably calculated to provide notice to any affected party, including any Potential Bidders, and to afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

**Miscellaneous**

24. ~~The Debtors' right to seek this Court's approval of one or more Stalking Horse Purchasers, with notice and a hearing, is hereby preserved.~~ On or before March 31, 2017 (the "**Designation Deadline**"), the Debtors may, in consultation with the Consultation Parties, to select one or more parties to serve as a Stalking Horse Purchaser to acquire one or more of the Debtors' Assets pursuant to a Stalking Horse Agreement; provided, however, that as to any Stalking Horse Agreement, absent further Court approval, any break-up fees shall be limited to an amount no greater than 3% of the Qualifying Bid and any expense reimbursements in an amount not to exceed $150,000. Upon such selection, the Debtors shall provide, to all parties that have requested notice of the proceedings in these chapter 11 cases, two (2) days' notice of and an opportunity to object to the designation of such Stalking Horse Purchaser and disclosure of bid protections set forth in the Stalking Horse Agreement (such notice which shall be extended by an additional one (1) day for each day that such selection was made prior to the Designation Deadline up to five (5) days), and absent objection, the Debtors selection of such Stalking Horse Purchaser shall be deemed designated without further need for Court approval; provided that notwithstanding the foregoing, the Debtors shall provide not less than five (5) days' notice and opportunity to object if they enter into a Stalking Horse Agreement with an insider, or an affiliate of an insider, of the Debtors. To the extent necessary, the Debtors' right to seek this Court's approval of one or more Stalking Horse Purchasers, with notice and a hearing, is hereby preserved.

25. ~~The DIP Agent, DIP Lenders, Prepetition ABL Agent, Prepetition ABL Lenders, Prepetition Term Agent and Prepetition Term Lenders shall the right to credit bid the full amount of all Obligations and any Existing Liabilities then outstanding as and to the extent~~

set forth in the DIP Credit Agreement approved on an interim basis pursuant to *the Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors and Debtors in Possession to Obtain Postpetition Financing, (II) Authorizing use of Cash Collateral, (III) Granting Liens and Superpriority Claims, (IV) Granting Adequate Protection to Prepetition Secured Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, a (VII) Granting Related Relief* [Docket No. 41] (the "**DIP Order**") and/or as stipulated in the DIP Order or any subsequent order approving the relief set forth in the DIP Order on a final basis, unless otherwise ordered by the Court.

25.    26. The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

26.    27. In the event that there is a conflict between this Order or the Bidding Procedures, on the one hand, and the Motion, a Transaction Agreement, or a Stalking Horse Agreement, on the other hand, this Order and the Bidding Procedures shall control and govern, and this Order shall control in the event of any conflict with the Bidding Procedures.

27.    28. Prior to mailing and publishing the Sale Notice and the Assumption Notice, as applicable, the Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deems necessary or appropriate.

28.    29. All persons or entities that participate in the bidding process shall be deemed to have knowingly and voluntarily: (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction and/or any Sale) to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

29. ~~30.~~ This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules is expressly waived.  The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

30. ~~31.~~ The requirements set forth in Local Bankruptcy Rules 6004-1, 9006-1 and 9013-1 are hereby satisfied or waived.

31. ~~32.~~ This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

Dated:   March _____, 2017
        Wilmington, Delaware

                                       _____
                                       Laurie Selber Silverstein
                                       United States Bankruptcy Judge

**Exhibit 1**

Bidding Procedures

## BIDDING PROCEDURES

On February 6, 2017, United Road Towing, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On [_____], 2017, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order [Docket No. _____] (the "**Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (collectively, the "**Bidding Procedures**") to be employed by the Debtors in connection with the proposed sales of or other acquisition transactions (each a "**Sale**") of the Debtors' personal property and other related interests (the "**Assets**"), either ~~individually or in groupings~~of all such Assets or portions of same, free and clear of all liens, claims, encumbrances, and other interests (collectively, the "**Encumbrances**"), other than those Encumbrances permitted by a Transaction Agreement (as defined below), on an AS-IS, WHERE-IS with ALL FAULTS basis.  For the avoidance of doubt, a Sale proposed under these Bidding Procedures may include the acquisition of the equity of one or more Debtors though a section 363 sale or a sale of Assets or the acquisition of the equity in one or more Debtors implemented through a chapter 11 plan (a "**Plan**").

If and to the extent that prior to the Bid Deadline (as defined below), the Debtors receive one or more acceptable offers that seek stalking-horse status, the Debtors reserve the right ~~to seek Court approval, with notice and an opportunity for hearing, of~~, in consultation with the Consultation Parties, to select one or more parties to serve as a stalking horse purchaser (each a "**Stalking Horse Purchaser**") to acquire one or more of the Debtors' Assets pursuant to a Transaction Agreement between the applicable Debtor(s) and the Stalking Horse Purchaser (each a "**Stalking Horse Agreement**"), which, upon notice and an opportunity to object to such selection as provided herein, absent objection, shall be deemed designated without further need for Court approval.  Notwithstanding the selection of any Stalking Horse Purchaser, the Debtors will continue to solicit bids and accept bids through the Bid Deadline.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT:**

**SSG Advisors, LLC (the "Investment Banker"):**
**Mark E. Chesen (Phone: (610-940-5801); Email: mchesen@ssgca.com)**
**Michael M. Gorman (Phone: (610-940-3615); Email:**
**~~gorman~~mgorman@ssgca.com)**

**Summary of Important Dates**

| | |
|---|---|
| Deadline to select Stalking Horse Purchaser(s) | March 31, 2017 |
| Deadline to serve Assumption Notice | March ~~8,~~22, 2017 |
| Deadline to object to Assumption Notice | ~~March 23,~~April 5, 2017 at 4:00 p.m. (ET) |
| Deadline to object to Sale (other than with respect to the conduct of the Auction and designation of a Successful Bidder) | ~~March 23,~~April 5, 2017 at 4:00 p.m. (ET) |
| Bid Deadline | ~~March 22,~~April 6, 2017 at 5:00 p.m. (ET) |
| Auction commence | ~~March 27,~~April 10, 2017 at 10:00 a.m. (ET) |
| Deadline to object to conduct of Auction and designation of Successful Bidders, and adequate assurance | ~~March 28,~~April 11, 2017 at 4:00 p.m. (ET) |
| Sale Hearing | ~~March 30,~~April 12, 2017 at 1:30 p.m. (ET) |
| Outside Closing Date | April ~~14,~~28, 2017 [15 days after entry of the applicable Sale Order][1] |

1.     **Assets to be Sold**

The Debtors shall offer for sale all of the Assets. Potential Bidders may bid on all or any number or combination of the Assets. Potential Bidders also may submit a proposal to serve as the sponsor or co-proponent (with the Debtors) of a Plan for purposes of recapitalizing one or more Debtors.

