IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------

|  |  |  |
|---|---|---|
| **In re** | : | Chapter 11 |
|  | : |  |
| **UNITED ROAD TOWING, INC. *et al.*** [1], | : | Case No. 17-10249 (LSS) |
|  | : |  |
| **Debtors.** | : | Jointly Administered |
|  | : |  |

-----------------------------------------------------------    **Docket Ref. No. 12; 41**

**ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507
AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) GRANTING
AUTHORIZATION ON A FINAL BASIS FOR DEBTORS
TO (A) OBTAIN POSTPETITION FINANCING, AND
(B) USE CASH COLLATERAL OF PREPETITION ABL
LENDERS AND GRANTING ADEQUATE PROTECTION,
(II) GRANTING AUTHORIZATION ON A FURTHER INTERIM
BASIS TO USE CASH COLLATERAL OF PREPETITION TERM
LENDERS AND GRANTING ADEQUATE PROTECTION, (III)
MODIFYING THE AUTOMATIC STAY, (IV) GRANTING RELATED
RELIEF, AND (V) SCHEDULING FINAL CASH COLLATERAL HEARING**

Upon the motion (the "***Motion***")[2] of United Road Towing, Inc., on behalf of itself and its affiliated

debtors and debtors-in-possession in the above-captioned cases (collectively, the "***Debtors***"), pursuant to

sections 105, 361, 362, 363, 364, and 507 of Title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (the

"***Bankruptcy Code***"), and in accordance with Rules 2002, 4001 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rule 4001-2 of the Local Rules of Bankruptcy

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: United Road Towing, Inc. (6962); URT Holdings, Inc. (8341); City Towing Inc. (2118); URS West, Inc. (3518); Bill & Wags, Inc. (3518); Export Enterprises of Massachusetts, Inc. (5689); Pat's Towing, Inc. (6964); Keystone Towing, Inc. (6356); Ross Baker Towing, Inc. (9742); URT Texas, Inc. (3716); Mart-Caudle Corporation (1912); Signature Towing, Inc. (3054); WHW Transport, Inc. (3055); URS Southeast, Inc. (7289); URS Northeast, Inc. (7290); URS Southwest, Inc. (7284); Fast Towing, Inc. (5898); E & R Towing and Garage, Inc. (8500); Sunrise Towing, Inc. (7160); Ken Lehman Enterprises Inc. (1970); United Road Towing South Florida, Inc. (9186); Rapid Recovery Incorporated (1659); United Road Towing Services, Inc. (2206); Arri Brothers, Inc. (7962); Rancho Del Oro Companies, Inc. (3924); CSCBD, Inc. (2448); URS Leasing, Inc. (9072); UR VMS, LLC (4904); UR Vehicle Management Solutions, Inc. (0402). The Debtors' mailing address is c/o United Road Towing, Inc., 9550 Bormet Drive, Suite 301, Mokena, Illinois 60448.

[2] Capitalized terms used in this Order but not defined herein shall have the meanings ascribed to such terms in the DIP Credit Agreement (defined below).

Practice and Procedure (the "*Local Rules*") of the United States Bankruptcy Court for the District of Delaware (this "*Court*"), in these chapter 11 cases (the "*Chapter 11 Cases*"), for entry of interim and final orders granting, among other things, the following relief:

**(I)    DIP Financing**

(A)    Authorizing the Debtors to obtain up to $35,250,000 in post-petition financing (the "*DIP Facility*") pursuant to (and in accordance with the terms of) that certain *Senior Secured, Superpriority Debtor-in-Possession Credit Agreement* (a copy of which was attached to the Interim Order and is incorporated herein by reference, and as may be or have been amended, modified, or supplemented and in effect from time-to-time, including that certain Amendment No. 1 to Senior Secured, Superpriority Debtor-in-Possession Credit Agreement ("*Amendment No. 1*," substantially in the form attached hereto as *Exhibit "2"*) collectively, the "*DIP Credit Agreement*"), respectively, by and among the Debtors, as borrowers and/or guarantors, Wells Fargo Bank, National Association, as administrative agent and collateral agent (the "*DIP Agent*"), and each Revolving Lender party thereto (individually a "*DIP Lender*"; and collectively the "*DIP Lenders*"), which may be used for the following purposes in accordance with and as limited by the Approved Budget (as defined below) (subject to permitted variances) and subject to Paragraph 52 hereof (where applicable):

(i)    to pay fees, costs, and expenses as provided in the DIP Financing Agreements (as defined below), including amounts incurred in connection with the preparation, negotiation, execution, and delivery of the DIP Credit Agreement and the other DIP Financing Agreements (as defined below);

(ii)    for general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, and other proper and lawful corporate purposes of the Debtors not otherwise prohibited by the terms hereof and/or the DIP Financing Agreements;

(iii)    treating all undrawn and unexpired Letters of Credit issued under the Prepetition ABL Credit Agreement (as defined below), including any Specified Letter(s) of Credit, as Letters of Credit under the DIP Credit Agreement for all purposes;

(iv)    for making adequate protection payments and other payments as provided in this Order;

(v)    to fund the Prepetition Indemnity Account (as defined below) for the benefit of the Prepetition ABL Agent and the Prepetition ABL Lenders (each as defined below);

(vi)    Intentionally omitted;

(vii)    for the payment in full of all outstanding prepetition amounts under the Prepetition ABL Credit Agreement in the manner set forth in Paragraph 6 hereof (the "***Final Roll-Up***"); and

(viii)    upon either (x) a DIP Maturity Event, so long as all Prepetition ABL Debt and all DIP Obligations have been paid in full in cash, or (y) after the occurrence of a DIP Order Event of Default (as defined below) as provided in Paragraph 29 below, to fund the Carve Out Account (as defined below).

(B)    Authorizing the Debtors to enter into the DIP Credit Agreement and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Agent and/or the DIP Lenders, including, without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("***UCC***") financing statements, and all other related agreements, documents, notes, certificates, and instruments to be executed, delivered, and/or ratified by the Debtors in connection therewith or related thereto (collectively, as may be amended, modified, or supplemented and in effect from time to time, the "***DIP Financing Agreements***");

(C)    Intentionally omitted;

(D)    Granting the DIP Agent, for the benefit of the DIP Lenders, the following Liens (as defined in section 101(37) of the Bankruptcy Code) (the "***DIP Liens***") and claims:

(i)    first priority priming, valid, perfected, and enforceable Liens, subject only to (x) the Carve Out (as defined below), (y) the Permitted Prior Liens (as defined below), and (z) Paragraphs 68 and 69 below, as provided in and as contemplated by this Order and the DIP Financing Agreements;

(ii)    a first-priority senior lien on the Debtors' unencumbered assets, but excluding leasehold interests of the Debtors ("***Leases***") and actions arising under chapter 5 of the Bankruptcy Code; provided, however, (A) upon entry of the Interim Order, the DIP Liens shall include, first-priority senior liens on the proceeds of Leases (the "***Lease Proceeds***"), and (B) the DIP Liens shall include, first-priority senior liens on Specified Bankruptcy Recoveries (defined below); and

(iii)    allowed superpriority administrative claim status in respect of all obligations under the DIP Financing Agreements (collectively, the "***DIP Obligations***"), subject to the Carve Out as provided herein.

(II)    **Use of Cash Collateral** –Authorizing the Debtors' use of "cash collateral" (as such term is defined in section 363 of the Bankruptcy Code ("***Cash Collateral***")) in which the Prepetition ABL Agent and the Prepetition Term Agent (each as defined below) have an interest;

(III)    **Adequate Protection** – Granting certain adequate protection, including, among other things, Adequate Protection Liens and Adequate Protection Superpriority Claims (each as

defined below) and certain other adequate protection as described in this Order, to (A) Wells Fargo Bank, National Association, as administrative agent and as collateral agent (the "*Prepetition ABL Agent*") under that certain Credit Agreement, dated August 21, 2014 (as amended and in effect, the "*Prepetition ABL Credit Agreement*"), by and among the Debtors that comprised the "Loan Parties" thereunder, the Prepetition ABL Agent, and each Revolving Lender party thereto (the "*Prepetition ABL Lenders*"), and (B) Medley Capital Corporation, as term loan agent (the "*Prepetition Term Agent*" and, together with the Prepetition ABL Agent, the "*Prepetition Agents*") under that certain Credit Agreement dated as of August 21, 2014 (as amended and in effect, the "*Prepetition Term Credit Agreement*"), by and among the Debtors that comprised the "Borrowers" and "Guarantors" thereunder, the Prepetition Term Agent, and the lenders party thereto (the "*Prepetition Term Lenders*" and, together with the Prepetition ABL Lenders, the "*Prepetition Secured Lenders*"), in each case limited to the extent of any Diminution In Value (as defined below) of the Prepetition Agents' respective interests in the Prepetition Collateral (as defined below), having the priority set forth in this Order, as adequate protection for (i) the granting of the DIP Liens to the DIP Agent, (ii) the use of Cash Collateral, (iii) subordination to the Carve Out, and (iv) for the imposition of the automatic stay;

(IV)    **Modifying the Automatic Stay –** Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Order; and

(V)    **Waiving Any Applicable Stay –** Waiving any applicable stay (including under Bankruptcy Rule 6004) and provision for immediate effectiveness of this Order;

and upon the *Declaration of Michael Mahar in Support of First Day Pleadings* (the "*First Day Declaration*") filed contemporaneously with the Motion; and this Court having reviewed the Motion and held a hearing with respect to the Motion on February 7, 2017 (the "*Interim Hearing*"); and the Court having entered its "*Interim Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364, And 507 And Fed. R. Bankr. P. 2002, 4001 And 9014 (I) Authorizing Debtor And Debtor In Possession To Obtain Post-Petition Financing, (Ii) Authorizing Use Of Cash Collateral, (III) Granting Liens And Super-Priority Claims, (IV) Granting Adequate Protection To Prepetition Lenders, (V) Modifying The Automatic Stay, (VI) Scheduling A Final Hearing, And (VII) Granting Related Relief*", dated February 7, 2017 [D.R. No. 41] (the "*Interim Order*"); and a final hearing having been held and concluded on March 6, 2017 (the "*Final Hearing*"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c), and (d), and 9014 and as provided in the Interim Order; and upon the Motion, the First Day Declaration, and the record of the Interim Hearing and the Final Hearing, and all objections, if any, to the entry of this Order

having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

I.    **Procedural Findings of Fact**

      A.    **Petition Date.** On February 6, 2017 (the "***Petition Date***"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

      B.    **Jurisdiction and Venue.** This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

      C.    **Statutory Predicates**. The statutory bases for the relief sought herein are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 9014 and the applicable Local Rules.

      D.    **Committee Formation.** An official committee of unsecured creditors (the "***Committee***"), has been appointed in the Chapter 11 Cases.

      E.    **Notice.** The Final Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014, and the Local Rules. Notice of the Final Hearing and the emergency relief requested in the Motion has been provided by the Debtors to certain parties-in-interest in accordance with the Interim Order, including: (i) the Office of the United States Trustee ("***U.S. Trustee***"); (ii) those creditors holding the 30 largest unsecured claims against the Debtors' estates, on a consolidated basis; (iii) counsel to the Prepetition ABL Agent and the DIP Agent; (iv) counsel to the Prepetition Term Agent; and (v) all other secured creditors of record. Notice has been given in accordance with Local Rule 9013-1(m).

## II.   Debtors' Acknowledgements and Agreements

F.      Without prejudice to the rights of parties-in-interest as set forth in Paragraphs 23-26 below,

each of the Debtors admits, stipulates, acknowledges, and agrees that (collectively, Paragraphs F(1) through

F(7) hereof shall be referred to herein as the "*Debtors' Stipulations*"):

(1)     Prepetition ABL Financing Documents.  Prior to the commencement of the Chapter 11 Cases, the Loan Parties (as defined in the Prepetition ABL Credit Agreement) were parties to (A) the Prepetition ABL Credit Agreement, (B) that certain Guaranty and Security Agreement dated August 14, 2014 (as amended, restated, modified and supplemented from time to time and in effect), and (C) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Prepetition ABL Agent or Prepetition ABL Lenders, including, without limitation, that certain Intercreditor Agreement , dated as of August 21, 2014, between and among Wells Fargo Bank, National Association, as "First Lien Agent" and Medley Capital Corporation, as "Second Lien Agent" (the "*Prepetition Intercreditor Agreement*"), control agreements, mortgages, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (as amended, modified or supplemented and in effect, collectively, the "*Prepetition ABL Financing Documents*").

