## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------

|  |  |
|---|---|
| **In re** | : Chapter 11 |
|  | : |
|  | : Case No. 17-10249 (LSS) |
| **UNITED ROAD TOWING, INC.** *et al.*, | : |
|  | : Jointly Administered |
| **Debtors.**[1] | : |
|  | : **Re: Docket No. 57** |

----------------------------------------------------------

**AMENDED ORDER (I) SCHEDULING A HEARING TO CONSIDER APPROVAL OF THE SALE OR SALES OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) APPROVING CERTAIN BIDDING PROCEDURES, ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "**Motion**"),[2] dated February 10, 2017, of the Debtors in the above-captioned chapter 11 cases for the entry of:

(A)    an order, substantially in the form attached hereto as **Exhibit A** (the "**Bidding Procedures Order**"), (i) scheduling a hearing (the "**Sale Hearing**") on approval of one or more sales of or other acquisition transactions for (each a "**Sale**") of substantially all of the Debtors' personal property and other related interests (the "**Assets**"), either individually or in lots, free and clear of all liens, claims, encumbrances, and other interests (collectively, the "**Encumbrances**"), other than those Encumbrances permitted by the applicable asset purchase agreement or other agreement for the applicable Sale (each a "**Transaction Agreement**"), and a Sale may include the acquisition of the equity of one or more Debtors though a section 363 Sale or a sale of Assets or the acquisition of the equity in one or more

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: United Road Towing, Inc. (6962); URT Holdings, Inc. (8341); City Towing Inc. (2118); URS West, Inc. (3518); Bill & Wags, Inc. (3518); Export Enterprises of Massachusetts, Inc. (5689); Pat's Towing, Inc. (6964); Keystone Towing, Inc. (6356); Ross Baker Towing, Inc. (9742); URT Texas, Inc. (3716); Mart-Caudle Corporation (1912); Signature Towing, Inc. (3054); WHW Transport, Inc. (3055); URS Southeast, Inc. (7289); URS Northeast, Inc. (7290); URS Southwest, Inc. (7284); Fast Towing, Inc. (5898); E & R Towing and Garage, Inc. (8500); Sunrise Towing, Inc. (7160); Ken Lehman Enterprises Inc. (1970); United Road Towing South Florida, Inc. (9186); Rapid Recovery Incorporated (1659); United Road Towing Services, Inc. (2206); Arri Brothers, Inc. (7962); Rancho Del Oro Companies, Inc. (3924); CSCBD, Inc. (2448); URS Leasing, Inc. (9072); UR VMS, LLC (4904); UR Vehicle Management Solutions, Inc. (0402). The Debtors' mailing address is c/o United Road Towing, Inc., 9550 Bormet Drive, Suite 301, Mokena, Illinois 60448.

[2]    Capitalized terms used but not defined herein shall have the meanings given them in the Motion or the Bidding Procedures (as defined below), as applicable.

Debtors implemented through a chapter 11 plan (a "**Plan**"), and authorizing the assumption and assignment of certain executory contracts and unexpired leases (each, an "**Assumed Contract**," and collectively, the "**Assumed Contracts**") in connection therewith, (ii) authorizing and approving certain proposed bidding procedures for the Sales in the form attached to the Bidding Procedures Order as **Exhibit 1** (collectively, the "**Bidding Procedures**"), certain proposed assumption and assignment procedures (collectively, the "**Assumption and Assignment Procedures**"), and the form and manner of notice thereof; and (iii) granting related relief; and

(B)     an order (or orders) (each a "**Sale Order**"),[3] (i) authorizing and approving the Debtors' entry into the Transaction Agreement(s) with Successful Bidder(s), Back-Up Bidder(s), or Stalking Horse Purchaser(s), as applicable and to the extent necessary; (ii) authorizing and approving the Sale of Assets, free and clear of all Encumbrances other than those permitted by the applicable Transaction Agreement; (iii) authorizing and approving the assumption and assignment of the Assumed Contacts in connection therewith; and (iv) granting related relief;

and due and proper notice of the Motion having been given as provided in the Motion; and it appearing that no other or further notice need be provided; and the Bidding Procedures Hearing (as defined below) having been held; and all of the proceedings had before the Court; and the Court having reviewed the Motion; and the Court having found and determined that the relief sought in the Motion and set forth herein is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**[4]

A.      This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order.

---

[3]   The Debtors shall file the applicable form(s) of Sale Order as soon as practicable after such document is negotiated with the applicable purchaser(s).

