## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>UNITED ROAD TOWING, INC. *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-10249 (LSS)<br><br>Jointly Administered<br><br>**Ref. Docket Nos. 57, 153, 278** |

### ORDER (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING SALE OF CERTAIN ASSETS OF DEBTORS' OUTSIDE THE ORDINARY COURSE OF BUSINESS; (II) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (III) AUTHORIZING THE ASSUMPTION, SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (the "**Debtors**") for an order, under sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014 and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), authorizing and approving, among other things, (a) the proposed sale of substantially all of the Debtors' assets (defined as the **Acquired Assets** in the Purchase Agreement) free and clear of all Liens, Claims, and Encumbrances other than the

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: United Road Towing, Inc. (6962); URT Holdings, Inc. (8341); City Towing Inc. (2118); URS West, Inc. (3518); Bill & Wags, Inc. (3518); Export Enterprises of Massachusetts, Inc. (5689); Pat's Towing, Inc. (6964); Keystone Towing, Inc. (6356); Ross Baker Towing, Inc. (9742); URT Texas, Inc. (3716); Mart-Caudle Corporation (1912); Signature Towing, Inc. (3054); WHW Transport, Inc. (3055); URS Southeast, Inc. (7289); URS Northeast, Inc. (7290); URS Southwest, Inc. (7284); Fast Towing, Inc. (5898); E & R Towing and Garage, Inc. (8500); Sunrise Towing, Inc. (7160); Ken Lehman Enterprises Inc. (1970); United Road Towing South Florida, Inc. (9186); Rapid Recovery Incorporated (1659); United Road Towing Services, Inc. (2206); Arri Brothers, Inc. (7962); Rancho Del Oro Companies, Inc. (3924); CSCBD, Inc. (2448); URS Leasing, Inc. (9072); UR VMS, LLC (4904); UR Vehicle Management Solutions, Inc. (0402). The Debtors' mailing address is c/o United Road Towing, Inc., 9550 Bormet Drive, Suite 301, Mokena, Illinois 60448.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or in the Purchase Agreement (as defined herein), as applicable. If there is a conflict between terms defined in the Motion and the Purchase Agreement, the Purchase Agreement shall control.

Assumed Liabilities and Permitted Liens; (b) entry into an Asset Purchase Agreement with Medley Capital Corporation, a Delaware corporation (collectively with any nominee or designee thereof, the "**Purchaser**"), dated April 13, 2017, a copy of which is attached hereto as **Exhibit 1** (the "**Purchase Agreement**"); (c) assumption and assignment of the Assumed Contracts to the Purchaser; and (d) other related relief, and the Court having entered an order approving the bid procedures (the "**Bidding Procedures**") and granting related relief on March 9, 2017 [Docket No. 153] (the "**Bidding Procedures Order**"); an Auction having been conducted pursuant to the terms of the Bidding Procedures Order on April 10, 2017, the Debtors having identified the bid by the Purchaser made at the Auction as the highest or otherwise best bid for the Acquired Assets, and the Court having conducted a hearing on the Motion commencing on April 12, 2017 (the "**Sale Hearing**") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; and the Court having (a) reviewed and considered the Motion, all relief related thereto, the objections thereto and statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at the Sale Hearing and (b) found that, after an extensive marketing process by the Debtors, the Purchaser has submitted the highest or otherwise best bid for the Acquired Assets; and adequate and sufficient notice of the Bidding Procedures, the Purchase Agreement, and all transactions contemplated thereunder and in this Sale Order were given in the manner directed by the Court in the Bidding Procedures Order; and reasonable and adequate notice of the Motion having been provided to all persons required to be served in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; and all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; and jurisdiction existing for the Court to consider the Motion; and after due deliberation thereon; and upon the arguments and statements

2

in support of the Motion presented at the hearing before the Court; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon; and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[3]

A.    **Jurisdiction and Venue**.  This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and Local Rule 6004-1.

C.    **Final Order**.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

D.    **Notice**.  Actual written notice of the Sale, the Motion, the time and place of the proposed Auction, the time and place of the Sale Hearing (the "**Sale Notice**") was provided to the following parties: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to any official committee appointed in these cases; (c) counsel to Wells Fargo Bank,

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

*NY 246429354v5*

N.A., in its capacity as agent; (d) counsel to Medley Capital Corporation, in its capacity as agent; (e) all parties known by the Debtors to assert a lien on any of the Assets; (f) all persons known or reasonably believed to have asserted an interest in any of the Assets; (g) all non-Debtor parties to any of the Assumed Contracts; (h) all persons known or reasonably believed to have expressed an interest in acquiring all or any portion of the Assets or making an equity or other investment in the Debtors within the twelve (12) months prior to the Petition Date; (j) the Office of the United States Attorney for the District of Delaware; (k) the Office of the Attorney General in each state in which the Debtors operate; (*l*) the Office of the Secretary of State in each state in which the Debtors operate or are organized; (m) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (n) all regulatory authorities having jurisdiction over any of the Assets; (o) the Securities and Exchange Commission; (p) the United States Attorney General/Antitrust Division of Department of Justice; (q) the United States Environmental Protection Agency and similar state agencies for each state in which the Assets are located; (r) all other parties that had filed a notice of appearance and demand for service of papers in these chapter 11 cases as of the date of service; and (s) on all of the Debtors' known creditors, investors, and equity holders (for whom identifying information and addresses are available to the Debtors). *See* [Docket No. 179]. The Sale Notice and the Bidding Procedures Order were also posted on the website of the Debtors' claims and noticing agent. The Sale Notice was also published in the *Chicago Tribune*, the *Los Angeles Times*, the *Minnesota Star Tribune*, *The San Diego Union-Tribune*, *The Dallas Morning News*, and the national edition of *The New York Times*. *See* [Docket Nos. 169-174].

