**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

--------------------------------------------------------

|  |  |
|---|---|
| **In re** | : Chapter 11 |
|  | : |
|  | : Case No. 17-10249 (LSS) |
| **OLD TOWING COMPANY** *et al.*, | : |
|  | : Jointly Administered |
| **Debtors.**[1] | : |
|  | : **Obj. Deadline: May 24, 2017 at 4:00 p.m. (ET)** |
|  | **Hearing Date: May 31, 2017 at 11:00 a.m. (ET)** |

--------------------------------------------------------

**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO**
**11 U.S.C. §§ 105(a), 305(a), 349, 363, 554 AND 1112(b) AND**
**FED. R. BANKR. P. 1017(a) (A) DISMISSING THE DEBTORS'**
**CHAPTER 11 CASES AND (B) GRANTING RELATED RELIEF**

Old Towing Company f/k/a United Road Towing, Inc. and its debtor affiliates in

the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the

"Debtors"), by and through their undersigned counsel, file this motion (this "Motion") (the

"Motion") for entry of orders, substantially in the forms attached hereto as **Exhibit A** (the

"Initial Order") and attached as Exhibit 1 to the Initial Order, pursuant to sections 105(a), 305(a),

349, 363, 554 and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code"), and

Rules 1017(a) and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

(a) dismissing the Debtors' chapter 11 cases (the "Chapter 11 Cases") and (b) granting related

relief, including, without limitation, (i) authorizing, but not directing, the Debtors to abandon and

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Old Towing Company (6962); URT Holdings, Inc. (8341); City Towing Inc. (2118); URS West, Inc. (3518); Bill & Wags, Inc. (3518); Export Enterprises of Massachusetts, Inc. (5689); Pat's Towing, Inc. (6964); Keystone Towing, Inc. (6356); Ross Baker Towing, Inc. (9742); URT Texas, Inc. (3716); Mart-Caudle Corporation (1912); Signature Towing, Inc. (3054); WHW Transport, Inc. (3055); URS Southeast, Inc. (7289); URS Northeast, Inc. (7290); URS Southwest, Inc. (7284); Fast Towing, Inc. (5898); E & R Towing and Garage, Inc. (8500); Sunrise Towing, Inc. (7160); Ken Lehman Enterprises Inc. (1970); United Road Towing South Florida, Inc. (9186); Rapid Recovery Incorporated (1659); United Road Towing Services, Inc. (2206); Arri Brothers, Inc. (7962); Rancho Del Oro Companies, Inc. (3924); CSCBD, Inc. (2448); URS Leasing, Inc. (9072); UR VMS, LLC (4904); UR Vehicle Management Solutions, Inc. (0402). The Debtors' mailing address is c/o Old Towing Company, 9550 Bormet Drive, Suite 301, Mokena, Illinois 60448.

01:21872012.2

destroy any and all of the books and records maintained by the Debtors that were not sold to the Purchaser pursuant to the Sale, including, but not limited to, (a) accounting documents (including, without limitation, financial reports, income and other tax returns and other related documents), (b) bank documents (including, without limitation, bank statements and copies of cancelled checks), (c) corporate governance documents, (d) documents related to contracts, leases and other contractual agreements of the Debtors, (e) insurance documents, (f) human resources and other related employment documents, (g) documents related to these Chapter 11 Cases and (h) any and all electronic documents maintained by the Debtors (collectively, the "Books and Records"), (ii) approving procedures for filing and approving final fee applications and providing for payment of approved fees and (iii) directing the Debtors to be dissolved on the terms provided for in the Initial Order and Final Dismissal Order (as defined below). In support of the Motion, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT[2]

The Debtors worked diligently to sell their business as a going concern and through the Sale successfully preserved jobs, maintained business relationships, and maximized recovery to the Debtors' secured creditors. This successful result was achieved through a sale process and a series of related transactions approved by the Court pursuant to the Sale Order. The Sale resulted in satisfaction in full of the Debtors' DIP Financing and the payment or assumption of administrative expenses accruing from post-petition operations, claims under section 503(b)(9) of the Bankruptcy Code, and pre-petition priority tax claims, based on the Debtors' estimates of such pre-petition amounts. Additionally, the Purchaser has agreed to assume certain amounts of pre-petition general unsecured claims, resulting in a modest recovery

---

[2] Capitalized terms used in this Preliminary Statement have the meaning ascribed to them elsewhere in the Motion.