2.     **Participation Requirements**

Any person or entity that wishes to conduct due diligence and gain access to the Debtors' confidential electronic data room concerning the Assets (the "**Data Room**" and such person or entity, a "**Potential Bidder**") must submit to the Debtors and their advisors an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidders, to the extent of confidential information relating to the Assets acquired by such party.

Any Potential Bidder that wishes to participate in the bidding process for the Assets must first become a "**Qualifying Bidder**." Parties may be qualified as a Qualifying Bidder up to the Bid Deadline (*i.e.,* ~~March 22,~~**April 6, 2017 at 5:00 p.m. (ET)**), but **parties interested in submitting a bid for any of the Assets are encouraged to qualify as soon as possible because the Bidding Procedures do not permit any due diligence or financing conditions in Qualifying Bids.** To become a Qualifying Bidder, Potential Bidders must submit sufficient information, as determined by the Debtors, to allow the Debtors, after consultation with the Consultation Parties, to determine that the interested party (i) has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction or pursue confirmation of a chapter 11 plan (as applicable), including, but not limited

---

[1]    To the extent that a Successful Bidder proposes a transaction that will be implemented through a chapter 11 plan, this deadline will be extended until the date that is 120 days from approval of such Successful Bid to provide for confirmation of such a plan.

to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their discretion) and (ii) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder pursuant to section 365 of the Bankruptcy Code in connection with the Sale. Upon receipt of sufficient information, the Debtors, in consultation with the Consultation Parties, shall determine whether a Potential Bidder is deemed a Qualifying Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction.

On or before March 31, 2017 (the "**Designation Deadline**"), the Debtors may, in consultation with the Consultation Parties, to select one or more parties to serve as a Stalking Horse Purchaser to acquire one or more of the Debtors' Assets pursuant to a Stalking Horse Agreement; provided, however, that as to any Stalking Horse Agreement, absent further Court approval, any break-up fees shall be limited to an amount no greater than 3% of the Qualifying Bid and any expense reimbursements in an amount not to exceed $150,000. Upon such selection, the Debtors shall provide, to all parties that have requested notice of the proceedings in these chapter 11 cases, two (2) days' notice of and an opportunity to object to the designation of such Stalking Horse Purchaser and disclosure of bid protections set forth in the Stalking Horse Agreement (such notice which shall be extended by an additional one (1) day for each day that such selection was made prior to the Designation Deadline up to five (5) days), and absent objection, the Debtors selection of such Stalking Horse Purchaser shall be deemed designated without further need for Court approval; provided that notwithstanding the foregoing, the Debtors shall provide not less than five (5) days' notice and opportunity to object if they enter into a Stalking Horse Agreement with an insider, or an affiliate of an insider, of the Debtors.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures: (i) if and when there is one or more Stalking Horse Purchaser, any such designated Stalking Horse Purchasers shall be considered a Qualifying Bidder and any Stalking Horse Agreement shall be a Qualifying Bid (as defined below), and (ii) the DIP Agent, DIP Lenders, Prepetition Term Agent and Prepetition Term Lenders (as defined in the DIP Order, defined below) shall be deemed a Qualifying Bidder.

To the extent that a bid is proposed by a group or committee to which Bankruptcy Rule 2019 applies, such parties must promptly file the statement required by such rule as a condition to becoming a Qualifying Bidder.

### 3. **Bankruptcy Court Jurisdiction**

In conjunction with any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction (as defined below), the acts or omissions of the Debtors, the Investment Banker, and their respective representatives and/or the construction and enforcement of the contemplated transaction documents of such parties, any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial and consented and submitted to the exclusive jurisdiction of the Court, (b) bring any such action or proceeding in the Court,

and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

### 4. Form of Agreement

Each Qualifying Bidder, must include with its bid:

(a)     an executed asset purchase agreement or other agreement for the applicable Sale (each a "**Transaction Agreement**"),[2] clean and marked against the form provided by the Debtors, which must include the following:

     i.   identification of the specific Assets to be acquired either in the Transaction Agreement itself or as a schedule to the Transaction Agreement;

     ii.   full disclosure of the identity of the bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) of any Debtor, along with the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

     iii.   in the case of a Sale, the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and what amount constitutes a credit bid, as well as any liabilities proposed to be paid or assumed by such Qualifying Bidder;

     iv.   identify whether the Qualifying Bidder or the Debtors shall be responsible for (a) any transfer or similar taxes that arise from the sale and (b) any cure costs required to be paid to assume and assign executory contracts and unexpired leases that are included in the bid;

     v.   a commitment to close the transactions contemplated by the Transaction Agreement within 15 days of entry of the order approving the sale; provided that if the proposed transactions will be implemented through a Plan, the Debtors shall have 90 days from the date of court approval of the proposal to obtain confirmation of such Plan, subject to the bidder providing or arranging for necessary funding of operational and restructuring expenses during such period, including as may be required under the Debtors' post-petition debtor-in-possession financing facility and related orders approving the same; and

     vi.   contain a written acknowledgement and representation that the bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review,

---

2     NOTE: The Debtors will file a form of the proposed Transaction Agreement prior to the hearing on approval of the Bidding Procedures.

investigation and/or inspection of any documents and other information in making its bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale, and (iv) has not entered into any agreement with any other potential bidder concerning the Auction or the Sale or discloses any agreement with any other potential bidder concerning the Auction or Sale;

(b)    if the Qualifying Bidder, proposes to implement an acquisition transaction through a Plan, the bid should include a detailed term sheet that includes (i) the applicable Debtors that will be included in the Plan, (ii) a description of the treatment of each class of creditors proposed under the Plan, (iii) the transactions that will be implemented and occur under the Plan, (iv) the consideration to be received by existing creditors, existing equity holders, and any other party receiving distributions under the Plan and the source thereof, (v) any conditions to the occurrence of the effective date of the proposed Plan, (vi) any other matters that are material to the Plan and the implementation thereof, and (vii) any plans for funding the Debtors for the period from and after the closing of the Auction to the confirmation of a Plan, including, to the extent not otherwise satisfied or provided for, payment of any amounts on account of operational costs and restructuring expenses that will mature or otherwise come due in that period; *provided* that such funding shall constitute consideration to be provided for the transaction but shall also be in addition to any cash consideration offered for the Assets; and (viii) the proposed treatment and disposition of any estate causes of action.

## 5.    <u>Due Diligence</u>

Subject to the execution of a confidentiality agreement by a Potential Bidder or Qualifying Bidder, the Debtors will provide any Potential Bidder or Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to the Investment Banker at the contact information provided above.