(2)     Prepetition Term Financing Documents.  Prior to the commencement of the Chapter 11 Cases, the Loan Parties (as defined in the Prepetition Term Credit Agreement) were parties to (A) the Prepetition Term Credit Agreement, (B) that certain Guaranty and Security Agreement dated August 21, 2014 (as amended, restated, modified and supplemented from time to time and in effect), and (C) all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the Prepetition Term Agent or the Prepetition Term Lenders, including, without limitation, the Prepetition Intercreditor Agreement, control agreements, mortgages, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (as amended, modified or supplemented and in effect, collectively, the "*Prepetition Term Financing Documents*" and, together with the Prepetition ABL Financing Documents, the "*Prepetition Financing Documents*").

(3)     Prepetition ABL Debt Amount.  As of the Petition Date, the Loan Parties (as defined in the Prepetition ABL Credit Agreement) were liable to the Prepetition ABL Lenders under the Prepetition ABL Financing Documents, on account of "Revolving Loans" in the approximate principal amount of $13.84, million, plus letters of credit in the approximate stated amount of not less than $6.08 million, plus interest accrued and accruing at the default rate, costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, leasing, hedging and other banking or financial services secured by the Prepetition ABL Financing Documents (collectively the "*Prepetition ABL Debt*").

(4)     Prepetition Term Loan Debt Amount.  As of the Petition Date, the Loan Parties (as defined in the Prepetition Term Credit Agreement) were liable to the Prepetition Term Lenders in the total aggregate principal amount of $17 million, plus interest accrued and accruing, costs, expenses, and fees (including attorneys' fees and legal expenses).  All obligations of the Loan Parties (as defined in the Prepetition Term Credit Agreement) arising under the Prepetition Term Credit Agreement or any other Prepetition Term Financing Document, including all principal,

accrued or hereafter accruing interest, fees, and costs, payable under the Prepetition Term Credit Agreement shall hereinafter be referred to as the "***Prepetition Term Loan Debt***" and, together with the Prepetition ABL Debt, the "***Prepetition Secured Debt***."

(5)    Prepetition Collateral.  To secure the Prepetition Secured Debt, each of the Loan Parties (as defined in the respective Prepetition ABL Credit Agreement and Prepetition Term Credit Agreement) granted continuing security interests and Liens (collectively, the "***Prepetition Liens***") to the Prepetition Agents and the Prepetition Secured Lenders upon substantially all of its property, including the following, all as defined in the Prepetition Financing Documents (collectively, the "***Prepetition Collateral***"), including, without limitation:

> All: (a) Accounts, (b) Books, (c) Chattel Paper (d) Commercial Tort Claims, (e) Deposit Accounts, (f) Equipment, (g) Farm Products, (h) Fixtures, (i) General Intangibles, (j) Inventory, (k) Investment Property, (l) Intellectual Property, (m) Negotiable Collateral, (n) Pledged Interests (including all of such Debtor's Operating Agreements and Pledged Partnership Agreements), (o) Securities Accounts, (p) Supporting Obligations, (q) all of such Debtor's money, Cash Equivalents, or other assets of such Debtor that now or hereafter come into the possession, custody, or control of the Prepetition ABL Agent (or its agent or designee) or any other Prepetition ABL Lender, (r) all of the proceeds (as such term is defined in the Code) and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance or Commercial Tort Claims covering or relating to any or all of the foregoing, and any and all Accounts, Books, Chattel Paper, Deposit Accounts, Equipment, Fixtures, General Intangibles, Inventory, Investment Property, Intellectual Property, Negotiable Collateral, Pledged Interests, Securities Accounts, Supporting Obligations, money, or other tangible or intangible property resulting from the sale, lease, license, exchange, collection, or other disposition of any of the foregoing, the proceeds of any award in condemnation with respect to any of the foregoing, any rebates or refunds, whether for taxes or otherwise, and all proceeds of any such proceeds, or any portion thereof or interest therein, and the proceeds thereof, and all proceeds of any loss of, damage to, or destruction of the above, whether insured or not insured, and, to the extent not otherwise included, any indemnity, warranty, or guaranty payable by reason of loss or damage to, or otherwise with respect to any of the foregoing (the "Proceeds").  Without limiting the generality of the foregoing, the term "Proceeds" includes whatever is receivable or received when Investment Property or proceeds are sold, exchanged, collected, or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes proceeds of any indemnity or guaranty payable to any Debtor or the Prepetition ABL Agent from time to time with respect to any of the Investment Property, and (s) any of the foregoing, whether now owned or now due, or in which any Debtor has an interest, or hereafter acquired, arising, or to become due, or in which any Debtor obtains an interest, and all products, Proceeds, substitutions, and Accessions of or to any of the foregoing.

(6)    Prepetition Liens.  The Prepetition Liens of the Prepetition Agents and the Prepetition Secured Lenders have priority over all other Liens except (x) valid, enforceable, non-avoidable and perfected Liens in existence on the Petition Date that, after giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition Liens, and (y) valid, enforceable and non-avoidable Liens in existence on the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and after

giving effect to any intercreditor or subordination agreement, are senior in priority to the Prepetition Liens (collectively, the "**Permitted Prior Liens**").

(a)    As of the Petition Date, (i) the Prepetition Liens are valid, binding, enforceable, and perfected first priority Liens, subject only to any Permitted Prior Liens, and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; provided, however, the Debtors are not aware that the Prepetition Agents have undertaken the steps necessary to perfect a security interest in any prepetition Commercial Tort Claims, (ii) (a) the Prepetition Secured Debt constitutes legal, valid, and binding obligations of the Loan Parties (as defined in the respective Prepetition ABL Credit Agreement and Prepetition Term Credit Agreement), enforceable in accordance with the terms of the Prepetition Financing Documents (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), (b) no offsets, defenses, or counterclaims to any of the Prepetition Secured Debt exists, and (c) no portion of the Prepetition Secured Debt is subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (iii) the Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Agents or any Prepetition Secured Lender with respect to the Prepetition Financing Documents or otherwise, whether arising at law or at equity, including, without limitation, any recharacterization, subordination, disallowance, avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive, of the Bankruptcy Code, and (iv) the Prepetition Secured Debt constitutes allowed claims.

(b)    On the date that this Order is entered, each of the Debtors has waived, discharged, and released the Prepetition Agents and the Prepetition Secured Lenders, together with their respective successors, assigns, subsidiaries, parents, affiliates, agents, attorneys, officers, directors, and employees (collectively, the "**Released Parties**"), of any right the Debtors may have (i) to challenge or object to any of the Prepetition Secured Debt, (ii) to challenge or object to the Prepetition Liens or any other security for the Prepetition Secured Debt, and (iii) to bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action arising out of, based upon, or related to the Prepetition Financing Documents, or otherwise.

(c)    None of the Debtors possesses and will not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description against any of the Released Parties, including anything which would in any way affect the validity, enforceability, priority, and non-avoidability of any of the Prepetition Financing Documents or the Prepetition Liens, or any claim of the Prepetition Secured Lenders pursuant to the Prepetition Financing Documents, or otherwise.

(7)    <u>Cash Collateral</u>. The Prepetition Agents have a continuing security interest in and Lien on all or substantially all of the Loan Parties' (as defined in the respective Prepetition ABL Credit Agreement and Prepetition Term Credit Agreement) Cash Collateral, including all amounts on deposit in the Loan Parties' (as defined in the respective Prepetition ABL Credit Agreement and Prepetition Term Credit Agreement) banking, checking, or other deposit accounts and all proceeds of the Prepetition Collateral, to secure the Prepetition Secured Debt.

**III.**    <u>**Findings Regarding the Post-Petition Financing**</u>.

      **G.**    **Need for Post-Petition Financing**. An immediate need exists for the Debtors to obtain funds from the DIP Facility and to use Cash Collateral in order to continue operations and to administer and preserve the value of their estates for the benefit of their stakeholders. The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets, and to maximize a return for all creditors requires the availability of working capital from the DIP Facility and use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, their estates and their stakeholders.

      **H.**    **No Credit Available on More Favorable Terms**. As discussed in the First Day Declaration, the Debtors have been unable to obtain any of the following:

          (1)    unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense,

          (2)    credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code,

          (3)    credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or

          (4)    credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien,

in each case, on more favorable terms and conditions than those provided in the DIP Credit Agreement and this Order. The Debtors are unable to obtain credit from the DIP Lenders without granting to the DIP Agent, for the benefit of the DIP Lenders, the DIP Protections (as defined below).

      **I.**    **Prior Liens**. Nothing herein shall constitute a finding or ruling by this Court that any Permitted Prior Liens or Prepetition Liens (subject to Paragraphs 23-26 below) are valid, senior, perfected, or unavoidable. Moreover, except as provided in Paragraphs 23-26 below, nothing shall prejudice the following:

          (1)    the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agents, Prepetition Secured Lenders, and any Committee to challenge the validity, priority, perfection, and extent of any such Permitted Prior Liens, or

(2)     the rights of any Committee or any other party-in-interest (other than the Debtors) with requisite standing to challenge the validity, priority, perfection, and extent of the Prepetition ABL Debt, Prepetition Term Debt, and/or the Prepetition Liens as set forth in this Order.

J.    **Adequate Protection for Prepetition Secured Lenders.** As a result of the granting of the DIP Liens, the incurrence of the DIP Obligations, subordination to the Carve Out, the use of Cash Collateral authorized herein, and the imposition of the automatic stay, the Prepetition Agents and Prepetition Secured Lenders are entitled to receive adequate protection pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, in each case limited to the extent of any Diminution In Value of their interests in the Prepetition Collateral (including Cash Collateral) during these Chapter 11 Cases. As adequate protection, the Prepetition Secured Lenders will receive the Adequate Protection (as defined below) described in Paragraph 16 of this Order.

K.    **Prepetition Secured Lenders Governed By Prepetition Intercreditor Agreement.** The Prepetition ABL Agent and Prepetition Term Agent are parties to the Prepetition Intercreditor Agreement. The Prepetition Intercreditor Agreement is a "subordination agreement" within the meaning of section 510(a) of the Bankruptcy Code in the Chapter 11 Cases. The Prepetition Agents and Prepetition Secured Lenders have stipulated that their respective interests in the Prepetition Collateral shall continue to be governed by the Prepetition Intercreditor Agreement.

L.    **Prepetition Agents' and Prepetition Secured Lenders' Consent.** Solely on the terms and conditions set forth in the Interim Order, this Order, the DIP Financing Agreements, and in accordance with the Prepetition Financing Documents, the Prepetition Secured Lenders are prepared to consent to: (i) the imposition of liens on all of the Debtors' assets under section 364(d)(l) of the Bankruptcy Code in favor of the DIP Agent, for the benefit of itself and the DIP Lenders, which liens will prime the Prepetition Liens on the Prepetition Collateral and (ii) the Debtors' use of the Prepetition Collateral (including the Cash Collateral) on final basis as concerns the interests of the Prepetition ABL Agent and Prepetition ABL Lenders, respectively (but on a continued interim basis only until the entry of a Final Cash Collateral Order as concerns the interests of the Prepetition Term Agent and Prepetition Term Lenders, respectively, as provided herein), provided that the Court authorizes the Debtors, pursuant to sections 361, 363 and 364( d)

of the Bankruptcy Code, to grant to the Prepetition Agents, for the benefit of the Prepetition Secured Lenders, as and for adequate protection, but each subject to the DIP Protections and the Carve-Out, the forms of adequate protection set forth in Paragraph 16 hereof.