[4]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.     The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**").

D.     In the Motion and at the hearing on the Motion (the "**Bidding Procedures Hearing**"), the Debtors demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E.     The Sale Notice (as defined below) is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bidding Procedures, the Auction, the Sale, and the Sale Hearing, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

F.     The Bidding Procedures are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the Sale.

G.     The Assumption and Assignment Procedures provided for herein and in the Assumption Notice (as defined below) are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The Assumption

and Assignment Procedures and the Assumption Notice have been tailored to provide an adequate opportunity for all Counterparties (as defined below) to assert any Contract Objections.

        H.     Entry of this Order is in the best interests of the Debtors, their estates and creditors and all other interested parties.

## NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.     Those portions of the Motion seeking approval of (a) the Assumption and Assignment Procedures, (b) the Bidding Procedures, (c) the date, time and place of the Auction and Sale Hearing, and (d) the noticing and objection procedures related to each of the foregoing, including, without limitation, the Sale Notice, substantially in the form attached hereto as **Exhibit 2** (the "**Sale Notice**"), and the Assumption Notice, substantially in the form attached hereto as **Exhibit 3** (the "**Assumption Notice**"), are hereby GRANTED.

2.     Any objections to the relief granted by this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**Approval of Bidding Procedures; Auction**

3.     The Bidding Procedures are hereby approved. The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order. The Debtors are hereby authorized to conduct the Auction of the Assets pursuant to the terms of the Bidding Procedures and this Order. The Bidding Procedures shall govern the actions of the Potential Bidders and the Qualifying Bidders (each as defined in the Bidding Procedures), as well as the conduct of the Auction.

4.      Notwithstanding any limitations provided for in any due diligence information, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtors and their estates shall be authorized to provide due diligence information to Potential Bidders or Qualifying Bidders, *provided* that such Potential Bidders or Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Potential Bidders or Qualifying Bidders in connection with the Bidding Procedures and the Sale, *provided* that the information was provided in accordance with this Order and except as otherwise provided for in a Transaction Agreement that is authorized and approved by the Court.

5.      For the avoidance of doubt, and notwithstanding anything to the contrary in the Motion, this Order or the Bidding Procedures, the requirement that a party execute a confidentiality agreement to obtain access to the Data Room and other due diligence information shall not restrict, prohibit or alter the right that any party has under any applicable agreement, including loan agreements, to receive, or the Debtors' obligation to provide, any information, which rights and obligations are intended to remain unchanged by this Order and the Bidding Procedures.

6.      A Qualifying Bidder that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtors so as to be received on or before **April 6, 2017 at 5:00 p.m. (ET)** (the "**Bid Deadline**"); *provided* that the Debtors may extend the Bid Deadline without further order of the Court, after consulting with the applicable Consultation Parties. Any party that does not submit a bid by the Bid Deadline will not be allowed to: (a) submit any offer after the Bid Deadline or (b) participate as a bidder in the

Auction. The term "**Consultation Parties**" as used in these Bidding Procedures shall mean, with respect to any Asset: (i) counsel and financial advisor to any official committee appointed in these cases representing parties with an interest in the Assets; (ii) counsel to Wells Fargo Bank, N.A., as DIP Agent and agent under the prepetition first-lien credit facility; and (iii) counsel to Medley Capital Corporation, as agent under the prepetition second-lien credit facility if (a) Medley advises the Debtors in writing that it shall not be a bidder for the Assets, whether by credit bid or otherwise or (b) the Debtors, in consultation with the Committee, determine that the delivery of certain selected information to Medley will facilitate the Sale Process.