      E.      The Sale Notice was reasonably calculated to provide all interested parties with timely and proper notice of the Sale, the Auction and the Sale Hearing.

4

F.    As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, Purchase Agreement, Sale Hearing, Sale and transactions contemplated thereby, has been provided in accordance with the Bidding Procedures Order, sections 105(a), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008.  The Debtors have complied with all obligations to provide notice of the Motion as required by the Bidding Procedures Order.  The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, Purchase Agreement, Auction or Sale Hearing is or shall be required. The disclosures made by the Debtors concerning the Motion, the Purchase Agreement, the Auction and Sale Hearing were good, complete, and adequate.

G.    In accordance with the Bidding Procedures Order, the Debtors served a notice ("**Assumption Notice**") of the potential assumption and assignment of the Assumed Contracts which Assumption Notice identifies all defaults and actual pecuniary loss to the non-debtor party resulting from such defaults including, but not limited to, all claims, demands, charges, rights to refunds and monetary and non-monetary obligations that the non-debtor parties can assert under the Assumed Contracts whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to the Assumed Contracts (the foregoing amounts as stated in the Assumption Notice, as modified herein, collectively referred to as the "**Cure Amounts**") upon each non-debtor counterparty to an Assumed Contract. *See* [Docket No. 224]. The service and provision of the Assumption Notice was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of assumption and assignment of the Assumed Contracts or

5

establishing a Cure Amount for the respective Assumed Contract. Non-debtor counterparties to the Assumed Contracts have had an adequate opportunity to object to assumption and assignment of the applicable Assumed Contract and the Cure Amount set forth in the Assumption Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-debtor counterparty from accepting performance by, or rendering performance to, Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code). The deadline to file an objection to the Debtors' ability to assume and/or assign the Assumed Contract or to the stated Cure Amounts (a "**Contract Objection**") has expired and to the extent any such party timely filed a Contract Objection, all such Contract Objections have been resolved, withdrawn, overruled, or continued to a later hearing by agreement of the parties. Pursuant to the Bidding Procedures Order and Assumption Notice, to the extent that any such party did not timely file a Contract Objection by 4:00 p.m. (Eastern Time) on April 5, 2017 (the "**Contract Objection Deadline**"), such party shall be deemed to have consented to (i) the assumption and assignment of the Assumed Contract and (ii) the proposed Cure Amount, if any, set forth on the Assumption Notice.

H.     **Corporate Authority**. (i) The Debtors have full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby and the Debtors' sale of the Acquired Assets has been duly and validly authorized by all necessary corporate action, (ii) the Debtors have all the corporate power and authority necessary to consummate the transactions contemplated by the Purchase Agreement, (iii) the Debtors have taken all corporate action necessary to authorize and approve the Purchase Agreement and the consummation of the transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly

provided for in the Purchase Agreement, are required for the Debtors to consummate such transactions.

I.        The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.  Neither the Debtors nor the Purchaser is entering into the transactions contemplated by the Purchase Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

J.        The Debtors are the sole and lawful owner of the Acquired Assets.  Subject to sections 363(f) and 365(a) of the Bankruptcy Code, the transfer of each of the Acquired Assets to the Purchaser, in accordance with the Purchase Agreement will be, as of the Closing Date (as defined in the Purchase Agreement), a legal, valid, and effective transfer of the Acquired Assets, which transfer vests or will vest the Purchaser with all of the Debtors' right, title, and interest to the Acquired Assets free and clear of all Liens, Claims, and Encumbrances other than the Assumed Liabilities and Permitted Liens.  Claims, as defined in the Purchase Agreement shall include, but not be limited to, all debts arising under, relating to, or in connection with any act of the Debtors or claims liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat obligations, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement applicable law, equity or otherwise (including, without limitation, rights with respect to Liens, Claims, and Encumbrances (i) that purport to give to any party a right of setoff against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or

7

repurchase right or option, or termination of, any of the Debtors' or the Purchaser's interests in the Acquired Assets, or any similar rights, (ii) in respect of taxes owed by the Debtors for periods prior to the Closing Date, including, but not limited to, sales, income, use or any other type of tax, or (iii) in respect of restrictions, rights of first refusal, charges or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income or other exercise of any attributes of ownership) relating to, accruing or arising any time prior to the Closing Date, with the exception of the Assumed Liabilities.