01:21872012.2

to the holders of those claims and to provide other value to unsecured creditors in the form of Cure Amounts paid on Assumed Contracts and the purchase and waiver of avoidance actions. After the Closing, the only funds remaining in the estates are the wind-down funds provided for in the Sale which remain the cash collateral of the Debtors' Prepetition Term Agent (as defined in the Final DIP Order, which is defined below).   Therefore, the Debtors seek the dismissal of these Chapter 11 Cases and certain related relief to effectuate the dismissal and the orderly wind-down of the Debtors' affairs.

## JURISDICTION

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.   This is a core proceeding pursuant to 28 U.S.C. § l57(b).   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.   Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.     The statutory predicates for the relief sought herein are sections 105(a), 305(a), 349, 363, 554 and 1112(b) of the Bankruptcy Code and Bankruptcy Rules 1017(a) and 6007.

## BACKGROUND

### A.    General Background

3.    On February 6, 2017 (the "Petition Date"), the Debtors commenced the Chapter 11 Cases.  The Debtors continue manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an order for joint administration of these Chapter 11 Cases.

4.    On February 16, 2016, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").  As of the date hereof, no trustee or examiner has been appointed in these Chapter 11 Cases.

5.    Additional information regarding the Debtors' business, capital structure, and the circumstances leading to these Chapter 11 Cases is set forth in the *Declaration of Michael J. Mahar in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), which was filed on the Petition Date and is incorporated herein by reference.

### B.    The DIP

6.    On March 3, 2017, the Court entered an order [D.I. 140] (the "Final DIP Order"), authorizing the Debtors' access to and use the DIP Facility (as defined in the Final DIP Order).  Under the terms of the DIP Facility, all first-priority prepetition liens on the Debtors' assets were "rolled-up" into the DIP Facility; as a result, the DIP Lender (as defined in the Final DIP Order) and the Prepetition Term Agent (as defined in the Final DIP Order) were the only parties with secured claims on the Debtors' assets.

### C.    The Sale Process

7.    Upon the commencement of these Chapter 11 Cases, the Debtors' management and professionals began the process of preserving and maximizing the value of the

Debtors' estates by making significant progress in stabilizing their business operations and ensuring a smooth transition into chapter 11.  Prior to and subsequent to the Petition Date, the Debtors devoted a substantial amount of time, energy and resources toward negotiating the Debtors' post-petition financing through the DIP Facility and pursuing a marketing and sale process that would achieve and realize maximum value for the Debtors' assets, and ultimately, to achieve and close a sale that was in the best interests of the creditors and the estates.

8.      On April 13, 2017, the Court entered an order [D.I. 279] (the "Sale Order")[3] approving the sale of substantially all of the Debtors' assets (the "Sale") to Medley Capital Corporation (collectively with any nominee or designee thereof, the "Purchaser") pursuant to that certain asset purchase agreement between the parties dated as of April 13, 2017 (the "APA").  The sale closed on (the "Closing") on May 2, 2017. (the "Closing Date").

9.      Pursuant to the APA, on the Closing Date, the Debtors satisfied the remaining DIP Obligations as of the Closing Date, including replacing or cash collateralizing all undrawn Letters of Credit outstanding as of the Closing Date, and funding the Carve-Out (as defined in the DIP Facility).  *See* APA § 2.5(a).  In addition, the Purchaser transferred $250,000 to the Debtors' estates to fund the post-Closing wind-down and administrative expenses in these Chapter 11 Cases (the "Wind-Down Cash").  Further, under the APA, the  Purchaser has assumed various liabilities set forth in Schedules 2.3 and 2.3.1 of the APA (the "Assumed Liabilities"), including amounts owed for pre-petition and post-petition sales and  property taxes, claims under section 503(b)(9) of the Bankruptcy Code, as well as $750,000 of pre-petition general unsecured claims.  The Debtors have no material assets apart from the Wind-Down Cash.

---

[3]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Order.