All due diligence materials provided to Potential Bidders and Qualifying Bidders shall be subject to the limitations on use and disclosure included in any confidentiality agreement entered into pursuant to the Bidding Procedures.

Notwithstanding any limitations provided for in any due diligence materials in the Debtors' possession, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtors and their estates shall be authorized to provide due diligence information to Potential Bidders that have executed a confidentiality agreement.

### 6.    Bid Requirements

To be deemed a "**Qualifying Bid**," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and must satisfy each of the following requirements (each, a "**Bid Requirement**"):

(a)    be in writing;

(b)    fully disclose the identity of the Qualifying Bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) of any Debtor, or has a relationship with insider(s) of the Debtor, and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

(c)    be accompanied by a clean, **executed** copy of a Transaction Agreement that satisfies the requirements of Section 4 of these Bidding Procedures, along with a marked copy of the Transaction Agreement that reflects any variations from the Debtors' form of Transaction Agreement, if any;

(d)    in the case of a Sale, set forth the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and what amount constitutes a credit bid, and identify the liabilities proposed to be paid or assumed by such Qualifying Bidder;

(e)    specify the Assets that are included in the bid and, to the extent a Stalking Horse Purchaser is designated, state that such Qualifying Bidder offers to purchase those Assets included in the applicable Stalking Horse Agreement upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the applicable Stalking Horse Agreement;

(f)    if a Plan is proposed, be accompanied by a commitment to provide funding for operational and restructuring costs through the effective date of such Plan;

(g)    state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until the conclusion of the Sale Hearing unless such party is the Successful Bidder or Back-Up Bidder in which case such offer is offer is formal, binding and unconditional and is irrevocable until the earlier of two (2) business days after the closing of the Sale of the subject Assets or forty-five (45) days after entry of the Sale Order; *provided*, *however*, that if a Qualifying Bidder proposes to implement its transaction through a Plan, such bid shall only remain irrevocable until the conclusion of the Sale Hearing unless that Qualifying Bidder is selected (i) as the Successful Bidder, in which case it shall remain irrevocable until the effective date of such Plan, and (ii) as a Back-Up Bidder in the event that the Successful Bid was for a Sale of Assets, the closing of a Sale of the subject Assets; and *provided further, however*, that any bid for Assets for which the Debtors have selected a Plan bid as the Successful Bid shall only be irrevocable until such

time as the Court enters an order approving the Plan bid as the Successful Bid;

(h)    state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Transaction Agreement or proposed Plan and contain such financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by its proposed Transaction Agreement, including, without limitation, (i) written evidence satisfactory to the Debtors, in consultation with the Consultation Parties, that the Qualifying Bidder has a commitment for financing or other evidence of the ability to close the transactions contemplated by the Transaction Agreement or to consummate a proposed Plan transaction, including the required funding for consummation of such a transaction, with appropriate contact information for such financing sources to verify funds, and (ii) such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to make available, within one (1) business day after such receipt, such information to any counterparties to any contracts or leases being assumed and assigned in connection with the Sale that have requested, in writing, such information;

(i)    identify with particularity each and every executory contract, unexpired lease and unexpired sublease the assumption and assignment of which is a condition to close the transactions contemplated by the proposed Transaction Agreement;

(j)    a commitment to close the transactions contemplated by the Transaction Agreement within 15 days of entry of the order approving the sale; provided that if the proposed transactions will be implemented through a Plan, the Debtors shall have 90 days from the date of court approval of the proposal to obtain confirmation of such Plan, provided further that the Debtors have or will have sufficient liquidity (through appropriate funding provided or arranged by the Qualifying Bidder) to continue operations through that point in time;

(k)    not request or entitle such Qualifying Bidder (other than a Stalking Horse Purchaser) to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment;

(l)    in the event that there is a Stalking Horse Purchaser, and the Qualifying Bidder wishes to bid on the same Assets that are included in the Stalking Horse Agreement, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the purchase price under the Stalking Horse Agreement, plus (B) any break-up fee, expense reimbursement, or other bid protection provided under the Stalking Horse Agreement, plus (C) the greater of $250,000100,000 or 1% of the purchase price under the Stalking Horse Agreement;

(m)     not contain any contingencies of any kind, including, without limitation, contingencies related to financing, due diligence or third party, regulatory or internal approval;

(n)     provide for the Qualifying Bidder to serve as a backup bidder (the "**Back-Up Bidder**") if the Qualifying Bidder's bid is the next highest and best bid (the "**Back-Up Bid**") after the Successful Bid (as defined below), in accordance with the terms of the Transaction Agreement and these Bidding Procedures;

(o)     include written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Transaction Agreement;

(p)     subject to Section 7 of the Bidding Procedures, provide a good faith cash deposit (the "**Deposit**") in an amount equal to the greater of $~~250,000~~200,000 or ten percent (10%) of the total consideration provided under the proposed Transaction Agreement; provided, that the Debtors may alter the Deposit requirement for any party selected as a Stalking Horse Purchaser with leave of the Court; and

(q)     provide for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the Transaction Agreement equal to the amount of the Deposit; and

Subject to the next sentence, a bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors both reserve the right and are authorized to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

### 7.     Credit Bidding

Any party that wishes to submit a credit bid either as a component or as the entirety of the consideration for its bid shall identify the amount of the claim and the nature, extent, and priority of the lien upon which its credit bid is premised. Except where the Debtors have stipulated to the amount of a Secured Claim in a "cash collateral" order entered by the Court, any party submitting a credit bid agrees to provide the Debtors with documentation to evidence the amount, nature, extent, validity and perfection of such claim and lien to the extent it has not already done so. ~~The DIP Agent, DIP Lenders, Prepetition ABL Agent, Prepetition ABL Lenders, Prepetition Term Agent and Prepetition Term Lenders have the right to credit bid the full amount of all Obligations and any Existing Liabilities then outstanding as and to the extent set forth in the DIP Credit Agreement approved on an interim basis pursuant to *the Interim Order Pursuant to 11 U.S.C. §§*~~

*105, 361, 362, 363, 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors and Debtors in Possession to Obtain Postpetition Financing, (II) Authorizing use of Cash Collateral, (III) Granting Liens and Superpriority Claims, (IV) Granting Adequate Protection to Prepetition Secured Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, a (VII) Granting Related Relief* [Docket No. 41] (the "**DIP Order**") and/or as stipulated in the DIP Order or any subsequent order approving the relief set forth in the DIP Order on a final basis.

Any party submitting a credit bid must include in their bid either (i) provisions for the satisfaction of any secured claims that are senior to the secured claim that forms the basis of the credit bid (a "**Senior Secured Claim**") or (ii) evidence that the holder of any Senior Secured Claim has affirmatively consented to any other treatment of its Senior Secured Claim.