**M.**     **Adequacy of the Approved Budget.**  The Debtors have demonstrated that the budget, the short form of which is attached hereto as **_Exhibit "1"_** (as the same may be modified, supplemented, or updated from time to time consistent with the terms of the DIP Credit Agreement, this Order, the "**_Approved Budget_**")[3] is adequate, considering all the available assets, to pay the administrative expenses due and accruing during the period covered by the Approved Budget (as same may be amended from time to time in accordance with the terms of the DIP Credit Agreement and/or this Order, as applicable; the "**_Budget Period_**").

**N.**     **Conditions Precedent to DIP Lenders' Extension of Financing.**  The DIP Lenders have indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and the other DIP Financing Agreements. The DIP Lenders are good faith financiers.  The DIP Lenders' claims, superpriority claims, security interests, and Liens and other protections granted pursuant to this Order and the DIP Facility shall be entitled to the full protections available under section 364(e) of the Bankruptcy Code.

**O.**     **Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code.**  The extension of credit under the DIP Facility, the DIP Credit Agreement, and the other DIP Financing Agreements, and the fees paid and to be paid thereunder (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and (iii) are supported by reasonably equivalent value and consideration.  The DIP Facility was negotiated in good faith and at arms' length between the Debtors, the DIP Agent, and the DIP Lenders, and the use of the proceeds to be extended under the DIP Facility and the consent to use of Cash Collateral and Adequate Protection under this Order will be so extended in good faith, and for valid

---

[3]    All backup, schedules, and other detail contained in the Approved Budget is incorporated by reference, including accruals for professional fee estimates.

business purposes and uses, as a consequence of which the DIP Agent, DIP Lenders, Prepetition Agents and Prepetition Secured Lenders are entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

P.      **Relief Essential; Best Interest.**  The relief requested in the Motion (and as provided in this Order) is necessary, essential and appropriate for the continued operation of the Debtors' business and the management and preservation of the Debtors' assets during the Budget Period.  It is in the best interest of the Debtors' estates that the Debtors be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement and the other DIP Financing Agreements.  The Debtors have demonstrated good and sufficient cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

**I.**

**DIP FINANCING**

A.    **Approval of Entry into the DIP Facility**

1.      The Motion is granted on a final basis (A) with respect to approval of the DIP Facility as between the Debtors and the DIP Agent and DIP Lenders, including as provided in the DIP Credit Agreement and the DIP Financing Documents, (B) with respect to the use of Cash Collateral in which the Prepetition ABL Agent and Prepetition ABL Lenders claim and interests, and granting adequate protection described herein in consideration thereof, and (C) and as otherwise set forth in this Order. Any objections or responses to the relief requested in the Motion that have not been previously resolved or withdrawn, waived or settled are hereby overruled on the merits and denied with prejudice; _provided_, that (a) the provisions herein relating to the Debtors' continued use of Cash Collateral of the Prepetition Term Agent and Prepetition Term Lenders shall be continued on a further interim basis until the time of a Final Cash Collateral Hearing (as defined below), and (b) the Committee's right to object solely as to issues affecting the Prepetition Term Agent and Prepetition Term Lenders (including as provided in Paragraphs 27, 31, 46 and 57 hereof; collectively, the "_**UCC-Prepetition Term Lender Matters**_") shall be held in abeyance until

the Final Cash Collateral Hearing, at which time the Court will consider entry of an order with respect to the UCC-Prepetition Term Lender Matters (such order, the "***Final Cash Collateral Order***"); provided further, that the rights and interests of the Prepetition Term Agent and Prepetition Term Lenders, respectively, with regard to the Debtors' continued use of Cash Collateral in which they claim an interest shall be and the same hereby are preserved and reserved in all respects, including, but not limited to, any opposition they may have with respect to any UCC-Prepetition Term Lender Matters that may be asserted by the Committee. Subject to the foregoing, the Interim Order is hereby ratified and affirmed in all respects. This Order shall become effective immediately upon its entry.

2.      The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Credit Agreement and the other DIP Financing Agreements, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Order and to execute and deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Order and the DIP Financing Agreements. The Debtors are hereby authorized to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the respective DIP Financing Agreements as such become due, and, subject to the provisions of Paragraph 52 below, reasonable attorneys', financial advisors', consultants', and accountants' fees and disbursements as provided for in the respective DIP Financing Agreements, which amounts shall not otherwise be subject to approval of this Court. Upon the entry of this Order, all letters of credit outstanding under the Prepetition ABL Financing Documents, including Specified Letter(s) of Credit, shall be deemed to have been issued pursuant to and shall be deemed to be outstanding under the DIP Credit Agreement.

**B.      Authorization to Borrow**

3.      In order to enable them to continue to operate their businesses during the Budget Period, and subject to the terms and conditions of this Order, the respective DIP Financing Agreements, and the Approved Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), the Debtors are hereby authorized to (a) incur DIP Obligations in accordance with the

terms and conditions of the DIP Financing Agreements, and (b) use the Cash Collateral, in each case pursuant to the terms, conditions, and procedures set forth in the DIP Credit Agreement, the Interim Order and this Order but subject to the Final Cash Collateral Order.

**C.      Application of DIP Facility' Proceeds**

4.        The advances under the DIP Facility shall be used in each case in a manner consistent with the terms and conditions of the respective DIP Financing Agreements and in accordance with and as may be limited by the Approved Budget (subject to any permitted variances thereunder), solely as follows:

(a)      to pay fees, costs, and expenses as provided in the respective DIP Financing Agreements, including amounts incurred in connection with the preparation, negotiation, execution, and delivery of the DIP Credit Agreement, the other DIP Financing Agreements, and this Order;

(b)      for general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Cases, and other proper and lawful corporate purposes of the Debtors not otherwise prohibited by the terms hereof or under the DIP Credit Agreement and/or the other DIP Financing Agreements;

(c)      for making payments in respect of Adequate Protection and other payments as provided in this Order;

(d)      to fund the Prepetition ABL Indemnity Account (as provided in Paragraph 16 below);

(e)      for the payment of the Final Roll-Up; and

(f)      to fund the Carve Out Account (as defined below).

**D.      Roll-Up Authorization**

5.        Reserved.

6.        Final Roll-Up.  Upon entry of this Order, and subject to the rights of parties set forth in Paragraphs 23-26 below, the Debtors shall use the proceeds of the next advance under the DIP Credit Agreement to satisfy all Prepetition ABL Debt in full in accordance with the terms of the Prepetition ABL Credit Agreement ("*Final Roll-Up*"). The Final Roll-Up will be without prejudice to the rights of any third party, including, without limitation, any Committee, to seek an appropriate remedy from the Court upon a successful Challenge, including, without limitation, "clawing back" such amounts or obligations.

**E.      Conditions Precedent**

7.      The DIP Lenders shall not have any obligation to make any loan or advance under the DIP Facility during the Budget Period unless the conditions precedent to make such loan under the respective DIP Financing Agreements have been satisfied in full or waived in accordance therewith.

**F.      The DIP Liens**

8.      Pursuant to sections 361, 362, 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, and subject to the limitations set forth in Paragraph 9 below (and such limitations as may appear in the Prepetition Intercreditor Agreement, if any), effective immediately upon the entry of this Order the DIP Agent is hereby granted the DIP Liens (which Liens are subject to the Permitted Prior Liens, the Carve Out, and Paragraphs 68-69 below) for the ratable benefit of the DIP Lenders, which DIP Liens constitute priming, first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interests and Liens senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates, that are senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates, and except as otherwise expressly provided in this Order and the Prepetition Intercreditor Agreement, upon and to all of the following (but excluding the "Excluded Assets," as defined in the Guaranty and Collateral Agreement) (collectively, the "***DIP Collateral***"):

(a)      The Collateral, as defined in the DIP Financing Agreements, including:

All: (a) Accounts, (b) Books, (c) Chattel Paper (d) Commercial Tort Claims, (e) Deposit Accounts, (f) Equipment, (g) Farm Products, (h) Fixtures, (i) General Intangibles, (j) Inventory, (k) Investment Property, (l) Intellectual Property, (m) Negotiable Collateral, (n) Pledged Interests (including all of such Debtor's Operating Agreements and Pledged Partnership Agreements), (o) Securities Accounts, (p) Supporting Obligations, (q) all of such Debtor's money, Cash Equivalents, or other assets of such Debtor that now or hereafter come into the possession, custody, or control of the Prepetition ABL Agent (or its agent or designee) or any other Prepetition ABL Lender, (r) all of the proceeds (as such term is defined in the Code) and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance or Commercial Tort Claims covering or relating to any or all of the foregoing, and any and all Accounts, Books, Chattel Paper, Deposit Accounts, Equipment, Fixtures, General Intangibles, Inventory, Investment Property, Intellectual Property, Negotiable Collateral, Pledged Interests, Securities Accounts, Supporting Obligations, money, or other tangible or intangible property resulting from the sale, lease, license, exchange, collection, or other disposition of any of the foregoing, the

proceeds of any award in condemnation with respect to any of the foregoing, any rebates or refunds, whether for taxes or otherwise, and all proceeds of any such proceeds, or any portion thereof or interest therein, and the proceeds thereof, and all proceeds of any loss of, damage to, or destruction of the above, whether insured or not insured, and, to the extent not otherwise included, any indemnity, warranty, or guaranty payable by reason of loss or damage to, or otherwise with respect to any of the foregoing (the "Proceeds").  Without limiting the generality of the foregoing, the term "Proceeds" includes whatever is receivable or received when Investment Property or proceeds are sold, exchanged, collected, or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes proceeds of any indemnity or guaranty payable to any Debtor or the Prepetition ABL Agent from time to time with respect to any of the Investment Property, and (s) any of the foregoing, whether now owned or now due, or in which any Debtor has an interest, or hereafter acquired, arising, or to become due, or in which any Debtor obtains an interest, and all products, Proceeds, substitutions, and Accessions of or to any of the foregoing.

(b)     Any recoveries of the Debtors, by settlement or otherwise, in respect of claims and causes of action to which the Debtors may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtors or the estates of the Debtors under chapter 5 of the Bankruptcy Code (collectively, the "*Bankruptcy Recoveries*"), but only: (A) with respect to such recoveries as arise under section 549 of the Bankruptcy Code, the full amount of any such recoveries, and (B) with respect to Bankruptcy Recoveries arising under all other sections of chapter 5 of the Bankruptcy Code, the amounts necessary to reimburse the DIP Lenders, as the case may be, for the amount of the Carve Out, if any, used to finance the pursuit of such recovery ((A) and (B) being referred to collectively as the "*Specified Bankruptcy Recoveries*")

For the avoidance of doubt, the DIP Superpriority Claims (as defined below) and the Adequate Protection Superpriority Claims (as defined below) of the Prepetition Agents and the Prepetition Secured Lenders as provided in Paragraph 16 below shall not be payable out of all Bankruptcy Recoveries other than Specified Bankruptcy Recoveries as provided herein.

(c)     The Lease Proceeds, but not the Leases themselves, whether or not so perfected prior to the Petition Date.

(d)     Any cash held in any escrow or other account of the Debtors in respect of accrued and/or accruing employee benefit obligations as provided for in the Approved Budget; provided, however, that no party may exercise remedies with respect to such cash or accounts under this Order or the DIP Financing Agreements absent further order of the Court.

**G.     DIP Lien Priority**

9.      The DIP Liens to be created and granted to the DIP Agent, as provided herein, are:

(a)     created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code,

(b)      other than as set forth in (c) below, first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or Lien or claim to the DIP Collateral, and

(c)      subject to the Prepetition Intercreditor Agreement, subject only to (i) the Carve Out, (ii) the Permitted Prior Liens, and (iii) Paragraphs 68-69 below.

The DIP Liens shall secure all DIP Obligations, and the proceeds of the DIP Collateral shall be applied in the same order and priority set forth in the respective DIP Financing Agreements, subject to the Prepetition Intercreditor Agreement, and the terms of this Order.  The DIP Liens shall not be made subject to or *pari passu* with any Lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases, upon the conversion of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the foregoing (each a "*Successor Case*"), and/or upon the dismissal of the Chapter 11 Cases.  The DIP Liens shall not be subject to sections 510(c), 549, 550, or 551 of the Bankruptcy Code.