7.      All Qualifying Bidders submitting a Qualifying Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale or transfer of the assets identified under the Transaction Agreement.

8.      In the event that the Debtors timely receive two or more Qualifying Bids for the same Assets, the Debtors shall include such Assets in the Auction. If there is only one Qualifying Bid submitted for a particular Asset or set of Assets on or before the Bid Deadline, the Debtors may not include such Asset or Assets in the Auction and, instead, may request at the Sale Hearing that this Court approve the Qualifying Bid (if any) applicable to such Assets and the transactions contemplated thereunder. If there are no Assets for which at least two Qualifying Bids have been timely submitted the Auction will be cancelled.

9.      The Auction shall be held at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, Delaware, 19801, beginning at **10:00 a.m. (prevailing Eastern Time) on April 10, 2017**. Each Auction Bidder (as defined in the Bidding Procedures) shall confirm in writing that: (a) it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction and (b) its Qualifying Bid is a good faith

*bona fide* offer that it intends to consummate if selected as a Successful Bidder. All proceedings at the Auction shall be transcribed.

10.    All Assets shall be offered for a sale of all such Assets or portions of same at the Auction. The Debtors shall have the ability to determine, in consultation with the Consultation Parties, the order in which the Assets will be subjected to bidding during the Auction and what Asset or Assets will be auctioned either individually or in each grouping. The Debtors shall announce which Asset or Assets will be in the first grouping and which bid is the Baseline Bid (as defined in the Auction and Bidding Procedures), which may include the aggregation of a combination of Qualifying Bids of separate Qualifying Bidders. The applicable Debtors, in consultation with the Consultation Parties, shall assess each bid to determine whether it is the highest and best bid for an Asset or Assets, considering, among other things: (a) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (b) variations between competing bids and any incremental execution risk that the Debtors reasonably determine, in consultation with the Consultation Parties, exist as a result of those variations; (c) the time needed to close a Sale or other transaction compared with other Qualifying Bids and the cost to the Debtors and their estates of any incremental delay; (d) the total consideration to be received by the Debtors and their estates; (e) the ability to obtain a higher or better offer for an Asset when sold individually or in combination with other Assets; (f) existing funding available or proposed to be provided by the Qualifying Bidder during the period necessary to close the Sale or other transaction; (g) the net benefit to the Debtors' estates, taking into account any Stalking Horse Purchaser's rights to any break-up fee, expense reimbursement, or similar bid protection; (h) the

proposed treatment of existing secured interests in the subject Assets, including any senior indebtedness in the case of a credit bid; (i) the impact on employees, Counterparties (including claims that may be asserted related to rejection and objections to adequate assurance), and other creditors; and (j) any other factors the Debtors may reasonably deem relevant.

11.    The Debtors shall have the right as they may reasonably determine to be in the best interests of their estates to carry out the Bidding Procedures, including, without limitation, to: (a) determine which bidders are Qualifying Bidders;[5] (b) determine which bids are Qualifying Bids; (c) determine which Qualifying Bid is a Baseline Bid (as defined in the Bidding Procedures); and in consultation with the Consultation Parties,  (d) permit Qualifying Bidders to bid on less than all of the Assets that were included in their Qualifying Bid, if applicable; (e) subject to the terms of the Bidding Procedures, determine which bids are the Successful Bid and Back-Up Bid, each as it relates to the Auction; (f) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (g) adjourn or cancel an Auction and/or the Sale Hearing in open court without further notice or as provided in this Order and in the Bidding Procedures; (h) modify the Bidding Procedures consistent with their fiduciary duties and bankruptcy law; and (i) withdraw the Motion with respect to entry of the Sale Order for any Assets at any time with or without prejudice.

**Assumption and Assignment Procedures; Contract Objections**

12.    The following "**Assumption and Assignment Procedures**" are hereby approved:

---

[5]    For the avoidance of doubt, any party entitled to submit a credit bid that submits such a bid shall be deemed a Qualifying Bidder.