K.    **Sale in Best Interests of the Debtors' Estates**.  Good and sufficient reasons for approval of the Purchase Agreement and the transactions to be consummated in connection therewith (the "**Sale**") have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The Debtors have demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, outside of a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates and the Sale will provide the means for the Debtors to maximize creditor recoveries.

L.    The Sale must be approved and consummated promptly in order to preserve the viability of the Debtors' businesses as a going concern and to maximize the value of the Debtors' estates.  Time is of the essence in consummating the Sale.  Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the Purchase Price, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

NY 246429354v5

M.    The consummation of the Sale and the assumption and assignment of the Assumed Contracts are legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

N.    **Good Faith of Buyer and Sellers**.  The Purchase Agreement was negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith and from arm's-length bargaining positions and is substantively and procedurally fair to all parties. Neither any of the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Purchaser has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among bidders.  The Purchaser is purchasing the Acquired Assets, in accordance with the Purchase Agreement, in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by such provision, and otherwise has proceeded in good faith in all respects in connection with the Debtors' chapter 11 cases. As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bidding Procedures Order, and, among other things: (a) the Debtors and the Purchaser complied with the provisions in the Bidding Procedures Order; (b) the Purchaser agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; and (c) all payments to be made by the Purchaser in connection

NY 246429354v5

with the Sale have been disclosed, the Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code.

O.    **Highest or Otherwise Best Offer**.    The Debtors conducted the Auction in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order.  The Auction established in the Bidding Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets.  The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity was given to any interested party to make a higher or otherwise better offer for the Acquired Assets.  The Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the Purchase Agreement constitutes the highest and otherwise best offer for the Acquired Assets is a valid and sound exercise of their fiduciary duty and constitutes a valid and sound exercise of the Debtors' business judgment.

P.    **Consideration**.    The consideration provided by the Purchaser pursuant to the Purchase Agreement (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Acquired Assets, and (c) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the laws of the United States any state, territory, possession, or the District of Columbia.  No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Purchaser.    Approval of the Motion, the Purchase Agreement and the

consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

Q.    **No Successor**.  The transactions contemplated under the Purchase Agreement do not amount to a consolidation, merger, or de facto merger of the Purchaser and the Debtors and/or the Debtors' estates; there is not substantial continuity between the Purchaser and the Debtors; there is no continuity of enterprise between the Debtors and the Purchaser; the Purchaser is not a mere continuation of the Debtors or their estates; and the Purchaser is not a successor or assignee of the Debtors or their estates for any purpose, including but not limited to under any federal, state or local statute or common law, or revenue, pension, ERISA, tax, labor, employment (including under the United States Worker Adjustment and Retraining Notification Act or any similar applicable federal, state, provincial, local, municipal, foreign or other law), environmental, escheat or unclaimed property laws, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine or common law, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.  Except for the Assumed Liabilities and Permitted Liens, the (i) transfer of the Acquired Assets to the Purchaser and (ii) assumption and assignment to the Purchaser of the Assumed Contracts, do not and will not subject the Purchaser to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without

11

limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.

R.    **Free and Clear**.  The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Acquired Assets free and clear of any Lien, Claim, or Encumbrance in the property, other than the Assumed Liabilities and Permitted Liens.

S.    The Purchaser would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby if the Sale to the Purchaser and the assumption of any Assumed Liabilities by the Purchaser were not free and clear of all Liens, Claims, or Encumbrances other than the Assumed Liabilities and Permitted Liens. The Debtors may sell the Acquired Assets free and clear of any Liens, Claims, or Encumbrances of any kind or nature whatsoever as set forth in this Sale Order because in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Each entity with a Lien, Claim, or Encumbrance in the Acquired Assets to be transferred on the Closing Date: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, Claim, or Encumbrance; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of Liens, Claims, or Encumbrances who did not object to the Motion are deemed, subject to the terms of this Sale Order, to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Liens, Claims, or Encumbrances (other than the Assumed Liabilities and Permitted Liens) are adequately protected by having their Liens, Claims, or Encumbrances attach to the proceeds received by the Debtors that are ultimately attributable to the property against or in

which such Liens, Claims, or Encumbrances are asserted, subject to the terms of such Liens, Claims, or Encumbrances with the same validity, force and effect, and in the same order of priority, which such Liens, Claims, or Encumbrances now have against the Acquired Assets or their proceeds, if any, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

T.    **Assumed Contracts/Cure/Adequate Assurance**.  Subject to paragraph 22 of this Sale Order, the Assumed Contracts shall be those agreements set forth on **Exhibit 2** to this Sale Order.

U.    The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order is integral to the Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  Payment of the Cure Amounts shall (i) to the extent necessary, cure or provide adequate assurance of cure, within the meaning of section 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assumed Contracts, within the meaning of section 365(b)(1)(B) and 365(f)(2)(A)  of the Bankruptcy Code.  The Purchaser's financial wherewithal to consummate the transactions contemplated by the Purchase Agreement and the evidence presented at the Sale Hearing demonstrating the Purchaser's ability to perform the obligations under the Assumed Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of section 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

13

V.      Any objections to the assumption and assignment of any of the Assumed Contracts by the Purchaser in accordance with the Purchase Agreement are hereby overruled.  To the extent that any counterparty failed to object to the proposed Cure Amounts timely, such counterparty is deemed to have consented to such Cure Amounts and the assumption and assignment of its respective Assumed Contract(s) to the Purchaser in accordance with the Purchase Agreement.