**D.      Debtors' Books and Records**

10.      On the Petition Date, the Debtors maintained voluminous books and records, including without limitation, (a) accounting documents (including, without limitation, financial reports, income and other tax returns and other related documents), (b) bank documents (including, without limitation, bank statements and copies of cancelled checks), (c) corporate governance documents, (d) documents related to contracts, leases and other contractual agreements of the Debtors, (e) insurance documents, (f) human resources and other related employment documents, (g) documents related to these Chapter 11 Cases and (h) any and all electronic documents.   Pursuant to the APA, most of the Debtors' books and records were acquired by the Purchaser.  The Debtors submit that all books and records with the exception of the Debtors' corporate minutes book and related corporate records and books, files, and papers not otherwise relating exclusively to the conduct of the Debtors' businesses have been sold to the Purchaser.  The Debtors submit that continued maintenance of the Books and Records not sold to the Purchaser would be a significant burden and that the ability to destroy or abandon the Books and Records is necessary for the resolution of these Chapter 11 Cases and would not be prejudicial to the Debtors' stakeholders.

## RELIEF REQUESTED

11.      By this Motion, the Debtors request entry of the Initial Order immediately and the Final Dismissal Order upon filing of the Certification (as defined below), that collectively (a) dismiss the Debtors' Chapter 11 Cases and (b) grant related relief, including, without limitation, (i) authorizing, but not directing, the Debtors to abandon and destroy any and all of the Debtors' remaining Books and Records, (ii) approving procedures for filing and approving final fee applications and providing for payment of approved fees, and  (iii) directing

the Debtors to be dissolved on the terms provided for in the Initial Order and Final Dismissal

Order.

## BASIS FOR RELIEF

**A.    The Court Must Dismiss these Cases if the Elements for "Cause" Are Shown Under Section 1112(b)(4) of the Bankruptcy Code.**

12.    Pursuant to section 1112(b)(1) of the Bankruptcy Code, absent unusual

circumstances, a court shall dismiss a bankruptcy case "for cause."  Section 1112(b)(1) states, in

pertinent part:

> on request of a party in interest, and after notice and a hearing,
> absent unusual circumstances specifically identified by the court
> that establish that the requested conversion or dismissal is not in
> the best interests of creditors and the estate, the court shall convert
> a case under this chapter to a case under chapter 7 or dismiss a case
> under this chapter, whichever is in the best interests of creditors
> and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1).   The Bankruptcy Abuse Prevention and Consumer Protection Act of

2005 changed the statutory language with respect to conversion and dismissal from permissive to

mandatory.[4]   *See* H.R. Rep. 109-31 (I), 2005 U.S.C.C.A.N. 88, 94 (stating that the Act

"mandate[s] that the court convert or dismiss a chapter 11 case, whichever is in the best interests

of creditors and the estate, if the movant establishes cause, absent unusual circumstances."); *see*

*also In re Gateway Access Solutions, Inc.*, 374 B.R. 556 (Bankr. M.D. Pa. 2007) (stating that the

amendments to section 1112 limit the court's discretion to refuse to dismiss or convert a chapter

11 case upon a finding of cause); *accord In re TCR of Denver, LLC*, 338 B.R. 494, 498 (Bankr.

---

4    Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, a bankruptcy court had wide discretion to use its equitable powers to dispose of a debtor's case but was not mandated to dismiss a case if cause were shown.  H.R.Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 117 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787; *see also Small Business Admin. v. Preferred Door Co. (In re Preferred Door Co.)*, 990 F.2d 547, 549 (10th Cir. 1993) (a court has broad discretion to dismiss a bankruptcy case); *In re Sullivan Cent. Plaza I, Ltd.*, 935 F.2d 723, 728 (5th Cir. 1991) (determination of whether cause exists under § 1112(b) "rests in the sound discretion" of the bankruptcy court); *In re Koerner*, 800 F.2d 1358, 1367 & n. 7 (5th Cir. 1986) (bankruptcy court is afforded "wide discretion" under section 1112(b)).

D. Colo. 2006) ("Congress has purposefully limited the role of this Court in deciding issues of conversion or dismissal such that this Court has no choice, and no discretion in that it 'shall' dismiss or convert a case under Chapter 11 if the elements for 'cause' are shown under 11 U.S.C. § 1112(b)(4).") (emphasis added).

13.     The amendments to section 1112 thus limit the Court's discretion to refuse to dismiss or convert a chapter 11 case upon a finding of cause. *In re 3 Ram, Inc.*, 343 B.R. 113, 119 (Bankr. E.D.Pa. 2006) ("Under new § 1112 when cause is found, the court shall dismiss or convert unless special circumstances exist that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate."); *see also In re Broad Creek Edgewater, LP*, 371 B.R. 752, 759 (Bankr. D. S.C. 2007).