Parties entitled to credit bid shall not be required to comply with Paragraphs 6(p), 6(q) or 11(m) of the Bidding Procedures regarding providing a Deposit in connection with their bids solely with respect to the amount of the Secured Claim included as consideration for their bid.

### 8.     Bid Deadline

A Qualifying Bidder that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtors so as to be received on or before **March 22, April 6,** **2017 at 5:00 p.m. (ET)** (the "Bid Deadline"); *provided* that the Debtors may extend the Bid Deadline without further order of the Court, after consulting with the applicable Consultation Parties. All parties wishing to submit a Qualifying Bid shall submit the bid materials required by Section 6 (including the **executed** Transaction Agreement and a certified check or wire transfer for the Deposit amount) to (X) the Investment Banker at the contact information provided above with a copy to counsel to the Debtors, (i) Winston & Strawn LLP, 35 W. Wacker Drive, Chicago, IL 60601-9703, Attn: Daniel J. McGuire (Email: dmcguire@winston.com) and Carrie V. Hardman (Email: chardman@winston.com), and (ii) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, Delaware 19801, Attn: M. Blake Cleary (Email: mbcleary@ycst.com) and Ryan Bartley (Email: rbartley@ycst.com), and (Y) counsel for the Committee, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067-4003, Attn: Jeffrey N. Pomerantz (Email: jpomerantz@pszjlaw.com) and 780 Third Avenue, 34th Floor, New York, NY 10017, Attn: Richard E. Mikels (Email: rmikels@pszjlaw.com), and 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Peter J. Keane (Email: pkeane@pszjlaw.com).

**Any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction. Consistent with the terms of any confidentiality agreements executed by them, all Potential Bidders and Qualifying Bidders shall maintain as confidential, up until the Auction, the fact that they have submitted a bid and the terms and conditions of such bid.**

### 9.     Evaluation of Qualifying Bids

Subject to the situation in which a Consultation Party is also a bidder for some or all of the Assets, the Debtors will deliver, within one (1) business day after receipt thereof, copies of all

bids from Qualifying Bidders to the Consultation Parties other than the Committee. The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid, and shall notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid by no later than two (2) days prior to the Auction Date after receipt of all such information needed to make a determination as to whether such bid is a Qualifying Bid. In the event that a bid is determined not to be a Qualifying Bid, the Qualifying Bidder shall be notified by the Debtors and shall have one (1) day from the date of such notification to modify its bid so as to become a Qualifying Bid; provided that any Qualifying Bid may be improved at the Auction as set forth herein.

Prior to the commencement of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest and best bid for purposes of constituting the opening bid of the Auction (the "**Baseline Bid**" and the Qualifying Bidder submitting the Baseline Bid, the "**Baseline Bidder**"), and shall promptly notify all Qualifying Bidders with Qualifying Bids of the Baseline Bid. The Baseline Bid may be comprised of any combination of Assets, and the Debtors may determine, in consultation with the Consultation Parties, that different Baseline Bids exist for different lots of the Assets. The Debtors shall have the discretion to determine, in consultation with the Consultation Parties, how to proceed when auctioning the Assets in lots that do not include all of Debtors' Assets so as to maximize the value of the Assets.

### 10.    One Qualifying Bid

If only one Qualifying Bid is submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall have the right to request at the Sale Hearing (as defined in the Bidding Procedures Order) that the Court approve the Transaction Agreement from the Qualifying Bidder and the transactions contemplated thereunder or authorize the Debtors to proceed with the Plan proposed (if applicable).

### 11.    Auction

In the event that the Debtors timely receive more than one Qualifying Bid, the Debtors shall conduct an auction (the "**Auction**"). Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest and best bid for the Assets, which will be determined by considering, among other things, the following non-binding and non-exclusive factors: (a) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (b) variations between competing bids and any incremental execution risk that the Debtors reasonably determine, in consultation with the Consultation Parties, exist as a result of those variations; (c) the time needed to close a Sale or other transaction compared with other Qualifying Bids and the cost to the Debtors and their estates of any incremental delay; (d) the total consideration to be received by the Debtors and their estates; (e) the ability to obtain a higher or better offer for an Asset when sold individually or in combination with one or more other Assets; (f) existing funding available or proposed to be provided by the Qualifying Bidder during the period necessary to close the Sale or other transaction; (g) the net benefit to the Debtors' estates, taking into account any Stalking Horse Purchaser's rights to any break-up fee,

expense reimbursement, or similar bid protection; (h) the proposed treatment of existing secured interests in the subject Assets, including any senior indebtedness in the case of a credit bid; (i) the impact on employees, Counterparties (including claims that may be asserted related to rejection and objections to adequate assurance), and other creditors; and (j) any other factors the Debtors may reasonably deem relevant.

Notwithstanding anything to the contrary contained herein, the Debtors reserve the right to determine that no Qualifying Bid was received and/or to not select a Successful Bidder if the Debtors determine, in ~~their sole discretion~~consultation with the Consultation Parties, it is not in the best interests of the Debtors' estates and their creditors to do so.

The Auction shall be governed by the following procedures:

(a)     the Auction shall be held on ~~March 27,~~**April 10,** **2017 at 10:00 a.m. (ET)** (the "**Auction Date**") at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, Delaware 19801;

(b)     only Qualifying Bidders with Qualifying Bids (together, the "**Auction Bidders**") shall be entitled to make any subsequent bids at the Auction;

(c)     the Auction Bidders shall appear in person at the Auction, or through a duly authorized representative.   In the event that a Qualifying Bidder becomes a Successful Bidder or Back-up Bidder, then whomever is attending the Auction on behalf of a Qualifying Bidder must have the authority, immediately after the conclusion of the Auction, to complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which a Successful Bid or Back-up Bid was made;

(d)     only the Debtors, the Auction Bidders, the Consultation Parties, and all creditors of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction.  **The Debtors request that parties who intend to attend the Auction provide counsel for the Debtors at least one (1) business day's written notice of their intent to attend the Auction so that the Debtors can make appropriate arrangements**;

(e)     the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

(f)     the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction, or the Sale;

(g)     bidding on any lot of Assets shall commence at the amount of the Baseline Bid, and the Auction Bidders may submit successive bids in increments of at least ~~the greater of~~ $100,000, _provided_ that:  (i) each such successive bid must be a Qualifying Bid; (ii) if the then-highest and best bid was made by any Stalking Horse Purchaser, such bid shall be deemed to include the sum of the amount of any break-up fee, expense reimbursement, or other bid protections available to such Stalking Horse Purchaser; (iii) any bid made by any Stalking Horse