10.      Except as otherwise expressly set forth herein, (x) the DIP Agent and the DIP Lenders, the Prepetition Agents and the Prepetition Secured Lenders shall remain bound by the terms and conditions set forth in the Prepetition Intercreditor Agreement, including, without limitation, with respect to the Prepetition Collateral and the DIP Collateral, (y) nothing contained in this Order shall be deemed to abrogate or limit the respective, rights, claims and obligations of each of the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Secured Lenders under the Prepetition Intercreditor Agreement, and (z) the Prepetition Intercreditor Agreement shall apply and govern the respective rights, obligations, and priorities of each of the DIP Agent, the DIP Lenders, the Prepetition Agents and the Prepetition Secured Parties in these Chapter 11 Cases.

**H.      Enforceable Obligations**

11.      The respective DIP Financing Agreements shall constitute and evidence the valid and binding obligations of the Debtors, and shall be enforceable against the Debtors, their estates, and any successors thereto, and their creditors in accordance with their terms.

**I.    Protection of the DIP Lenders and Other Rights**

12.    From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the respective DIP Financing Agreements and this Order, in compliance with and as limited by the Approved Budget (subject to any permitted variances thereunder).

**J.    Superpriority Administrative Claim Status**

13.    Subject to the Carve Out, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "**_DIP Superpriority Claim_**" and, together with the DIP Liens, collectively, the "**_DIP Protections_**"), in each case with priority in the Chapter 11 Cases under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113 and 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy or attachment; provided, however, that (i) the DIP Protections shall not attach to any Bankruptcy Recoveries other than the Specified Bankruptcy Recoveries and (ii) shall be subject to the Prepetition Intercreditor Agreement.

14.    Other than the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Protections or the obligations under the respective DIP Financing Agreements or with any other claims of the DIP Lenders arising hereunder or thereunder.

## II.

## AUTHORIZATION FOR USE OF CASH COLLATERAL; ADEQUATE PROTECTION

15.    Pursuant to the terms and conditions of this Order, the respective DIP Financing Agreements, and in accordance with and as may be limited by the Approved Budget (subject to permitted variances), the Debtors are authorized to use Cash Collateral and to use the advances under the DIP Facility during the Budget Period and terminating upon notice being provided by the DIP Agent to the Debtors that a DIP Order Event of Default (as defined below) has occurred and is continuing in the manner set forth in Paragraphs 36 and 38 below.

16.    As adequate protection for (a) any diminution in value of the interests of the Prepetition Secured Lenders in the Prepetition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, and the incurrence of the DIP Obligations, the subordination to the Carve Out, and the Debtors' use of Cash Collateral, and (b) any other diminution in value arising out of the imposition of the automatic stay or the Debtors' use, sale, depreciation, or disposition of the Prepetition Collateral and Cash Collateral during the pendency of these Chapter 11 Cases, including the disposition of assets as contemplated by the Sale Motion (collectively, "*Diminution In Value*"), the Prepetition Agents and Prepetition Secured Lenders shall receive adequate protection as follows (collectively, "*Adequate Protection*"):

(a)    **Adequate Protection Liens**. Pursuant to sections 361 and 363(e) of the Bankruptcy Code, and solely to the extent of the Diminution In Value of the respective interests of the Prepetition Agents and the Prepetition Secured Lenders in the Prepetition Collateral (including Cash Collateral):

(i) the Prepetition ABL Agent (for the benefit of the Prepetition ABL Lenders) shall have, subject to the terms and conditions set forth below, valid, perfected, and enforceable additional and replacement security interests and Liens in the Prepetition Collateral and the DIP Collateral (the "*ABL Adequate Protection Liens*") which shall be (1) junior only to the Carve Out, the DIP Liens securing the DIP Obligations (but subject to the provisions of Paragraph 55 hereof), and Permitted Prior Liens (including for these purposes under Paragraphs 68-69 hereof), and (2) in all instances, subject to the Prepetition Intercreditor Agreement; and

(ii) the Prepetition Term Agent (for the benefit of the Prepetition Term Lenders) shall have, subject to the terms and conditions set forth below, valid, perfected, and enforceable additional and replacement security interests and Liens in the Prepetition Collateral (the "*Term Adequate Protection Liens*"; and together with the ABL Adequate Protection Liens, the "*Adequate Protection Liens*") which shall be (1) junior only to the

19

Carve Out, the DIP Liens securing the DIP Obligations, the ABL Adequate Protection Liens, the Prepetition ABL Liens, and Permitted Prior Liens (including for these purposes under Paragraphs 68-69 hereof), and (2) in all instances, subject to the Prepetition Intercreditor Agreement.

(b)    **Adequate Protection Superpriority Claim**. Solely to the extent of any Diminution In Value of the interests of the Prepetition Agents and the Prepetition Secured Lenders in the Prepetition Collateral,

(i) the Prepetition ABL Agent (for the benefit of the Prepetition ABL Lenders) shall have an allowed superpriority administrative expense claim (the "***ABL Adequate Protection Superpriority Claim***"), which shall have priority (except with respect to (1) the Carve Out and (2) the DIP Superpriority Claim) in the Chapter 11 Cases under sections 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113 and 1114 of the Bankruptcy Code; and

(ii) the Prepetition Term Agent (for the benefit of the Prepetition Term Lenders) shall have an allowed superpriority administrative expense claim (the "***Term Adequate Protection Superpriority Claim***"; and together with the ABL Adequate Protection Superpriority Claim, the "***Adequate Protection Superpriority Claims***"), in each case which shall have priority (except with respect to (1) the Carve Out, (2) the DIP Superpriority Claim, and (3) the ABL Adequate Protection Superpriority Claim) in the Chapter 11 Cases under sections 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code, and, subject to entry of the Final Cash Collateral Order as set forth in paragraphs 46 and 57, 506(c) and 552.

Other than the DIP Liens, the DIP Superpriority Claims, and the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Cases, or in any Successor Case, will be senior to, prior to, or on parity with the Adequate Protection Superpriority Claims.

(c)    **Adequate Protection Payments**.

(i)    Until the repayment in full of the obligations under the Prepetition ABL Credit Agreement (including pursuant to the Final Roll-Up), on the last business day of each month, the Prepetition ABL Agent shall receive, for the ratable benefit of the Prepetition ABL Lenders, payment of all accrued and unpaid interest at the default rate set forth in the Prepetition ABL Credit Agreement;

(ii)    Subject to the provisions of Paragraph 52 hereof, the Prepetition ABL Agent and the Prepetition ABL Lenders shall be reimbursed, on a current basis, for all reasonable and documented out-of-pocket costs and expenses of the financial advisors and

outside attorneys engaged by such parties, solely to the extent permitted under the Prepetition ABL Credit Agreement; and

(iii)    Anything herein to the contrary notwithstanding, if the claims of the Prepetition ABL Agent and Prepetition ABL Lenders are determined by this Court to have been undersecured as of the Petition Date, then the Court reserves the ability to reallocate and re-apply any payments authorized pursuant to this subclause to reduce the outstanding principal balance owed under the Prepetition ABL Credit Agreement to the Prepetition ABL Agent and Prepetition ABL Lenders, as their interests may appear, or as otherwise determined by this Court.

(d)    **Adequate Protection With Respect to Sales.**

(i)    The comprehensive sale process to be implemented under section 363 of the Bankruptcy Code as contemplated by the Sale Motion (as defined in the DIP Credit Agreement), including the timeline and milestones contained therein, shall not be modified in a manner that is adverse to the interests of the DIP Agent, DIP Lenders, Prepetition ABL Agent and/or Prepetition ABL Lenders (a) without the prior written consent of the Prepetition ABL Agent and the DIP Agent, respectively, or (b) in the absence of such consent, by further Order of the Court on appropriate notice to the DIP Agent and Prepetition ABL Agent.

(ii)    Upon the disposition of Prepetition Collateral as contemplated in the Sale Motion (collectively, the "***Sale***"), any such Prepetition Collateral shall be sold free and clear of the DIP Liens, Prepetition Liens, and the Adequate Protection Liens; <u>provided</u>, <u>however</u>, that such DIP Liens, Prepetition Liens, and Adequate Protection Liens, respectively, shall attach to the proceeds of any such Sale to the same extent, validity and priority as such Liens attached to the DIP Collateral and Prepetition Collateral, respectively, which proceeds of the Prepetition Collateral shall be promptly paid at closing of the Sale (including if such Sale constitutes a DIP Maturity Event):

<u>first</u>, to fund the Carve Out Account (subject to the Carve Out Cap) in accordance with Paragraph 29 hereof;

<u>second</u>, to the DIP Agent for application to the Prepetition ABL Debt or the DIP Obligations in accordance with the terms of the DIP Credit Agreement, and after payment in full of the DIP Obligations in the event the Final Roll-Up has not occurred to the Prepetition ABL Agent to be applied to the Prepetition ABL Debt in accordance with the Prepetition ABL Credit Agreement; and

<u>third</u>, to the Debtors (<u>provided</u>, that absent an agreement among the Prepetition Term Agent, the Debtors and any Committee in furtherance of Paragraphs 34-35 hereof, any remaining proceeds of the Prepetition Collateral and/or DIP Collateral shall be deposited in a segregated account pending further order of the Court, and shall remain subject to the Prepetition Liens and Adequate Protection Liens of the Prepetition Term Agent and Prepetition Term Lenders to the same extent, validity and priority as such Liens attached to the Prepetition Collateral; and (a) the Prepetition Term Agent and Prepetition Term Lenders may seek reimbursement of all reasonable and documented out-of-pocket costs and expenses of outside attorneys engaged by the Prepetition Term Agent and the Prepetition Term Lenders incurred since the Petition Date as additional Adequate

21

Protection), and (b) the Committee's rights to oppose such relief at the Final Cash Collateral Hearing shall be and the same hereby is be reserved and preserved.

(iii)    The Debtors shall keep the DIP Agent and Prepetition ABL Agent fully informed of the Debtors' efforts to consummate the Sale and any other sales of equity interests and/or assets of the Debtors after the Petition Date, and without limiting the generality of the foregoing, the Debtors shall (A) promptly provide to the DIP Agent and Prepetition ABL Agent copies of all offers for the purchase of any asset(s) and/or equity interests of any of the Debtors, (B) provide, no less frequently than weekly, status updates on the Debtors' efforts to consummate the Sale and/or any other sales, and (C) promptly advise the DIP Agent and Prepetition ABL Agent of any expressions of interest in any or all of the Debtors' assets and/or equity interests; provided, that the Debtors shall not be obligated to provide the Prepetition Term Agent or the Prepetition Term Lenders with any of the foregoing information unless either (1) the Prepetition Term Agent (for itself and on behalf of the Prepetition Term Lenders) advises the Debtors in writing that it shall not be a bidder for the Debtors' assets, whether by Credit Bid or otherwise, or (2) the Debtors, in consultation with the Committee, determines that the delivery of certain selected information to the Prepetition Term Agent will facilitate the Sale Process.

(iv)    In connection with any sale process authorized under the Sale Motion, the DIP Agent, DIP Lenders, Prepetition Agents, and Prepetition Secured Lenders may seek to credit bid some or all of their claims for their respective collateral (each a "*Credit Bid*") pursuant to section 363(k) of the Bankruptcy Code; provided, that the Committee's right, if any, to challenge the right of the Prepetition Term Agent and/or Prepetition Term Lenders to Credit Bid shall be and the same hereby is preserved and reserved; and provided further, that any such Credit Bid shall be subject to the Prepetition Intercreditor Agreement. A Credit Bid may be applied only to reduce the cash consideration with respect to those assets in which the party submitting such Credit Bid holds a security interest.  Each of the Prepetition Agents shall be considered a "Qualified Bidder" with respect to its right to acquire all or any of the assets by Credit Bid.

(e)    **Access to Records; Reporting**.  The Prepetition Agents and Prepetition Secured Lenders shall retain the rights to access they have under the Prepetition Financing Documents, upon reasonable notice, at reasonable times during normal business hours.  In addition, (i) the Debtors shall provide to each of the Prepetition Agents and Prepetition Secured Lenders all of the financial, collateral, and related reporting required under the DIP Financing Agreements as and when provided to the DIP Agent under the DIP Credit Agreement, and (ii) subject to the Committee's Case Professionals' and each individual Committee member's agreement to maintain the confidentiality of such information (such agreement being in a form and manner reasonably acceptable to the Debtors), the Debtors shall provide copies of such information to the Committee's Case Professionals and members substantially contemporaneous with the delivery of same to the DIP Agent.