(a)     On or before **March 22, 2017** (the "**Assumption Notice Deadline**"), the Debtors shall file with the Court and serve on each counterparty (each, a "**Counterparty,**" and collectively, the "**Counterparties**") to an Assumed Contract an assumption notice (an "**Assumption Notice**"). In the event that the Debtors identify any Assumed Contract that a potential purchaser may potentially seek to acquire by assumption or assumption and assignment or modify the Cure Amount (as defined herein) after the Assumption Notice Deadline, the Debtors shall promptly file a supplemental Assumption Notice (a "**Supplemental Assumption Notice**").

(b)     The Assumption Notice (or Supplemental Assumption Notice, if applicable) shall include, without limitation, the cure amount (each, a "**Cure Amount**"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assumed Contracts. If a Counterparty objects to (i) the Debtors ability to assume and/or assign the Assumed Contract or (ii) the Cure Amount for its Assumed Contract through the Contract Objection Deadline (as defined below), the Counterparty must file with the Court and serve on the Notice Parties a written objection (a "**Contract Objection**").

(c)     Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (iii) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on April 5, 2017** (the "**Contract Objection Deadline**"), *provided* that if the Debtors file any Supplemental Assumption Notice, such notice shall provide that the Contract Objection Deadline shall be at least 14 days after service of such notice; (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the Notice Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Assumed Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto. Any objections to adequate assurance of future performance by a Successful Bidder shall be filed in accordance with paragraph 22(e) below.

(d)     No later than one (1) business day after the conclusion or cancellation of the Auction, the Debtors shall file with the Court one or more notices identifying the Successful Bidder or Successful Bidders for the Assets (a "**Notice of Successful Bidder**"), which shall set forth, among other things, (i) the Successful Bidder and Back-Up Bidder (as defined in the Bidding Procedures), if any, (ii) the Assumed Contracts included in the Successful Bid or Back-Up Bid (as defined in the Bidding Procedures); (iii) the proposed assignee(s) of such Assumed Contracts; and (iv) instructions for contacting the Successful Bidder to obtain Adequate Assurance Information, which shall be provided to each affected Counterparty on a confidential basis; provided that if the Auction is cancelled and the Debtors choose to proceed with a transaction with one or more Stalking Horse Purchasers,

the Notice of Successful Bidder shall set forth such information for the Stalking Horse Purchaser(s) that would be provided for the Successful Bidder.

(e)   No later than one (1) business days after the conclusion or cancellation of the Auction, the Debtors will cause to be served by overnight mail upon each affected Counterparty and Consultation Party, as well as the Notice Parties and parties requesting notice in these cases under Bankruptcy Rule 2002, the applicable Notice of Successful Bidder. Counterparties may submit objections <u>solely</u> on the basis of adequate assurance of future performance by a Successful Bidder **on or before April 11, 2017 at 4:00 p.m. (ET)**.

(f)   If no Contract Objection is timely received with respect to an Assumed Contract: (i) the Counterparty to such Assumed Contract shall be deemed to have consented to the assumption by the Debtors and (if applicable) assignment of such Assumed Contract, and be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance); (ii) upon receipt by the Counterparty of any Cure Amount, any and all defaults under such Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount included in the Assumption Notice or Supplemental Assumption Notice, if applicable, for such Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Assumed Contract against the Debtors and (if applicable) the Debtors' assignee, or the property of any of them, that existed prior to the entry of the Sale Order.