W.      **Personally Identifiable Information**.  The Sale may include the transfer of Personally Identifiable Information, as defined in section 101(41A) of the Bankruptcy Code.  No Consumer Privacy Ombudsman need be appointed under section 363(b)(1) of the Bankruptcy Code because the Purchaser has agreed to adhere to any privacy policies applicable to the Debtors.

NOW, THEREFORE, IT IS ORDERED THAT:

1.      **Motion Is Granted**.  The Motion and the relief requested therein is **GRANTED** and **APPROVED**, as set forth herein.

2.      **Objections Overruled**.  Any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing (the full record of which is incorporated herein by reference), by stipulation filed with the Court, or by representation by the Debtors in a separate pleading, and all reservations of rights included therein, if any, hereby are denied and overruled on the merits with prejudice.

3.      **Approval**.  The Purchase Agreement, and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved in all respects.  Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are hereby authorized to

14

(a) execute the Purchase Agreement, along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Purchase Agreement, provided that such additional documents do not materially change its terms adversely to the Debtors' estates; (b) consummate the Sale in accordance with the terms and conditions of the Purchase Agreement and the instruments to the Purchase Agreement contemplated thereby; and (c) execute and deliver, perform under, consummate, implement, and close fully the transactions contemplated by the Purchase Agreement, including the assumption and assignment to the Purchaser (in accordance with the Purchase Agreement) of the Assumed Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale. The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Purchase Agreement or any other Sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order.

4.      Pursuant to Section 2.5(a)(vi) of the Purchase Agreement and as authorized by section 363(b) and 363(k) of the Bankruptcy Code, the Purchaser shall be entitled to credit bid in an amount equal to $16,000,000 of the allowed Medley Obligations in connection with calculating the Purchase Price.

5.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders of Liens, Claims, or Encumbrances or other interests in, against or on all or any portion of the Acquired Assets (whether known or unknown), the Purchaser and all successors and assigns of the Purchaser, the Acquired Assets and any trustees, if any, subsequently appointed in the Debtors'

chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases. This Sale Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser and the respective successors and assigns of each of the foregoing.

6.     **Transfer of Acquired Assets Free and Clear of Liens, Claims, or Encumbrances**.  Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets to the Purchaser in accordance with the Purchase Agreement and such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets and shall vest the Purchaser with title in and to the Acquired Assets and, other than the Assumed Liabilities and Permitted Liens, the Purchaser shall take title to and possession of the Acquired Assets free and clear of all Liens, Claims, and Encumbrances, and other interests of any kind or nature whatsoever, including but not limited to successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities, and subject to Paragraph 36 below, all such Liens, Claims, and Encumbrances, to attach to the proceeds received by the Debtors that are ultimately attributable to the property against or in which such Liens, Claims, or Encumbrances are asserted, subject to the terms of such Liens, Claims, or Encumbrances with the same validity, force and effect, and in the same order of priority, which such Liens, Claims, or Encumbrances now have against the Acquired Assets or their proceeds, if any, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

7.     Unless otherwise expressly included in the definition of "Assumed Liabilities" or "Permitted Liens" in the Purchase Agreement, the Purchaser shall not be responsible for any Liens, Claims, or Encumbrances including in respect of the following:

16

NY 246429354v5

(a) any labor or employment agreements; (b) any mortgages, deeds of trust and security interests; (c) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtors; (d) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, state discrimination laws, state unemployment compensation laws or any other similar state laws, or any other state or federal benefits or claims relating to any employment with the Debtors or any of their respective predecessors; (e) any bulk sales or similar law; (f) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended or any state or local tax laws; (g) any escheat or unclaimed property laws; (h) to the extent not included in the foregoing, any of the Excluded Liabilities under the Purchase Agreement; and (i) any theories of successor or transferee liability.

8.     The Debtors and their agents are directed, and all other persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are authorized, to surrender possession of such Acquired Assets to the Purchaser in accordance with the Purchase Agreement on the Closing Date.  On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, Claims, and Encumbrances, or other interests in the Acquired Assets (other than the Assumed Liabilities and Permitted Liens), if any, as such Liens, Claims, and Encumbrances may have been recorded or may otherwise exist; *provided* that nothing set forth in this paragraph shall impose any obligations on the DIP Agent, DIP Lenders, Prepetition Agents and Prepetition Secured Lenders (as each term is defined in the DIP Order (as defined below)) except as expressly provided for in the applicable loan documents with such parties.

17

9.      If any person or entity which has filed statements or other documents or agreements evidencing Liens or Encumbrances on or Claims against all or any portion of the Acquired Assets (other than statements or documents with respect to the Assumed Liabilities or Permitted Liens) shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all such Liens, Encumbrances, Claims, or other interests which the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtors are hereby authorized, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.