14.     For reasons more fully explained below, the Court must dismiss these Chapter 11 Cases because cause exists and dismissal is in the best interests of the Debtors, the Debtors' estates and their creditors.

**B.      Cause Exists to Dismiss the Debtors' Bankruptcy Cases Because the Debtors Ceased their Business Operations, Have No Assets Available for Distribution to Certain Administrative Constituencies and Are Unable to Confirm a Liquidating Plan.**

15.     Section 1112(b)(4) of the Bankruptcy Code provides a non-exhaustive list of 16 grounds for dismissal.  11 U.S.C. § 1112(b)(4)(A)-(P).  *See In re Gateway Access Solutions*, 374 B.R. at 561 ("Generally, such lists are viewed as illustrative rather than exhaustive, and the Court should 'consider other factors as they arise.'") (quoting *In re Brown*, 951 F.2d 564, 572 (3d Cir. 1991)); *In re 3 Ram, Inc.*, 343 B.R. at 117 ("While the enumerated examples of 'cause' to convert or dismiss a chapter 11 case now listed in § 1112(b)(4) have changed under BAPCPA, the fact that they are illustrative, not exhaustive has not."); *accord In re Frieouf.*, 938 F.2d 1099, 1102 (10th Cir. 1991) (stating that section 1112(b)'s list is non-

exhaustive).[5] One such ground is where a party-in-interest shows that there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

16.    To demonstrate a continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation, a debtor must establish: (i) that there has been a diminution of value of the estate; and (ii) the debtor does not have a "reasonable likelihood of rehabilitation." *See, e.g., In re Citi-Toledo Partner*s, 170 B.R. 602, 606 (Bankr. N.D. Ohio 1994) ("Section 1112(b)(1) contemplates a 'two-fold' inquiry into whether there has been a 'continuing diminution of the estate and absence of a reasonable likelihood of rehabilitation,'") (citing *In re Photo Promotion Associates, Inc.*, 47 B.R. 454, 458 (Bankr. S.D.N.Y. 1985)).

17.    Under the two-fold inquiry, the Debtors must first demonstrate that there has been a diminution of value of their estates. *See, e.g., In re Citi-Toledo Partners*, 170 B.R. at 606 (finding that accumulation of real estate taxes impaired the value of the estate).  Second, the Debtors must demonstrate that they have no "reasonable likelihood of rehabilitation." *See, e.g., Clarkson v. Cooke Sales And Service Co. (In re Clarkson)*, 767 F.2d 417, 420 (8th Cir. 1985) (dismissal warranted where "the absence of financial data and certain sources of income for the [debtors] indicate[d] the absence of a reasonable likelihood of rehabilitation"); *A. Illum Hansen, Inc. v. Tiana Queen Motel, Inc. (In re Tiana Queen Motel, Inc.)*, 749 F.2d 146 (2nd Cir. 1984) (conversion under section 1112(b)(1), (2) and (3) warranted in light of Debtor's "failure . . . to

---

[5]    In *In re TCR of Denver*, the court recognized the apparent typographical error in § 1112(b)(4) of the Bankruptcy Code.  The sixteen illustrative examples of "cause" set forth in that section are linked by the word "and" after subsection (O).  Accordingly, strict construction of the statute would require that a debtor establish all of the items constituting "cause" before a case can be dismissed by the court.  The *TCR* court held that Congress could not have intended to require a "perfect storm" of all sixteen circumstances listed before a case be converted or dismissed.  *See In re TCR of Denver*, 338 B.R. at 498.

01:21872012.2

demonstrate that their prospects for prompt rehabilitation were based upon anything more substantial than [their] boundless confidence" in the 15 months after the filing of a chapter 11 petition); *see also In re Wright Air Lines, Inc.*, 51 B.R. 96, 99 (Bankr. N.D. Ohio 1985) (stating that "[r]ehabilitation as used in 11 U.S.C. Section 1112(b)(1) means 'to put back in good condition; re-establish on a firm, sound basis'") (citation omitted).

18.    Here, the Debtors easily satisfy the two-fold inquiry. First, the Debtors liquidated all of their assets in connection with the Sale. The Debtors no longer conduct any business, and have no remaining unencumbered assets that could be used to satisfy the claims of any class of creditors absent the consent of the Prepetition Term Agent. At the same time, administrative claims, such as professional fees and United States Trustee fees, continue to accrue each day the Chapter 11 Cases remain open and the only available source of funds to pay such costs are the Carve-Out and the Wind-Down Cash. Second, there is no business to reorganize. Pursuant to the APA and the Sale Order, the Debtors have transferred all of their operating assets to the Purchaser and have ceased operations.