Purchaser, including in each and every round of bidding, shall be deemed to include the sum of the amount of any break-up fee, expense reimbursement, or other bid protection available to such Stalking Horse Purchaser in addition to the cash and other consideration provided for in its bid; and (iv) the Debtors shall retain the right, in consultation with the Consultation Parties, to modify the bid increment requirements at the Auction;

(h)    the Auction may include individual negotiations by the Debtor, in consultation with the Consultation Parties, with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

(i)    all material terms of the bid that is deemed to be the highest and best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest and best bid;

(j)    the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent bids) for conducting the Auction, *provided* that such rules are (i) not inconsistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, or any applicable order of the Court entered in connection with these chapter 11 cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders;

(k)    the Auction Bidders shall have the right to make additional modifications to their Transaction Agreement in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of any Qualifying Bid that was announced as the then-current highest and best bid for the Assets that are the subject of the bids, and (ii) each Qualifying Bid (unless superseded by a subsequent Qualifying Bid at the Auction) shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until the conclusion of the Sale Hearing, unless such bid is selected as a Successful Bid or Back-Up Bid, which shall remain binding as provided for herein;

(l)    the Debtors shall have the right to request any additional financial information that will allow the Debtors to make a reasonable determination, in consultation with the Consultation Parties, as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by the Transaction Agreement, as may be amended during the Auction, and any further information

that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

(m)   upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, and subject to Court approval, the offer or offers for the Assets that is or are the highest and best from among the Qualifying Bids submitted at the Auction (each a "**Successful Bid**").  The bidder submitting a Successful Bid shall be the "**Successful Bidder**" for such Assets and shall have such rights and responsibilities of the purchaser as set forth in the Transaction Agreement or the equivalent for a Plan bid.  The Debtors shall designate a "Back-Up Bid (or Bids)" (and the corresponding "**Back-Up Bidder (or Bidders)**") in the event that for circumstance in which a Successful Bidder does not close a Sale or the Court does not approve the Successful Bid.  Subject to Section 7 of the Bidding Procedures, within one business day after the conclusion of the Auction, the Successful Bidder(s) and any Back-Up Bidder(s) shall deliver an additional Deposit payment so that each such bidder's total Deposit amount equals 10% (provided that such amount shall be 25% for any party that is selected as a Successful Bidder that has submitted a Plan bid) of the cash amount of the Successful Bid or Back-Up Bid, as applicable; and

(n)   immediately after the conclusion of the Auction and without undue delay, each Successful Bidder and Back-Up Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid or Back-Up Bid was made.

**EACH SUCCESSFUL BID AND ANY BACK-UP BID SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE APPLICABLE SUCCESSFUL BIDDER AND BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL THE TIME PERIOD SPECIFIED IN SECTION 6(D) OF THE BIDDING PROCEDURES.  EACH QUALIFYING BID THAT IS NOT A SUCCESSFUL BID OR BACK-UP BID SHALL BE IRREVOCABLE UNTIL THE CONCLUSION OF THE SALE HEARING, AT WHICH POINT THEY SHALL BE DEEMED WITHDRAWN AND TERMINATED.**

### 12.   Sale Hearing

If an Auction is held, the Successful Bid and any Back-Up Bid will be subject to approval by the Court.  The Sale Hearing to approve the Successful Bid(s) and any Back-Up Bid(s) shall take place on March 30, April 12, 2017 at 10:00 a 1:30 p.m. (ET).  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' chapter 11 cases.

13.    **Backup Bidder**

Notwithstanding any of the foregoing, in the event that a Successful Bid proposes a Sale (rather than a Plan) and the Successful Bidder fails to close the applicable Sale within fifteen (15) days after the Court enters and order approving of the Successful Bid by (or such date as may be extended by the Debtors in consultation with the Consultation Parties), the Back-Up Bid for that Sale will be deemed to be the Successful Bid, the Back-Up Bidder will be deemed to be the Successful Bidder, and the Debtors will be authorized, but not directed, to immediately close that Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

14.    **Return of Deposits**

All Deposits shall be returned to each bidder not selected by the Debtors as a Successful Bidder or Back-Up Bidder for any Sale no later than three (3) business days following the conclusion of the Sale Hearing.  The deposit of a Back-Up Bidder shall be returned within three (3) business days of the closing of the applicable Sale to the Successful Bidder; the deposit of the Successful Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale.  If the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as liquidated damages resulting to the Debtors and their estates for such breach or failure to perform.

15.    **Consultation Parties**

The term "**Consultation Parties**" as used in these Bidding Procedures shall mean, with respect to any ~~Assets, unless such party is a potential bidder for such Assets:~~ Asset: (i) counsel and financial advisor to any official committee appointed in these cases representing parties with an interest in the Assets; (ii) counsel to Wells Fargo Bank, N.A., as DIP Agent and agent under the prepetition first-lien credit facility; and (iii) counsel to Medley Capital Corporation, as agent under the prepetition second-lien credit facility if (a) Medley advises the Debtors in writing that it shall not be a bidder for the Assets, whether by credit bid or otherwise or (b) the Debtors, in consultation with the Committee, determine that the delivery of certain selected information to Medley will facilitate the Sale Process.

For the avoidance of doubt, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment; provided that nothing herein shall constitute a waiver of the Committee's rights to seek a Court order in connection with relief related to these Bidding Procedures.

In the event that any Consultation Party, any member of an official committee or an affiliate of any of the foregoing participates as a potential purchase in the sales process, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived, discharged and released without further action, until such party

advises the Debtors that they are irrevocably withdrawing as a potential purchaser in the sale process at which time such party's consultation rights will be reinstated; <u>provided</u> that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

If a member of an official committee submits a Qualifying Bid, such committee will continue to have consultation rights as set forth in these Bidding Procedures; <u>provided</u> that the committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets in question and shall not provide any information regarding the sale of the Assets to such member.

## 16.    **Reservation of Rights**

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, to allow for bidding on only a portion of the Assets and not all of them, modify bidding increments, to waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), to impose additional terms and conditions with respect to any or all Potential Bidders, to adjourn or cancel the Auction at or prior to the Auction, and to adjourn or cancel the Sale Hearing.

Additionally, the Debtors, in consultation with the Consultation Parties, have the right to terminate the sale and auction process with respect to any or all of the Assets at any time.

## 17.    **Buyer's Brokers/Indemnity**

Each Potential Bidder or Qualifying Bidder warrants and represents that it is a principal acting on its own behalf, and not as a broker, finder, or agent acting on another's behalf. Each Potential Bidder or Qualifying Bidder understands that the Debtors and Investment Banker and their respective representatives have not agreed to pay any brokerage commissions, finder's fee or other compensation in connection with a Potential Bidder's or Qualifying Bidder's possible purchase. In addition, each Potential Bidder or Qualifying Bidder hereby agrees to indemnify, defend and hold the Debtors, Investment Banker, and their respective representatives harmless from and against any and all claims, damages, losses and liabilities, costs and expenses (including reasonable attorneys' fees and disbursements) arising out of any such claims made by third-party brokers on account of or related to such Potential Bidder or Qualifying Bidder.