(f)    **Prepetition Indemnity Account.**  Upon the earlier to occur of the following: (i) payment in full of the Prepetition ABL  Debt and DIP Obligations and termination of the Commitments under the DIP Credit Agreement, and (ii) closing of a Sale, and provided that the Challenge Period Termination Date (as defined below) has not yet occurred, the Debtors shall establish a segregated account in the control of the Prepetition ABL Agent (the "*Prepetition ABL Indemnity Account*"), into which the sum of $250,000.00 of Cash Collateral shall be deposited as security for any reimbursement, indemnification, or similar continuing obligations of the Debtors in favor of the Prepetition ABL Agent and Prepetition ABL Lenders under the Prepetition ABL

Financing Documents, including, without limitation, the provisions of Section 10.3 of the Prepetition ABL Credit Agreement (the "***Prepetition ABL Indemnity Obligations***").

           (A)      The funds in the Prepetition ABL Indemnity Account shall secure all costs, expenses, and other amounts (including reasonable and documented attorneys' fees) incurred by the Prepetition ABL Agent and the Prepetition ABL Lenders, to (1) respond to formal or informal inquiries and/or discovery requests, any adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in Paragraph 24 hereof, or (2) any Challenge Proceeding against the Prepetition ABL Agent or Prepetition ABL Lenders related to the Prepetition ABL Financing Documents, the Prepetition ABL Liens, or the Prepetition ABL Debt, as applicable, whether in the Chapter 11 Cases or independently in another forum, court, or venue.

           (B)      The Prepetition ABL Indemnity Obligations shall be secured by a first priority lien on the respective Prepetition ABL Indemnity Account and the funds therein and by a Lien on the Prepetition ABL Collateral (subject in all respects to the Prepetition Intercreditor Agreement).

           (C)      The Prepetition ABL Agent and Prepetition ABL Lenders may apply amounts in the Prepetition ABL Indemnity Account against the Prepetition ABL Indemnity Obligations as and when they arise, without further notice to or consent from the Debtors, any Committee, or any other parties in interest and without further order of this Court, upon compliance with the provisions of Paragraph 50 below.

           (D)      In addition to the establishment and maintenance of the Prepetition Indemnity Account, until the Challenge Period Termination Date (as defined below) the Prepetition ABL Agent (for itself and on behalf of the Prepetition ABL Lenders) shall retain and maintain the Prepetition ABL Liens as security for any the amount of any Prepetition ABL Indemnity Obligations not capable of being satisfied from application of the funds on deposit in the Prepetition ABL Indemnity Account; provided, that the Prepetition ABL Lien retention herein shall in all respects remain subject to the terms of the Prepetition Intercreditor Agreement; provided further that, (i) any such indemnification claim(s) shall (i) be subject to the terms of the Prepetition ABL Financing Documents, (ii) the rights of parties in interest with requisite standing to object to any such indemnification claim(s) are hereby reserved in accordance with Paragraphs 23-26 hereof, and (iii) the Court shall reserve jurisdiction to hear and determine any such disputed indemnification claim(s).

           (E)      Upon the occurrence of the Challenge Period Termination Date, and provided that no Challenge Proceeding has commenced or any such Challenge Proceeding has been resolved by a final order of the Court in favor of the Prepetition ABL Agent, the Prepetition ABL Agent shall promptly return to the Debtors the remaining amount, if any, of the Prepetition ABL Lender Indemnity Account (if funded).

        (g)     **Approved Budget**. The Debtors shall consult with and provide prior notice to the Prepetition Term Agent prior to agreeing to any of the following with respect to the Approved Budget and DIP Financing Agreements, as applicable: (a) material changes to the Approved

Budget; and (b) extensions of the case and/or sale milestones set forth in the DIP Credit Agreement that would extend the sale closing deadline beyond April 30, 2017, (collectively, the "*Subject Amendments*"); provided, however, none of the Debtors, the DIP Agent and the DIP Lenders shall incur any liability to the Prepetition Term Agent, the Prepetition Term Lenders or any other Person in consequence of a failure to make any consultation or provide such prior notice with respect to the Subject Amendments pursuant to the provisions hereof.

(h)     Nothing herein shall impair or modify the Prepetition Agents' or the Prepetition Secured Lenders' rights under section 507(b) of the Bankruptcy Code in the event that the Adequate Protection provided to the Prepetition Secured Lenders hereunder is insufficient to compensate for any Diminution In Value of the interest of the Prepetition Agents and Prepetition Secured Lenders in the Prepetition Collateral during the Chapter 11 Cases or any Successor Case; provided, however, that (a) nothing herein shall impair the Debtors' or any other party in interest's right to seek to contest any request for additional or different adequate protection, including, without limitation any objection permissible under the Prepetition Intercreditor Agreement, and (b) any section 507(b) claim granted in the Chapter 11 Cases to the Prepetition Agents and/or Prepetition Secured Lenders shall be junior in right of payment to all DIP Obligations and subject to the Carve Out.

### III.

### POST-PETITION LIEN PERFECTION

17.     This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of Lien or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens to the priorities granted herein (subject, where applicable, to the Prepetition Intercreditor Agreement).

18.     Notwithstanding the foregoing, the DIP Agent and/or the Prepetition Agents may, in their discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens and/or the Adequate Protection Liens granted pursuant hereto, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens and other

similar instruments and documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Cases.

19.     The Debtors shall execute and deliver to the DIP Agent and the Prepetition Agents all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens and other similar instruments and documents as the DIP Agent and the Prepetition Agents may reasonably request to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens and/or the Adequate Protection Liens granted pursuant hereto.

20.     The DIP Agent and the Prepetition Agents, in their discretion, may file a photocopy of the entered, docketed version of this Order as a financing statement with any recording office designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any of the Debtors has real or personal property, and in such event, the subject filing or recording office shall be authorized to file or record such copy of this Order.

21.     The DIP Agent shall, in addition to the rights granted to it under the DIP Financing Agreements, be deemed to be have co-equal rights with the Prepetition ABL Agent and succeed to the rights of the Prepetition ABL Agent with respect to all third party notifications in connection with the Prepetition ABL Financing Documents, all prepetition collateral access agreements, and all other agreements with third parties (including any agreement with a customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Prepetition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtors and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card agreements.

22.     The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to:

      (a)     permit the Debtors to grant the DIP Liens and the Adequate Protection Liens, and to incur all liabilities and obligations to the DIP Lenders under the respective DIP Financing Agreements, the DIP Facility, and this Order, and

(b)    authorize the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Secured Lenders to retain and apply payments hereunder as provided by the respective DIP Financing Agreements and this Order.

## IV.

### RESERVATION OF CERTAIN THIRD-PARTY RIGHTS AND BAR OF CHALLENGES AND CLAIMS

23.    Nothing in this Order or the respective DIP Financing Agreements shall prejudice whatever rights the Committee or any other party-in-interest (other than the Debtors) with requisite standing that has been sought and granted by this Court may have to bring an adversary proceeding, contested matter, cause of action, objection, claim, defense, or other challenge against the Prepetition ABL Agent, the Prepetition ABL Lenders, the Prepetition ABL Agent's Prepetition Liens, or the Prepetition ABL Debt (collectively, a *"Challenge Proceeding"*), including, but not limited to, any of the following:

(a)    an objection to or challenge of the Debtors' Stipulations set forth in Paragraphs F(1) through F(7), including (i) the validity, extent, perfection, or priority of the security interests and Liens of the Prepetition Agents and Prepetition Secured Lenders in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Prepetition Secured Debt, or

(b)    a suit against one or more of the Prepetition Agent and/or one or more of the Prepetition Secured Lenders, or any of them, in connection with or related to the Prepetition Secured Debt or the Prepetition Liens, or the actions or inactions of the Prepetition Agents or Prepetition Secured Lenders arising out of or related to the Prepetition Secured Debt or Prepetition Liens;

provided, however, that the Committee or any other party-in-interest with requisite standing that has been sought and granted by this Court must commence a Challenge Proceeding asserting such objection or challenge, including, without limitation, any claim against the Prepetition ABL Agent and/or one or more of the Prepetition ABL Lenders in the nature of a setoff, counterclaim, or defense to the Prepetition ABL Debt or the Prepetition ABL Agent's Prepetition Liens (including, but not limited to, those under sections 506 (other than 506(c)), 544, 547, 548, 549, 550, and/or 552 (subject to Paragraph 56 below) of the Bankruptcy Code or by way of suit against the Prepetition ABL Agent or Prepetition ABL Lenders), by the later of (x) for the Committee, on or before April 17, 2017, or (y) for any party-in-interest other than the Committee, on or before April 23, 2017 (collectively, (x) and (y) shall be referred to as the *"Challenge*

*Period*", and the date that is the next calendar day after the termination of the Challenge Period, in the event that no Challenge Proceeding has been timely commenced during the Challenge Period, shall be referred to as the "***Challenge Period Termination Date***". The Challenge Period Termination Date may occur as to some, but not all, of the Prepetition ABL Agent or Prepetition ABL Lenders, if a Challenge Proceeding is brought against one or more but not all of the Prepetition ABL Agents and Prepetition ABL Lenders.

24.     Not less than five (5) business days prior to filing a motion seeking standing to file a Challenge Proceeding (a "***Challenge Standing Motion***"), a Committee or other third party, as the context makes applicable, shall inform the applicable Prepetition ABL Agent, Prepetition ABL Lender(s), and the DIP Agent, in writing, of its intent to file such Challenge Standing Motion (such writing shall contain a reasonably detailed statement of the claims proposed to be asserted in such Challenge Proceeding and the legal/other bases supporting such claim(s) (a "***Challenge Statement***")). The affected parties shall thereafter meet and confer for purposes of attempting to resolve any issues/claims asserted in the Challenge Statement. In the event a Committee or other third party, as the case may be, thereafter files a Challenge Standing Motion in accordance with the terms of this Order, any such motion shall, at a minimum, include a copy of any proposed objection or adversary complaint containing a detailed description of the claims and causes of action such party proposes to pursue. The Challenge Period shall be tolled for a period not to exceed thirty (30) days upon the filing of a Challenge Standing Motion by a party seeking standing to commence a Challenge Proceeding in accordance with the terms of this Order; provided, that any such tolling shall be applicable solely to the party that files the subject Challenge Standing Motion, and no such tolling shall apply to any other party.

25.     For the avoidance of doubt, in the event any of the Chapter 11 Cases is converted to a case under Chapter 7 or if a Chapter 11 trustee is appointed prior to expiration of the Challenge Period, then the Challenge Period shall not expire until sixty (60) days after the trustee's appointment in the affected chapter 11 case only. In the event that the Committee or any other party in interest with requisite standing has commenced a Challenge Proceeding prior to the conversion to Chapter 7 or appointment of a Chapter 11 trustee, the applicable trustee shall be entitled (but not required) to assume the prosecution of any pending

Challenge Proceeding. In either event, until the later of the expiration of the Challenge Period without commencement of a Challenge Proceeding or the entry of a final, non-appealable order or judgment on account of any Challenge Proceeding commenced within the Challenge Period, no such trustee shall be bound by the Debtors' Stipulations in this Order.

26.     Upon the Challenge Period Termination Date with respect to one or more or all of the Prepetition ABL Agent and Prepetition ABL Lenders, as the case may be, any and all such challenges and objections by any party (including, without limitation, any Committee, any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party-in-interest) *shall be deemed to be forever waived and barred* with respect to the applicable Prepetition ABL Agent and Prepetition ABL Lender(s), and the Prepetition ABL Debt as to one or more or all of the Prepetition ABL Lenders, as the case may be, shall be deemed to be an allowed fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Cases and the Debtors' Stipulations as to one or more or all of the Prepetition ABL Agent and Prepetition ABL Lenders, as the case may be, shall be binding on all creditors, interest holders, and parties-in-interest.