(g)   To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the Cure Amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be mutually agreed to by the Debtors and the objecting Counterparty or scheduled by the Court; <u>provided</u>, <u>however</u>, that if the Contract Objection relates solely to a Cure Dispute, such Assumed Contract may be assumed by the Debtors and assigned, *provided* that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the proposed assignee pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

13.   As part of its bid, each Qualifying Bidder (including any Stalking Horse Purchaser) must make available, for review by the Consultation Parties and Counterparties to

Assumed Contracts of which such Qualifying Bidder may seek to take assignment, information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code (the "**Adequate Assurance Information**"), including (a) the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to such Qualifying Bidder; (b) a contact person for the proposed assignee that the applicable Counterparty may directly contact in connection with the adequate assurance of future performance; and (c) the actual assignee's identity.  To the extent available, the Adequate Assurance Information may also include: (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee; and (y) financial statements, tax returns and annual reports.  Adequate Assurance Information shall be provided on a confidential basis and must be kept confidential and shall only be used and disclosed as agreed to by the Qualifying Bidder that provided such Adequate Assurance Information or ordered by the Court. This Order authorizes the filing of any Adequate Assurance Information under seal, and on the docket with such non-public information redacted, without further order of the Court; *provided* that unredacted versions of such pleadings shall be served upon the Debtors, with a copy to the Court's chambers.  Any Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Order.

14.    The Assumption and Assignment Procedures are appropriate and fair to all Counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.

15.    The inclusion of a contract, lease or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors and their

estates or any other party in interest that such contract, lease or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved.

**Sale Hearing and Objections to the Sale**

16.    The Sale Hearing shall be held in this Court on **April 12, 2017 at 1:30 p.m. (ET)**, unless otherwise determined by this Court.  The Debtors may adjourn or reschedule the Sale Hearing without notice or **with** limited and shortened notice to parties, including by: (a) an announcement of such adjournment at the Sale Hearing or at the Auction or (b) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

17.    Any objections to the Sale or the relief requested in connection with the Sale (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing;  (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, together with proof of service, **on or before 4:00 p.m. (ET) on April 5 , 2017** (the "**Sale Objection Deadline**"); and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon the Notice Parties; *provided* that solely with respect to an objection to the conduct of the Auction, the designation of any Successful Bidder or Bid or Back-Up Bidder or Bid, the terms (including price) of such bids, and the Debtors' inability to satisfy the conditions of section 363(f) of the Bankruptcy Code with respect to a Successful Bid or Back-Up Bid (an "**Auction Objection**"), the deadline to file an Auction Objection shall be **4:00 p.m. (ET) on April 11, 2017** (the "**Auction Objection Deadline**").  If a Sale Objection or Auction Objection is not filed and served on or before the Sale Objection Deadline or Auction

Objection Deadline, as applicable, in accordance with the foregoing requirements, the objecting party shall be barred from objecting to the Sale and shall not be heard at the Sale Hearing, and this Court may enter the Sale Order without further notice to such party.

18.    Failure to file a Sale Objection on or before the Sale Objection Deadline and failure to file an Auction Objection on or before the Auction Objection Deadline (a) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and/or to the consummation and performance of the Sale contemplated by a Stalking Horse Agreement or any Transaction Agreement with a Successful Bidder or Back-Up Bidder, and (b) for purposes of section 363(f) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

19.    The Debtors shall have until commencement of the Sale Hearing to file and serve a reply to any objection filed in connection with the Sale, including any Sale Objection, Auction Objection, or Contract Objection.

## Form and Manner of Notice of Sale Hearing

20.    The Sale Notice, the Assumption Notice, the Notice of Successful Bidder, the Bidding Procedures, the Auction, the Sale Hearing, and the Assumption and Assignment Procedures and the objection periods associated with each of the foregoing are reasonably calculated to provide sufficient and effective notice to any affected party and to afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, Auction, the Sale, the Sale Hearing, and the assumption and assignment of the Assumed Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notices and objection periods are hereby approved.