10.     On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer to the Purchaser of the Debtors' interests in the Acquired Assets.  This Sale Order is and shall be effective as a determination that, on the Closing Date, all Liens, Claims, Encumbrances, or other interest of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing Date, other than the Assumed Liabilities and Permitted Liens, shall have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected.  This Sale Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or

18

contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement. A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Liens, Encumbrances, and Claims, except those assumed as Assumed Liabilities or any Permitted Liens. Notwithstanding the foregoing, the consummation of the Sale shall not be deemed a transfer under a plan, and therefore section 1146(a) of the Bankruptcy Code shall not apply to the Sale or this Order.

11. **Prohibition of Actions against Purchaser**. Except with respect to the Assumed Liabilities and Permitted Liens, or as otherwise expressly provided for in this Sale Order or the Purchase Agreement, all persons and entities, including, but not limited to, all debt holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding Liens, Claims, Encumbrances, or other interests of any kind or nature whatsoever against or in all or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Acquired Assets or the transfer of the Acquired Assets to the Purchaser in accordance with the Purchase Agreement, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser (in its capacity as purchaser under the Purchase Agreement), its successors or assigns, its property or the Acquired Assets, such persons' or entities' Liens, Claims, or Encumbrances in and to the Acquired Assets,

19

including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Lien, Claim, or Encumbrance against the Purchaser, its successors, their assets, or their properties; (d) asserting any setoff or right of subrogation of any kind against any obligation due the Purchaser or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

12.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Purchaser as of the Closing Date. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets or the Debtors' business sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Purchase Agreement.

NY 246429354v5

13.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Purchaser in accordance with the terms of the Purchase Agreement, and this Sale Order.

14.     The Purchaser has given substantial consideration under the Purchase Agreement for the benefit of the Debtors, their estates, and creditors.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Liens, Claims, or Encumbrances pursuant to this Sale Order which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens, Claims, or Encumbrances against any of the Debtors or any of the Acquired Assets, other than with respect to the Assumed Liabilities or Permitted Liens.  The consideration provided by the Purchaser for the Acquired Assets under the Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

15.     Notwithstanding the foregoing, nothing herein shall prevent (i) the Debtors from pursuing an action against the Purchaser arising under the Purchase Agreement or the related documents, or (ii) any administrative agencies, governmental, tax and regulatory authorities, secretaries of state, federal, state and local officials from properly exercising their police and regulatory powers.

16.     **Assumption and Assignment of Contracts**.  The Debtors are hereby authorized, in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (a) assume and assign to the Purchaser, in accordance with the Purchase Agreement, effective upon the Closing Date and payment of the Cure Amounts by Purchaser, the Assumed Contracts free and clear of all Liens, Claims, and Encumbrances, and other interests of any kind or nature

21

whatsoever (other than the Assumed Liabilities and Permitted Liens) and (b) execute and deliver to the Purchaser such documents or other instruments as the Purchaser deems may be necessary to assign and transfer the Assumed Contracts (and the Assumed Liabilities) to the Purchaser in accordance with the Purchase Agreement.

17.    With respect to the Assumed Contracts: (a) each Assumed Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) the Debtors may assume each of the Assumed Contracts in accordance with section 365 of the Bankruptcy Code; (c) the Debtors may assign each Assumed Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assumed Contract (or state or local law or ordinances) that prohibit or condition the assignment of such Assumed Contract or allow the party to such Assumed Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of each Assumed Contract, in accordance with the Purchase Agreement have been satisfied; (e) the Assumed Contracts shall be transferred and assigned to, and following the Closing Date remain in full force and effect for the benefit of, the Purchaser in accordance with the Purchase Agreement, notwithstanding any state or local law or ordinances or any provision in any such Assumed Contract (including those of the type described in section 365(b)(2) and 365(f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such assignment to and assumption by the Purchaser in accordance with the Purchase

22

Agreement; and (f) upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract.

18.    All defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or as soon thereafter as practicable by payment of the Cure Amounts. To the extent that any counterparty to an Assumed Contract did not object to the Debtors' assumption and assignment of such Assumed Contract or to its Cure Amount by the Contract Objection Deadline, such counterparty is deemed to have consented to such Cure Amount and to the assumption and assignment of its respective Assumed Contract(s) to the Purchaser in accordance with the Purchase Agreement.

19.    Unless otherwise represented by the Debtors in a separate pleading, in open court at the Sale Hearing, in this Sale Order, or pursuant to a contract or lease amendment entered into by the Debtors, the Purchaser, and the appropriate contract or lessor counterparty (any such amendment being deemed approved by this Sale Order), the Cure Amount provided in the Assumption Notice reflects the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assumed Contracts, and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to the Purchaser of the Assumed Contracts in accordance with the Purchase Agreement.