19.    Moreover, while no longer an enumerated ground under amended section 1112 of the Bankruptcy Code, dismissal of a chapter 11 case is appropriate where the court finds that a feasible plan is not possible. *In re 3 Ram*, 343 B.R. at 117-18. If a chapter 11 debtor cannot achieve a reorganization within the statutory requirements of the Bankruptcy Code, then there is no point in expending estate assets on administrative expenses, or delaying creditors in the exercise of their nonbankruptcy law rights. *Id.* at 118 (citing, *inter alia*, *In re Brown*, 951 F.2d at 572).

20.    Here, the Debtors do not have sufficient assets to confirm a plan of liquidation because the Debtors no longer have any operations and have no unencumbered assets

-10-

to make all of the payments that would be required to implement a plan process and provide a recovery to parties other than their existing secured claims.[6] Thus, there is no point in incurring additional administrative expenses when the Debtors are unable to consummate a liquidating plan.

21.     In sum, the Debtors have met their burden and these Chapter 11 Cases should be dismissed under section 1112(b)(4) of the Bankruptcy Code due to the substantial or continuing loss to, or diminution of, the Debtors' estates, the absence of a reasonable likelihood of rehabilitation, and the fact that a liquidating plan is not feasible under the circumstances of these Chapter 11 Cases.

**C.    Dismissal Is in the Best Interests of the Debtors' Creditors and Estates.**

22.     Once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court must evaluate whether dismissal is in the best interests of the debtor's creditors and of the estate.  *See, e.g., Rollex Corp. v. Associated Materials (In re Superior Siding & Window)*, 14 F.3d 240, 242 (4th Cir. 1994) ("Once 'cause' is established, a court is required to consider this second question of whether to dismiss or convert.").  A variety of factors demonstrate that it is in the best interest of the Debtors' estates and their creditors to dismiss these Chapter 11 Cases.

23.     First, a dismissal of a chapter 11 bankruptcy case meets the best interests of creditors test where a debtor has nothing to reorganize, and the debtor's assets are fixed and liquidated.  *See Camden Ordinance Mfg. Co. of Ark., Inc. v. Unites States Trustee (In re Camden Ordnance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 799 (E.D. Pa. 2000) (reorganization to salvage business which ceased business was unfeasible); *In re Brogdon Inv. Co.*, 22 B.R. 546, 549

---

[6]     As noted above, the Assumed Liabilities include the Debtors' estimate of claims under section 503(b)(9) of the Bankruptcy Code and pre-petition priority tax claims.

(Bankr. N.D. Ga. 1982) (court dismissed chapter 11 proceeding in part where there was "simply nothing to reorganize" and no reason to continue the reorganization). As explained above, the Debtors have nothing left to reorganize. As of the date of this Motion, all of the operating assets of the Debtors' estates have been sold. As also set forth above, the only things remaining for the Debtors to do are to satisfy certain administrative claims. Thus, it is in the best interests of the creditors to dismiss these Chapter 11 Cases because the Debtors' operations no longer exist, no funds are available to finance a plan of liquidation and no assets are available for distribution other than the amounts specified above, which are collateral of the Prepetition Term Agent, other than the Carve-Out.

24.     Second, the best interests of creditors test is also met where an interested party, other than the debtor, feels that dismissal is a proper disposition of the case. *See Camden Ordinance*, 245 B.R. at 798; *In re Mazzocone*, 183 B.R. 402, 414 (Bankr. ED. Pa. 1995) (Factors weighed more heavily in favor of dismissal of chapter 11 case rather than conversion to chapter 7, where debtor and United States Trustee both favored dismissal). Here, the Creditors' Committee and the Prepetition Term Agent are supportive of the Debtors' decision to dismiss these Chapter 11 Cases.