## 18.    **Disclaimer**

By submitting a bid, each Potential Bidder and Qualifying Bidder agrees to and acknowledges the following terms and conditions with respect to any information received from the Debtors related to the Assets ("**Information**"):

(a)     The Assets are being offered AS-IS, WHERE-IS, with ALL FAULTS.

(b)     The Information has been prepared:

i.    for informational purposes only;

ii.   from materials supplied by the Debtors, local municipalities, and other sources commonly accepted as reliable sources for such type of Information; and

iii.  to assist Potential Bidders and Qualifying Bidders in making their own evaluation of the offering and does not purport to be all-inclusive or to contain all of the information that interested parties may desire.    The Debtors, Investment Banker and the respective officers, directors, employees, affiliates, agents, advisors and representatives (such parties, collectively, "**Representatives**") of the Debtors and Investment Banker have not assumed responsibility for independent verification of any of the information contained herein and have not in fact in any way audited such Information.    In all cases, Potential Bidders and Qualifying Bidders should conduct their own investigation and analysis of the offering, conduct site inspections, and scrutinize the Information.  Potential Bidders and Qualifying Bidders should engage legal counsel, accountants, engineers, and/or such other professional advisors as Potential Bidders and Qualifying Bidders deem appropriate for evaluating the Assets.

(c)    None of Potential Bidders, Qualifying Bidders and their respective Representatives are entitled to rely on the accuracy or completeness of the Information except as provided for in a Transaction Agreement that is authorized and approved by the Court.

(d)    Although the Debtors and Investment Banker have endeavored for the Information to contain data which they believe to be relevant for the purpose of any Potential Bidder's or Qualifying Bidder's investigation, except as expressly set forth in a Transaction Agreement accepted by the Debtors and approved by the Court, none of the Debtors, Investment Banker, Committee, or any of their respective Representatives:

i.    have made or make and expressly disclaim making any written or oral statements, representations, warranties, promises or guarantees, whether express or implied or by operation of law or otherwise, with respect to the Assets or with respect to the accuracy, reliability or completeness of the Information;

ii.   to the fullest extent permitted by law, shall have any liability whatsoever to Potential Bidders, Qualifying Bidders or their Representatives on any basis (including, without limitation, in contract, tort, under federal, foreign or state securities laws or otherwise) as a result of, relating or pertaining to, or resulting or arising from (i) any Potential Bidder's, any Qualifying Bidder's, or any of their Representative's reliance on the Information, (ii) Potential Bidder's, Qualifying Bidder's, or their Representatives' use or non-use of the Information, or (iii) any alleged acts or omissions of

Debtors, Investment Banker or any of their respective Representatives, or any errors or omissions in the Information;

iii.    shall have any liability or responsibility for any decisions made by a Potential Bidder, Qualifying Bidder or any of their Representatives in reliance on any Information;

iv.    will be under any obligation or duty (express or implied) to make available any Information to any Potential Bidders, any Qualifying Bidders, or any of their Representatives; and

v.    will be under any duty or obligation (express or implied) to update, supplement, revise or correct any Information disclosed under these Bidding Procedures, regardless of the circumstances.

(e)    No Except as provided in these Bidding Procedures, no contract or agreement providing for any transaction shall be deemed to exist between a Potential Bidder or Qualifying Bidder and any Debtor unless and until a Qualifying Bidder and the applicable Debtor or Debtors execute and deliver a Transaction Agreement that is authorized and approved by the Court, and Potential Bidders and Qualifying Bidders hereby waive, in advance, any claims (including, without limitation, breach of contract) in connection with any transaction unless and until a Potential Bidder or Qualifying Bidder and the Debtors shall have executed and delivered a Transaction Agreement, which has been authorized and  approved by the Court. The Debtors reserve the right, in their discretion, to reject any and all proposals made by any Potential Bidder or Qualifying Bidder with regard to a transaction, and to terminate discussions and negotiations with a Potential Bidder or Qualifying Bidder at any time.  Subject to the terms of these Bidding Procedures, the Debtors shall be free to establish and change any process or procedure with respect to a transaction as the Debtors in their discretion shall determine (including, without limitation, negotiating with any other interested party and entering into a final definitive agreement relating to a transaction with any other party without prior notice to any Potential Bidder, Qualifying Bidder or any other person).

(f)    Each Debtor, the Investment Banker and the Debtors' other advisors, individually and collectively, have not made any representations or warranties except as expressly set forth in any Transaction Agreement executed by the applicable Debtor, which has been authorized and  approved by the Court.  Potential Bidders and Qualifying Bidders may rely only on the representations and warranties expressly set forth in a Transaction Agreement executed by the applicable Debtor, which has been authorized and  approved by the Court.

**<u>Exhibit 2</u>**

Sale Notice

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------

|  |  |  |
|---|---|---|
|  | : |  |
| **In re** | : | Chapter 11 |
|  | : |  |
|  | : | Case No. 17-10249 (LSS) |
|  | : |  |
| **UNITED ROAD TOWING, INC.** *et al.,* | : |  |
|  | : | Jointly Administered |
|  | : |  |
| **Debtors.**[1] |  |  |

-----------------------------------------------------------

## NOTICE OF SALE OF ASSETS

United Road Towing, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), are seeking to sell their personal property and other related interests (the "**Assets**").  The Debtors will consider proposals to acquire some or all of the Assets through a sale under section 363 of the Bankruptcy Code, the acquisition of the equity of one or more Debtors though a sale under section 363 of the Bankruptcy Code, or a sale of Assets or the acquisition of the equity in one or more Debtors implemented through a chapter 11 plan.  **The Debtors have reserved the right to seek Court approval, with notice and an opportunity for hearing, of, in consultation with the Consultation Parties[2], to select one or more parties to serve as a stalking horse purchaser (each a "Stalking   Horse**

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: United Road Towing, Inc. (6962); URT Holdings, Inc. (8341); City Towing Inc. (2118); URS West, Inc. (3518); Bill & Wag's Wags, Inc. (3518); Export Enterprises of Massachusetts, Inc. (5689); Pat's Towing, Inc. (6964); Keystone Towing, Inc. (6356); Ross Baker Towing, Inc. (9742); URT Texas, Inc. (3716); Mart-Caudle Corporation (1912); Signature Towing, Inc. (3054); WHW Transport, Inc. (3055); URS Southeast, Inc. (7289); URS Northeast, Inc. (7290); URS Southwest, Inc. (7284); Fast Towing, Inc. (5898); E & R Towing & and Garage, Inc. (8500); Sunrise Towing, Inc. (7160); Ken Lehman Enterprises Inc. (1970); United Road Towing of South Florida, Inc. (9186); Rapid Recovery Incorporated (1659); United Road Towing Services, Inc. (2206); Arri Brothers, Inc. (7962); Rancho Del Oro Companies, Inc. (3924); CSCBD, Inc. (2448); URS Leasing, Inc. (9072); UR VMS, LLC (4904); UR Vehicle Management Solutions, Inc. (0402).  The Debtors' mailing address is c/o United Road Towing, Inc., 9550 Bormet Drive., Suite 301, Mokena, Illinois 60448.