27.     The Prepetition Term Agent and Prepetition Term Lenders, as their interests may appear, request that the Court determine at the Final Cash Collateral Hearing that the Challenge Period, and related provisions concerning Challenge Proceedings (including, without limitation, as concerns any Challenge Standing Motion and Challenge Statement) provided for in Paragraphs 23-27 hereof shall apply to any Challenge Proceeding that may be asserted by the Committee and/or any third party as against the Prepetition Term Agent and/or Prepetition Term Lenders with respect to the Prepetition Term Debt and/or the Prepetition Term Agent's Prepetition Liens and Claims. The Committee's right to object to the applicability of such provisions to the Prepetition Term Agent and/or Prepetition Term Lenders' Liens and Claims at the Final Cash Collateral Hearing is reserved and preserved hereby (including, but not limited to, as concerns any request by the Committee that no such Challenge Period should be imposed (solely as to the Prepetition Term Agent and/or Prepetition Term Lenders and with respect to the Prepetition Term Debt

and/or the Prepetition Term Agent's Prepetition Liens and Claims), and that the Committee be conferred automatic standing to pursue a Challenge Proceeding).

**V.**

**CARVE OUT AND PAYMENT OF PROFESSIONALS.**

28.    Subject to the terms and conditions contained in this Paragraph 26, the DIP Liens, DIP Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens and the Adequate Protection Superpriority Claims are all subordinate to the following (collectively, the "*Carve Out*"):

(a)    (i) statutory fees and interest payable to the Office of the U.S. Trustee (pursuant to 28 U.S.C. § 1930(a)(6) and 31 U.S.C. § 3717, respectively), as determined by agreement of the U.S. Trustee or by final order of this Court, and (ii) 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of this Court;

(b)    all accrued and unpaid fees, disbursements, costs and expenses incurred by professionals retained by the Debtors or the Committee (collectively, the "*Case Professionals*"), up to and as limited by the aggregate Approved Budget amounts for each Case Professional or category of Case Professional through the date of service of said Carve Out Trigger Notice (defined below)(including partial amounts for any Carve Out Trigger Notice given other than at the end of a week, and after giving effect to all carryforwards and carrybacks from prior or subsequent favorable budget variances),[4] less the amount of prepetition retainers received by such Case Professionals and not previously applied to fees and expenses; and

(c)    all accrued and unpaid fees, disbursements, costs and expenses incurred by the Case Professionals from and after the date of service of a Carve Out Trigger Notice in an aggregate amount not to exceed $75,000 (the "*Carve Out Cap*"), less the amount of prepetition retainers received by such Case Professionals and not applied to the fees, disbursements, costs and expenses set forth in clause (b) above.  The Carve Out Cap shall be reduced on a dollar-for-dollar basis by any payments of fees or expenses of the Case Professionals made after delivery of the Carve Out Trigger Notice in respect of fees and expenses incurred after delivery of the Carve Out Trigger Notice.

For the avoidance of doubt, fees, disbursements, costs and expenses incurred by Case Professionals cannot be paid to Case Professionals unless and until allowed by the Court.

For purposes of the foregoing, "*Carve Out Trigger Notice*" shall mean a written notice delivered by the DIP Agent to the Debtors and their counsel, counsel to the Prepetition Term Lenders, the U.S. Trustee, and lead counsel to any Committee, which notice may be delivered at any time by the DIP Agent following the occurrence and continuance of any DIP Order Event of Default and shall specify that it is a "Carve Out Trigger Notice", which notice may be delivered at any time following the occurrence and continuance of a Cash Collateral Termination Event.

---

[4]    Accordingly, to the extent that a particular Case Professional is over budget during any measurement period, it shall be entitled to offset such budget overage with any amounts such Case Professional is under budget in prior or subsequent periods prior to the delivery of a Carve Out Trigger Notice.

29.     Upon the earlier to occur of (i) delivery of a Carve Out Trigger Notice, (ii) payment in full in cash of all DIP Obligations, and (iii) a DIP Maturity Event (unless the DIP Facility has been extended), the Debtors or DIP Lenders (if the Debtors do not have sufficient cash on hand) shall be required to transfer to a segregated account subject to the control of an escrow agent reasonably acceptable to the Debtors and the Committee (the "*Carve Out Account*"), an amount of Cash Collateral equal (i) to the Carve Out Cap, plus (ii) the total budgeted fees and expenses of the Case Professionals as set forth in the Approved Budget (less any amounts previously paid to the Case Professionals in accordance with any order of the Court (as determined by Case Professional)), which Carve Out Account shall be available only to satisfy obligations benefitting from the Carve Out. All funds on deposit in the Carve Out Account, however funded and from whatever source derived, shall at all times continue to constitute Cash Collateral, subject to the prior payment of all amounts covered by the Carve Out. Once the Carve Out Account has been funded, either by the Debtors or DIP Lenders (if the Debtors do not have sufficient cash on hand) as provided in this Paragraph 29, none of the Prepetition Agents, the Prepetition Secured Lenders, the DIP Agent, nor the DIP Lenders shall have any further liability for nor responsibility with respect to the Carve Out, including any application or disbursement of funds in the Carve Out Account. The DIP Agent and Prepetition Agents shall retain security interests in any residual interests in the Carve-Out Account available following satisfaction in full of all obligations benefitting from the Carve-Out, and shall receive distributions on account of such residual interests in accordance with the priorities set forth herein.

30.     For the avoidance of doubt, the Carve Out shall be senior to the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, Liens or claims securing the DIP Obligations and/or the Prepetition Secured Debt granted or recognized as valid.

31.     Further, the Carve Out shall exclude, and neither advances under the DIP Facility nor proceeds of the Prepetition Collateral and the DIP Collateral shall be used to pay, any fees and expenses incurred in connection with the assertion or joinder in any Challenge Proceeding or any other claim,

counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief:

      (A)    invalidating, setting aside, avoiding, or subordinating, in whole or in part, (i) the DIP Obligations, (ii) the DIP Liens in the DIP Collateral, (iii) the Prepetition Secured Debt, (iv) the Prepetition Liens in the Prepetition Collateral, and/or (v) the Adequate Protection Liens; or

      (B)    preventing, hindering, or delaying, whether directly or indirectly, the DIP Agent's, the DIP Lenders', the Prepetition Agents', or the Prepetition Secured Lenders' assertion or enforcement of their Liens and security interests, or their efforts to realize upon any DIP Collateral, Prepetition Collateral, the Adequate Protection Liens, or the Prepetition ABL Indemnity Account;

provided, however, that such exclusion does not encompass any investigative work conducted by Case Professionals retained by a Committee with regard to the Prepetition ABL Agent's Prepetition Liens and Prepetition ABL Debt only, but only up to $50,000.00 of the Carve Out may be used for such investigative work (the "*Committee Investigation Cap*"). The Prepetition Term Agent and Prepetition Term Lenders, as their interests may appear, reserve the right to have the Court determine at the Final Cash Collateral Hearing whether the Committee Investigation Cap shall apply to any investigation activities that may be conducted by the Committee with regard to the Prepetition Term Debt and/or the Prepetition Term Agent's Prepetition Liens. The Committee's right to object to the applicability of the Committee Investigation Cap to the Prepetition Term Agent and/or Prepetition Term Lenders' claims and/or liens at the Final Cash Collateral Hearing is reserved and preserved hereby. The Committee requests that the Court determine at the Final Cash Collateral Hearing that the forgoing proscription against use of the Carve Out, advances under the DIP Facility or proceeds of the Prepetition Collateral and the DIP Collateral shall not apply to any Challenge Proceeding or any other claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief related to the Prepetition Term Debt and/or the Prepetition Term Agent's Prepetition Liens. The Prepetition Term Lenders and Prepetition Term Agent's right to object to any such request is reserved and preserved hereby.

      32.    Nothing herein, including the inclusion of line items in the Approved Budget for Case Professionals, shall be construed as consent to the allowance of any particular professional fees or expenses

of the Debtors, of any Committee, or of any other person or shall affect the right of the DIP Agent, the DIP

Lenders, the Prepetition Agents, or the Prepetition Secured Lenders to object to the allowance and payment

of such fees and expenses. Furthermore, nothing in the Interim Order or this Order or otherwise shall be

construed: (i) to obligate the DIP Agent and/or DIP Lenders, or Prepetition Term Agent or Prepetition Term

Lenders in any way to pay compensation to or to reimburse expenses of any Case Professional, or to

guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; or (ii) to

increase the Carve-Out if allowed fees and/or disbursements are higher in fact than the amounts subject to

the Carve-Out as set forth in the Interim Order or this Order.

**VI.**

**M<span>ATURITY</span>; DIP O<span>RDER</span> E<span>VENTS OF</span> D<span>EFAULT</span>; R<span>EMEDIES</span>**

**A.      Maturity**

33.      All DIP Obligations shall be due and payable on the date that is the earliest to occur of any

of the following (each, a "***DIP Maturity Event***"):

>    (a)      April 30, 2017;
>
>    (b)      the closing of a Sale of all or substantially all of the working capital assets of the
>             Debtors pursuant to the provisions of section 363 of the Bankruptcy Code; or
>
>    (c)      the effective date of any chapter 11 plan of reorganization/liquidation for the
>             Debtors (a "***Plan***").

34.      In the event that (A) all Prepetition ABL Debt and DIP Obligations have been paid in full

in cash and (B) the DIP Commitments have irrevocably terminated, the Debtors, in consultation with any

Committee and the Prepetition Term Agent shall consult with each other as to the terms and conditions of

continued consensual use of Cash Collateral in light of the then present circumstances of these Chapter 11

Cases. If the Debtors, any Committee and the Prepetition Term Agent are not able to agree on such terms

and conditions, the Prepetition Term Agent shall be entitled to declare that the Debtors' rights to use Cash

Collateral on the terms provided in this Order are terminated (a "***Cash Collateral Termination Event***")

with such termination to take effect five (5) days after delivery of notice (a "***Cash Collateral Termination***

***Notice***") by the Prepetition Term Agent to the Debtors and their counsel, the U.S. Trustee, and counsel to

32

the Committee. Following delivery of a Cash Collateral Termination Notice, unless and until the Court enters an order authorizing the use of Cash Collateral, the Debtors may not use Cash Collateral without the prior written consent of the Prepetition Term Agent; provided, however, that the Debtors' may use Cash Collateral solely to fund payroll (other than severance) incurred through the date that is seven-days after the date of delivery of a Cash Collateral Termination Notice. In addition to the foregoing, and solely to the extent (a) not already funded by any other post-petition funding under the DIP Credit Agreement, and/or (b) there are not any unencumbered funds otherwise available to the Debtors, the DIP Lenders shall make available post-petition funding in an amount equal to any unpaid balance of post-petition administrative claims arising out of the conduct of the Debtor's business in the ordinary course that accrued and remain unpaid as of such date (the "*Accrued Administrative Claims*"); provided, that the forgoing shall: (1) specifically exclude all liabilities for professional fees, costs and expenses that have been incurred or that are incurred or owed by the Case Professionals in connection with the administration of the Chapter 11 Cases (except to the extent otherwise provided for in the Carve Out), and (2) be subject to any limitations applicable under, to or in the Approved Budget, whether by line item or category; provided further, that the DIP Agent, DIP Lenders, Prepetition Agents, the Prepetition Secured Lenders, and the Committee each reserve their respective rights as to whether proceeds of Disputed Prepetition Collateral are available to satisfy the Debtors' obligations in respect of Accrued Administrative Claims.

35.    Following the delivery of a Cash Collateral Termination Notice, the Debtors and/or the Committee shall be entitled to an emergency hearing before this Court, including for the purposes of determining whether the use of Cash Collateral by the Debtors should be granted and on what terms and conditions, even if on a non-consensual basis, with any such hearing to be held on not less than three (3) days' notice (or such lesser notice as the Court may direct on motion) to counsel to the Committee, counsel to the DIP Agent, and counsel to the Prepetition Term Agent. In the event that the Debtors either accept the termination of use of Cash Collateral (by written correspondence to the Prepetition Term Agent), or the Court determines that the Debtors are not permitted to use Cash Collateral, the delivery of the Cash

Collateral Termination Notice shall automatically constitute delivery of a Carve Out Trigger Notice as set forth in Paragraph 28 hereof.