21.      Within five (5) days of entry of the Bidding Procedures Order, the Debtors will serve the Sale Notice by first class mail on: (1) the U.S. Trustee; (2) counsel to any official committee appointed in these cases; (3) counsel to Wells Fargo Bank, N.A., in its capacity as agent; (4) counsel to Medley Capital Corporation, in its capacity as agent; (5) all parties known by the Debtors to assert a lien on any of the Assets; (6) all persons known or reasonably believed to have asserted an interest in any of the Assets; (7) all non-Debtor parties to any of the Assumed Contracts; (8) all persons known or reasonably believed to have expressed an interest in acquiring all or any portion of the Assets or making an equity or other investment in the Debtors within the twelve (12) months prior to the Petition Date; (9) the Office of the United States Attorney for the District of Delaware; (10) the Office of the Attorney General in each state in which the Debtors operate; (11) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (12) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (13) all regulatory authorities having jurisdiction over any of the Assets; (14) the Securities and Exchange Commission; (16) the United States Attorney General/Antitrust Division of Department of Justice; (17) the United States Environmental Protection Agency and similar state agencies for each state in which the Assets are located; and (16) all other parties that had filed a notice of appearance and demand for service of papers in these chapter 11 cases as of the date of service (collectively, the "**Sale Notice Parties**").  In addition, the Debtors will serve the Sale Notice on all of the Debtors' known creditors, investors, and equity holders (for whom identifying information and addresses are available to the Debtors).

22.     The Debtors shall also post the Sale Notice and the Bidding Procedures Order on the website of the Debtors' claims and noticing agent, at http://www.omnimgt.com/unitedroadtowing.

23.     Not later than five (5) days after entry of this Order, the Debtors shall cause the Sale Notice to be published once in the *Chicago Tribune*, once in the national edition of either the *New York Times* or *Wall Street Journal*, and once in the local edition of newspapers in Los Angeles, California, San Diego, California, Minneapolis, Minnesota, and Dallas, Texas. Such publication conforms to the requirements of Bankruptcy Rules 2002(l) and 9008, and is reasonably calculated to provide notice to any affected party, including any Potential Bidders, and to afford the affected party the opportunity to exercise any rights affected by the Motion and the relief granted by this Order.

**Miscellaneous**

24.     On or before March 31, 2017 (the "**Designation Deadline**"), the Debtors may, in consultation with the Consultation Parties, to select one or more parties to serve as a Stalking Horse Purchaser to acquire one or more of the Debtors' Assets pursuant to a Stalking Horse Agreement; provided, however, that as to any Stalking Horse Agreement, absent further Court approval, any break-up fees shall be limited to an amount no greater than 3% of the Qualifying Bid and any expense reimbursements in an amount not to exceed $150,000.  Upon such selection, the Debtors shall provide, to all parties that have requested notice of the proceedings in these chapter 11 cases, two (2) days' notice of and an opportunity to object to the designation of such Stalking Horse Purchaser and disclosure of bid protections set forth in the Stalking Horse Agreement (such notice which shall be extended by an additional one (1) day for each day that such selection was made prior to the Designation Deadline up to five (5) days), and absent

objection, the Debtors selection of such Stalking Horse Purchaser shall be deemed designated without further need for Court approval; provided that notwithstanding the foregoing, the Debtors shall provide not less than five (5) days' notice and opportunity to object if they enter into a Stalking Horse Agreement with an insider, or an affiliate of an insider, of the Debtors. To the extent necessary, the Debtors' right to seek this Court's approval of one or more Stalking Horse Purchasers, with notice and a hearing, is hereby preserved.

25.    The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

26.    In the event that there is a conflict between this Order or the Bidding Procedures, on the one hand, and the Motion, a Transaction Agreement, or a Stalking Horse Agreement, on the other hand, this Order and the Bidding Procedures shall control and govern, and this Order shall control in the event of any conflict with the Bidding Procedures.

27.    Prior to mailing and publishing the Sale Notice and the Assumption Notice, as applicable, the Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deems necessary or appropriate.

28.    All persons or entities that participate in the bidding process shall be deemed to have knowingly and voluntarily: (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction and/or any Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith

consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

29.    This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules is expressly waived. The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

30.    The requirements set forth in Local Bankruptcy Rules 6004-1, 9006-1 and 9013-1 are hereby satisfied or waived.

31.    This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation or interpretation of the Order.

Dated:   March ___9___, 2017
         Wilmington, Delaware

_____
Laurie Selber Silverstein
United States Bankruptcy Judge

17