20.    Upon the Debtors' assignment of the Assumed Contracts to the Purchaser under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Amounts as set forth herein, no default shall exist under any Assumed Contract, and no

23

counterparty to any Assumed Contract shall be permitted (a) to declare a default by the Purchaser under such Assumed Contract or (b) otherwise take action against the Purchaser as a result of Debtors' financial condition, bankruptcy or failure to perform any of their obligations under the relevant Assumed Contract.  Each non-debtor party to an Assumed Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the Purchaser, or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date, including those constituting Excluded Liabilities or, against the Purchaser, any counterclaim, defense, setoff, recoupment or any other Claim asserted or assertable against the Debtosr; and (ii) imposing or charging against the Purchaser any rent accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignment to the Purchaser of any Assumed Contract in accordance with the Purchase Agreement.  The validity of such assumption and assignment of each Assumed Contract shall not be affected by any dispute between the Debtors and any non-debtor party to an Assumed Contract relating to such contract's respective Cure Amounts.

21.     Except as provided in the Purchase Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such Liens, Claims, and Encumbrances are forever barred and estopped from asserting such Claims against the Debtors, their successors or assigns, their property or their assets or estates.

22.     The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or

24

conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

23.    Notwithstanding anything herein to the contrary and subject to the Purchase Agreement, the Purchaser may remove any Contract from the list of Assumed Contracts (and thereby exclude such Contract from the definition of Assumed Contracts) pursuant to the procedures set forth in the Purchase Agreement.

24.    **Good Faith**. The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts) with the Purchaser, unless such authorization is duly stayed pending such appeal.  The Purchaser is a good faith purchaser of the Acquired Assets, and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

25.    There has been no showing that the Debtors or the Purchaser engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  The Purchaser is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.

26.    **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Purchase Agreement (including all ancillary documents

25

executed in connection therewith) and this Sale Order. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent. To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall control.

27.   **Non-Material Modifications**. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court; <u>provided</u>, that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates nor does it modify Section 2.5(a) of the Purchase Agreement; and <u>provided further</u> that prior to the time that the DIP Obligations and the Prepetition ABL Debt, as applicable, have been indefeasibly paid in full to the DIP Lenders and Prepetition ABL Lenders, respectively (as their interests may appear), any such modification, amendment or supplement by the parties to the Purchase Agreement (and any related agreements, documents or other instruments executed in connection therewith or related thereto) shall be subject to consultation with the DIP Agent and the Prepetition ABL Agent, respectively.

28.   **Subsequent Plan Provisions**. Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or in any other order in these chapter 11 cases (including any order dismissing any of these cases or any order entered after any conversion of any of these cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Sale Order shall alter, conflict with, or derogate from, the provisions of the Purchase Agreement or this Sale Order.

26

29.     **No Stay of Order**.    Notwithstanding the provisions of Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), and pursuant to Bankruptcy Rules 7062 and 9014, this Sale Order shall not be stayed for fourteen days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.    Time is of the essence in closing the transactions referenced herein, and the Debtors and the Purchaser intend to close the Sale as soon as practicable.    Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

30.     **Calculation of Time**.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

31.     **Further Assurances**.    From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by the Purchase Agreement including such actions as may be necessary to vest, perfect or confirm, of record or otherwise, in the Purchaser its right, title and interest in and to the Acquired Assets.

32.     **Retention of Jurisdiction**. This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtors to the Purchaser in accordance with the Purchase Agreement, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to,

27

retaining jurisdiction to (a) interpret, implement and enforce the provisions of this Sale Order and the Purchase Agreement; (b) adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale; (c) protect the Purchaser against any Liens, Claims, Encumbrances, or other interests in the Debtors or the Acquired Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale; and (d) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assumed Contracts.

33.    **Use of Marks**.  Neither the Debtors nor any of their affiliates shall use, license or permit any third party to use, any name, slogan, logo or trademark which is similar or deceptively similar to any of the names, trademarks or service marks included in the Intellectual Property included in the Acquired Assets, and each Debtor is authorized to change its corporate name to a name which (a) does not use the Intellectual Property or any other name that references or reflects any of the foregoing in any manner whatsoever or any of the Debtors' predecessors in any manner whatsoever and (b) is otherwise substantially dissimilar to its present name.

34.    **Caption Change**. Within three (3) business day of the occurrence of the Closing Date, (i) United Road Towing, Inc. ("**URT**") shall be authorized to change its corporate name to "Old Towing Company" and any authorized officer of URT shall be authorized to execute any appropriate charter amendments or other documents required to effect such change without further director or stockholder action, and (ii) the Debtors shall submit an order under certification to amend the caption for these jointly administered cases as follows:

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

NY 246429354v5

|  |  |
|---|---|
| In re: | Chapter 11 |
| OLD TOWING COMPANY, *et al.*,[1] | Case No. 17-10249 (LSS) |
| Debtors. | Jointly Administered |

The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Old Towing Company (6962); URT Holdings, Inc. (8341); City Towing Inc. (2118); URS West, Inc. (3518); Bill & Wags, Inc. (3518); Export Enterprises of Massachusetts, Inc. (5689); Pat's Towing, Inc. (6964); Keystone Towing, Inc. (6356); Ross Baker Towing, Inc. (9742); URT Texas, Inc. (3716); Mart-Caudle Corporation (1912); Signature Towing, Inc. (3054); WHW Transport, Inc. (3055); URS Southeast, Inc. (7289); URS Northeast, Inc. (7290); URS Southwest, Inc. (7284); Fast Towing, Inc. (5898); E & R Towing and Garage, Inc. (8500); Sunrise Towing, Inc. (7160); Ken Lehman Enterprises Inc. (1970); United Road Towing South Florida, Inc. (9186); Rapid Recovery Incorporated (1659); United Road Towing Services, Inc. (2206); Arri Brothers, Inc. (7962); Rancho Del Oro Companies, Inc. (3924); CSCBD, Inc. (2448); URS Leasing, Inc. (9072); UR VMS, LLC (4904); UR Vehicle Management Solutions, Inc. (0402). The Debtors' mailing address is c/o United Road Towing, Inc., 9550 Bormet Drive, Suite 301, Mokena, Illinois 60448.