25.     Third, the best interests of creditors test is met where a debtor demonstrates the ability to oversee its own liquidation. *See Camden Ordinance*, 245 B.R. at 798; *Mazzocone,* 183 B.R. at 412 ("Only when a Chapter 11 debtor has no intention or ability to . . . perform its own liquidation … should a debtor be permitted to remain in bankruptcy."). Here, the Debtors conducted the sale of substantially all of their assets, which maximized the value of those assets and liquidated them in an orderly fashion. The Initial Order establishes a process to fund professional fees and expenses, as set forth in the Carve-Out, with the Wind-Down Cash; if

any excess collateral remains, such collateral would be returned to the Prepetition Term Agent. In addition, pursuant to the APA, avoidance actions held by the Debtors' estates were purchased, and the Purchaser has agreed to waive those actions.  The Debtors are confident that there is nothing further to pursue in these Chapter 11 Cases.

26.    Fourth, and finally, dismissal of these Chapter 11 Cases will maximize the value of the Debtors' estates because the alternative—conversion to a chapter 7 liquidation and appointment of a trustee—is unnecessary and could impose significant additional administrative costs upon the Debtors' estates.  Under the circumstances, even in a chapter 7 liquidation, the chapter 7 trustee would still have insufficient assets with which to pay most, if not all, administrative expenses or other claims that would accrue during the administration of the Debtors' cases under chapter 7.  By continuing in bankruptcy under chapter 7, the Debtors would just incur additional administrative expenses that they would be unable pay.

27.    Thus, in balancing the equities of the Debtors' case, it is clear that it is in the best interest of the Debtors' estates and their creditors to dismiss these Chapter 11 Cases.

28.    In sum, to date, the Sale Order, *inter alia*, represents the cooperative efforts of the Debtors, the Committee, and the Purchaser at reaching a solution that maximizes the  benefit of the Debtors' creditors within the confines of the Bankruptcy Code.  Granting the relief requested simply furthers the Bankruptcy Code's goal of efficient administration of the Debtors bankruptcy estates, eliminates the accrual of administrative expense obligations, and brings closure to these Chapter 11 Cases in a timely manner.

**D.    Dismissal of the Chapter 11 Cases Is Warranted Under Section 305(a) of the Bankruptcy Code.**

29.    Alternatively, cause exists to dismiss the Chapter 11 Cases pursuant to section 305(a) of the Bankruptcy Code, which provides that:

01:21872012.2

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of creditors and the debtor would be better served by such dismissal or suspension; 11 U.S.C. § 305(a).

30.     Dismissal pursuant to section 305(a) is an extraordinary remedy, and dismissal is only appropriate where the court finds that both creditors and the debtor would be better served by dismissal. *In re AMC Investors, LLC*, 406 B.R. 478, 487-88 (Bankr. D. Del. 2009). Dismissal under this provision is determined on a case-by-case basis and rests in the sound discretion of the bankruptcy court. *In re Sky Group Intern, Inc*., 108 B.R. 86, 91 (Bankr. W.D. Pa. 1989).  Many factors are considered when determining the best interests of creditors and the debtor, including (i) the economy and efficiency of administration, (ii) whether federal proceedings are necessary to reach a just and equitable solution, (iii) whether there is an alternative means of achieving an equitable distribution of assets and (iv) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case. *AMC Investors*, 406 B.R. at 488.

31.     As described above, cause exists for dismissal.  The Debtors have sold substantially all of their assets and are unable to confirm a plan.  With no remaining assets to administer, conversion to chapter 7 would impose additional administrative costs with no corresponding benefit to the Debtors' creditors or their estates.  Dismissal of the Chapter 11 Cases as set forth in this Motion, among other things, provides the most efficient, cost-effective method of effectuating the wind-down of the Debtors' estates, and ensures payment of all U.S. Trustee fees.

**E.     The Court Should Authorize the Debtors to Abandon and Destroy the Books and Records**

32.     Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, [a debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).  Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *Id.* at § 105(a).  Bankruptcy Rule 6007, meanwhile, provides that a debtor may abandon property of the estate by giving notice of the proposed abandonment to various parties, and allowing those parties to file an objection.  As one bankruptcy court has noted, "if a trustee feels an asset is of inconsequential value and benefit to the estate or that it is 'burdensome to the estate,' [she] may abandon it." *Reich v. Burke (In re Reich)*, 54 B.R. 995, 1003-04 (Bankr. E.D. Mich. 1985).

33.     The Debtors request that the Court, pursuant to sections 105(a) and 554 of the Bankruptcy Code and Bankruptcy Rule 6007, authorize, but not direct, the Debtors to abandon and destroy the Books and Records.  As previously discussed, the Debtors have sold substantially all of their assets through the Sale,  no longer have an operating business and have largely wound up their affairs.  The Books and Records will be simply of no value to the Debtors after dismissal of the Chapter 11 Cases and the proposed dissolution, and the Debtors should not be forced to incur the costs necessarily associated with maintaining and storing the Books and Records—an asset with no value.