[2]   The term "**Consultation Parties**" as used in these Bidding Procedures shall mean, with respect to any Asset: (i) counsel and financial advisor to any official committee appointed in these cases representing parties with an interest in the Assets; (ii) counsel to Wells Fargo Bank, N.A., as DIP Agent and agent under the prepetition first-lien credit facility; and (iii) counsel to Medley Capital Corporation, as agent under the prepetition second-lien credit facility if (a) Medley advises the Debtors in writing that it shall not be a bidder for the Assets, whether by credit bid or otherwise or (b) the Debtors, in consultation with the Committee, determine that the delivery of certain selected information to Medley will facilitate the Sale Process.[1]

**Purchaser") to acquire some or all of the Assets pursuant to a Transaction Agreement between the applicable Debtor(s) and the Stalking Horse Purchaser**.

By order, dated _____ [Docket No. ___] (the "**Bidding Procedures Order**"), the Bankruptcy Court approved certain "**Bidding Procedures**" that govern the sale(s) of, or other transaction(s) to acquire, the Assets by the highest and best bidders.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

The Debtors have requested the Bankruptcy Court to enter an order or orders (the "**Sale Orders**"), which provide, among other things, for the sale of the Assets free and clear of all liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption of certain liabilities.  A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the Sale Orders.

Copies of the Bidding Procedures Order, the Bidding Procedures, and other pleadings are available at the website for the Debtors' claims and noticing agent, Rust Consulting/Omni Bankruptcy at http://www.omnimgt.com/unitedroadtowing.

**Any interested bidder should contact the Debtors' investment banker, SSG Advisors, LLC, c/o Mark E. Chesen (Email: mchesen@ssgca.com) and Michael Gorman (Email: mgorman@ssgca.com).**

<u>**PLEASE TAKE NOTE OF THE FOLLOWING INFORMATION AND IMPORTANT DEADLINES:**</u>

- The deadline to file an objection with the Bankruptcy Court to the proposed sale of the Assets (the "**Sale Objection Deadline**") is ~~March 23,~~**April 5,** 2017 at 4:00 p.m. (ET); *provided* solely with respect to an objection to the conduct of any Successful Auction, the designation of any Successful Bidder or Bid or Back-Up Bidder or Bid, the terms (including price) of such bids, and the Debtors' inability to satisfy the conditions of section 363(f) of the Bankruptcy Code with respect to a Successful Bid or Back-Up Bid (an "**Auction Objection**"), the deadline to file an Auction Objection **shall be 4:00 p.m. (ET) on** ~~March 29,~~**April 11,** 2017.

- Objections must be filed and served in accordance with the Bidding Procedures Order.  In connection with the proposed sale process, interested bidders may be subject to an expedited discovery process.

- The deadline to be qualified as a Qualifying Bidder and to submit a Qualifying Bid is ~~March 22,~~**April 6,** 2017 at 5:00 p.m. (ET).  Subject to Section 7 of the Bidding Procedures with respect to credit bids, all Qualifying Bids must be accompanied with a deposit in an amount equal to the greater of $250,000 ten percent (10%) of the total consideration provided under the proposed Transaction Agreement; *provided*, that the Debtors may alter the Deposit requirement for any party selected as a Stalking Horse Purchaser with leave of the Court.

- An auction for the Assets will commence on ~~March 27,~~**April 10,** 2017 at 10:00 a.m. (ET) at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Rodney Square, Wilmington, DE 19801.

- The Bankruptcy Court will conduct a hearing (the "**Sale Hearing**") to consider the proposed Sales on: ~~March 30,~~**April 12,** 2017 at ~~10:00 a~~**1:30 p**.m. (ET).

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE APPLICABLE OBJECTION DEADLINE SHALL BE DEEMED TO CONSENT TO, AND A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO, THE MOTION, SALE ORDERS, THE PROPOSED TRANSACTIONS, OR THE DEBTORS' CONSUMMATION AND PERFORMANCE OF THE TRANSACTION AGREEMENT(S) (INCLUDING, WITHOUT LIMITATION, THE DEBTORS' TRANSFER OF ANY OF THE ASSETS AND ASSUMPTION AND ASSIGNMENT OF ANY ASSUMED CONTRACTS, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS).**

Dated:  March _____, 2017
        Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/_____

M. Blake Cleary (No. 3614)

Ryan M. Bartley (No. 4985)

Andrew Magaziner (No. 5426)

Rodney Square

1000 North King Street

Wilmington, Delaware 19801

Telephone: (302) 571-6600

Facsimile: (302) 571-1253

-and-

WINSTON & STRAWN LLP

Daniel J. McGuire

(admitted *pro hac vice*)

Grace D. D'Arcy

(admitted *pro hac vice*)

35 West Wacker Drive

Chicago, Illinois 60601

Telephone: (312) 558-5600

Facsimile: (312) 558-5700


Carrie V. Hardman

(admitted *pro hac vice*)

200 Park Avenue

New York, NY 10166

Telephone: (212) 294-6700

Facsimile: (212) 294-4700

01:21542083.3

*Proposed Counsel for Debtors and*

*Debtors in Possession*

**Exhibit 3**

Assumption Notice

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------

|   |   |   |
|---|---|---|
|   | : |   |
| **In re** | : | Chapter 11 |
|   | : |   |
|   | : | Case No. 17-10249 (LSS) |
|   | : |   |
| **UNITED ROAD TOWING, INC.** *et al.*, | : |   |
|   | : |   |
|   | : | Jointly Administered |
|   | : |   |
| Debtors.[1] |   |   |

-----------------------------------------------------------

## NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

United Road Towing, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), are seeking to sell their personal property and other related interests (the "**Assets**"). The Debtors will consider proposals to acquire some or all of the Assets through a sale under section 363 of the Bankruptcy Code, the acquisition of the equity of one or more Debtors though a sale under section 363 of the Bankruptcy Code, or a sale of Assets or the acquisition of the equity in one or more Debtors implemented through a chapter 11 plan. **The Debtors have reserved the right** ~~to seek Court approval, with notice and an opportunity for hearing, of~~ **in consultation with the Consultation Parties[2], to select** one or more parties to serve as a stalking horse purchaser (each a "**Stalking Horse**