36.     Unless and until the Prepetition ABL Debt and the DIP Obligations have been irrevocably repaid in full in cash (or other arrangements for payment of (i) the Prepetition ABL Debt satisfactory to the Prepetition ABL Agent and (ii) the DIP Obligations satisfactory to the DIP Agent, in each case in their sole and exclusive discretion have been made) and all DIP Commitments have been irrevocably terminated, the protections afforded to the Prepetition ABL Agent, the Prepetition ABL Lenders, the DIP Agent, and the DIP Lenders pursuant to this Order and under the DIP Financing Agreements, and any actions taken pursuant thereto, shall survive the entry of any order confirming any Plan or converting the Chapter 11 Cases into a Successor Case, and the DIP Liens, the DIP Superpriority Claim, the ABL Adequate Protection Liens, and the ABL Adequate Protection Superpriority Claims shall continue in the Chapter 11 Cases and in any Successor Case, and such DIP Liens, DIP Superpriority Claim, ABL Adequate Protection Liens, and ABL Adequate Protection Superpriority Claims shall maintain their respective priorities as provided by this Order.

37.     Unless and until the Prepetition Term Loan Debt has been irrevocably repaid in full in cash, the protections afforded to the Prepetition Term Agent and the Prepetition Term Lenders pursuant to this Interim Order and any actions taken pursuant thereto shall survive the entry of any order confirming any Plan or converting the Chapter 11 Cases into a Successor Case, and the Term Adequate Protection Liens and the Term Adequate Protection Superpriority Claim shall continue in the Chapter 11 Cases and in any Successor Case, and such Term Adequate Protection Liens and Term Adequate Protection Superpriority Claims shall maintain their respective priorities as provided by this Order.

**B.     DIP Order Events of Default**

38.     All DIP Obligations shall be immediately due and payable and all authority to use the proceeds of the DIP Facility and to use Cash Collateral shall cease upon delivery of written notice of the occurrence of an Event of Default (as defined in the DIP Credit Agreement) in accordance with the DIP Credit Agreement (each, a "***DIP Order Event of Default***").

## C.    Rights and Remedies Upon DIP Order Event of Default

39.    Any automatic stay otherwise applicable to the DIP Agent and the DIP Lenders is hereby modified so that after the occurrence of any DIP Order Event of Default, upon five (5) days prior written notice (a "**Remedies Notice**") of such occurrence (the "**Remedies Notice Period**"), in each case given to each of (i) the Debtors, (ii) counsel to the Debtors, (iii) counsel to each of the Prepetition Agents, (iv) counsel for the Committee, and (v) the U.S. Trustee, the DIP Agent and the DIP Lenders shall be entitled to exercise their rights and remedies in accordance with the DIP Financing Agreements.

40.    Upon the service of a Remedies Notice after the occurrence of a DIP Order Event of Default:

(a)    the Debtors shall continue to deliver and cause the delivery of the proceeds of the Prepetition Collateral to the Prepetition ABL Agent and the DIP Collateral to the DIP Agent as provided in this Order and in the DIP Financing Agreements;

(b)    the Prepetition ABL Agent and the DIP Agent shall continue to apply such proceeds in accordance with the provisions of this Order and the DIP Financing Agreements and the Prepetition ABL Financing Agreements, as applicable;

(c)    the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral, other than towards the satisfaction of the Prepetition ABL Debt, the DIP Obligations, and the Carve Out; provided, that the Debtors shall be permitted to use Cash Collateral to pay their employees ordinary wages accrued up to and including the date of service of the Remedies Notice; and

(d)    any obligation otherwise imposed on the DIP Lenders to provide any loan or advance to the Debtors pursuant to the DIP Facility shall be suspended, and any loan or advance made thereafter shall be made by the DIP Lenders in their sole and exclusive discretion.

41.    Following the giving of a Remedies Notice by the DIP Agent, the Debtors and the Committee appointed in the Chapter 11 Cases shall be entitled to an emergency hearing before this Court, with any such hearing to be held on not less than three (3) days' notice (or such lesser notice as the Court may direct on motion) to counsel for the Committee, counsel to the Prepetition ABL Agent, and counsel to the DIP Agent. If (x) the Debtors or the Committee do not contest the occurrence of a DIP Order Event of Default and/or the right of the DIP Agent and the DIP Lenders to exercise their remedies, or (y) the Debtors or the Committee do timely contest the occurrence of a DIP Order Event of Default and/or the right of the

DIP Agent and the DIP Lenders to exercise their remedies, and unless this Court, after notice and hearing prior to the expiry of the Remedies Notice Period stays the enforcement thereof, the automatic stay, solely as to the DIP Agent and the DIP Lenders, shall automatically terminate at the end of the Remedies Notice Period.

42.    Subject to the provisions of Paragraphs 39-41 above, upon the occurrence of a DIP Order Event of Default, the DIP Agent and the DIP Lenders are authorized to exercise their remedies and proceed under or pursuant to the DIP Financing Agreements; except that, (A) with respect to any of the Debtors' leasehold locations, the DIP Agent's and the DIP Lenders' rights shall be limited to such rights (i) as may be ordered by this Court upon motion and notice to the applicable landlord with an opportunity to respond that is reasonable under the circumstances; (ii) to which the applicable landlord agrees in writing with the DIP Agent; or (iii) which the DIP Agent and the DIP Lenders have under applicable non-bankruptcy law, and (B) prior to exercising any such remedies, the DIP Agent shall fund the Carve Out Account as set forth in Paragraph 29 hereof (provided that such Carve Out Account shall be subject to the control of the DIP Agent).

43.    Nothing included herein shall prejudice, impair or otherwise affect the Prepetition Agents' or the DIP Agent's rights to seek any other or supplemental relief from the Court in respect of the Debtors, nor the DIP Lenders' rights, as provided herein and in the DIP Credit Agreement, to suspend or terminate the making of loans and granting financial accommodations under the DIP Credit Agreement, to the extent provided for in the Order or the DIP Financing Agreements.

**D.    No Waiver of Remedies**

44.    The delay in or the failure of the Prepetition Agents or the DIP Agent to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the Prepetition Agents', the Prepetition Secured Lenders', or the DIP Agent's rights and remedies.  Notwithstanding anything herein, and subject to the Prepetition Intercreditor Agreement, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly or otherwise impair the rights and remedies of the Prepetition Agents, the Prepetition Secured Lenders, the DIP Agent or the DIP Lenders under the

Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Prepetition Agents and the DIP Agent to: (i) request conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Cases, or the appointment of a trustee in the Chapter 11 Cases; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan; or (iii) subject to section 362 of the Bankruptcy Code exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) the Prepetition Agents and the DIP Agent may have.

## VII.

### CERTAIN LIMITING PROVISIONS

A.      **Section 506(c) Claims and Waiver**

45.      As a further condition of the DIP Facility and any obligation of the DIP Lenders to make credit extensions, and in consideration of the Prepetition ABL Agent's and Prepetition ABL Lenders' consent to the priming of the Prepetition ABL Liens by the DIP Liens, subordination to the Carve Out, and the use of their Cash Collateral, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Chapter 11 Cases or any Successor Case) shall be deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy Code solely with respect to the Prepetition ABL Agents, the Prepetition ABL Lenders, the DIP Agent, the DIP Lenders, and their respective interests in the Prepetition Collateral and the DIP Collateral.

46.      The Prepetition Term Agent and Prepetition Term Lenders request that at the Final Cash Collateral Hearing in consideration of the Prepetition Term Agent and Prepetition Term Lenders' consent to the priming of the Prepetition ABL Liens by the DIP Liens, subordination to the Carve Out, and the use of their Cash Collateral, the Debtors be required to waive, and be prohibited from asserting, any surcharge claim under section 506(c) of the Bankruptcy Code or otherwise for any costs and expenses incurred in connection with the preservation, protection or enhancement of, or realization by any of the Prepetition Term Agent and Prepetition Term Lenders upon, the portion of the Prepetition Collateral held for their respective benefit. The Committee's rights to oppose such relief at the Final Cash Collateral Hearing shall be and the same hereby is reserved and preserved.

**B.      Proceeds of Subsequent Financing**

47.      If at any time prior to the irrevocable repayment in full in cash of all Prepetition ABL Debt and DIP Obligations and the termination of the DIP Lenders' obligations to make loans and advances under the DIP Facility, the Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(c)(1) or 364(d) of the Bankruptcy Code in violation of the DIP Financing Agreements, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over first, to the Prepetition ABL Agent to be applied in reduction of the Prepetition ABL Debt, and second, to the DIP Agent to be applied in reduction of the DIP Obligations.

**C.      No Priming of DIP Facility**

48.      As consideration for the Prepetition ABL Lenders and the DIP Lenders entering into the DIP Financing Agreements, and consenting to the subordination to the Carve Out and the use of Cash Collateral, each of the Debtors hereby agrees that until such time as all Prepetition ABL Debt and all DIP Obligations have been irrevocably paid in full in cash (or other arrangements for payment of the Prepetition ABL Debt and the DIP Obligations satisfactory to the Prepetition ABL Lenders and the DIP Lenders, as applicable, in their sole and exclusive discretion have been made) and the DIP Financing Agreements have been terminated in accordance with the terms thereof, the Debtors shall not (unless otherwise agreed to by the DIP Agent, DIP Lenders, Prepetition ABL Agent and Prepetition ABL Lenders, in their sole respective discretion) in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Lenders or the Prepetition ABL Liens or ABL Adequate Protection Liens granted to the Prepetition ABL Agent or Prepetition ABL Lenders under this Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise; provided, that this Paragraph 48 shall not be deemed to amend the Prepetition Intercreditor Agreement.

49.      [RESERVED].

## VIII.

### OTHER RIGHTS AND OBLIGATIONS

**A.    Good Faith Under Section 364(e) of the Bankruptcy Code;
No Modification or Stay of this Order**

50.    Based on the findings set forth in this Order and in accordance with section 364(e) of the

Bankruptcy Code, which is applicable to the DIP Facility and the use of Cash Collateral and Adequate

Protection contemplated by this Order, the Prepetition Agents, Prepetition Secured Lenders, the DIP Agent,

and the DIP Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code.

51.    [OMITTED].

**B.    Prepetition ABL Agent's, Prepetition ABL Lenders',
DIP Agent's, and DIP Lenders' Expenses**

52.    To the extent required to be paid under the DIP Financing Agreement or Prepetition ABL

Credit Agreement, all reasonable out-of-pocket costs and expenses of the Prepetition ABL Agent, the

Prepetition ABL Secured Lenders, the DIP Agent, and the DIP Lenders, including, without limitation,

reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements,

financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement

obligations with respect to fees and expenses, and other out of pocket expenses, whether or not contained in

the Approved Budget and without limitation with respect to the dollar estimates contained in the Approved

Budget, shall promptly be paid by the Debtors.  Payment of such fees shall not be subject to allowance by

this Court; provided, however, the Debtors, the U.S. Trustee or counsel for any Committee may seek a

determination by this Court whether such fees and expenses are reasonable in the manner set forth below.

Under no circumstances shall professionals for the DIP Agent, the DIP Lenders, the Prepetition ABL

Agent, or the Prepetition ABL Secured Lenders be required to comply with the U.S. Trustee fee guidelines.