35.     Upon the entry of the order referenced in paragraph 34, the Clerk of the Court is authorized and directed to make a docket entry in case numbers 17-10249 through 17-10277, consistent with Paragraph 34 of this Sale Order.

36.     **Resolution of Objections**.

(i)     A continued hearing with respect to unresolved cure and assumption objections shall be held on April 27, 2017 at 11:00 a.m. (ET) (the "**Continued Hearing**").

(ii)     Notwithstanding anything to the contrary on the Assumption Notice, the Cure Amount for Equipment Lease Agreement No. 7802251002 with Wells Fargo Vendor Financial Services, LLC, dated August 30, 2016, shall be $6,797.76.

(iii)     The hearing on the City of Chicago's objection (the "**Chicago Objection**") to the Sale Motion is adjourned to the Continued Hearing without being adjudicated, and nothing in this Order shall be a determination of any issues respecting any executory contracts by and between the City of Chicago and any Debtor (the "**Chicago Contracts**"). No

29

later than two (2) days prior to the date of the Continued Hearing (the "**Chicago Objection Deadline**"), the City of Chicago may file a supplemental objection (a "**Chicago Supplemental Objection**") to the Sale Motion to address (i) any revisions to the amounts required to cure monetary defaults under the Chicago Contracts as of the date of the proposed assumption of the Chicago Contracts; (ii) any adequate protection or assurance issues; or (iii) the ability of the Buyer to obtain all necessary licenses, permits, insurance or bonds required under the Chicago Contracts, including, without limitation, whether any such licenses or permits may be assigned under applicable non-bankruptcy law. If the Chicago Objection Deadline expires without either (a) the City of Chicago filing a Chicago Supplemental Objection, (b) the parties agreeing to extend the Chicago Objection Deadline, or (c) the parties scheduling a hearing on the Chicago Objection and/or the Chicago Supplemental Objection, then the Chicago Objection shall be deemed resolved and the Chicago Contracts shall be deemed Assumed Contracts without the need for further adjudication.

(iv)     The lease between URT and the Gregory R and Lisa K. Baker Trust for the property located at 12025 Branford Street, Sun Valley, CA 91352, expired on its own terms on February 28, 2017 and shall not be an Assumed Contract. The lease between URT and the Gregory R and Lisa K. Baker Trust for the property located at 8750 Vanalden Avenue, Northridge, CA 91324 (the "**Vanalden Lease**") expired on its own terms on February 28, 2017. The Vanalden Lease shall be an Assumed Contract, with the understanding that it is effectively a month-to-month lease based on the holdover terms set forth therein to the extent of URT's interest in such Vanalden Lease under applicable non-bankruptcy law.

(v)     For the avoidance of doubt, the Rental Agreement with Romco Equipment, Inc. shall not be an Assumed Contract.

(vi)    For the avoidance of doubt, the Purchasing Participation Agreement with AmeriQuest Transportation and Logistics Resources shall not be an Assumed Contract. The stipulation with Ameriquest Business Services, Inc. attached hereto as **Exhibit 3** is approved.

(vii)    The Cure Amount for the subcontract for towing services with Texas Towing, LLC shall be determined at the Continued Hearing and nothing set forth in this order shall serve to establish such Cure Amount.

(viii)    Notwithstanding anything in this Sale Order, the Bidding Procedures Order, the Sale Motion, any list or schedule of assumed contracts, assumed and assigned contracts, or cure amounts, including the Assumption Notice (including, without limitation, any other provision that purports to be preemptory or supervening), nothing herein or therein shall permit or otherwise effect a sale, an assignment or any other transfer at this time of (a) any insurance policies that have been issued by ACE American Insurance Company or any of its affiliates or successors (collectively, the "**Chubb Companies**") or that provide coverage at any time to any of the Debtors (or their predecessors) and all agreements, documents or instruments relating thereto (collectively, the "**Chubb Insurance Contracts**"), and/or (b) any rights, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts, and/or (c) any collateral securing the Debtors' obligations under the Chubb Insurance Contracts (together with any proceeds thereof, the "**Chubb Collateral**"), unless and until a further order is entered by this Court at the Continued Hearing, at a subsequent hearing, or as submitted under certification of counsel by agreement of the Debtors, the Purchaser and the Chubb Companies, with the rights of the parties fully preserved pending entry of such further order. Such further order, without further notice, may provide, among other things, that (i)

31

subject to the execution of an assumption agreement by the Debtors, the Purchaser and the Chubb Companies, in form and substance satisfactory to each of the parties (the "**Chubb Assumption Agreement**"), the Debtors are authorized to assume and assign the Chubb Insurance Contracts to the Purchaser and the Purchaser shall assume and shall be liable for any and all now existing or hereinafter after arising obligations, liabilities, terms, provisions and covenants of any of the Debtors under the Chubb Insurance Contracts; (ii) the rights and interests of the Debtors in the Chubb Collateral shall be transferred and assigned to the Purchaser; and (iii) the Debtors are authorized to enter into the Chubb Assumption Agreement; and/or (iv) such other and further relief as may be requested by the Chubb Companies, the Debtors and/or the Purchaser

(ix)    The hearing on the Capitol Indemnity Company and Platte River Insurance Company (together, "**Platte**" or the "**Surety**") limited objections to the Sale Motion [D.I. No. 248] and to adequate assurance of future performance by proposed assignee [D.I. No. 262] (together, the "**Surety Objections**"), is adjourned to the date of the Continued Hearing without being adjudicated, and, absent further order of the Court or agreement of the Surety, the Debtors and the Purchaser, nothing in this Order shall be deemed or construed as a determination of any issues respecting:  (a) any outstanding surety bonds issued by Platte at the request and on behalf of any of the Debtors (collectively, the "**Bonds**") and whether the Bonds are executory contracts capable of assumption by the Debtors and/or assignment to the Purchaser or Back-Up Bidder pursuant to Section 365 of the Bankruptcy Code; (b) the amounts required to cure monetary defaults under the Bonds as of the date of the proposed assumption of the Bonds; and/or (c) the ability of the Purchaser (or, if applicable, the Back-Up Bidder) to provide adequate assurance of future performance under the Bonds and/or the bonded contracts and agreements

32

with the Bond obligees.  Further, absent further order of the Court or agreement of the Surety, the Debtors and the Purchaser, nothing in this Order shall be deemed to, or shall, alter, modify, limit, impair or prejudice any rights, remedies or defenses that the Surety has or may have under any indemnity agreements, the Bonds or related agreements or documents. Notwithstanding any provision of this Order to the contrary, the Surety Objections are fully reserved and may be raised again or otherwise supplemented with respect to the Sale to the Purchaser or any such other sale or transaction to the Back-Up Bidder or otherwise

36.   **Satisfaction of DIP Obligations; DIP Liens**. In connection with the Closing of the transactions provided for under the Purchase Agreement and this Order, the Debtors are authorized and directed to pay the DIP Agent, for the benefit of the DIP Lenders and the Prepetition Secured Lenders, as their interests may appear, the proceeds of the sale as provided under the Purchase Agreement, which payment (together with the treatment of the Letters of Credit specified in the next sentence) shall be in satisfaction of the DIP Obligations and/or Prepetition ABL Debt, as applicable (each as defined in that certain *"Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (i) Granting Authorization on a Final Basis for Debtors to (a) Obtain Postpetition Financing, and (b) Use Cash Collateral of Prepetition ABL Lenders and Granting Adequate Protection, (ii) Granting Authorization on a Further Interim Basis to Use Cash Collateral of Prepetition Term Lenders and Granting Adequate Protection, (iii) Modifying the Automatic Stay, (iv) Granting Related Relief, and (v) Scheduling Final Cash Collateral Hearing"* [Docket No. 140] (the "**Second DIP Order**"). In addition, upon the Closing of the transactions provided for under the Purchase Agreement and this Order, if the Letters of Credit are not replaced and returned undrawn to the DIP Agent, the Debtors are authorized and directed to deliver to the DIP Agent,

33

for the benefit of the Revolving Lenders and the Issuing Bank, the Letter of Credit Collateralization (each as defined in the DIP Credit Agreement (as defined in the Second DIP Order)) as provided under Section 2.3(a)(iii) of the Purchase Agreement; and anything herein and/or in the Second DIP Order to the contrary notwithstanding, the automatic stay under Section 362(a) of the Bankruptcy Code is hereby modified to enable the DIP Agent, the Revolving Lenders and/or the Issuing Bank, as their interests may appear, to realize upon and apply the Letter of Credit Collateralization in satisfaction of Debtors' DIP Obligations under, *inter alia*, the DIP Credit Agreement with respect to any outstanding and undrawn Letters of Credit.

37.     **Backup Bid**.  Anything herein to the contrary notwithstanding, in the event that the Purchaser fails to close the applicable Sale within fifteen (15) days after the entry of this Order (or such date as may be extended by the Debtors in consultation with the Consultation Parties), the Back-Up Bid (as defined in the Bid Procedures) presented by Transom Towing Holdings, LLC (the "**Back-Up Bidder**") will be deemed to be the Successful Bid, the Back-Up Bidder will be deemed to be the Successful Bidder, and the Debtors shall promptly submit an order to approve the sale to the Back-Up Bidder in accordance with the Back-Up Bid.

Dated: April _13_, 2017
      Wilmington, Delaware

                        HONORABLE LAURIE SELBER SILVERSTEIN
                        UNITED STATES BANKRUPTCY JUDGE