34.     Accordingly, the Debtors submit that the relief requested herein with respect to the Books and Records is necessary, prudent and in the best interests of the Debtors' estates and creditors, and should therefore be granted.

**F.    Professional Fee Issues**

35.    The Debtors request that the Court schedule a final omnibus fee hearing on June 27, 2017 (the "Final Fee Hearing").  The Debtors further request that the Court require all professionals retained in these Chapter 11 Cases to file final requests for allowance and payment of all fees and expenses incurred during the Chapter 11 Cases (the "Final Fee Applications") not later than twenty (21) days prior to the Final Fee Hearing and that any objections to the Final Fee Applications be filed and served on counsel for the Debtors by 4:00 p.m. (prevailing Eastern Time) on June 20, 2017.

36.    To the extent that any cash consideration remains unused after the dismissal of these Chapter 11 Cases, the Debtors request that such unused amount (the "Professional Fee Reserve") be placed in an account and used to pay any professional fees that may arise in connection with these Chapter 11 Cases after their dismissal.  If (a) no such fees arise or (b) amounts remain in the Professional Fee Reserve after payment of those fees, the Professional Fee Reserve shall be the property of the Prepetition Term Agent, pursuant to the order of the Court, dated April 12, 2017 [D.I. 274].

**G.    Certification and Request for Entry of Final Dismissal Order.**

37.    As discussed above, the Debtors are providing transition services to the Purchaser to ensure that the Purchaser is able to acquire the consents, permits and licenses necessary to operate the Debtors' business fully.  The Debtors believe that these transition services are primarily, if not exclusively, being provided by Debtor Old Towing Company. Therefore, the Initial Order dismisses the Debtors' Chapter 11 Cases, except for that of Old Towing Company, immediately upon entry.   However, the Debtors may, and reserve the right to, modify the Initial Order and Final Dismissal Order to provide that other Debtors' Chapter 11

01:21872012.2

Cases should remain open, along with Old Towing Company, until the time of filing the Certification (as defined and discussed in the next paragraph).

38.     As soon as reasonably practicable following the payment of professional and U.S. Trustee fees, the Debtors request that the Court dismiss the Chapter 11 Case of Old Towing Company (and any other Debtors whose cases are not dismissed by the Initial Order) upon the filing of a certification (a "Certification") of counsel and requesting entry of a dismissal order substantially in the form attached as Exhibit 1 (the "Final Dismissal Order") to the Initial Order.  Among other things, the Certification will verify that (i) all quarterly fees of the U.S. Trustee fees have been paid in full and (ii) the fees and expenses of professionals in these Chapter 11 Cases have been approved on a final basis and paid.  The Final Dismissal Order will dismiss the remaining Chapter 11 Case (or Chapter 11 Cases) immediately upon entry.

39.     The Debtors intend to serve the Certification on the general service list established in these Cases, including the U.S. Trustee, but will not send the Certification to the Debtors' entire matrix of creditors and parties-in-interest, as such parties will receive reasonable notice of the proposed dismissal through notice of the hearing on the present Motion.

## NOTICE

40.     Notice of this Motion and a copy of this Motion has been provided to (i) the U.S. Trustee; (ii) counsel to Wells Fargo Bank, N.A. and Medley Capital Corporation; (iii) counsel to the Committee; (iv) any creditor or other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b); and (v) all parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors will serve notice of this Motion only, and will not serve a copy of the Motion itself, on the parties listed in clause (iv) of the prior sentence.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

01:21872012.2

## CONCLUSION

WHEREFORE, the Debtors respectfully requests entry of the Initial Order and

Final Dismissal Order, granting the relief requested herein and such other and further relief as

this Court deems just and proper.

Dated:  May 8, 2017                                  YOUNG CONAWAY STARGATT
       Wilmington, Delaware                     & TAYLOR, LLP


/s/ *M. Blake Cleary*
M. Blake Cleary (No. 3614)
Ryan M. Bartley (No. 4985)
Andrew Magaziner (No. 5426)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

WINSTON & STRAWN LLP
Daniel J. McGuire
Grace D. D'Arcy
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Carrie V. Hardman
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Counsel for Debtors and Debtors in
Possession*