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: United Road Towing, Inc. (6962); URT Holdings, Inc. (8341); City Towing Inc. (2118); URS West, Inc. (3518); Bill & ~~Wag's~~ Wags, Inc. (3518); Export Enterprises of Massachusetts, Inc. (5689); Pat's Towing, Inc. (6964); Keystone Towing, Inc. (6356); Ross Baker Towing, Inc. (9742); URT Texas, Inc. (3716); Mart-Caudle Corporation (1912); Signature Towing, Inc. (3054); WHW Transport, Inc. (3055); URS Southeast, Inc. (7289); URS Northeast, Inc. (7290); URS Southwest, Inc. (7284); Fast Towing, Inc. (5898); E & R Towing ~~&~~ and Garage, Inc. (8500); Sunrise Towing, Inc. (7160); Ken Lehman Enterprises Inc. (1970); United Road Towing ~~of~~ South Florida, Inc. (9186); Rapid Recovery Incorporated (1659); United Road Towing Services, Inc. (2206); Arri Brothers, Inc. (7962); Rancho Del Oro Companies, Inc. (3924); CSCBD, Inc. (2448); URS Leasing, Inc. (9072); UR VMS, LLC (4904); UR Vehicle Management Solutions, Inc. (0402). The Debtors' mailing address is c/o United Road Towing, Inc., 9550 Bormet Drive, Suite 301, Mokena, Illinois 60448.

[2]    The term "**Consultation Parties**" as used in these Bidding Procedures shall mean, with respect to any Asset: (i) counsel and financial advisor to any official committee appointed in these cases representing parties with an interest in the Assets; (ii) counsel to Wells Fargo Bank, N.A., as DIP Agent and agent under the prepetition first-lien credit facility; and (iii) counsel to Medley Capital Corporation, as agent under the prepetition second-lien credit facility if (a) Medley advises the Debtors in writing that it shall not be a bidder for the Assets, whether by credit bid or otherwise or (b) the Debtors, in consultation with the Committee, determine that the delivery of certain selected information to Medley will facilitate the Sale Process.[1]

**Purchaser")** to acquire some or all of the Assets pursuant to a Transaction Agreement between the applicable Debtor(s) and the Stalking Horse Purchaser.

The Debtors have requested the Bankruptcy Court to enter an order or orders (the "**Sale Orders**"), which provide, among other things, for the sale of the Assets free and clear of all liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption by the applicable purchaser of certain liabilities. In connection with this marketing and sale process, the Debtors are seeking to assume or assume and assign certain of their executory contracts and unexpired leases related to the Assets (collectively, the "**Assumed Contracts**").

By order, dated ___, 2017 [Docket No. __] (the "**Bidding Procedures Order**"), the Bankruptcy Court approved certain "**Bidding Procedures**" that govern the sale of all of the Assets to the highest and best bidders. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order. Copies of the Bidding Procedures Order, the Bidding Procedures, and other pleadings are available for download from Debtors' claims and noticing agent, at http://www.omnimgt.com/unitedroadtowing (the "**Case Website**").

**You are receiving this Notice because you may be a party to an Assumed Contract. A list of the Assumed Contracts is attached hereto as** Exhibit A. The Debtors have determined the current amounts owing (the "**Cure Amounts**") under each Assumed Contract and have listed the applicable Cure Amounts on Exhibit A. The Cure Amounts are the only amounts proposed to be paid upon any assumption or assumption and assignment of the Assumed Contracts, in full satisfaction of all amounts outstanding under the Assumed Contracts.

**To the extent that a non-Debtor party to an Assumed Contract objects to (i) the assumption and assignment of such party's Assumed Contract or (ii) the applicable Cure Amounts, the non-Debtor counterparty must file and serve an objection in accordance with the Bidding Procedures Order, so as to be received by the undersigned counsel for the Debtors and the other parties specified therein by ~~March 23,~~April 5, 2017 at 4:00 p.m. (ET). See below regarding objections based on adequate assurance and Cure Amounts arising or accruing after ~~June 8, 2016.~~March 31, 2017.**

An auction (the "**Auction**") for the Assets, including the Assumed Contracts, will be conducted on ~~March 23,~~April 10, 2017 at 10:00 a.m. (ET). After the Auction occurs (or after the cancellation of the Auction, if applicable), the Debtors will file and serve a notice that identifies the proposed acquirers of the Assets, and the proposed assignees of any Assumed Contracts. **The deadline to object to adequate assurance of future performance with respect to such proposed assignees, shall be ~~March 29,~~April 11, 2017 at 4:00 p.m. (ET).**

**If no objection is timely received with respect to Cure Amounts or the assumption of an Assumed Contract, (i) a non-Debtor party to a Contract shall be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts with respect to such Contract, (ii) the Cure Amounts set forth on** Exhibit A **attached hereto shall be controlling, notwithstanding anything to the contrary in any Assumed Contract, or any other document, and the non-Debtor party to an Assumed Contract shall be deemed to have consented to the Cure Amounts, (iii) the non-Debtor party to a Contract shall be forever barred and estopped from asserting any other claims related to such Contract against the Debtors or the applicable transferee, or the property of any of them; and (iv) the Counterparty shall be deemed to consent to, and the Debtors shall be permitted to proceed with, the assumption and assignment of the applicable Assigned Contract.**

The Debtors will seek to assume and assign the Assumed Contracts that have been selected by a Successful Bidder or the Stalking Horse Purchaser, if applicable, at a hearing before the Honorable Laurie Selber Silverstein, in the United States Bankruptcy Court for the District of Delaware, 824 North

Market Street, Sixth (6th) Floor, Courtroom #1, Wilmington, Delaware 19801 (a "**Sale Hearing**") on ~~March 30,~~April 12, 2017 at ~~10:00 a~~1:30 p.m. (ET), or such other date as determined by the Debtors in accordance with the terms of the Bidding Procedures Order.  A hearing regarding the Cure Amounts, if any, may be adjourned by agreement of the Debtors and applicable objection party or by order of the Court.

Dated:  March ____, 2017
           Wilmington, Delaware

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
M. Blake Cleary (No. 3614)
Ryan M. Bartley (No. 4985)
Andrew Magaziner (No. 5426)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

WINSTON & STRAWN LLP
Daniel J. McGuire
(admitted *pro hac vice*)
Grace D. D'Arcy
(admitted *pro hac vice*)
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Carrie V. Hardman
(admitted *pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Proposed Counsel for Debtors and
Debtors in Possession*