The Prepetition ABL Agent, the Prepetition ABL Secured Lenders, the DIP Agent, and the DIP Lenders

shall provide a copy of any invoice requesting payment or reimbursement pursuant to this Paragraph 52 to

counsel to the Debtors, counsel to the Committee, and the U.S. Trustee. Each such invoice shall be

sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses (without

limiting the right of the various professionals to redact privileged, confidential, or sensitive information).  If

the Debtors, U.S. Trustee or any Committee object(s) to the reasonableness of the invoices submitted by the

DIP Agent, the DIP Lenders, the Prepetition ABL Agent, or the Prepetition ABL Secured Lenders, and the

parties cannot resolve such objection within 10 days of receipt of such invoices, the Debtors, U.S. Trustee

or the Committee, as the case may be, shall file with the Court and serve on the applicable DIP Agent, DIP

Lender, Prepetition ABL Agent, or Prepetition ABL Secured Lender an objection (a "*Fee Objection*").  The

Debtors shall promptly pay, and/or the DIP Agent are hereby authorized to make an advance under the DIP

Facility to timely pay, the submitted invoices after the expiration of the ten (10) day notice period if no Fee

Objection is received in such ten (10) day period.  If a Fee Objection is timely received, only the undisputed

amount of the invoice shall be paid and the Court shall have jurisdiction to determine the disputed portion of

such invoice if the parties are unable to resolve the dispute.

**C.      Binding Effect**

53.      The provisions of this Order shall be binding upon and inure to the benefit of the DIP

Agent, the DIP Lenders, the Prepetition Agents, the Prepetition Secured Lenders, the Debtors, and their

respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal

representative of the Debtors or with respect to the property of the estates of the Debtors), and any

Committee (subject to the provisions of Paragraphs 23-26 above), whether in the Chapter 11 Cases, in any

Successor Case, or upon dismissal of any such chapter 11 or chapter 7 case.

**D.      No Third Party Rights**

54.      Except as explicitly provided for herein, this Order does not create any rights for the

benefit of any third party, creditor, equity holder, or any direct, indirect or incidental beneficiary, other than

the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Secured Lenders.

**E.      No Marshaling**

55.      The DIP Agent, the DIP Lenders, the Prepetition Agents, and the Prepetition Secured

Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with

respect to any of the DIP Collateral or Prepetition Collateral, as applicable, other than proceeds attributable

to (a) DIP Collateral granted by any of the Debtors that were not one of the Prepetition Loan Party Debtors, and (b) proceeds from the sale, disposition or other recovery in respect of any other assets that are determined, whether by (i) agreement by the Prepetition ABL Agent and/or Prepetition Term Agent, as their interests may appear, or (ii) final order of the Court, were not otherwise part of the Prepetition Collateral, including, without limitation, Debtors' interests in non-residential real property leases, commercial tort claims and assets of Debtor UR Vehicle Solutions, Inc. and the proceeds thereof ((a) and (b) above being collectively defined as "***Disputed Prepetition Collateral***"). The DIP Agent shall hold Proceeds from the sale, disposition or other recovery in respect of Disputed Prepetition Collateral in escrow, and the DIP Agent and the DIP Lenders shall marshal and apply proceeds of all other DIP Collateral to repayment of the DIP Obligations before applying proceeds of Disputed Prepetition Collateral to repayment of the DIP Obligations. Anything herein to the contrary notwithstanding, the Prepetition Agents, the Prepetition Secured Lenders, and the Committee each reserve their respective rights as to the determination of the extent and priority of the Prepetition Liens in and upon the Disputed Prepetition Collateral (subject to Paragraphs 23-27 hereof as and to the extent applicable).

**F.    Section 552(b) of the Bankruptcy Code**

56.    The DIP Agent, the DIP Lenders, the Prepetition ABL Agent, and the Prepetition ABL Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the Debtors shall not assert that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall apply to the DIP Agent, the DIP Lenders, the Prepetition ABL Agent, or the Prepetition ABL Lenders with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral or the DIP Collateral.

57.    The Prepetition Term Agent and Prepetition Term Lenders request that at the Final Cash Collateral Hearing, the Court order that (a) they each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and (b) the Debtors not be entitled to assert that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall apply to the Prepetition Term Agent or the Prepetition Term Lenders with respect to proceeds, product, offspring, or profits of any of the Prepetition

Collateral in which they assert an interest. The Committee's rights to oppose such relief at the Final Cash Collateral Hearing shall be and the same hereby is reserved and preserved.

**G.      Amendments**

58.      The Debtors and the DIP Agent may amend, modify, supplement, or waive any provision of the DIP Financing Agreements without further approval of this Court, but only after notice to the Prepetition Agents, the Prepetition Secured Lenders, and any Committee; provided, however, that notice of any "material" amendment, modification, supplement, or waiver shall be filed with this Court and the Prepetition Agents, the Prepetition Secured Lenders, and any Committee shall have five (5) business days from the date of such filing within which to object in writing to such proposed amendment, modification, supplement, or waiver; provided, further, that if a Prepetition Agent, Prepetition Secured Lender, or Committee timely objects to any material amendment, modification, supplement, or waiver, then such amendment, modification, supplement, or waiver shall only be permitted pursuant to an order of this Court after notice and a hearing. For purposes of this Paragraph 57, a "material" amendment shall include, but not be limited to, any amendment, modification, supplement, or waiver that (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the DIP Commitments, (iii) changes the maturity date of the DIP Facility to a date that is earlier than April 30, 2017, (iv) amends any Event of Default under the DIP Credit Agreement in a manner materially less favorable to the Debtors, (v) revises any case or sale milestone set forth in the DIP Credit Agreement in a manner materially less favorable to the Debtors, or (vi) otherwise modifies the DIP Financing Agreements in a manner materially less favorable to the Debtors, the Prepetition Agents, or the Prepetition Secured Lenders. All amendments, modifications, supplements, or waivers of any of the provisions hereof shall not be effective unless set forth in writing, signed by on behalf of the Debtors, the DIP Agent, the Prepetition Agents, and/or the Prepetition Secured Lenders, and, if required, approved by this Court.

**H.      Survival of this Order**

59.      The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:

      (a)     confirming any Plan in the Chapter 11 Cases,

      (b)     converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code,

      (c)     dismissing the Chapter 11 Cases,

      (d)     withdrawing of the reference of the Chapter 11 Cases from this Court, or

      (e)     providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Cases in this Court.

60.     [OMITTED].

**I.     Inconsistency**

61.     In the event of any inconsistency between the terms and conditions of the DIP Financing Agreements, the Interim Order, and this Order, the provisions of this Order shall govern and control.

**J.     Enforceability**

62.     This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

**K.     Objections Overruled**

63.     All objections to the Motion to the extent not withdrawn or resolved, are hereby overruled.

**L.     Waiver of Any Applicable Stay**

64.     The stay under Bankruptcy Rule 6004(h) is hereby waived and shall not apply to this Order.

**M.     Proofs of Claim**

65.     The Prepetition ABL Agent, the Prepetition ABL Lenders, the DIP Agent, and the DIP Lenders will not be required to file proofs of claim in the Chapter 11 Cases or in any Successor Case.

**N.     Headings**

66.     The headings in this Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Order.

**O.     Retention of Jurisdiction.**

67.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**P.     ACE Reservation of Rights.**

68.     For the avoidance of doubt, (i) to the extent ACE American Insurance Company and/or any of its affiliates (collectively with their successors, "*ACE*") had valid and perfected liens and/or security interests on property (including cash collateral) of the Debtors as of the Petition Date (the "*ACE Liens*"), nothing set forth herein shall serve to prime or otherwise subordinate the ACE Liens, (ii) no other party may have liens and/or security interests on any letter(s) of credit for which ACE is the beneficiary (provided, however, that such prohibition shall not apply to the Debtors' interest in the excess proceeds, if any, of any letter of credit for which ACE is the beneficiary) and nothing set forth herein shall serve to prime or otherwise subordinate any of ACE's rights in the proceeds thereof; and (iii) this Order does not grant the Debtors any right to use any property (or the proceeds thereof) held by ACE as collateral to secure obligations under insurance policies and related agreements. Nothing set forth in this Paragraph shall operate as a waiver of the right, if any exists under applicable law, of the Debtors, the DIP Agent and/or DIP Lenders, any Prepetition Agent(s), any Prepetition Secured Lender(s), a Committee, or any other third party from challenging or otherwise objecting to the validity, priority, or extent of the ACE Liens or any claim relating thereto, all of such rights, if any, being expressly reserved and preserved.

**Q.     Certain Local Texas Tax Authorities Provisions**

69.     Notwithstanding any provisions of the Interim Order or this Order, or any final orders pertaining to the sale of the Debtors' assets, or any agreements validated by such orders, from the proceeds of the non-ordinary course sale of any of the Debtors' assets located in the State of Texas occurring on or after February 2, 2017, the amount of $107,000 shall be set aside by the Debtors in a segregated account as adequate protection for the secured claims of Dallas County, TX and Tarrant County, TX, respectively (collectively, the "*Local Texas Tax Authorities*") prior to the distribution of any proceeds to any other creditor. The liens of the Local Texas Tax Authorities shall attach to these proceeds to the same extent and

with the same priority as the liens they now hold against the property of the Debtors. These funds shall be on the order of adequate protection and shall constitute neither the allowance of the claims of the Local Texas Tax Authorities, nor a cap on the amounts they may be entitled to receive. Furthermore, the claims and liens of the Texas Tax Authorities shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens. These funds may be distributed from such segregated account upon agreement between the Local Texas Tax Authorities, the DIP Agents, the Prepetition Agents, the Committee, and the Debtors, or by subsequent order of the Court, duly noticed to the Local Texas Tax Authorities, the DIP Agents, the Prepetition Agents, the Committee, and the Debtors.

**R.    Final Cash Collateral Hearing**

70.    The Court hereby schedules a hearing for 2:00 p.m. (prevailing Eastern Time) on March 30, 2017, or such later date as may be agreed to by the Debtors, the Committee and the Prepetition Term Agent (the "*Final Cash Collateral Hearing*") to consider entry of the Final Cash Collateral Order. The only matters that will be considered by the Court at the Final Cash Collateral Hearing will be the UCC-Prepetition Term Lender Matters. The Prepetition Term Agent's and Prepetition Term Lenders' respective rights to seek additional and/or supplemental forms of adequate protection at a Final Cash Collateral Hearing (including, but not limited to, reimbursement of fees, costs and expenses) shall be and the same hereby are preserved and reserved; and the Committee's rights to oppose any such request(s) are similarly preserved and reserved. Neither the Court's determination of the UCC-Prepetition Term Lender Matters nor any other matter at the Final Cash Collateral Hearing shall operate to reverse, modify, vacate or stay the provisions of this Order with respect to the rights of the DIP Secured Parties under this Order, including, but not limited to, as concerns the DIP Obligations, DIP Liens, and/or the Adequate Protection granted to the Prepetition ABL Agent and Prepetition ABL Lenders.

71.    March 22, 2017 at 12:00 noon (prevailing Eastern Time), or such later date as may be agreed to by the Debtors, the Committee and the Prepetition Term Agent is hereby set as the deadline for the Committee to file with the Court and serve upon: (A) co-counsel for the Debtors, (B) the U.S. Trustee, (C) co-counsel to the DIP Agent, the DIP Lenders, and the Prepetition ABL Agent, (D) counsel for the

Prepetition Term Agent and Prepetition Term Lenders, and (E) any other party that files a request for notices with the Court, any objection ("**Committee Objection**") that it may have with respect to UCC-Prepetition Term Lender Matters and to the Court's entry of the Final Cash Collateral Order.

72.    March 28, 2017 at 12:00 noon (prevailing Eastern Time), or such later date as may be agreed to by the Debtors, the Committee and the Prepetition Term Agent is hereby set as the deadline for the Prepetition Term Agent and Prepetition Term Lenders to file with the Court and serve upon: (A) co-counsel for the Debtors, (B) the U.S. Trustee, (C) co-counsel to the DIP Agent, the DIP Lenders, and the Prepetition ABL Agent, (D) counsel for the Prepetition Term Agent and Prepetition Term Lenders, and (E) any other party that files a request for notices with the Court, any response that it may have with respect to any Committee Objection and the Court's entry of the Final Cash Collateral Order.

73.    If no objection is filed and served by the Committee in accordance with this Order, or if any such objection is resolved prior to the Final Cash Collateral Hearing, no Final Cash Collateral Hearing shall be held, and a separate Final Cash Collateral Order may be presented jointly by the Debtors, the DIP Agent, the Prepetition Term Agent and the Committee and entered by this Court upon certification of counsel to the Debtors, the DIP Agent, the Prepetition Term Agent and the Committee.

Dated: March 8, 2017

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE